IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOS SOUROVELIS, et al. | : | |
| | : | |
| v. | : | Civil Action No. 14-4687-ER |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants R. Seth Williams and the Philadelphia District Attorney's Office (together, "the Commonwealth") respectfully submit this memorandum in support of their motion to dismiss the complaint filed by Plaintiffs Christos Sourovelis, Doila Welch, and Norys Hernandez pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Plaintiffs' complaint should be dismissed.

**I.      Procedural Background**

On August 11, 2014, Plaintiffs, on behalf of themselves and a putative class of similarly situated others, commenced this action pursuant to 42 U.S.C. § 1983 against the Commonwealth, among other defendants. Plaintiffs allege in their complaint that various policies and practices of the Commonwealth with respect to its pursuit – in accordance with state statutory and (apparently) common law[1] – of the forfeiture of property connected to criminal conduct violate

---

[1] Although the named plaintiffs are owners of real property that is currently the subject of ongoing civil forfeiture actions in the Court of Common Pleas of Philadelphia County, they purport to represent a larger class of "[a]ll persons who own property [*i.e.*, both real and personal] that is or will be the subject of a civil-forfeiture petition[.]" (ECF No. 3 ¶ 3). To the extent their complaint includes allegations pertaining to the forfeiture of personal property (*see* ECF No. 1 ¶ II.A.), the mechanism of common law forfeiture may also be implicated. *See 2010 Buick Enclave VIN # GALRBED8J122029*, --- A.3d ----, 2014 WL 4437274 (Pa.Cmwlth. Sept. 10, 2014) (describing the distinction between civil and common law forfeiture).

their respective rights to due process of law.  (ECF No. 1).  Concomitantly with the complaint, Plaintiffs filed a motion for class certification (ECF No. 3) and supporting memorandum (ECF No. 4).  Pursuant to a stipulation and order filed August 20, 2014, all defendants were provided until October 2, 2014, to submit responses to the complaint and the motion for class certification. (ECF No. 19).

On September 8, 2014, Plaintiffs filed a motion for preliminary injunction as to the first count of their complaint (ECF No. 20), along with a supporting memorandum (ECF No. 21) and exhibits (ECF Nos. 22, 23).  When Plaintiffs refused to stipulate to the Commonwealth's request for an extension that would make its response to the preliminary injunction motion also due on October 2, the Commonwealth moved the court for an extension to that date.  (ECF No. 24). Plaintiffs opposed that motion (ECF No. 25), but the court granted relief on September 16 (ECF No. 26).

As discussed in the Commonwealth's opposition to the motion for preliminary injunction, filed contemporaneously herewith, the first count of Plaintiffs' complaint faults the Commonwealth for petitioning for relief that the state court allegedly granted based on insufficient evidence.  Insofar as Plaintiffs essentially seek federal review of a state court order, this court lacks subject matter jurisdiction pursuant to consider this claim.  Moreover, in light of the fact that the named plaintiffs' civil forfeiture cases are presently ongoing in the Court of Common Pleas of Philadelphia County, and Plaintiffs could bring their constitutional claims in Pennsylvania state courts, this court should abstain from deciding this case.  Accordingly, the Commonwealth moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**II.     Count One of Plaintiffs' Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1).**

    **A.     Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the authority of a federal court to consider a case or claim. *See Miller v. 3G Collect, LLC*, --- F.Supp.3d ----, ----, 2014 WL 4634966, at *2 (E.D.Pa. Sept. 16, 2014) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the "burden of proof that jurisdiction does in fact exist." *Miller*, 2014 WL 4634966, at *2 (quoting *Petruska*, 462 F.3d at 302 n. 3)). In considering such a motion, the court need not assume the truth of the well-pleaded allegations in the complaint, *see Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); indeed, it may "go outside the bounds of the complaint" to make factual findings decisive of the issue, *see Employers Ins. of Wasusau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990). If the court cannot conclude that its exercise of jurisdiction is proper, the challenged complaint or count must be dismissed because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal marks omitted). As relevant here, a challenge that any portion of a complaint is barred by the *Rooker-Feldman* doctrine is appropriately considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Conjalko v. CYS*, Civ. No. 07-318 Erie, 2008 WL 4072810, at *1 (W.D.Pa. Aug. 27, 2008); *Givens v. Walker*, No. Civ.A. 04-1624, 2005 WL 1712308, at *3 (E.D.Pa. July 20, 2005).

