IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                  |   |                              |
|----------------------------------|---|------------------------------|
| CHRISTOS SOUROVELIS, et al.      | : |                              |
|                                  | : |                              |
| v.                               | : | Civil Action No. 14-4687-ER  |
|                                  | : |                              |
| CITY OF PHILADELPHIA, et al.     | : |                              |
|                                  | : |                              |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

Defendants R. Seth Williams and the Philadelphia District Attorney's Office (together, "the Commonwealth") respectfully submit this memorandum in opposition to the motion for preliminary injunction filed by Plaintiffs Christos Sourovelis, Doila Welch, and Norys Hernandez. (ECF No. 20).  For the reasons set forth below, Plaintiffs' motion should be denied.

## BACKGROUND

On August 11, 2014, Plaintiffs, on behalf of themselves and a putative class of similarly situated others, commenced this action pursuant to 42 U.S.C. § 1983 against the Commonwealth, among other defendants.   Plaintiffs allege that various policies and practices of the Commonwealth with respect to its pursuit – in accordance with state statutory and (apparently) common law[1] – of the forfeiture of property connected to criminal conduct violate their respective rights to due process of law.

---

[1] Although the named plaintiffs are owners of real property that is currently the subject of ongoing civil forfeiture actions in the Court of Common Pleas of Philadelphia County, they purport to represent a larger class of "[a]ll persons who own property [*i.e.*, both real and personal] that is or will be the subject of a civil-forfeiture petition[.]"  (ECF No. 3 ¶ 3).  To the extent their complaint includes allegations pertaining to the forfeiture of personal property (*see* ECF No. 1 ¶ II.A.), the mechanism of common law forfeiture may also be implicated.  *See 2010*

As relevant for present purposes, Plaintiffs assert in the first count of their complaint that the Commonwealth has "a policy and practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g) to seize real property without providing owners or residents of the property notice or a meaningful opportunity to be heard." (ECF No. 1 ¶ 194).  Plaintiffs also take issue with the Commonwealth's "policy and practice of obtaining *ex parte* orders to seize and seal real property without . . . [a showing] of exigent circumstances that would justify sealing the real property." (*Id*. at ¶ 195).  "As a direct and proximate result of [these] actions," they allege, "Plaintiffs Sourovelis and Hernandez and the members of the putative class have suffered [and the class members will continue to suffer] irreparable injury to their constitutional rights, including but not limited to being forcibly evicted from their homes and having their real property seized." (*Id*. at ¶ 197).  As relief, Plaintiffs seek a declaration that the Commonwealth's "policy and practice of seizing real property without providing property owners notice or an opportunity to be heard" violates the Due Process Clause of the Fourteenth Amendment and that the state statutory provisions upon which the Commonwealth relies in seeking *ex parte* orders are facially unconstitutional where real property is involved. (*Id*. at 42-43).[2]

---

*Buick Enclave VIN # GALRBED8J122029*, --- A.3d ----, 2014 WL 4437274 (Pa.Cmwlth. Sept. 10, 2014) (describing the distinction between civil and common law forfeiture).

[2] Plaintiffs label these as "as-applied" constitutional challenge, but they are not.  As one court explained:

> The difference between a facial challenge and an as-applied challenge lies in the scope of the constitutional inquiry. Under a facial challenge, a plaintiff may sustain its burden in one of two ways. First, a plaintiff asserting a facial challenge "may demonstrate 'that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt*., 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (alterations omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010)). Second,

On September 8, 2014, Plaintiffs filed the pending motion for preliminary injunction as to the first count of their complaint.  Relying principally on *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), they argue that the Commonwealth's "practice of routinely applying for and obtaining 'seize and seal' orders for real property, without providing owners notice and an opportunity to be heard, flouts this binding Supreme Court precedent."  (ECF No. 20 ¶ 4).  According to Plaintiffs, "the severe deprivation caused by the ex parte seizure of [their] homes and other real property constitutes irreparable harm, as does the violation of their constitutional rights."  (*Id.* at ¶ 5).  They further contend that "the balance of equities favors

---

> a plaintiff asserting a facial challenge may also prevail if he or she "show[s] that the law is 'overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Id.* (alterations omitted) (quoting *Stevens*, 130 S.Ct. at 1587). Under either scenario, a court considering a facial challenge is to assess the constitutionality of the challenged law "without regard to its impact on the plaintiff asserting the facial challenge." [*Educ. Media Co. at Virginia Tech, Inc. v.*] *Swecker*, 602 F.3d [583,] 588 [(4th Cir. 2010)]. In contrast, an as-applied challenge is "based on a developed factual record and the application of a statute to a specific person[.]" *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc).

*Educ. Media Co. at Virginia Tech, Inc. v. Insley*, 731 F.3d 291, 298 n. 5 (4th Cir. 2013); *accord Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014).

Here, Plaintiffs assert, in relevant part, that "42 Pa. Const. Stat. § 6802(f) and (g) are unconstitutional as applied to real property to the extent these provisions authorize *ex parte* seizure of real property, without notice or a pre-deprivation opportunity to contest the seizure[.]" (ECF No. 1, at 43).  Thus, they appear to present a facial challenge that "the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Insley*, 731 F.3d at 298 n. 5 (internal marks and citations omitted).  Accordingly, Plaintiffs must be held to the "particularly demanding standard" applicable to facial constitutional challenges, which have been characterized as the "most difficult challenge[s] to mount successfully." *Heffner*, 745 F.3d at 65 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Plaintiffs, as Defendants will suffer no irreparable harm if their unconstitutional 'seize and seal' policy is enjoined" (*id.* at ¶ 6) and that preliminary injunctive relief "would also be in the public interest, as it would protect the constitutional rights of hundreds of Philadelphia property owners" (*id.* at ¶ 7).

