IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHRISTOS SOUROVELIS, et al. | : | |
| | : | |
| v. | : | Civil Action No. 14-4687-ER |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants R. Seth Williams and the Philadelphia District Attorney's Office (together, "the Commonwealth") respectfully submit this memorandum in support of their motion to dismiss the First Amended Complaint filed by Plaintiffs Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Plaintiffs' First Amended Complaint should be dismissed.

**I.      Background**

Plaintiffs Christos Sourovelis, Doila Welch, and Norys Hernandez ("the original plaintiffs") commenced this action on August 11, 2014, on behalf of themselves and a putative class of similarly situated others, by filing a complaint alleging that various policies and practices of the Commonwealth with respect to its ongoing prosecution of civil forfeiture cases against real property owned by Plaintiffs pursuant to the Controlled Substances Forfeiture Act, 42 Pa.C.S. §§ 6801-02 ("the Forfeiture Act"), violated their respective rights to due process of law. (ECF No. 1). Concomitantly with the complaint, Plaintiffs filed a motion for class certification (ECF No. 3) and a supporting memorandum (ECF No. 4), followed by a motion for

preliminary injunction with respect to the first count of the complaint (ECF No. 20), a supporting memorandum (ECF No. 21), and exhibits (ECF Nos. 22, 23).

On October 2, 2014, the Commonwealth filed a motion to dismiss the original complaint (ECF No. 27), a response in opposition to the motion for preliminary injunction (ECF No. 28), and a response in opposition to the motion for class certification (ECF No. 29). On October 24, the original plaintiffs filed an unopposed motion for leave to file a reply memorandum in further support of their motion for preliminary injunction. (ECF No. 35). Pursuant to a Joint Status Report and Discovery Plan (ECF No. 36, at 4), the Commonwealth filed an unopposed motion for leave to file a surreply memorandum in further opposition to the original plaintiffs' motion for preliminary injunction on November 10 (ECF No. 38).

On November 19, the original plaintiffs, joined by a new plaintiff, Nassir Geiger (collectively, "Plaintiffs"), filed their First Amended Complaint. (ECF No. 40). The amended complaint does not alter the original plaintiffs' substantive claims for relief, but the inclusion of Mr. Geiger and related factual allegations adds, for the first time, a purported class representative who owns personal property, rather than real property, against which a forfeiture petition is presently pending in the Court of Common Pleas of Philadelphia County ("the Court of Common Pleas").

Two days later, Plaintiffs filed an unopposed motion for leave to file a reply in further support of their motion for class certification. (ECF No. 41). Pursuant to a Revised Joint Status Report and Discovery Plan, filed December 2, the parties agreed that the Commonwealth would file an unopposed surreply in opposition to the motion for class certification by January 9, 2015, and a response to the First Amended Complaint by January 12, 2015. (ECF No. 42, at 4).

Pursuant to consent motions for discontinuance filed December 18, 2014, the Court of Common Pleas discontinued the pending civil forfeiture cases against real property owned by Plaintiffs Christos Sourovelis and Doila Welch. (*See* consent motions for discontinuance and orders, dated December 18, 2014, attached hereto as Exhibits A (Sourovelis) and B (Welch)).[1] On December 23, upon the filing of a consent motion to stay proceedings, the civil forfeiture case against the real property co-owned by Ms. Hernandez was stayed pending resolution of the pending motion for preliminary injunction in the instant case. (*See* consent motion to stay proceedings and order, dated December 23, 2014, attached hereto as Exhibit C).

The Commonwealth filed its unopposed surreply motion on January 9 (ECF No. 45), and now moves to dismiss the First Amended Complaint. As set forth in greater detail below, dismissal is warranted for the following reasons:

(1)    Because the state court civil forfeiture proceedings against the property owned by Mr. Sourovelis and Ms. Welch have been discontinued, the claims of these plaintiffs have been rendered moot and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1);

(2)    Because the first count of the amended complaint essentially seeks federal review of state court orders, this court lacks subject matter jurisdiction to consider it;

(3)    Insofar as the named plaintiffs consist of owners of property against which civil forfeiture petitions are presently pending in the Court of Common Pleas, their constitutional claims could be raised in Pennsylvania state courts and this court should abstain from deciding the case;

---

[1] Because Mr. Sourovelis and Ms. Welch no longer have pending forfeiture petitions in the Court of Common Pleas, they lack standing to proceed as named plaintiffs in this case and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1). In considering a factual challenge to subject matter jurisdiction in a Rule 12(b)(1) motion, the court may review evidence outside the pleadings. *See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Indeed, even in deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may consider "matters of public record," such as the consent motions for discontinuance and related orders. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

(4)    Because Defendant Philadelphia District Attorney's Office is not an entity amenable to suit under 42 U.S.C. § 1983, this defendant must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6);

(5)    Because the amended complaint fails to state a claim upon which relief may be granted as to Mr. Geiger, this plaintiff must be dismissed pursuant to Rule 12(b)(6); and

(6)    Because the second, fourth, fifth and sixth counts of the amended complaint fail to state claims upon which relief may be granted, those claims must be dismissed pursuant to Rule 12(b)(6).