    **B.     Argument**

Plaintiffs assert in the first count of their complaint that the Commonwealth has "a policy and practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g) to seize real property without

providing owners or residents of the property notice or a meaningful opportunity to be heard." (ECF No. 1 ¶ 194). Plaintiffs also take issue with the Commonwealth's "policy and practice of obtaining *ex parte* orders to seize and seal real property without . . . [a showing] of exigent circumstances that would justify sealing the real property." (*Id*. at ¶ 195). "As a direct and proximate result of [these] actions," they allege, "Plaintiffs Sourovelis and Hernandez and the members of the putative class have suffered [and the class members will continue to suffer] irreparable injury to their constitutional rights, including but not limited to being forcibly evicted from their homes and having their real property seized." (*Id*. at ¶ 197). As relief, Plaintiffs seek a declaration that the Commonwealth's "policy and practice of seizing real property without providing property owners notice or an opportunity to be heard" violates the Due Process Clause of the Fourteenth Amendment and that the state statutory provisions upon which the Commonwealth relies in seeking *ex parte* orders are facially unconstitutional where real property is involved. (*Id*. at 42-43).[2]

---

[2] Plaintiffs label these as "as-applied" constitutional challenge, but they are not. As one court explained:

> The difference between a facial challenge and an as-applied challenge lies in the scope of the constitutional inquiry. Under a facial challenge, a plaintiff may sustain its burden in one of two ways. First, a plaintiff asserting a facial challenge "may demonstrate 'that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt*., 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (alterations omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010)). Second, a plaintiff asserting a facial challenge may also prevail if he or she "show[s] that the law is 'overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id*. (alterations omitted) (quoting *Stevens*, 130 S.Ct. at 1587). Under either scenario, a court considering a facial challenge is to assess the constitutionality of

4

In essence, Plaintiffs invite this court to opine as to the propriety of the "seize and seal" orders issued by the Court of Common Pleas of Philadelphia County. To be clear, Plaintiffs acknowledge that an *ex parte* procedure is authorized by statute, and the legal standard for the issuance of such relief is well-established. In truth, they do not present a meaningful constitutional challenge to the statutory procedure; rather, they argue that the state court did not (in the cases of Mr. Sourovelis and Ms. Hernandez), and routinely does not (in the cases of the putative class members), follow that procedure. Nevertheless, they fault the Commonwealth's "practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g)" and, remarkably, of "obtaining *ex parte* orders to seize and seal real property[.]" (ECF No. 1 ¶¶ 194, 195). This court lacks jurisdiction to consider such a claim.

---

the challenged law "without regard to its impact on the plaintiff asserting the facial challenge." [*Educ. Media Co. at Virginia Tech, Inc. v.*] *Swecker*, 602 F.3d [583,] 588 [(4th Cir. 2010)]. In contrast, an as-applied challenge is "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc).

*Educ. Media Co. at Virginia Tech, Inc. v. Insley*, 731 F.3d 291, 298 n. 5 (4th Cir. 2013); *accord Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014).

Here, Plaintiffs assert, in relevant part, that "42 Pa. Const. Stat. § 6802(f) and (g) are unconstitutional as applied to real property to the extent these provisions authorize *ex parte* seizure of real property, without notice or a pre-deprivation opportunity to contest the seizure[.]" (ECF No. 1, at 43). Thus, they appear to present a facial challenge that "the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Insley*, 731 F.3d at 298 n. 5 (internal marks and citations omitted). Accordingly, Plaintiffs must be held to the "particularly demanding standard" applicable to facial constitutional challenges, which have been characterized as the "most difficult challenge[s] to mount successfully." *Heffner*, 745 F.3d at 65 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Pursuant to § 6801(a)(6)(i)(C) of Pennsylvania's Controlled Substances Forfeiture Act, the Commonwealth may seek the forfeiture of "[r]eal property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device, and Cosmetic Act, including structures or improvements thereon[.]" 42 Pa.C.S. § 6801(a)(6)(i)(C). Such property "may be seized" either "upon process issued by any court of common pleas having jurisdiction over the property" or "without process" if, *inter alia*, "there is probable cause to believe that the property has been used or is intended to be used in violation of [the Controlled Substances Act]." *Id*. at § 6801(b).