Plaintiffs are wrong on each count.  They have not made, and cannot make, the requisite showing for preliminary injunctive relief.  Accordingly, their motion should be denied.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. National Resources Defense Council*, 555 U.S. 7, 24 (2008).  Rather, the moving party is required to "establish" four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of the equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter*, 555 U.S. at 20; *accord Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006).  The movant must make a clear showing as to each element, and the evidence, on the whole, must demonstrate that immediate relief is necessary to preserve the status quo pending an ultimate determination on the merits. *See id.* ("applicant must demonstrate that in the absence of a preliminary injunction, [he or she] is likely to suffer irreparable harm before a decision on the merits can be rendered" (internal marks and citation omitted)); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("preliminary injunction . . . should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion" (emphasis in original; internal marks and citation removed)); *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."); *LaChemise Lacoste v. General Mills, Inc.*, 487 F.2d 312, 314 (3d

Cir. 1973) (affirming denial of relief where "[a] meaningful preliminary injunction . . . would necessarily have gone beyond the maintenance of the status quo."). Moreover, because injunctive relief is quintessentially equitable in nature, the movant must also demonstrate that available legal remedies are inadequate to redress the threatened harm. *See Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 666 F.3d 87, 95 (3d Cir. 2011) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.")).

## ARGUMENT

Because Plaintiffs cannot make a clear showing as to any of the four required elements, their motion for preliminary injunction must fail. Most obviously, they cannot establish that irreparable harm will inure to Mr. Sourovelis and Ms. Hernandez – the only two plaintiffs, prior to class certification, whose interests are at stake, according to the first count of the complaint – if relief is not immediately granted. Plaintiffs' failure in this regard should be dispositive; the court should not consider the remaining elements. In any event, the motion is also deficient because Plaintiffs have not shown that available legal remedies are inadequate, nor could they. Indeed, the harm allegedly suffered by the relevant named plaintiffs is fully capable of redress by a final judgment awarding compensatory damages. Plaintiffs are also unlikely to prevail on the merits of their claim, which essentially faults the Commonwealth for petitioning for relief that the state court allegedly granted based on insufficient evidence. Finally, because Plaintiffs cannot establish irreparable harm and are unlikely to succeed on the merits of their claim, the balance of equities does not favor preliminary injunctive relief and the public interest would not be served by the issuance of an order in contravention of well-settled legal principles.

I.  **PLAINTIFFS HAVE NOT MADE, AND CANNOT MAKE, A CLEAR SHOWING THAT THEY ARE IMMINENTLY THREATENED WITH IRREPARABLE HARM.**

To prevail on their motion, Plaintiffs must make a "clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill*, 809 F.2d 223, 226 (3d Cir. 1987). As the Supreme Court of the United States has explained:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief might be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974) (emphasis in original) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). The injury must also be imminent – *i.e.*, relief is not available for harm that has already been inflicted – and there must be a high probability that it will occur prior to an ultimate determination on the merits – *i.e.*, the injury cannot be speculative. *See S.I. Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985) ("The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction is to be issued"); *Porrata v. Pa. Interscholastic Athletic Ass'n, Inc.*, --- F.Supp.2d ----, ----, 2014 WL 4055947, at *36 (E.D.Pa. Aug. 14, 2014) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) ("The risk of irreparable harm [also] must not be speculative" (alteration in original; internal marks removed)); *Byrd v. Aaron's, Inc.*, C.A. No. 11-101Erie, 2011 WL 2672009, at *8 (W.D.Pa. June 16, 2011) (denying relief where "Plaintiffs have allegedly suffered harm in the past[, but] they are not suffering any harm at the present time or the foreseeable future" (emphasis removed)).

In the instant case, there is initially a question as to whom a clear showing of imminent and irreparable harm must be made.  In their supporting memorandum, Plaintiffs argue that the Commonwealth's "ex parte seize and seal program has violated and continues to violate the constitutional rights of Named Plaintiffs Sourovelis, Hernandez, Welch, and other Philadelphians whose homes are threatened with civil forfeiture."  (ECF No. 21, at 18).[3]  Presumably, their inclusion of Ms. Welch in this argument was inadvertent, as their motion relates only to the first count of their complaint (*id*. at 4 n. 1), which does not allege that her rights have been violated (*see* ECF No. 1 ¶ 197 ("Plaintiffs Sourovelis and Hernandez and the members of the putative class have suffered irreparable injury to their constitutional rights")).  Indeed, the substantive sections of their irreparable harm argument apply only to Mr. Sourovelis, Ms. Hernandez, and the putative class members (ECF No. 21, at 18-19), as do the declarations and exhibits submitted in support (ECF Nos. 22, 23).  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990) (a preliminary injunction may issue "[o]nly if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief").  Because count one of the complaint does not allege a violation as to Ms. Welch and Plaintiffs have produced no evidence attesting to a threat of irreparable harm to that plaintiff, her interests should not be considered for purposes of this motion.[4]

Nor should the interests of the putative class members be considered prior to class certification.  The United States Court of Appeals for the Third Circuit addressed this issue in

---

[3] For the sake of consistency, references to page numbers in Plaintiffs' memorandum and exhibits are to those designated by the court's electronic case filing system.

[4] To the extent the court finds otherwise, the Declaration of Assistant District Attorney James Dellafiora, attached hereto as Exhibit 3, establishes that Ms. Welch is not imminently threatened with irreparable harm pending further litigation.  Although a sealing order was issued with respect to her property, it was never executed, nor is execution of the order imminently threatened.

*Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000).  In that case, the plaintiffs filed a motion for preliminary injunction prior to class certification and, like instant plaintiffs, argued that "they should be treated as a class pending the court's determination on that issue."  *Adams*, 204 F.3d at 490.  The Third Circuit "disagree[d]":

> We see no reason why the pendency of a class action certification petition should alter our [preliminary injunction] analysis.  We have no basis on which to judge the viability of the class certification request, which we understand to be contested.  Merely petitioning for class certification cannot provide plaintiffs the right to be treated collectively.  Furthermore, a class determination focuses on similarities between the legal claims of the parties, see Fed.R.Civ.P. 23(a), while a preliminary injunction determination, by requiring a showing of irreparable harm, depends in many cases (including this one) on circumstances entirely independent of legal rights: the particular resources available to each member of the class to weather hardships pending trial.

*Id.* at 490-91.  The court explained that "resting a preliminary injunction for many on the testimony of a few . . . is not inappropriate so long as the plaintiffs lay an adequate foundation from which one could draw inferences that the testifying plaintiffs are similarly situated – in terms of irreparable harm – to all the other plaintiffs."  *Id.* at 487.  It found that no such inference arose in that case, however, because "the plaintiffs only presented evidence from which a court could infer that some of them were threatened with harm" and "proof by association in a law suit, or proof by 'common sense,' will [not] suffice."  *Id.* at 488.

Here, an adequate foundation could be laid for the putative class members only if the evidence showed that Mr. Sourovelis and Ms. Hernandez are imminently threatened with irreparable harm and that the putative class members are similarly situated in that regard.  *See Byrd*, 2011 WL 2672009, at *8 ("Generally, injunctive relief is only available to those plaintiffs who have been identified and who have established an actual right to relief" (citing *Adams*, 204 F.3d at 487); finding that the named plaintiffs were "not similarly situated to the members of the

putative class in terms of irreparable harm" because the alleged injury to them had already occurred); *see also Mandrigues v. World Savings, Inc.*, No. C 07-4497 JF (RS), 2009 WL 160213, at *3 (N.D.Cal. Jan. 20, 2009) ("where injunctive relief is sought on a class-wide basis, the moving party must prove that (1) the named plaintiffs face imminent, irreparable harm, and (2) there is reason to believe that the putative class members face the same harm"). Because no such showing has been made or could be made as to the relevant named plaintiffs, the interests of the putative class members are irrelevant.[5]

Initially, Plaintiffs cannot establish any threat of harm – much less an imminent threat of irreparable harm – because neither Mr. Sourovelis nor Ms. Hernandez has submitted a supporting affidavit or declaration. Instead, Plaintiffs present the declaration of Mr. Sourovelis's wife, Markela Sourovelis, in support of her husband's motion (ECF No. 23), and attach to the declaration of their counsel, Darpana Sheth, documents from the state court civil forfeiture action against Ms. Hernandez's property (ECF No. 22). In addressing the irreparable harm element in their memorandum, Plaintiffs argue that "Ms. Hernandez and her sister Sonia Gonzalez have been unable, for three months, to enter the house that they own" and "[t]he Sourovelises were thrown out of their home for over a week and able to return only by barring their youngest son from the home – even though they desperately want him there to ensure he stays on the straight and narrow." (ECF No. 21, at 18). As to the named plaintiffs themselves, however, these

---

[5] At base, Plaintiffs' argument appears to be that homeowners who might, in the future, be displaced by *ex parte* "seize and seal" orders, based on the criminal conduct of another resident of which they were unaware, are threatened with immediate, irreparable harm. In practical terms, they represent an exceedingly narrow slice of an overbroad proposed class that includes, for example, owners of real property and owners of personal property threatened with forfeiture, real property owners who reside at the property and those who do not, and owners who had no knowledge of the underlying criminal conduct and those who are culpable or complicit. Because the potential threat of harm posed in each case is highly dependent on a number of factual variables, a preliminary injunction could not be appropriate as to all putative class members.

arguments are unsupported by any evidence.  The court has discretion in determining whether to hold a hearing on a motion for preliminary injunction; indeed, it is "not obliged to [do so] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm."  *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (1990).  In the absence of any evidence that a named plaintiff is imminently threatened with irreparable harm, a "colorable factual basis" has not been presented.  For that reason alone, Plaintiffs' motion may be summarily denied.

Even if Mrs. Sourovelis could attest to an "immediate irreparable injury" threatened to her husband, she has failed to do so.  Rather, she simply provides a recitation of relevant events to date, including the execution by police of a search and seizure warrant related to her son's role in an alleged heroin distribution ring[6]; police execution of a sealing order, which temporarily resulted in her family being displaced; and the process, approximately one week later, by which the home was unsealed and the family was permitted to return.  According to the first count of the complaint, the irreparable harm threatened by the Commonwealth's alleged policy and practice of moving *ex parte* for sealing orders "includ[es] but [is] not limited to [Mr. Sourovelis, Ms. Hernandez, and the putative class members] being forcibly evicted from their homes and

---

[6] In an apparent attempt to portray the Sourovelis son as a misguided minor, Plaintiffs repeatedly refer to him by his initials, "Y.S.," and set forth irrelevant facts in their complaint, such as that he "is an honors student and at the time of his arrest was preparing to attend Temple University." (ECF No. 1 ¶ 110).  While an arrest report attached to Mrs. Sourovelis' declaration reveals his full name – Yianni Sourovelis – his date of birth is redacted. (ECF No. 23-3).  In the declaration itself, Mrs. Sourovelis asserts that her "youngest son (age 22)" resided with her "until recently" (ECF No. 23 ¶ 2), but the date of birth reflected in the unredacted police report indicates that Yianni Sourovelis was twenty-three-years-old on the date of his arrest (*see* Declaration of Assistant District Attorney Daren Waite, attached hereto as Exhibit 1).  Presumably, the reference to him being "an honors student" relates to his academic achievements in high school, which in the normal course would have been approximately five years ago.  To the extent he is "preparing to attend Temple University," it appears that he is doing so years after completion of his high school education and Plaintiffs provide no indication as to how he has occupied his time in the interim.