## II.    Standards of Review

### A.    Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the authority of a federal court to consider a case or claim. *See Miller v. 3G Collect, LLC*, --- F.Supp.3d ----, ----, 2014 WL 4634966, at *2 (E.D.Pa. Sept. 16, 2014) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the "burden of proof that jurisdiction does in fact exist." *Miller*, 2014 WL 4634966, at *2 (quoting *Petruska*, 462 F.3d at 302 n. 3)). In considering such a motion, the court need not assume the truth of the well-pleaded allegations in the complaint, *see Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); indeed, it may "go outside the bounds of the complaint" to make factual findings decisive of the issue, *see Employers Ins. of Wasusau v. Crown Cork & Seal Co.*, 905 F.2d 42, 45 (3d Cir. 1990). If the court cannot conclude that its exercise of jurisdiction is proper, the challenged complaint or count must be dismissed because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (internal marks omitted).

In evaluating a Rule 12(b)(1) motion, a court must first determine whether the motion presents a facial or factual attack. *In re Schering Plough Corp. Intron/Temodar Consumer Class*

*Action*, 678 F.3d 235, 243 (3d Cir. 2012). Because a facial attack challenges the legal sufficiency of the complaint, the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). A factual attack, however, presents a challenge to the alleged jurisdictional facts; thus, a court is permitted to consider evidence outside the pleadings. *Id.*

As particularly relevant here, "[a] motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). Moreover, because the Commonwealth challenges the jurisdictional facts of the amended complaint as to Plaintiffs Sourovelis and Welch, a factual attack is presented and the court may consider evidence outside the pleadings.

### B.     Rule 12(b)(6)

The legal standard for a Rule 12(b)(6) motion is well-established. Under that rule, the court must dismiss an action on motion made before a responsive pleading is filed when the complaint "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To plead a viable cause of action, the allegations contained in a complaint must do more than posit a "speculative" or "conceivable" claim; rather, they must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court must disregard both "legal conclusions" and "conclusory statements" and must scrutinize the well-pleaded factual allegations to ensure that they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal

marks omitted); *see also Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (disregarding "bald assertions" and "legal conclusions" in evaluating a motion to dismiss).

Rather than merely alleging a plaintiff's entitlement to relief, a complaint must "show" such entitlement through well-pleaded factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). "A plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.    Argument

### A.    BECAUSE THE CLAIMS OF PLAINTIFFS SOUROVELIS AND WELCH HAVE BEEN RENDERED MOOT, THEY ARE SUBJECT TO DISMISSAL PURSUANT TO FED.R.CIV.P. 12(B)(1).

Plaintiffs' amended complaint challenges six alleged "policies and practices" of the Commonwealth in prosecuting civil actions under the Forfeiture Act as violative of their rights to procedural due process guaranteed by the Fourteenth Amendment:

>       (i)      Defendants' policy and practice of applying for and executing *ex parte* seizures of homes and other real properties without providing any evidence of exigent circumstances or necessity to justify proceeding without affording affected owners notice of an opportunity to be heard;

>       (ii)     Defendants' policy and practice of requiring real property owners to waive their statutory and constitutional rights in order to be let back into their property or have the forfeiture petition withdrawn;

>       (iii)    Defendants' policy and practice of failing to provide property owners with a prompt, post-deprivation hearing before a neutral arbiter where the owners may contest the basis for the seizure, restraint, or indefinite retention of their property pending an ultimate hearing on the merits;

(iv)    Defendants' policy and practice of repeatedly "relisting" civil-forfeiture proceedings, which forces property owners to appear in person for these proceedings over and over again or else permanently lose their property through a default judgment;

(v)    The policy and practice of retaining forfeited property and its proceeds for use by the Philadelphia District Attorney's Office and the Philadelphia Police Department; and

(vi)    Defendants' policy and practice of having prosecutors and employees of the Philadelphia District Attorney's Office control "hearings" in Courtroom 478.

(ECF No. 40 ¶ 4).  They seek declaratory and injunctive relief on behalf of a class of "all persons who own property that currently is or will be the subject of a civil-forfeiture petition brought by the Philadelphia D.A.'s Office."  (*Id*. at ¶ 231).

Because the state court civil forfeiture proceedings against Mr. Sourovelis and Ms. Welch have been discontinued (*see* Exhibits A, B), the claims of these plaintiffs in this suit have been rendered moot and must be dismissed.  As one court summarized the relevant law:

The doctrine of mootness is "the doctrine of standing set in a time frame."  In other words, while standing tests whether the parties have personal and adversarial interests at the outset of the controversy, mootness ensures that these interests are retained throughout the litigation.  The requirements of standing and mootness are both constitutional and prudential and implicate concerns of judicial competency and separation of powers.