A civil forfeiture action is an *in rem* proceeding commenced upon the filing of a petition "in the court of common pleas of the judicial district where the property is located, verified by oath or affirmation of an officer or citizen[.]" *Id*. at § 6802(a). A copy of the petition must be "served personally or by certified mail on the owner or upon the person or persons in possession at the time of the seizure," along with an endorsed notice advising the claimant that he or she is "required to file an answer to this petition, setting forth [his or her] title in, and right to possession of, said property within 30 days[.]" *Id*. at § 6802(b). Where "seizure without process occurs, . . . proceedings for the issuance thereof shall be instituted forthwith." *Id*. at § 6802(c). All property seized "is deemed to be in the custody of the law enforcement authority subject only to the orders and decrees of the court of common pleas having jurisdiction over the forfeiture proceedings and of the district attorney or the Attorney General," and "[w]hen property is seized under this chapter, the law enforcement authority shall place the property under seal," *id*. at § 6802(d).

As particularly relevant here, § 6802(f) authorizes the court to "enter a restraining order or injunction . . . or take any other action to preserve the availability of property" for forfeiture either:

> (1) upon the filing of an information or an indictment charging an offense in this Commonwealth for which criminal forfeiture may be ordered under this chapter and alleging that the property with respect to which the order is sought would be subject to forfeiture; or
>
> (2) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and an opportunity for a hearing, the court determines that:
>
>> (i) there is a substantial probability that the Commonwealth will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for forfeiture; and
>>
>> (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

Pursuant to § 6802(g), a temporary restraining order "may be entered upon application of the Commonwealth without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the Commonwealth demonstrates that there is probable cause to believe that the property with respect to which the order sought would be subject to forfeiture under this chapter and that provision of notice will jeopardize the availability of the property for forfeiture." Such an order expires "not more than ten days after the date on which it is entered" and a "hearing requested concerning an order entered under this subsection shall be held at the earliest possible time and prior to the expiration of the temporary order." *Id*.

While Pennsylvania case law regarding constitutional challenges to the civil forfeiture procedure is relatively sparse, courts have made clear that "[n]otice and an opportunity to be heard are procedural safeguards integral to forfeiture proceedings, and must be satisfied." *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093, 1095 (Pa.Cmwlth. 2004) (internal citation omitted). Indeed, they have recognized that "[p]rocedural due process requires that the deprivation of life, liberty, or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id*; *accord United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993) ("[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.").

Here, the record evidence shows that, upon the filing of a civil forfeiture action against the Sourovelis property, Assistant District Attorney Daren Waite ("ADA Waite") submitted to the Court of Common Pleas of Philadelphia County an "application to seize and seal premises pursuant to 42 Pa.C.S. §§ 6801, 6802." (ECF No. 23-4, at 1). Specifically, he alleged, "[t]he Commonwealth is authorized to seize and seal property subject to forfeiture pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f)(g)." (*Id*. at ¶ 2). In support of the application, he set forth the circumstances of the police encounter with Mrs. Sourovelis during execution of the search and seizure warrant – *i.e.*, that she initially "refused to open the door," "did not immediately restrain [her] Pit Bull dog," and "tri[e]d to slam the door on the officers" (*id*. at ¶¶ 6, 8) – and the subsequent discovery of Yianni Sourovelis locked inside a bathroom, flushing heroin down the toilet (*id*. at ¶¶ 10-16). Additionally citing that "numerous narcotics and drug related paraphernalia" was recovered from the home incident to the arrest, ADA Waite requested that the court enter an attached sealing order.

In the case of Ms. Hernandez, Assistant District Attorney Steven Agami ("ADA Agami") filed a substantively similar application to seize and seal the property. (ECF No. 22-4). Like ADA Waite, he asserted that an order seizing and sealing the property was authorized "pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f), (g)" (*id*. at ¶ 2), and added that such relief was necessary to "protect[] the health and safety of the community by immediately preventing further narcotics activity from occurring within"; "[t]o avoid a prolonged confrontation"; "to preserve the ability of the property for the forfeiture"; and "to minimize the risk of injury to all parties" (*id*. at ¶ 3).