having their real property seized." (ECF No. 1 ¶ 197). Mrs. Sourovelis's declaration does not establish an imminent threat that her family will be evicted from their home or that their property will be seized. To the contrary, the alleged harm to the Sourovelis family has already occurred, as Plaintiffs appear to acknowledge in their memorandum. (*See* ECF No. 21, at 18). As noted, preliminary injunctive relief is not available to remedy harm occurring exclusively in the past. *See, e.g., Heisley*, 753 F.2d at 1264.

To the extent Mrs. Sourovelis suggests that a condition in an unsealing agreement prohibiting her adult son, Yianni Sourovelis, from residing at the home constitutes irreparable harm, she does not articulate the nature of the harm or how it could be irreparable. While she and her husband apparently "prefer that [he] be allowed back into [their] home" (ECF No. 23 ¶ 16), she reports that, in his present living arrangement, he is making excellent progress in his recovery from "a substantial addiction to heroin" (ECF No. 23-9) – a fact of which his parents were allegedly unaware while he resided with them.[7] Plaintiffs present no evidence suggesting that this arrangement is untenable for the near future, much less that irreparable harm will somehow befall Mr. Sourovelis pending the outcome of this litigation if his son is not permitted to return. In any event, Plaintiffs conspicuously fail to mention that Assistant District Attorney Daren Waite, who is assigned to the forfeiture case against the Sourovelis property, drafted a proposed agreement that would permit Yianni Sourovelis to reside in the home during the pendency of the forfeiture action. (*See* Exhibit 1). On August 12, 2014, the agreement was provided to Mr. Sourovelis's counsel, who appeared in state court with the Sourovelises on that

---

[7] It bears mention that police executing the search and seizure warrant at the Sourovelis home believed that Mrs. Sourovelis attempted to delay their entry while her son locked himself inside an upstairs bathroom and flushed heroin down the toilet. (ECF No. 23-3, at 7-8). While it may be the case that Mrs. Sourovelis was ignorant of her son's drug activity, there is an alternative view suggesting otherwise.

date, and promptly advised that he would not sign it.  (*Id*.).  Nevertheless, insofar as his son's exclusion from the home constitutes irreparable harm, Mr. Sourovelis has an available remedy with the stroke of a pen.

While Mrs. Sourovelis at least arguably sets forth some evidence of harm threatened to her husband, there is no evidence whatsoever that Ms. Hernandez faces such a threat.  It is true, as Plaintiffs assert in their memorandum, that a home co-owned by Ms. Hernandez and her sister has been sealed since June 3, 2014, but they fail to mention that Ms. Hernandez does not reside in that home and was not displaced by its sealing.  (*See* Declaration of Assistant District Attorney Steven Agami, attached hereto as Exhibit 2).  Plaintiffs also fail to mention that Assistant District Attorney Steven Agami, who is assigned to the civil forfeiture action against Ms. Hernandez' property, agreed to draft an unsealing order on August 12, 2014, and subsequently provided that order to Ms. Hernandez.  (*Id*.).  The parties have since agreed in principle to a modified unsealing agreement, but it has not yet been signed.  (*Id*.).  Like Mr. Sourovelis, Ms. Hernandez has a readily available remedy for any threat of harm associated with the sealing order.

Because Plaintiffs have not made, and cannot make, a clear showing that either Mr. Sourovelis or Ms. Hernandez is imminently threatened with irreparable harm, their motion cannot prevail.  *See Adams*, 204 F.3d at 484.  Indeed, the court should not address the remaining elements of the preliminary injunction analysis and may deny the motion without a hearing.  *See, e.g., Miller v. Hoffman*, No. 97-7987, 1998 WL 150970, at *4 (E.D.Pa. Mar. 26, 1998) (denying motion without a hearing where "the plaintiff clearly cannot show irreparable harm").

## II.   PLAINTIFFS HAVE NOT SHOWN, AND CANNOT SHOW, THAT AVAILABLE LEGAL REMEDIES ARE INADEQUATE

Inherent in the equitable nature of injunctive relief is a requirement that legal remedies are somehow inadequate.  *See Grane Healthcare Co.*, 666 F.3d at 95.  In the preliminary injunction analysis, the moving party must make a showing in this regard to establish irreparable injury.  *See Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) (quoting *A.O. Smith Corp. v. Federal Trade Comm'n*, 530 F.2d 515, 525 (3d Cir. 1976) ("[i]rreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate" (internal marks and citation omitted))); *McGraw-Hill*, 809 F.2d at 226 ("The requisite feared injury or harm . . . must be of a peculiar nature, so that compensation in money cannot atone for it." (internal marks and citation omitted)).  Where "[t]he plaintiffs' remedy, should they succeed on the merits, will consist of restitution and/or monetary damages," preliminary injunctive relief is not available; in fact, the Third Circuit has "never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."  *Hohe*, 868 F.2d at 73 (quoting *In re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982) (internal marks omitted)).