The constitutional elements are well established.  The plaintiff must have an "injury in fact," the injury must be "fairly traceable" to the defendants' conduct, and it must be likely, as opposed to speculative, that a favorable decision will redress the injury.  The prudential inquiry into mootness and standing is more open-ended to ensure that an action is susceptible to judicial resolution.

*Prudential Property and Cas. Ins. Co. v. Beaufort*, 263 F.Supp.2d 982, 984-85 (E.D.Pa. 2003) (internal footnotes omitted).  Indeed, "Article III requires that a plaintiff's claim be live not just

when he brings the suit but throughout the entire litigation, and once the controversy ceases to exist the court must dismiss the case for lack of jurisdiction." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992).

Here, while the amended complaint alleges that Plaintiffs Sourovelis and Welch have suffered an "injury in fact" that is "fairly traceable" to the conduct of the Commonwealth, a favorable decision in this litigation cannot redress their injuries because they are no longer threatened with forfeiture. Indeed, they cannot represent the interests of the putative class because they no longer fall within the class definition itself. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360-61 (3d Cir. 2013) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

To the extent that Mr. Sourovelis and Ms. Welch may argue that they maintain standing in this suit because a future civil forfeiture petition may be brought against their property, they stand in the same shoes as all other citizens of Philadelphia County. To establish a justiciable case or controversy based on a future injury, such injury "must not only be *possible*, but imminently likely." *See Prudential Property and Cas. Ins. Co.*, 263 F.Supp.2d at 985 (emphasis in original); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("The plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' . . . and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'"); *Lusardi*, 975 F.2d at 974 ("The 'case or controversy' requirement demands that a cause of action before a federal court present a 'justiciable' controversy, and 'no justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by

subsequent developments" (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  Plaintiffs cannot make such a showing here.  The discontinuance of the forfeiture petitions against Mr. Sourovelis and Ms. Welch, moreover, does not represent a "tactic of 'picking off' lead plaintiffs . . . to avoid a class action," *see Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004), because the class may still be represented by Plaintiffs Hernandez and/or Geiger going forward.

Because the claims of Plaintiffs Sourovelis and Welch have been rendered moot by the orders of the Court of Common Pleas discontinuing their state court forfeiture cases, these plaintiffs should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

**B.     THE FIRST COUNT OF PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION, AS IT IMPROPERLY SEEKS FEDERAL COURT REVIEW OF STATE COURT ORDERS.**

In the first count of their amended complaint, Plaintiffs invite this court to opine as to the propriety of "seize and seal" orders issued by the Court of Common Pleas of Philadelphia County.  Plaintiffs acknowledge that an *ex parte* procedure is authorized by statute, and the legal standard for the issuance of such relief is well-established.  In truth, they do not present a meaningful constitutional challenge to the statutory procedure; rather, they argue that the state court did not (in the cases of Mr. Sourovelis and Ms. Hernandez) and routinely does not (in the cases of the putative class members who own real property subject to forfeiture) follow that procedure.[2]  Nevertheless, they fault the Commonwealth's "practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g)" in applying for such orders.  (ECF No. 40 ¶¶ 243).  This court lacks jurisdiction to consider such a claim.

---

[2] The first count of the complaint does not apply to Mr. Geiger, against whom a forfeiture petition is presently pending related to a vehicle.  Nor could it apply to Ms. Welch, whose real property was never seized or sealed.

Pursuant to § 6801(a)(6)(i)(C) of Pennsylvania's Controlled Substances Forfeiture Act, the Commonwealth may seek the forfeiture of "[r]eal property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device, and Cosmetic Act, including structures or improvements thereon[.]"  42 Pa.C.S. § 6801(a)(6)(i)(C).  Such property "may be seized" either "upon process issued by any court of common pleas having jurisdiction over the property" or "without process" if, *inter alia*, "there is probable cause to believe that the property has been used or is intended to be used in violation of [the Controlled Substances Act]."  *Id*. at § 6801(b).

A civil forfeiture action is an *in rem* proceeding commenced upon the filing of a petition "in the court of common pleas of the judicial district where the property is located, verified by oath or affirmation of an officer or citizen[.]"  *Id*. at § 6802(a).  A copy of the petition must be "served personally or by certified mail on the owner or upon the person or persons in possession at the time of the seizure," along with an endorsed notice advising the claimant that he or she is "required to file an answer to this petition, setting forth [his or her] title in, and right to possession of, said property within 30 days[.]"  *Id*. at § 6802(b).  Where "seizure without process occurs, . . . proceedings for the issuance thereof shall be instituted forthwith."  *Id*. at § 6802(c).  All property seized "is deemed to be in the custody of the law enforcement authority subject only to the orders and decrees of the court of common pleas having jurisdiction over the forfeiture proceedings and of the district attorney or the Attorney General," and "[w]hen property is seized under this chapter, the law enforcement authority shall place the property under seal," *id*. at § 6802(d).