While it is not clear, based on the present record, whether any further showing of exigent circumstances was made in either case, it is clear that a judge of the Court of Common Pleas of Philadelphia County found, in both cases, that, "pursuant to 42 Pa.C.S. § 6802(f), (g), the Commonwealth [was] authorized to enter and seize the premises[.]" (ECF No. 22-6; *see also* ECF No. 23-5). Thus, the court implicitly found that ADA Waite and ADA Agami made the required showings for the issuance of such orders.

To the extent Plaintiffs argue that the court should have found otherwise, their claims are barred under the *Rooker-Feldman* doctrine. As the Third Circuit explained in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006):

> The *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication. The doctrine derives from the Supreme Court's opinions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 . . . (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483-84 . . . (1983). In *Exxon Mobil* [*Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)], the Court, however, emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting

9

>  district court review and rejection of those judgments." 544 U.S. at 284[.]

The critical point here is that the relevant plaintiffs' injuries – *i.e.*, execution of the "seize and seal" orders – resulted not from the Commonwealth's applications for *ex parte* relief, but from the state court granting those applications.  Thus, Plaintiffs are "complaining of injuries caused by state-court [orders] rendered before the district court proceedings commenced" and "invit[e] district court review and rejection of those [orders]." *Exxon Mobil*, 544 U.S. at 284.  This is precisely what the *Rooker-Feldman* doctrine aims to prevent.  *See Barren v. Allegheny County, Pa.*, Civ. No. 14-692, 2014 WL 4384598, at *3 (W.D.Pa. Sept. 4, 2014) ("What Plaintiff seeks in this civil action is to have the state court forfeiture proceeding declared null and void. . . . Rooker-Feldman squarely precludes this Court from doing so"); *Briar Meadows Developments, Inc. v. South Centre Township Bd. of Supervisors*, No. 10-CV-1012, 2010 WL 4024775, at *5 (M.D.Pa. Oct. 13, 2010) (finding, under *Rooker-Feldman*, "[t]his Court simply lacks subject matter jurisdiction to declare that the state court forfeiture proceedings were void"); *In re Wagner*, No. 04-18091, 2004 WL 5856048, at *2 (E.D.Pa. Dec. 15, 2004) (overruling objection to magistrate judge report and recommendation "because the Rooker-Feldman doctrine does indeed bar Plaintiff's Complaint as to the claimed illegality of the state court forfeiture proceedings").  Accordingly, the court should find that it lacks subject matter jurisdiction to consider the first count of Plaintiffs' complaint.

**III.    The Complaint Should Be Dismissed for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6).**

   **A.    Standard of Review**

The applicable standard for a Rule 12(b)(6) motion is well-established.  Under the rule, the court must dismiss an action on motion made before a responsive pleading is filed when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).

To plead a viable cause of action, the allegations must transcend the "speculative" and "conceivable" and must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The court must disregard both "legal conclusions" and "conclusory statements" and must scrutinize the well-pleaded factual allegations to ensure that they are more than "merely consistent with a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted); *see also Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (disregarding "bald assertions" and "legal conclusions" in evaluating a motion to dismiss).

A complaint must do more than allege a plaintiff's entitlement to relief; rather, it must "show" such entitlement through well-pleaded factual allegations.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "A plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

   **B.    Argument**

To the extent that the court may exercise jurisdiction over Plaintiffs' complaint, it should nevertheless abstain from doing so in deference to ongoing state court proceedings.  *See In re*

*Standard & Poor's Rating Agency Litigation*, --- F.Supp.2d ----, ----, 2014 WL 2481906, at *22 (S.D.N.Y. June 3, 2014) (finding *Younger* abstention was "required" where all requirements set forth in *Sprint Communications, Inc. v. Jacobs*, --- U.S. ----, 134 S.Ct. 584 (2013), were satisfied); *see also Agarwal v. Schuylkill County Tax Claim Bureau*, No. 3:CV-09-1921, 2010 WL 5175121, at *9 (M.D.Pa. Aug. 5, 2010) ("*Younger* abstention is mandatory if these conditions are met" (citing *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005)); *Ralston v. Zats*, No. CIV. A. 94-3723, 1997 WL 560602, at *12 (E.D.Pa. Aug. 26, 1997) ("Unlike *Younger* abstention, *Burford* abstention is not mandatory"). Because principles of comity and federalism militate in favor of abstention, Plaintiffs' complaint should be dismissed.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States "held that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances." *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992). Thus, *Younger* established that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint*, 134 S.Ct. at 588. The Court later "extended *Younger* abstention" to two other classes of cases – namely, "particular state civil proceedings that are akin to criminal prosecutions" (*i.e.*, civil enforcement proceedings) and state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 134 S.Ct. at 588 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)). These "three 'exceptional' categories . . . define *Younger*'s scope"; district courts are otherwise "obliged to decide cases within the scope of federal jurisdiction." *Id.* at 588, 591. Additionally,