Here, Plaintiffs have filed suit pursuant to § 1983.  As the Third Circuit has explained: "[T]he standard remedy for violation of 42 U.S.C. § 1983 is compensatory damages.  'To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages.'"  *Hohe*, 868 F.2d at 73 n. 6 (quoting *Carey v. Piphus*, 435 U.S. 247, 256 (1978)).  With respect to count one, Plaintiffs appear to seek declaratory relief exclusively, but it is unclear why their injuries – presumably, the temporary displacement from their homes *in the past* – are incapable of redress by money damages.  In fact,

courts considering analogous claims in the context of the federal civil forfeiture scheme have generally found that they are. *See United States v. Bowman*, 341 F.3d 1228, 1234 (11th Cir. 2003) ("the remedy for an illegal seizure where . . . the government fails to provide pre-deprivation notice and hearing, but the property is found to be subject to forfeiture after the process due has been afforded is return of rents or lost profits during the period of illegal seizure" (internal marks and citation omitted)); *United States v. Real Property Located at 1184 Drycreek Road, Granville, Ohio 43023*, 174 F.3d 720, 728 (6th Cir. 1999) ("The majority of circuits that have addressed this issue . . . have held that a *Good* violation does not invalidate the forfeiture; instead, the government must pay the claimant any damages, such as lost profits or rents, that accrued during the period of the illegal seizure"). Plaintiffs do not clearly articulate – much less demonstrate – the harm that is likely to inure to them if preliminary injunctive relief is not granted. To the extent they seek to prevent the Commonwealth from applying for, and directing the execution of, *ex parte* sealing orders related to real property in the future, such relief would appear to be sought on behalf of the putative class members, whose interests are not relevant at this juncture. As to the named plaintiffs, they could be made whole by a judgment awarding compensatory damages at the conclusion of the case. Because an adequate legal remedy is available to them, preliminary injunctive relief is not.

## III.  PLAINTIFFS ARE UNLIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIM.

Plaintiffs' argument on the merits relies on *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993), for the proposition that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." Mr. Sourovelis and Ms. Hernandez contend that no exigent circumstances justified the seizure of their homes on

14

an *ex parte* basis; thus, under the rule of *James Daniel Good*, their constitutional rights were violated when their homes were temporarily seized and sealed, pursuant to court order, without prior notice and a hearing.

As straightforward as that claim seems, it is truly remarkable in several respects. First, there is the fact that Plaintiffs raise it in federal court while their state court civil forfeiture proceedings are ongoing. Although their constitutional arguments could be raised in state court – by counterclaims or appeals, for example – Plaintiffs have inexplicably failed to avail themselves of such avenues of relief. Instead, they invite this court to opine as to the propriety of the "seize and seal" orders issued by the Court of Common Pleas of Philadelphia County. To be clear, Plaintiffs acknowledge that an *ex parte* procedure is authorized by statute, and the legal standard for the issuance of such relief is well-established in Pennsylvania (and comports with *James Daniel Good*). In fact, they do not present a meaningful constitutional challenge to the procedure set forth by statute; rather, they appear to argue that the state court did not (in the cases of Mr. Sourovelis and Ms. Hernandez), and routinely does not (in the cases of the putative class members), follow that procedure. Nevertheless, they fault the Commonwealth's "practice of routinely *applying for* and *obtaining* 'seize and seal' orders" and seek an order "enjoining" it from doing so in the future. (ECF No. 20 ¶ 4 (emphasis added)).

To the extent that count one of the complaint seeks relief for injuries caused by state court orders, this court lacks jurisdiction to consider it. Insofar as Plaintiffs ask a federal court to enjoin the Philadelphia District Attorney's Office from "applying for and obtaining" relief specifically authorized by statute, the court should abstain, as principles of comity and federalism militate strongly in favor of resolution in state court. Because count one should be dismissed, Plaintiffs are unlikely to prevail on the merits.

A.     The *Rooker-Feldman* Doctrine

Pursuant to § 6801(a)(6)(i)(C) of Pennsylvania's Controlled Substances Forfeiture Act, the Commonwealth may seek the forfeiture of "[r]eal property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device, and Cosmetic Act, including structures or improvements thereon[.]"  42 Pa.C.S. § 6801(a)(6)(i)(C).  Such property "may be seized" either "upon process issued by any court of common pleas having jurisdiction over the property" or "without process" if, *inter alia*, "there is probable cause to believe that the property has been used or is intended to be used in violation of [the Drug Act]."  *Id*. at § 6801(b).

A civil forfeiture action is an *in rem* proceeding commenced upon the filing of a petition "in the court of common pleas of the judicial district where the property is located, verified by oath or affirmation of an officer or citizen[.]"  *Id*. at § 6802(a).  A copy of the petition must be "served personally or by certified mail on the owner or upon the person or persons in possession at the time of the seizure," along with an endorsed notice advising the claimant that he or she is "required to file an answer to this petition, setting forth [his or her] title in, and right to possession of, said property within 30 days[.]"  *Id*. at § 6802(b).  Where "seizure without process occurs, . . . proceedings for the issuance thereof shall be instituted forthwith."  *Id*. at § 6802(c).  All property seized "is deemed to be in the custody of the law enforcement authority subject only to the orders and decrees of the court of common pleas having jurisdiction over the forfeiture proceedings and of the district attorney or the Attorney General," and "[w]hen property is seized under this chapter, the law enforcement authority shall place the property under seal," *id*. at § 6802(d).