As particularly relevant here, § 6802(f) authorizes the court to "enter a restraining order or injunction . . . or take any other action to preserve the availability of property" for forfeiture either:

> (1) upon the filing of an information or an indictment charging an offense in this Commonwealth for which criminal forfeiture may be ordered under this chapter and alleging that the property with respect to which the order is sought would be subject to forfeiture; or

> (2) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and an opportunity for a hearing, the court determines that:

>> (i) there is a substantial probability that the Commonwealth will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court or otherwise made unavailable for forfeiture; and

>> (ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered.

Pursuant to § 6802(g), a temporary restraining order "may be entered upon application of the Commonwealth without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the Commonwealth demonstrates that there is probable cause to believe that the property with respect to which the order sought would be subject to forfeiture under this chapter and that provision of notice will jeopardize the availability of the property for forfeiture."  Such an order expires "not more than ten days after the date on which it is entered" and a "hearing requested concerning an order entered under this subsection shall be held at the earliest possible time and prior to the expiration of the temporary order."  *Id.*

While constitutional challenges to the preliminary procedures authorized under the Forfeiture Act is relatively sparse, Pennsylvania courts have made clear that "[n]otice and an opportunity to be heard are procedural safeguards integral to forfeiture proceedings, and must be satisfied." *Commonwealth v. One 1991 Cadillac Seville*, 853 A.2d 1093, 1095 (Pa.Cmwlth. 2004) (internal citation omitted). Indeed, they have recognized that "[p]rocedural due process requires that the deprivation of life, liberty, or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id*; *accord United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993) ("[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture.").

Here, the record evidence shows that, upon the filing of a civil forfeiture action against the Sourovelis property, Assistant District Attorney Daren Waite ("ADA Waite") submitted to the Court of Common Pleas of Philadelphia County an "application to seize and seal premises pursuant to 42 Pa.C.S. §§ 6801, 6802." (ECF No. 23-4, at 1). Specifically, he alleged, "[t]he Commonwealth is authorized to seize and seal property subject to forfeiture pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f)(g)." (*Id*. at ¶ 2). In support of the application, he set forth the circumstances of the police encounter with Mrs. Sourovelis during execution of the search and seizure warrant − *i.e.*, that she initially "refused to open the door," "did not immediately restrain [her] Pit Bull dog," and "tri[e]d to slam the door on the officers" (*id*. at ¶¶ 6, 8) − and the subsequent discovery of Yianni Sourovelis locked inside a bathroom, flushing heroin down the toilet (*id*. at ¶¶ 10-16). Additionally citing that "numerous narcotics and drug related paraphernalia" was recovered from the home incident to the arrest, ADA Waite requested that the court enter an attached sealing order.

In the case of Ms. Hernandez, Assistant District Attorney Steven Agami ("ADA Agami") filed a substantively similar application to seize and seal the property. (ECF No. 22-4). Like ADA Waite, he asserted that an order seizing and sealing the property was authorized "pursuant to both 42 Pa.C.S. § 6801(b)-(d) and 42 Pa.C.S. § 6802(f), (g)" (*id*. at ¶ 2), and added that such relief was necessary to "protect[] the health and safety of the community by immediately preventing further narcotics activity from occurring within"; "[t]o avoid a prolonged confrontation"; "to preserve the ability of the property for the forfeiture"; and "to minimize the risk of injury to all parties" (*id*. at ¶ 3).

In both cases, a judge of the Court of Common Pleas of Philadelphia County found that, "pursuant to 42 Pa.C.S. § 6802(f), (g), the Commonwealth [was] authorized to enter and seize the premises[.]" (ECF No. 22-6; *see also* ECF No. 23-5). Thus, the court implicitly found that ADA Waite and ADA Agami made the required showings for the issuance of such orders.

To the extent Plaintiffs argue that the court should have found otherwise, their claims are barred under the *Rooker-Feldman* doctrine. As the Third Circuit explained in *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006):

> The *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication. The doctrine derives from the Supreme Court's opinions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 . . . (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483-84 . . . (1983). In *Exxon Mobil* [*Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)], the Court, however, emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284[.]

The critical point here is that the relevant plaintiffs' injuries – *i.e.*, execution of the "seize and seal" orders – resulted not from the Commonwealth's applications for *ex parte* relief, but from the state court granting those applications. Thus, Plaintiffs are "complaining of injuries caused by state-court [orders] rendered before the district court proceedings commenced" and "invit[e] district court review and rejection of those [orders]." *Exxon Mobil*, 544 U.S. at 284. This is precisely what the *Rooker-Feldman* doctrine aims to prevent. *See Barren v. Allegheny County, Pa.*, Civ. No. 14-692, 2014 WL 4384598, at *3 (W.D.Pa. Sept. 4, 2014) ("What Plaintiff seeks in this civil action is to have the state court forfeiture proceeding declared null and void. . . . Rooker-Feldman squarely precludes this Court from doing so").