in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court "delineated three requirements which must be satisfied before a federal court may abstain from hearing a case over which it has jurisdiction: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994); *see also Sprint*, 134 F.3d at 593 ("[t]he three *Middlesex* conditions . . . [are] *additional* factors appropriately considered by the federal court before invoking *Younger*" (emphasis in original)). If those conditions are satisfied and one of the three "exceptional" categories of cases is presented, "the prospect of undue interference with state proceedings counsels against federal relief," *Sprint*, 134 S.Ct. at 588, and the federal suit must be dismissed, *see Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("[*Younger v. Harris*] contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts").

Here, the *Middlesex* conditions, which are not particularly onerous, are clearly satisfied. *See Sprint*, 134 S.Ct. at 593 (explaining that if the *Middlesex* conditions were dispositive of the *Younger* analysis, it "would extend *Younger* to virtually all parallel state and federal proceedings . . . where a party could identify a plausibly important state interest"). The first condition requires that state proceedings be both ongoing and judicial in nature. *See, e.g., New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 369-70 (1989) ("*NOPSI*"). All of the plaintiffs in this case have civil forfeiture petitions presently pending in the Court of Common Pleas of Philadelphia County; thus, their state cases are clearly ongoing and judicial in nature. The second *Middlesex* condition requires that the pending state proceedings involve important state interests. In assessing this factor, courts look not to the state's interest in the

13

outcome of the case, but rather to the "importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 364-65. Both the Commonwealth of Pennsylvania and the City of Philadelphia have a compelling interest in the procedure by which property related to criminal conduct is seized and forfeited, and in ensuring that this process comports in all respects with the requirements of the federal and state constitutions. *See O'Neill*, 32 F.3d at 792 ("the City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular"). The third and final *Middlesex* condition is that *Younger* abstention is only appropriate if the state proceedings provide an adequate opportunity to adjudicate the constitutional issues raised in federal court. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state process, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights" (emphasis in original)); *Huffman*, 420 U.S. at 610-11 (rejecting assumption that state court judges "will not be faithful to their constitutional responsibilities"). Plaintiffs certainly have an adequate opportunity to raise their constitutional claims in state court by, for example, asserting an affirmative defense, filing a counterclaim, and/or noting an appeal in their pending state cases. *See Musko v. McClandless*, Civ. A. No. 94-3938, 1995 WL 262520, at *4 (E.D.Pa. May 1, 1995) (finding the third *Middlesex* condition satisfied where the plaintiff had "filed a counterclaim in the state court action which parallels his claims in this case"); *Commonwealth v. Real Property and Improvements at 2338 N. Beechwood Street*, 65 A.3d 1055 (Pa.Cmwlth. 2013) (recognizing that constitutional challenges to civil forfeiture procedure may be raised by affirmative defense in state court and considering due process claims on appeal). Because all three *Middlesex* conditions are satisfied, this case passes the threshold test for *Younger* abstention.

The remaining question is whether any of the three "exceptional circumstances" identified by the Supreme Court is presented. *See Sprint*, 134 S.Ct. at 594 ("*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further"). The state proceedings in the instant case fall squarely within the category of civil enforcement proceedings. As one court recently explained:

> The threshold question in determining whether an action qualifies as a "civil enforcement proceeding" for *Younger* purposes is "that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 593). To determine whether a proceeding is "quasi-criminal" the Court must examine whether: "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *Sprint*, 134 S.Ct. at 592; *see also ACRA Turf Club*, 748 F.3d at 138.

*NCAA v. Corbett*, --- F.Supp.2d ----, ----, 2014 WL 2619288, at *6 (M.D.Pa. June 12, 2014).