As particularly relevant here, § 6802(f) authorizes the court to "enter a restraining order or injunction . . . or take any other action to preserve the availability of property" for forfeiture either:

> (1) upon the filing of an information or an indictment charging an offense in this Commonwealth for which criminal forfeiture may be ordered under this chapter and alleging that the property with respect to which the order is sought would be subject to forfeiture; or
>
> (2) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and an opportunity for a hearing, the court determines that:
>
> > (i) there is a substantial probability that the Commonwealth will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for forfeiture; and
> >
> > (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

Pursuant to § 6802(g), a temporary restraining order "may be entered upon application of the Commonwealth without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the Commonwealth demonstrates that there is probable cause to believe that the property with respect to which the order sought would be subject to forfeiture under this chapter and that provision of notice will jeopardize the availability of the property for forfeiture." Such an order expires "not more than ten days after the date on which it is entered" and a "hearing requested concerning an order entered under this subsection shall be held at the earliest possible time and prior to the expiration of the temporary order." *Id.*

While Pennsylvania case law regarding constitutional challenges to civil forfeiture procedure is relatively sparse, courts have made clear that "[n]otice and an opportunity to be heard are procedural safeguards integral to forfeiture proceedings, and must be satisfied." *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093, 1095 (Pa.Cmwlth. 2004) (internal citation omitted). Indeed, they have recognized that "[p]rocedural due process requires that the deprivation of life, liberty, or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* This is entirely consistent with the rule set forth in *James Daniel Good Real Property*, 510 U.S. at 62, cited by Plaintiffs.

Here, the evidence shows that, upon the filing of a civil forfeiture action against the Sourovelis property, Assistant District Attorney Daren White ("ADA Waite") submitted to the Court of Common Pleas of Philadelphia County an "application to seize and seal premises pursuant to 42 Pa.C.S. §§ 6801, 6802." (ECF No. 23-4, at 1). Specifically, he alleged, "[t]he Commonwealth is authorized to seize and seal property subject to forfeiture pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f)(g)." (*Id.* at ¶ 2). In support of the application, he set forth the circumstances of the police encounter with Mrs. Sourovelis during execution of the search and seizure warrant – *i.e.*, that she initially "refused to open the door," "did not immediately restrain [her] Pit Bull dog," and "tri[e]d to slam the door on the officers" (*id.* at ¶¶ 6, 8) – and the subsequent discovery of Yianni Sourovelis locked inside a bathroom, flushing heroin down the toilet (*id.* at ¶¶ 10-16). Additionally citing that "numerous narcotics and drug related paraphernalia" was recovered from the home incident to the arrest, ADA Waite requested that the court enter an attached sealing order.

In the case of Ms. Hernandez, Assistant District Attorney Steven Agami ("ADA Agami") filed a substantively similar application to seize and seal the property. (ECF No. 22-4). Like

ADA Waite, he asserted that an order seizing and sealing the property was authorized "pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f), (g)" (*id.* at ¶ 2), and added that such relief was necessary to "protect[] the health and safety of the community by immediately preventing further narcotics activity from occurring within"; "[t]o avoid a prolonged confrontation"; "to preserve the ability of the property for the forfeiture"; and "to minimize the risk of injury to all parties" (*id.* at ¶ 3).

While it is not clear, based on the present record, whether any further showing of exigent circumstances was made in either case, it is clear that a judge of the Court of Common Pleas of Philadelphia County found, in both cases, that, "pursuant to 42 Pa.C.S. § 6802(f), (g), the Commonwealth [was] authorized to enter and seize the premises[.]"  (ECF No. 22-6; *see also* ECF No. 23-5).  Thus, the court implicitly found that ADA Waite and ADA Agami made the required showings for the issuance of such orders.

To the extent Plaintiffs argue that the court should have found otherwise, their claims are barred under the *Rooker-Feldman* doctrine.   As the Third Circuit explained in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006):

> The *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication.   The doctrine derives from the Supreme Court's opinions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 . . . (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483-84 . . . (1983).   In *Exxon Mobil* [*Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)], the Court, however, emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  544 U.S. at 284[.]

The critical point here is that the relevant plaintiffs' injuries – *i.e.*, execution of the "seize and seal" orders – resulted not from the Commonwealth's applications for *ex parte* relief, but from the state court granting those applications.  Thus, Plaintiffs are "complaining of injuries caused by state-court [orders] rendered before the district court proceedings commenced" and "invit[e] district court review and rejection of those [orders]."  *Exxon Mobil*, 544 U.S. at 284. This is precisely what the *Rooker-Feldman* doctrine aims to prevent.  *See Barren v. Allegheny County, Pa.*, Civ. No. 14-692, 2014 WL 4384598, at *3 (W.D.Pa. Sept. 4, 2014) ("What Plaintiff seeks in this civil action is to have the state court forfeiture proceeding declared null and void. . . . Rooker-Feldman squarely precludes this Court from doing so"); *Briar Meadows Developments, Inc. v. South Centre Township Bd. of Supervisors*, No. 10-CV-1012, 2010 WL 4024775, at *5 (M.D.Pa. Oct. 13, 2010) (finding, under *Rooker-Feldman*, "[t]his Court simply lacks subject matter jurisdiction to declare that the state court forfeiture proceedings were void"); *In re Wagner*, No. 04-18091, 2004 WL 5856048, at *2 (E.D.Pa. Dec. 15, 2004) (overruling objection to magistrate judge report and recommendation "because the Rooker-Feldman doctrine does indeed bar Plaintiff's Complaint as to the claimed illegality of the state court forfeiture proceedings").  Accordingly, the court should find that it lacks subject matter jurisdiction to consider the first count of Plaintiffs' complaint.