While Plaintiffs will likely argue, as they have previously, that *Rooker-Feldman* cannot apply because some courts have found that they do not extend to interlocutory orders – such as the seize and seal orders at issue in the first count of the amended complaint – the Third Circuit has applied the doctrine to interlocutory order where parallel state litigation had "resolved, at least for the moment, the dispute between the parties which forms the basis of the federal complaint at issue in this case." *Port Authority Police Benevolent Association v. Port Authority Police Department*, 973 F.2d 169, 178 (3d Cir. 1992); *see also Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 26 (1st Cir. 2005) (finding *Rooker-Feldman* applies, *inter alia*, "where the state proceeding has ended *with respect to the issues that the federal plaintiff seeks to have reviewed in federal court*, even if other matters remain to be litigated" (emphasis in original)). Because Plaintiffs must concede that the state court proceedings against the relevant plaintiffs have effectively ended with respect to the preliminary orders that are the subject of count one of their amended complaint – as there is no forfeiture case pending against property owned by Mr. Sourovelis or Ms. Welch and the seize

and seal order against the property co-owned by Ms. Hernandez was resolved by agreement (ECF No. 38-1, at 16-17) – the *Rooker-Feldman* doctrine bars this court from exercising subject matter jurisdiction over that claim. Accordingly, the first count should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

**C. INSOFAR AS THE COURT MAY EXERCISE JURISDICTION OVER PLAINTIFFS' CLAIMS, IT SHOULD ABSTAIN FROM DOING SO IN CONSIDERATION OF PRINCIPLES OF COMITY AND FEDRALISM.**

To the extent that the court may exercise jurisdiction over Plaintiffs' amended complaint, it should nevertheless abstain from doing so in deference to ongoing state court proceedings. *See In re Standard & Poor's Rating Agency Litigation*, --- F.Supp.2d ----, ----, 2014 WL 2481906, at *22 (S.D.N.Y. June 3, 2014) (finding *Younger* abstention was "required" where all requirements set forth in *Sprint Communications, Inc. v. Jacobs*, --- U.S. ----, 134 S.Ct. 584 (2013), were satisfied); *see also Agarwal v. Schuylkill County Tax Claim Bureau*, No. 3:CV-09-1921, 2010 WL 5175121, at *9 (M.D.Pa. Aug. 5, 2010) ("*Younger* abstention is mandatory if these conditions are met" (citing *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005)); *Ralston v. Zats*, No. CIV. A. 94-3723, 1997 WL 560602, at *12 (E.D.Pa. Aug. 26, 1997) ("Unlike *Younger* abstention, *Burford* abstention is not mandatory"). Because principles of comity and federalism militate in favor of abstention, Plaintiffs' amended complaint should be dismissed.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States "held that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances." *Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992). Thus, *Younger* established that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint*, 134 S.Ct. at 588. The Court later "extended *Younger* abstention" to two other classes of cases – namely, "particular state civil proceedings that are akin to criminal prosecutions" (*i.e.*, civil enforcement proceedings) and state civil proceedings that "implicate a State's interest in

enforcing the orders and judgments of its courts." *Sprint*, 134 S.Ct. at 588 (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987)). These "three 'exceptional' categories . . . define *Younger*'s scope"; district courts are otherwise "obliged to decide cases within the scope of federal jurisdiction." *Id.* at 588, 591. Additionally, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court "delineated three requirements which must be satisfied before a federal court may abstain from hearing a case over which it has jurisdiction: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues." *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994); *see also Sprint*, 134 F.3d at 593 ("[t]he three *Middlesex* conditions . . . [are] *additional* factors appropriately considered by the federal court before invoking *Younger*" (emphasis in original)). If those conditions are satisfied and one of the three "exceptional" categories of cases is presented, "the prospect of undue interference with state proceedings counsels against federal relief," *Sprint*, 134 S.Ct. at 588, and the federal suit must be dismissed, *see Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("[*Younger v. Harris*] contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts").

Here, the *Middlesex* conditions, which are not particularly onerous, are clearly satisfied. *See Sprint*, 134 S.Ct. at 593 (explaining that if the *Middlesex* conditions were dispositive of the *Younger* analysis, it "would extend *Younger* to virtually all parallel state and federal proceedings . . . where a party could identify a plausibly important state interest"). The first condition requires that state proceedings be both ongoing and judicial in nature. *See, e.g., New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 369-70 (1989) ("*NOPSI*"). All of