Here, these questions must be answered in the affirmative. The plaintiffs' state court civil forfeiture proceedings were brought by the Commonwealth of Pennsylvania; the proceedings were initiated to sanction wrongful conduct; and the civil actions are closely related to criminal cases. *See 2338 N. Beechwood Street*, 65 A.3d at 1063 ("In concluding that forfeiture proceedings are quasi-criminal punitive proceedings, [*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 61 A.3d 1048 (Pa.Cmwlth. 2012)[3]] relied upon

---

[3] On July 16, 2013, the Supreme Court of Pennsylvania granted a petition for allowance of appeal in *605 University Drive* to consider two questions:

> (1) Whether a plurality of the Commonwealth Court erred in holding that the Controlled Substances Forfeiture Act mandates that a hearing [b]e held before property is forfeited and that forfeiture may never be obtained by summary judgment.

cases by the United States Supreme Court holding that the Fourth and Fifth Amendment protections in criminal cases are applicable in forfeiture proceedings"); *Commonwealth v. Allen*, 59 A.3d 677 (Pa.Cmwlth. 2012) ("forfeiture proceedings are . . . civil in form, but quasi-criminal in character" (internal marks and citation omitted)); *Commonwealth v. Perez*, 941 A.2d 778, 780 (Pa.Cmwlth. 2008) (civil forfeitures "are the *in rem* consequence for wrongdoing prescribed by statute" and property is not forfeited "as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature"). Because civil forfeiture is, by definition, quasi-criminal in nature, the instant case plainly relates to ongoing state civil enforcement proceedings, one of the three "exceptional circumstances" for which the Supreme Court has determined *Younger* abstention is warranted.

Even where, as here, an exceptional circumstance is presented and the *Middlesex* conditions are satisfied, courts have sometimes found abstention inappropriate if dismissal of the federal case would result in great, immediate, and irreparable injury to the federal plaintiffs, *see*

---

> (2) Whether a plurality of the Commonwealth Court erred by finding the Rules of Civil Procedure inapplicable to proceedings under the Controlled Substances Forfeiture Act on the theory that the Forfeiture Act provides the "complete procedure" governing forfeiture actions.

*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 620 Pa. 584 (2013). Those questions have since been fully briefed and argued. Insofar as the forthcoming decision of the Pennsylvania Supreme Court will have bearing on various aspects of the claims raised by Plaintiffs, the *Pullman* and *Colorado River* abstention doctrines are also implicated. *See Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (*Pullman* abstention is appropriate where there are "(1) [u]ncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) [s]tate law issues amenable to a state court interpretation [] would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; [and] (3) [a] federal court's erroneous construction of state law would be disruptive of important state policies."); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308-09 (3d Cir. 2009) (setting forth the relevant analysis under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

16

*Kugler v. Helfant*, 421 U.S. 117, 123 (1975), or if declining to abstain would not "in any way impair the ability of the state courts of Pennsylvania to adjudicate anything that is currently before them," *Marks v. Stinson*, 19 F.3d 873, 884 (3d Cir. 1994).  Neither of those concerns is implicated here.  There is no apparent reason why requiring Plaintiffs to bring their claims in state court, rather than federal court, would result in any injury to them – let alone great, immediate, and irreparable injury.  Indeed, providing state appellate courts an opportunity to determine the propriety of the procedures applied in the Court of Common Pleas would seem to be the most efficient way of bringing about the wholesale changes in state civil forfeiture proceedings that Plaintiffs purportedly seek.  Providing guidance to lower courts and correcting their errors is, after all, a primary function of state appellate courts.  Moreover, as Plaintiffs' complaint attacks virtually every aspect of the civil forfeiture process presently in place in the City of Philadelphia, and seeks a return of all property subject to forfeiture, it is inconceivable how a ruling in the instant case could possibly *not* impair the state court's ability to adjudicate the ongoing civil cases.

In sum, this is precisely the type of case to which the *Younger* abstention doctrine was intended to apply.  Accordingly, Plaintiffs' complaint should be dismissed on abstention grounds.

## IV. Conclusion

For the foregoing reasons, Defendants R. Seth Williams and the Philadelphia District Attorney's Office respectfully request that the court grant their motion to dismiss Plaintiffs' complaint.

/s/ *Bryan C. Hughes*
BRYAN C. HUGHES
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
(215) 686-5688
bryan.hughes@phila.gov

Counsel for Defendants R. Seth Williams
and Philadelphia District Attorney's Office