## B.   *Younger* Abstention

To the extent the court finds that it may exercise jurisdiction over count one, it must nevertheless abstain from doing so in deference to the ongoing state court proceedings.  *See In re Standard & Poor's Rating Agency Litigation*, --- F.Supp.2d ----, ----, 2014 WL 2481906, at *22 (S.D.N.Y. June 3, 2014) (finding *Younger* abstention was "required" where all requirements set forth in *Sprint Communications, Inc. v. Jacobs*, --- U.S. ----, 134 S.Ct. 584 (2013), were

satisfied); *see also Agarwal v. Schuylkill County Tax Claim Bureau*, No. 3:CV-09-1921, 2010 WL 5175121, at *9 (M.D.Pa. Aug. 5, 2010) ("*Younger* abstention is mandatory if these conditions are met" (citing *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005)); *Ralston v. Zats*, No. CIV. A. 94-3723, 1997 WL 560602, at *12 (E.D.Pa. Aug. 26, 1997) ("Unlike *Younger* abstention, *Burford* abstention is not mandatory").  Because the complaint should be dismissed on abstention grounds, Plaintiffs are unlikely to succeed on the merits of count one.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States "held that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances."   *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992).  Thus, *Younger* established that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."  *Sprint*, 134 S.Ct. at 588.  The Court later "extended *Younger* abstention" to two other classes of cases – namely, "particular state civil proceedings that are akin to criminal prosecutions" (*i.e.*, civil enforcement proceedings) and state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts."  *Sprint*, 134 S.Ct. at 588 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)).  These "three 'exceptional' categories . . . define *Younger*'s scope"; district courts are otherwise "obliged to decide cases within the scope of federal jurisdiction."  *Id*. at 588, 591.  Additionally, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court "delineated three requirements which must be satisfied before a federal court may abstain from hearing a case over which it has jurisdiction: (1) there must be pending or

ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994); *see also Sprint*, 134 F.3d at 593 ("[t]he three *Middlesex* conditions . . . [are] *additional* factors appropriately considered by the federal court before invoking *Younger*" (emphasis in original)). If those conditions are satisfied and one of the three "exceptional" categories of cases is presented, "the prospect of undue interference with state proceedings counsels against federal relief," *Sprint*, 134 S.Ct. at 588, and the federal suit must be dismissed, *see Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("[*Younger v. Harris*] contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts").

Here, the *Middlesex* conditions, which are not particularly onerous, are clearly satisfied. *See Sprint*, 134 S.Ct. at 593 (explaining that if the *Middlesex* conditions were dispositive of the *Younger* analysis, it "would extend *Younger* to virtually all parallel state and federal proceedings . . . where a party could identify a plausibly important state interest"). The first condition requires that state proceedings be both ongoing and judicial in nature. *See, e.g., New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 369-70 (1989) ("*NOPSI*"). All of the plaintiffs in this case have civil forfeiture petitions presently pending in the Court of Common Pleas of Philadelphia County; thus, their state cases are clearly ongoing and judicial in nature. The second *Middlesex* condition requires that the pending state proceedings involve important state interests. In assessing this factor, courts look not to the state's interest in the outcome of the case, but rather to the "importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 364-65. Both the Commonwealth of Pennsylvania and the City of Philadelphia have a compelling interest in the procedure by which property related to criminal

conduct is seized and forfeited, and in ensuring that this process comports in all respects with the requirements of the federal and state constitutions. *See O'Neill*, 32 F.3d at 792 ("the City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular"). The third and final *Middlesex* condition is that *Younger* abstention is only appropriate if the state proceedings provide an adequate opportunity to adjudicate the constitutional issues raised in federal court. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state process, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights" (emphasis in original)); *Huffman*, 420 U.S. at 610-11 (rejecting assumption that state court judges "will not be faithful to their constitutional responsibilities"). Plaintiffs certainly have an adequate opportunity to raise their constitutional claims in state court by, for example, asserting an affirmative defense, filing a counterclaim, and/or noting an appeal in their pending state cases. *See Musko v. McClandless*, Civ. A. No. 94-3938, 1995 WL 262520, at *4 (E.D.Pa. May 1, 1995) (finding the third *Middlesex* condition satisfied where the plaintiff had "filed a counterclaim in the state court action which parallels his claims in this case"); *Commonwealth v. Real Property and Improvements at 2338 N. Beechwood Street*, 65 A.3d 1055 (Pa.Cmwlth. 2013) (recognizing that constitutional challenges to civil forfeiture procedure may be raised by affirmative defense in state court and considering due process claims on appeal). Because all three *Middlesex* conditions are satisfied, this case passes the threshold test for *Younger* abstention.

The remaining question is whether any of the three "exceptional circumstances" identified by the Supreme Court is presented. *See Sprint*, 134 S.Ct. at 594 ("*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further"). The state

proceedings in the instant case fall squarely within the category of civil enforcement proceedings. As one court recently explained:

> The threshold question in determining whether an action qualifies as a "civil enforcement proceeding" for *Younger* purposes is "that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 593). To determine whether a proceeding is "quasi-criminal" the Court must examine whether: "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *Sprint*, 134 S.Ct. at 592; *see also ACRA Turf Club*, 748 F.3d at 138.

*NCAA v. Corbett*, --- F.Supp.2d ----, ----, 2014 WL 2619288, at \*6 (M.D.Pa. June 12, 2014).

Here, these questions must be answered in the affirmative. The plaintiffs' state court civil forfeiture proceedings were brought by the Commonwealth of Pennsylvania; the proceedings were initiated, in part, to sanction wrongful conduct; and the civil actions are closely related to criminal cases. *See 2338 N. Beechwood Street*, 65 A.3d at 1063 ("In concluding that forfeiture proceedings are quasi-criminal punitive proceedings, [*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 61 A.3d 1048 (Pa.Cmwlth. 2012)[8]] relied upon cases by the United States Supreme Court holding that the Fourth and Fifth

---

[8] On July 16, 2013, the Supreme Court of Pennsylvania granted a petition for allowance of appeal in *605 University Drive* to consider two questions:

> (1) Whether a plurality of the Commonwealth Court erred in holding that the Controlled Substances Forfeiture Act mandates that a hearing [b]e held before property is forfeited and that forfeiture may never be obtained by summary judgment.