the plaintiffs in this case have civil forfeiture petitions presently pending in the Court of Common Pleas of Philadelphia County; thus, their state cases are clearly ongoing and judicial in nature. The second *Middlesex* condition requires that the pending state proceedings involve important state interests. In assessing this factor, courts look not to the state's interest in the outcome of the case, but rather to the "importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 364-65. Both the Commonwealth of Pennsylvania and the City of Philadelphia have a compelling interest in the procedure by which property related to criminal conduct is seized and forfeited, and in ensuring that this process comports in all respects with the requirements of the federal and state constitutions. *See O'Neill*, 32 F.3d at 792 ("the City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular"). The third and final *Middlesex* condition is that *Younger* abstention is only appropriate if the state proceedings provide an adequate opportunity to adjudicate the constitutional issues raised in federal court. *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state process, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights" (emphasis in original)); *Huffman*, 420 U.S. at 610-11 (rejecting assumption that state court judges "will not be faithful to their constitutional responsibilities"). Plaintiffs certainly have an adequate opportunity to raise their constitutional claims in state court by, for example, asserting an affirmative defense, filing a counterclaim, and/or noting an appeal in their pending state cases. *See Musko v. McClandless*, Civ. A. No. 94-3938, 1995 WL 262520, at *4 (E.D.Pa. May 1, 1995) (finding the third *Middlesex* condition satisfied where the plaintiff had "filed a counterclaim in the state court action which parallels his claims in this case"); *Commonwealth v. Real Property*

*and Improvements at 2338 N. Beechwood Street*, 65 A.3d 1055 (Pa.Cmwlth. 2013) (recognizing that constitutional challenges to civil forfeiture procedure may be raised by affirmative defense in state court and considering due process claims on appeal). Because all three *Middlesex* conditions are satisfied, this case passes the threshold test for *Younger* abstention.

The remaining question is whether any of the three "exceptional circumstances" identified by the Supreme Court is presented. *See Sprint*, 134 S.Ct. at 594 ("*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further"). The state proceedings in the instant case fall squarely within the category of civil enforcement proceedings. As one court recently explained:

> The threshold question in determining whether an action qualifies as a "civil enforcement proceeding" for *Younger* purposes is "that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 593). To determine whether a proceeding is "quasi-criminal" the Court must examine whether: "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *Sprint*, 134 S.Ct. at 592; *see also ACRA Turf Club*, 748 F.3d at 138.

*NCAA v. Corbett*, --- F.Supp.2d ----, ----, 2014 WL 2619288, at *6 (M.D.Pa. June 12, 2014).

Here, these questions must be answered in the affirmative. The plaintiffs' state court civil forfeiture proceedings were brought by the Commonwealth of Pennsylvania; the proceedings were initiated to sanction wrongful conduct; and the civil actions are closely related to criminal cases. *See 2338 N. Beechwood Street*, 65 A.3d at 1063 ("In concluding that forfeiture proceedings are quasi-criminal punitive proceedings, [*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 61 A.3d 1048 (Pa.Cmwlth. 2012)] relied upon cases by the United States Supreme Court holding that the Fourth and Fifth Amendment

protections in criminal cases are applicable in forfeiture proceedings"); *Commonwealth v. Allen*, 59 A.3d 677 (Pa.Cmwlth. 2012) ("forfeiture proceedings are . . . civil in form, but quasi-criminal in character" (internal marks and citation omitted)); *Commonwealth v. Perez*, 941 A.2d 778, 780 (Pa.Cmwlth. 2008) (civil forfeitures "are the *in rem* consequence for wrongdoing prescribed by statute" and property is not forfeited "as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature").  Because civil forfeiture is, by definition, quasi-criminal in nature, the instant case plainly relates to ongoing state civil enforcement proceedings, one of the three "exceptional circumstances" for which the Supreme Court has determined *Younger* abstention is warranted.

Even where, as here, an exceptional circumstance is presented and the *Middlesex* conditions are satisfied, courts have sometimes found abstention inappropriate if dismissal of the federal case would result in great, immediate, and irreparable injury to the federal plaintiffs, *see Kugler v. Helfant*, 421 U.S. 117, 123 (1975), or if declining to abstain would not "in any way impair the ability of the state courts of Pennsylvania to adjudicate anything that is currently before them," *Marks v. Stinson*, 19 F.3d 873, 884 (3d Cir. 1994).  Neither of those concerns is implicated here.  There is no apparent reason why requiring Plaintiffs to bring their claims in state court, rather than federal court, would result in any injury to them – let alone great, immediate, and irreparable injury.  Indeed, providing state appellate courts an opportunity to determine the propriety of the procedures applied in the Court of Common Pleas would seem to be the most efficient way of bringing about the wholesale changes in state civil forfeiture proceedings that Plaintiffs purportedly seek.  Providing guidance to lower courts and correcting their errors is, after all, a primary function of state appellate courts; indeed, recent decisions of the state's appellate courts have dramatically altered forfeiture procedure in Pennsylvania.  *See*

*Commonwealth v. Allen*, --- A.3d ----, ----, 2014 WL 7404543, at *7 (Pa. Dec. 29, 2014) (where property is seized by police an arrested individual waives the return of property if he "fails to file a return motion during the pendency of the criminal charges against him or within thirty days following dismissal of the charges"); *Commonwealth v. 605 University Drive*, --- A.3d ----, 2014 WL 6474938 (Pa. Nov. 19, 2014) (holding that Pennsylvania Rules of Civil Procedure apply in forfeiture proceedings to the extent they are not in conflict with specific provisions of the Forfeiture Act); *Commonwealth v. 1997 Chevrolet*, --- A.3d ----, 2014 WL 7156975 (Pa.Cmwlth. Dec. 17, 2014) (altering state court analyses of innocent owner and constitutional excessive fines defenses). Moreover, as Plaintiffs' amended complaint attacks virtually every aspect of the civil forfeiture process presently in place in the City of Philadelphia, and seeks a return of all property subject to forfeiture, it is inconceivable how a ruling in the instant case could possibly *not* impair the state court's ability to adjudicate the ongoing civil cases.