> (2) Whether a plurality of the Commonwealth Court erred by finding the Rules of Civil Procedure inapplicable to proceedings under the Controlled Substances Forfeiture Act on the theory that

Amendment protections in criminal cases are applicable in forfeiture proceedings"); *Commonwealth v. Allen*, 59 A.3d 677 (Pa.Cmwlth. 2012) ("forfeiture proceedings are . . . civil in form, but quasi-criminal in character" (internal marks and citation omitted)); *Commonwealth v. Perez*, 941 A.2d 778, 780 (Pa.Cmwlth. 2008) (civil forfeitures "are the *in rem* consequence for wrongdoing prescribed by statute" and property is not forfeited "as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature"). Because civil forfeiture is, by definition, quasi-criminal in nature, the instant case plainly relates to ongoing state civil enforcement proceedings, one of the three "exceptional circumstances" for which the Supreme Court has determined *Younger* abstention is warranted.

Even where, as here, an exceptional circumstance is presented and the *Middlesex* conditions are satisfied, courts have sometimes found abstention inappropriate if dismissal of the federal case would result in great, immediate, and irreparable injury to the federal plaintiffs, *see Kugler v. Helfant*, 421 U.S. 117, 123 (1975), or if declining to abstain would not "in any way impair the ability of the state courts of Pennsylvania to adjudicate anything that is currently before them," *Marks v. Stinson*, 19 F.3d 873, 884 (3d Cir. 1994). Neither of those concerns is

---

the Forfeiture Act provides the "complete procedure" governing forfeiture actions.

*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 620 Pa. 584 (2013). Those questions have since been fully briefed and argued. Insofar as the forthcoming decision of the Pennsylvania Supreme Court will have bearing on various aspects of the claims raised by Plaintiffs, the *Pullman* and *Colorado River* abstention doctrines are also implicated. *See Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991) (*Pullman* abstention is appropriate where there are "(1) [u]ncertain issues of state law underlying the federal constitutional claims brought in federal court; (2) [s]tate law issues amenable to a state court interpretation [] would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; [and] (3) [a] federal court's erroneous construction of state law would be disruptive of important state policies."); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 308-09 (3d Cir. 2009) (setting forth the relevant analysis under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

implicated here.  There is no apparent reason why requiring Plaintiffs to bring their claims in state court, rather than federal court, would result in any injury to them – let alone great, immediate, and irreparable injury.  Indeed, providing state appellate courts an opportunity to determine the propriety of the procedures applied in the Court of Common Pleas would seem to be the most efficient way of bringing about the wholesale changes in state civil forfeiture proceedings that Plaintiffs purportedly seek.  Providing guidance to lower courts and correcting their errors is, after all, a primary function of state appellate courts.  Moreover, as Plaintiffs' complaint attacks virtually every aspect of the civil forfeiture process presently in place in the City of Philadelphia, and seeks a return of all property subject to forfeiture, it is inconceivable how a ruling in the instant case could possibly *not* impair the state court's ability to adjudicate the ongoing civil cases.

In sum, this is precisely the type of case to which the *Younger* abstention doctrine was intended to apply.  For purposes of the preliminary injunction analysis, Plaintiffs are unlikely to prevail on the merits of count one, which should be dismissed on abstention grounds.

## IV.  THE BALANCE OF EQUITIES DOES NOT FAVOR PRELIMINARY INJUNCTIVE RELIEF, NOR WOULD SUCH RELIEF SERVE A LEGITIMATE PUBLIC INTEREST.

The final two prongs of the preliminary injunction analysis involve balancing the harm that Plaintiffs would suffer without injunctive relief against that which the Commonwealth would suffer if a preliminary injunction were improvidently granted, and assessing whether a preliminary injunction would serve the public interest.  *See Opticians Ass'n of America*, 920 F.2d at 197-98.  Because Plaintiffs have failed to show that Mr. Sourovelis or Ms. Hernandez will suffer any real harm in the absence of a preliminary injunction, the balance of equities cannot tip in their favor.  If such relief were granted, moreover, it would effectively cut off a statutory right

to seek relief in appropriate circumstances.  While the Commonwealth does not dispute that, in the absence of exigent circumstances, *James Daniel Good Real Property* requires notice and a hearing prior to the deprivation of real property, the existing statutory scheme is not inconsistent with that requirement, and the injunction Plaintiffs seek would prevent the Commonwealth from seeking such relief even when exigent circumstances are presented.  That would most certainly impede the Commonwealth in fulfilling its core functions of enforcing the law and protecting the public.  Thus, on balance, the third prong of the analysis does not favor injunctive relief.  In the absence of a clear showing of irreparable harm and a likelihood of success on the merits, moreover, the public interest would best be served by the court's adherence to the well-settled legal standard applicable to motions for preliminary injunction.  As noted, a preliminary injunction constitutes "extraordinary" relief to which a party is entitled only if it meets an exacting burden.  *Winter*, 555 U.S. at 24.   Plaintiffs have failed to meet that burden here; consequently, the law requires that their motion be denied.  That just and proper outcome is entirely consistent with the public interest.

## **CONCLUSION**

For the foregoing reasons, Defendants R. Seth Williams and the Philadelphia District Attorney's Office respectfully request that Plaintiffs' motion for preliminary injunction be denied.

/s/ *Bryan C. Hughes*
BRYAN C. HUGHES
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
(215) 686-5688
bryan.hughes@phila.gov

Counsel for Defendants R. Seth Williams
and Philadelphia District Attorney's Office