In sum, this is precisely the type of case to which the *Younger* abstention doctrine was intended to apply. Because the court should abstain from deciding Plaintiffs' claims, the amended complaint should be dismissed.

### D. THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE IS AN IMPROPER DEFENDANT TO THIS ACTION.

Plaintiffs sue R. Seth Williams, in his official capacity as District Attorney of Philadelphia County, and separately name the Philadelphia District Attorney's Office in this action pursuant to 42 U.S.C. § 1983. It is well-settled, however, that "the District Attorney's Office 'is not an entity for purposes of § 1983 liablity[.]'" *Allen v. District Attorney's Office of Philadelphia*, 644 F.Supp.2d 600, 611 (E.D.Pa. 2009) (quoting *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997)). Accordingly, Plaintiffs' claims against Defendant Philadelphia District Attorney's Office must be dismissed.

### E.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AS TO THE NEW NAMED PLAINTIFF, NASSIR GEIGER.

According to the amended complaint, Plaintiff Nassir Geiger "is a full-time sanitation worker for the City of Philadelphia" whose "car, a 2000 Buick LeSabre, and $580.00 in cash were seized on January 17, 2014," following his arrest on charges of selling drugs. (ECF No. 40 ¶ ¶ 15, 207-08). Mr. Geiger subsequently "accepted a plea agreement whereby he pled guilty to once count of possession of drug paraphernalia – the empty ziplock bags [recovered by police from his automobile incident to his arrest]" and was required to pay "a $200 fine and perform[] 20 hours of community service," after which his "record would be expunged." (*Id*. at ¶ 210). Plaintiffs fault the Commonwealth for "never inform[ing] Mr. Geiger that he would need to file a motion for return of property in order to stop storage fees from accruing on his vehicle"; instead, he later learned, in the context of a forfeiture proceeding, that "he would need to pay [$1,800 in storage fees] to get his car returned." (*Id*. at ¶¶ 212, 218). Plaintiffs acknowledge that the cash seized by police from Mr. Geiger "was forfeited through a default judgment," and while they allege that he "never received a copy of the hearing notice or forfeiture petition for his money" (*id*. at ¶ 219), their claim as to him appears to relate to the fact that he was "forced to go without any car for more than two months" (*id*. at ¶ 220).

It is unclear what procedural due process, if any, was lacking in the case of Mr. Geiger. As the first count of the complaint relates only to "seize and seal" orders applicable to real property, it does not apply in the case of Mr. Geiger, nor does the second count, which relates to property owners allegedly being forced to "give up constitutional and statutory rights" during negotiations with prosecutors following the filing of a forfeiture petition. (*Id*. at 48). The third count, alleging a failure to provide a prompt, post-deprivation hearing, would not seem to apply, as Mr. Geiger, who was apparently represented by counsel in his criminal case, does not

complain of any such deprivation following his arrest. Neither does the fourth count – the alleged "repeated[] 'relisting'" of forfeiture proceedings (*id.* at 51) – seem to apply to him, as the amended complaint references him coming to court only twice, in June and August 2014. (*Id.* at ¶¶ 213, 217, 218). It is not at all clear how the fifth count, alleging a violation of due process related to the statutorily authorized distribution of the proceeds of forfeited property, implicates the due process rights of any of the named plaintiffs. Finally, as to the sixth count – the alleged policy and practice of the Commonwealth of "having prosecutors run the forfeiture proceedings in Courtroom 478" (*id.* at ¶ 289) – this appears to relate to the alleged failure to provide a prompt post-deprivation hearing before a judge, but Mr. Geiger does not assert that he was not provided such a hearing within the context of his criminal case.

More importantly, the amended complaint does not, and cannot, allege that Mr. Geiger was deprived of any right to procedural due process because he failed to take advantage of an available and adequate procedure for return of his property. Individuals who have property seized incident to arrest are expected to seek the return of their property through their criminal proceedings by filing a return motion pursuant to Rule 588 of the Pennsylvania Rules of Criminal Procedure. *See Commonwealth v. Allen*, 2014 WL 7404543, at *7. Return motions can be filed by "a person aggrieved by a search and seizure" and must "be filed in the court of common pleas for the judicial district in which the property was seized." Pa.R.Crim.P. 588(A). A return motion may be, and often is, filed pre-trial and joined with a motion to suppress at a time when the defendant is almost certainly represented by counsel. *See* Pa.R.Crim.P. 588(C).

As the Pennsylvania Supreme Court explained just this past month, that process redounds both to the arrestee's benefit and detriment. On the one hand, arrestees, even if their charges are later dropped, have "the opportunity to move for return of the [p]roperty during the pendency of

the criminal proceedings, or while the trial court retain[s] jurisdiction for thirty days following the dismissal of charges." *Allen*, 2014 WL 740543, at *7. On the other hand, an arrestee waives the return of their property if he "fails to file a return motion during the pendency of the criminal charges against him or within thirty days following the dismissal of the charges." *Id.* Once the return is waived, the property escheats to the Commonwealth.

The Third Circuit has already found that "Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy when policy seize property pursuant to an investigation." *McKenna v. Portman*, 538 Fed.Appx. 221, 225 (3d Cir. 2013); *see also Potts v. City of Philadelphia*, 224 F.Supp.2d 919, 938 (E.D.Pa. 2002) (holding that Rule 588 was "an adequate post-deprivation remedy" to gun and gun-permit seizure); *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F.Supp.2d 555, 571 (E.D.Pa. 2011) (rejecting plaintiff's due process claim because he has "not alleged that he has availed himself of Rule 588, much less that the procedure the rule establishes is "unavailable or patently inadequate"); *Barber v. Pennsylvania Dep't Agric.*, No. CIV.A.9-1462, 2010 WL 1816791, at *4 (W.D.Pa. May 3, 2010) ("Several courts have already determined that Pennsylvania has put into place adequate post-deprivation remedies. Plaintiffs have not alleged that Pa. R. Crim. Pro. 588 was inadequate or unavailable in any way." (internal citations omitted)).

As a general matter, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Because Mr. Geiger had a procedure available to him that has repeatedly been found by courts to be adequate and failed to take advantage of that procedure, he has failed to state a claim for a

violation of procedural due process. Accordingly, the claims brought by Mr. Geiger must be dismissed.

### F. THE SECOND, FOURTH, FIFTH, AND SIXTH COUNTS OF THE AMENDED COMPLAINT FAIL TO STATE CLAIMS FOR RELIEF INDEPENDENT OF THE FIRST AND THIRD COUNTS.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. Thus, a state or municipality "may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process." *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989) (internal citations omitted). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin*, 227 F.3d at 116).

Here, the first count of Plaintiffs' amended complaint – to the extent that the court determines it may exercise jurisdiction over it – satisfies these requirements, as the Commonwealth's alleged policy and practice of obtaining and executing preliminary "seize and seal" orders allegedly results in a temporary deprivation of real property. So, too, does the third count, which alleges the denial of a right to a prompt, post-deprivation hearing. The remaining counts, however, appear to be almost entirely derivative of the deprivations alleged in counts one and three.

Count two, which appears to apply solely to real property owners, alleges that, "[a]fter applying for and obtaining orders to seize and seal the homes of Plaintiffs Sourovelis,

Hernandez, Welch, and members of the putative class *on the basis of ex parte applications that deprive them of notice or an opportunity to be heard*, Defendants and their agents require property owners to agree to certain conditions in order to re-enter their properties."  (ECF No. 40 ¶ 254 (emphasis added)).  As the italicized portion of the above-quoted allegation suggests, this claim involves no greater deprivation of process than is alleged in the first count of the amended complaint.  Thus, it is duplicative of that claim.  Plaintiffs further allege that "Defendants propose similar conditions as part of settlement deals," an alleged "policy and practice" that "impair[s] the property owners' access to the courts to assert their constitutional rights."  (*Id*. at ¶ 255).  Plaintiffs' suggestion that the Commonwealth entering into negotiations for the settlement of civil forfeiture cases somehow impairs litigants' access to courts strains credulity, and Plaintiffs do not bother to explain how that could possibly be the case.  Indeed, such "conclusory statements" are insufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

Similarly, the fourth count of the amended complaint – the "repeatedly relisting" of forfeiture proceedings – does not allege any "policy and practice" of the Commonwealth that deprives a property owner of a due process right.  As to the fifth count, which complains that the Commonwealth retains the proceeds of forfeited property as specifically authorized by statute, it is unclear how those allegations, if true, result in a due process violation.  Finally, the sixth count faults the Commonwealth for staffing Courtroom 478 (and, apparently, for the absence of court personnel), but it is not clear what process is denied Plaintiffs by virtue of this alleged conduct over and above the deprivations alleged in the first and third count.

Because the second, fourth, fifth, and sixth counts do not plausibly allege a violation of due process independent of the first and third claims, these claims are subject to dismissal for failure to state a claim.

## IV.     Conclusion

For the foregoing reasons, the Commonwealth's motion to dismiss the amended complaint should be granted.

/s/ *Bryan C. Hughes*
BRYAN C. HUGHES
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
(215) 686-5688
bryan.hughes@phila.gov

Counsel for Defendants R. Seth Williams
and Philadelphia District Attorney's Office