IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| CHRISTOS SOUROVELIS, et al. | : | |
| | : | |
| v. | : | Civil Action No. 14-4687-ER |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants City of Philadelphia, Mayor Michael A. Nutter, Police Commissioner Charles H. Ramsey, District Attorney R. Seth Williams, and the Philadelphia District Attorney's Office, by and through undersigned counsel, submit this memorandum of law in support of their joint motion to dismiss the plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  For the reasons stated herein, Defendants' motion should be granted and the First Amended Complaint should be dismissed with prejudice.

### I.  Background

On November 17, 2014, Plaintiffs Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger, on behalf of themselves and a putative class of "all persons who own property that currently is or will be the subject of a civil-forfeiture petition brought by the Philadelphia D.A.'s Office," filed their First Amended Complaint, alleging constitutional violations pursuant to 42 U.S.C. § 1983.  (ECF No. 40 ¶ 231).  Plaintiffs Sourovelis, Welch, and Hernandez are the owners of real property against which forfeiture proceedings commenced by the D.A.

---

[1] Hereinafter, "Defendants" refers to all defendants collectively; "City Defendants" refers to the City of Philadelphia, Mayor Michael A. Nutter, and Police Commissioner Charles H. Ramsey; and "D.A. Defendants" refers to District Attorney R. Seth Williams and the Philadelphia District Attorney's Office.

Defendants under the Controlled Substances Forfeiture Act ("Forfeiture Act"), 42 Pa.C.S. §§ 6801-02, were pending in the Court of Common Pleas of Philadelphia County ("Court of Common Pleas") at the time the amended complaint was filed.  Plaintiff Geiger, who is named for the first time in the amended complaint, is the owner of personal property – specifically, a 2000 Buick LeSabre – against which a proceeding under the Forfeiture Act is presently pending in the Court of Common Pleas.  (*Id*. at ¶ 222).

The amended complaint challenges six alleged "policies and practices Defendants use when filing, prosecuting, and ultimately profiting from civil-forfeiture actions" that "violate [Plaintiffs'] due-process rights under the Fourteenth Amendment."  (*Id*. at ¶ 1).  The challenged "policies and practices" are:

> (i)     Defendants' policy and practice of applying for ["*ex parte* 'seize and seal' orders"] and executing [such orders, which authorize the] *ex parte* seizures of homes and other real properties[,] without providing any evidence of exigent circumstances or necessity to justify proceeding without affording affected owners notice or an opportunity to be heard;

> (ii)    Defendants' policy and practice of requiring real property owners to waive their statutory and constitutional rights in order to be let back into their property or have the forfeiture petition withdrawn;

> (iii)   Defendants' policy and practice of failing to provide property owners with a prompt, post-deprivation hearing before a neutral arbiter where those owners may contest the basis for the seizure, restraint, or indefinite retention of their property pending an ultimate hearing on the merits;

> (iv)    Defendants' policy and practice of repeatedly "relisting" civil-forfeiture proceedings, which forces property owners to appear in person for these proceedings over and over again or else permanently lose their property through a default judgment;

(v)   The policy and practice of retaining forfeited property and its proceeds for use by the Philadelphia District Attorney's Office and the Philadelphia Police Department; and

(vi)   Defendants' policy and practice of having prosecutors and employees of the Philadelphia District Attorney's Office control "hearings" in Courtroom 478.

(*Id*. at ¶ 4).[2]  Plaintiffs seek a judgment declaring these alleged policies and practices, as well as various provisions of the Forfeiture Act itself, unconstitutional; an injunction prohibiting Defendants from employing such policies and practices in the future; an order compelling the dismissal, apparently, of all pending forfeiture proceedings filed by the D.A. Defendants in the Court of Common Pleas; nominal damages of six dollars (*i.e.*, one dollar for each claim); and attorneys' fees and costs.

Defendants jointly move for dismissal of the amended complaint, with prejudice, on the following grounds:

(1)   Because the underlying forfeiture proceedings against the real property owned by Plaintiffs Sourovelis and Welch have been discontinued, the claims of these plaintiffs have been rendered moot and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

(2)   Because, since on or about September 22, 2014, the D.A. Defendants have not submitted an application for an *ex parte* "seize and seal" order, which is the source of the constitutional violations alleged in the first and second counts of the amended complaint, and a policy established by the District Attorney on October 1, 2014, ensures that subsequent applications will be warranted by exigent circumstances, a case or controversy is not presented as to the first and second counts of the amended complaint, which must be dismissed pursuant to Rule 12(b)(1).

(3)   Because Plaintiffs cannot demonstrate an "injury in fact" that is "fairly traceable" to the conduct alleged in counts one, three, and six of the amended complaint that will likely be remedied by the requested relief, they lack Article III standing to bring these claims, which must be dismissed pursuant to Rule 12(b)(1).

---

[2] While Plaintiffs nominally challenge the "policies and practices" of all defendants as to each count, the only substantive allegations against the City Defendants are set forth in the fifth count of the complaint.  (ECF No. 40 ¶¶ 279-87).  Thus, all counts appear to be applicable to the D.A. Defendants, but only the fifth applies to the City Defendants.

(4)     Insofar as the named plaintiffs are the owners of property against which civil forfeiture petitions are presently pending in the Court of Common Pleas, their constitutional claims could be raised in their state court forfeiture proceedings and this court should abstain from deciding them in this case.

(5)     Because Defendant Philadelphia District Attorney's Office is not an entity amenable to suit under 42 U.S.C. § 1983, this defendant must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

(6)     Because the amended complaint fails to state a claim upon which relief may be granted as to Plaintiff Geiger, the claims of this plaintiff must be dismissed pursuant to Rule 12(b)(6).

(7)     Because the second, fourth, fifth, and sixth counts of the amended complaint fail to state claims upon which relief may be granted, those claims must be dismissed pursuant to Rule 12(b)(6).

## II.     Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1)

### A.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the authority of a federal court to consider a case or claim.  *See Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 334-35 (E.D.Pa. 2014) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).  When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the "burden of proof that jurisdiction does in fact exist."  *Miller*, 302 F.R.D. at 335.

In evaluating such a motion, the court must first determine whether a facial or factual attack is presented.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  Because a facial attack challenges the legal sufficiency of the complaint, the court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff."  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  A factual attack, on the other hand, presents a challenge to the alleged jurisdictional facts; thus, "'no presumptive truthfulness attaches to

plaintiff's allegations' and the court must evaluate the merits of the disputed allegations because 'the trial court's . . . very power to hear the case' is at issue." *Miller*, 302 F.R.D. at 335 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

As relevant here, "[i]f a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it." *United States v. Virgin Islands*, 363 F.3d 276, 284-85 (3d Cir. 2004) (internal footnote omitted). A challenge for mootness is properly brought by a Rule 12(b)(1) motion, and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings. *See Gould Electronics*, 220 F.3d at 176. "[A] motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). In evaluating whether a complaint adequately pleads the elements of standing, however, "courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: 'Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party.'" *In re Schering Plough Corp.*, 678 F.3d at 243-44 (quoting *Ballentine*, 486 F.3d at 810).

## B.    Argument

Much has changed since the original plaintiffs commenced this action on August 11, 2014. At that time, a forfeiture proceeding against property owned by each of the named plaintiffs was pending in the Court of Common Pleas. That is no longer true as of December 18, 2014, when the underlying forfeiture cases against the real property owned by Plaintiffs Sourovelis and Welch were discontinued upon the filing of consent motions by the parties. (*See* Consent Motions for Discontinuance and Orders, dated December 18, 2014, attached hereto as Exhibits A (Sourovelis) and B (Welch)). On or about October 1, 2014, moreover, the D.A.

Defendants put in place a policy ensuring that any future application for an *ex parte* "seize and seal" order – the source of the constitutional violations alleged in the first and second counts of the amended complaint – is warranted by "exigent circumstances," in accordance with the rule of *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993), and no such order has been applied for or issued in any forfeiture case filed by the D.A. Defendants since on or about September 22, 2014.   (*See* Declaration of First Assistant District Attorney Edward F. McCann, Jr., attached hereto as Exhibit C).  Consequently, a case or controversy is not presented with respect to any claim brought by Plaintiffs Sourovelis or Welch, nor is one presented as to any plaintiff with respect to the first two counts of the amended complaint.  Furthermore, because the injuries allegedly suffered by the plaintiffs with respect to counts one, three, and six are not "fairly traceable" to the challenged conduct of Defendants – nor, at least with respect to counts three and six, could such injuries be redressed by a favorable decision – the court lacks subject matter jurisdiction to consider these claims.

      **1.**      **THE CLAIMS OF PLAINTIFFS SOUROVELIS AND WELCH WERE RENDERED MOOT WHEN THE COURT OF COMMON PLEAS GRANTED CONSENT MOTIONS FOR DISCONTINUANCE OF THE UNDERLYING FORFEITURE PROCEEDINGS.**

Because the state court forfeiture proceedings against Plaintiffs Sourovelis and Welch have been discontinued (*see* Exhibits A and B), these plaintiffs lack a requisite stake in this lawsuit for prospective injunctive and declaratory relief.  Their claims are now moot and must be dismissed.

As the Supreme Court of the United States recently explained:

> Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving "'the legal rights of litigants in actual controversies,'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454

U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885)). In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or "'personal stake,'" in the outcome of the action. *See Camreta v. Greene*, 563 U.S. ----, ----, 131 S.Ct. 2020, 2028, 179 L.Ed.2d 1118 (2011) (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009)). This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.

A corollary to this case-or-controversy requirement is that "'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during the litigation, the action can no longer proceed and must be dismissed as moot. *Lewis v. Continental Bank Corp.*, 494 U.S. 477-478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (internal quotation marks omitted).

*Genesis Healthcare Corp. v. Symczyk*, --- U.S. ----, ----, 133 S.Ct. 1523, 1528 (2013).

"[S]pecial mootness rules apply in the class action context" because "the named plaintiff purports to represent an interest that extends beyond his own." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992). Thus, where the class representative's claims are rendered moot after a class has been certified, the action continues because the certified class "acquire[s] a legal status separate from the interest asserted [by the class representative]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). Dismissal of a class action complaint is required, however, when the named plaintiffs' claims are rendered moot prior to class certification if "there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."

*Lusardi*, 975 F.2d at 974-75 (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1041 (5th Cir. 1981) (internal marks omitted)); *see also Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) ("when claims of the named plaintiffs become moot before class certification, dismissal of the action is required").[3]

The Third Circuit narrowly expanded the class action exception to the mootness doctrine in *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004).  In that case, the defendants made an offer of judgment, pursuant to Fed.R.Civ.P. 68, prior to the putative class representative filing a motion for class certification in a suit alleging violations of the Fair Debt Collection Practices Act ("FDCPA").  When the plaintiff declined the offer, the defendants moved to dismiss for lack of subject matter jurisdiction.  The district court granted that motion and the plaintiff appealed.  Relying primarily on the Supreme Court's decision in *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980), the court found that "allowing the defendants here to 'pick off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims[.]"  *Weiss*, 385 F.3d at 344.  Reasoning that Congress established a separate statutory scheme under the FDCPA for class action damages that would be rendered meaningless if the defendants presented a Rule 68 offer before a motion for class certification was filed, the court found that the "relation back doctrine," typically applied to

---

[3] In *Lusardi*, 975 F.2d at 975, the Third Circuit further instructed that "a named plaintiff whose individual claim has expired may continue in his representative capacity to litigate class certification issues only for two limited purposes: (1) to argue a certification motion that was filed before his claims expired and which the district court did not have a reasonable opportunity to decide; and (2) to appeal a denial of a class certification motion presented when his claims were live."  These limited exceptions are designed "to ensure proper resolution of any certification motion filed at a time when the named plaintiff's own claims were still in issue."  *Id*.  Here, because dismissal of two of the four named plaintiffs would not inhibit proper resolution of the class certification motion – *i.e.*, a live case or controversy is still presented as to putative class representatives Hernandez and Geiger – these exceptions have no application.

prevent "inherently transitory" claims from being dismissed as moot, would permit consideration

of the plaintiff's motion for class certification. *Id*. at 348.

   The *Weiss* court was careful, however, to distinguish the circumstances presented in that

case from those presented in *Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir. 1992):

> In *Lusardi*, the named plaintiffs, following two orders
> decertifying a class, agreed to a full and unconditional release of
> their individual age discrimination claims, and the court dismissed
> their individual claims. *Id*. at 968-69. Nonetheless, the named
> plaintiffs filed a de novo motion for class certification. After the
> trial court dismissed the class claims as moot, we affirmed, noting
> that after the named plaintiff's claims had been voluntarily settled,
> they no longer had justiciable claims when they moved for class
> certification. *Id*. at 978-80.
>
> Unlike the case here, *Lusardi* did not involve an offer of
> judgment made in response to the filing of a complaint. The
> named plaintiffs voluntarily entered into individual settlements
> subsequent to class decertification. *See id*. at 979 ("Here, there is
> no dispute that plaintiffs voluntarily settled their individual
> claims."). In this appeal, the "picking off" scenarios described by
> the Supreme Court in *Roper* are directly implicated. In *Lusardi*
> they were not. . . . The tactic at play here, similar to those
> described in *Roper* and *Zeidman*, contrasts with the voluntary
> settlement in *Lusardi* where the plaintiffs agreed to settle with the
> defendants after two motions for class certification had been
> denied. Indeed, even *Lusardi* noted, in a somewhat different
> context, that it "simply was not a case where . . . the class-action
> defendant successfully prevented effective resolution of a class
> certification issue." *Lusardi*, 975 F.2d at 983. In *Lusardi*, no
> unilateral action by the Defendant rendered the plaintiffs' claims
> "inherently transitory." Defendants here used the Rule 68 offer to
> thwart the putative class action before the certification question
> could be decided.

*Weiss*, 385 F.3d at 348-49 (footnote omitted).

   In the instant case, Plaintiffs cannot dispute that a case or controversy is no longer

presented as to the claims of Mr. Sourovelis and Ms. Welch by virtue of the December 18, 2014,

orders of the Court of Common Pleas granting the parties' consent motions for discontinuance of

9

the underlying forfeiture proceedings.  While these plaintiffs' claims were live at the time their motion for class certification was filed, their dismissal from the suit would not prevent consideration of the certification issue, as the claims of putative class representatives Hernandez and Geiger remain.  This is not a case where the "'picking off' scenarios" discussed in *Weiss* and *Roper* are implicated, *Weiss*, 385 F.3d at 349; rather, Plaintiffs Sourovelis and Welch voluntarily consented to the terms of discontinuance as to the underlying forfeiture proceedings.  Thus, as in *Lusardi*, "no unilateral action by the Defendant rendered the plaintiffs' claims 'inherently transitory.'"  *Id.*  Because no exception to the mootness doctrine applies, the claims of Plaintiffs Sourovelis and Welch must be dismissed.

### 2.   COUNTS ONE AND TWO OF THE AMENDED COMPLAINT ARE MOOT UNDER THE DOCTRINE OF VOLUNTARY CESSATION.

In the first count of the amended complaint, Plaintiffs challenge the D.A. Defendants' alleged "policy and practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g) to seize real property without first providing owners or residents of the property with notice and a meaningful opportunity to be heard."  (ECF No. 40 ¶ 243).[4]  According to Plaintiffs, the D.A. Defendants'

---

[4]  Section 6802(f) provides, in relevant part, "[u]pon application of the Commonwealth, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond or take any other action to preserve the availability of property described in section 6801(a) or 6801.1(a) for forfeiture under this section[.]"  42 Pa.C.S. § 6802(f).  Any order entered under this section "shall be effective for not more than 90 days unless extended by the court for good cause shown or unless an indictment or information [alleging the property is subject to forfeiture] has been filed."  *Id.*

Pursuant to § 6802(g):

> A temporary restraining order under subsection (f) may be entered upon application of the Commonwealth without notice or opportunity for a hearing when an information or indictment has not yet been filed with respect to the property, if the Commonwealth demonstrates there is probable cause to believe that the property with respect to which the order is sought would

applications for *ex parte* "seize and seal" orders in the Court of Common Pleas violate the rule of *United States v. James Daniel Good Real Property*, 510 U.S. 43, 62 (1993), that, "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture."  The second count of the amended complaint is related to the first insofar as it alleges that, "[a]fter applying for and obtaining [*ex parte*] orders to seize and seal the homes of Plaintiffs[,] . . . Defendants and their agents require property owners to agree to certain conditions in order to re-enter their properties."  (ECF No. 40 ¶ 254).  Plaintiffs take issue with forfeiture prosecutors allegedly "compelling property owners to agree that if [the Commonwealth] attempt[s] to forfeit property in the future, the proper owner waives his or her right to assert an innocent-owner defense under 42 Pa. Const. § 6802(j)[5] or to assert a

---

be subject to forfeiture under this chapter and that provision of notice will jeopardize the availability of the property for forfeiture.  Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period.  A hearing requested concerning an order entered under this subsection shall be heard at the earliest possible time and prior to the expiration of the temporary order.

42 Pa.C.S. § 6802(g).

[5] Pursuant to 42 Pa.C.S. § 6802(i), "[u]pon the filing of a claim for the property setting forth a right of possession, the case shall be deemed at issue and a time shall be fixed for the hearing."  Under § 6802(j):

At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

constitutional defense that forfeiture of the property would constitute an excessive fine" in agreements supporting a petition for vacatur of a prior *ex parte* "seize and seal" order or discontinuance of the forfeiture proceeding itself.  (*Id.* at ¶ 256).[6]  Plaintiffs further object to the inclusion in such agreements of provisions "compelling property owners to agree to bar specific individuals from their property as a condition of being let back into their property after it has been seized *ex parte* or as a condition of withdrawing the forfeiture petition."  (*Id.* at ¶ 258).

The D.A. Defendants have not applied for an *ex parte* "seize and seal" order since on or about September 22, 2014.  (*See* Exhibit C, Declaration of First Assistant District Attorney Edward F. McCann, Jr.).  On October 1, moreover, the District Attorney implemented a policy ensuring that any future application for an *ex parte* "seize and seal" order comports with the requirements of *James Daniel Good Real Property*.  Because there is no reasonable expectation that the alleged conduct will resume, a live case or controversy is no longer presented as to either of the first two claims of the amended complaint.

---

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him.  In the event it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent.  Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa.C.S. § 6802(j).

[6] While it is not entirely clear from the amended complaint, Plaintiffs appear to allege that requiring such conditions in unsealing or settlement agreements is unconstitutional insofar as the prosecutors have unfair leverage following execution of *ex parte* "seize and seal" orders.  In such circumstances, Plaintiffs assert, they are impermissibly "compelled" to accept terms to which they might otherwise not agree.  In the case of settlement agreements where a "seize and seal" order is not in place, no constitutional concern would seem to be implicated.  Indeed, in those circumstances, the parties should be free to negotiate the settlement of a forfeiture proceeding as they see fit.

"When there is a voluntary cessation of a policy, a claim will not be rendered moot if there remains the possibility that plaintiffs will be disadvantaged 'in the same fundamental way.'" *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993)).  An action should be dismissed on mootness grounds, however, if the defendant demonstrates that "there is no reasonable expectation that the wrong will be repeated." *Id.* (internal marks and citation omitted); *see also New Jersey Turnpike Authority v. Jersey Central Power and Light*, 772 F.2d 25, 31 (3d Cir. 1985) ("[T]he cessation of the conduct complained of makes the case moot if subsequent events make it clear that the wrongful behavior could not reasonably be expected to recur").  While "a defendant claiming its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," an "unconditional and irrevocable" promise to refrain from challenged conduct has been held to provide adequate assurance.  *Already, LLC v. Nike, Inc.*, --- U.S. ----, ----, 133 S.Ct. 721, 726-27 (2013).

The attached declaration of First Assistant District Attorney Edward F. McCann, Jr., makes clear that, while the D.A. Defendants dispute liability as to the first two counts of the amended complaint on the ground that the conduct complained of was never a policy or practice of the District Attorney, no application for an *ex parte* "seize and seal" order has been submitted to the Court of Common Pleas by any prosecutor of the Philadelphia District Attorney's Office since shortly after this suit was filed, and the District Attorney has established safeguards to ensure that any future application comports with the requirements of due process.  Specifically, on October 1, 2014, the District Attorney instituted a policy requiring "approval by the First Assistant District Attorney, or his or her designee, of any application for an *ex parte* 'seize and

seal' order, and that such approval may be given only where 'exigent circumstances' are presented, as that term is defined in *James Daniel Good Real Property*." (Ex. C ¶ 6). Insofar as the First Assistant is assigned to "oversee the day-to-day operations of the [District Attorney's] Office in consultation with the District Attorney" (*id*. at ¶ 1), he is uniquely qualified to ensure compliance with this policy going forward.

Under the circumstances of this case, the D.A. Defendants' prompt and voluntary cessation of applying for *ex parte* "seize and seal" orders and the establishment of a policy ensuring compliance with *James Daniel Good Real Property* renders moot the first and second counts of Plaintiffs' amended complaint. Accordingly, those claims must be dismissed.

### 3. PLAINTIFFS CANNOT ESTABLISH ARTICLE III STANDING AS TO THE FIRST, THIRD, AND SIXTH COUNTS OF THE AMENDED COMPLAINT.

In two prior motions to dismiss filed in this case – one of which was rendered moot by Plaintiffs' amended complaint; the other was among a host of motions denied without prejudice by the court – the D.A. Defendants sought dismissal of the first count of the complaint based on the *Rooker-Feldman* doctrine, arguing that Plaintiffs impermissibly challenged the propriety of the Court of Common Pleas granting *ex parte* "seize and seal" orders in their forfeiture cases. The core of that argument was simply that Plaintiffs' alleged injury resulted not from the D.A. Defendants applying for such relief, but from the state court granting it. Similarly, the third count of the amended complaint faults the D.A. Defendants for "failing to provide prompt post-deprivation hearings" to the owners of property against which forfeiture petitions have been filed (ECF No. 40 ¶ 269), but it is the Court of Common Pleas, not the D.A. Defendants, that directs property owners to appear for a post-deprivation "hearing" in Courtroom 478 of Philadelphia City Hall. (*Compare* ECF No. 40 ¶ 128, discussing "Notice of Hearing" served upon Markela

14

Sourovelis, *with* ECF No. 23-2, the actual "Notice of Hearing" directed by the court).  In the sixth count of the amended complaint, moreover, Plaintiffs allege that it is the "policy and practice" of the D.A. Defendants to "run the forfeiture proceedings in Courtroom 478" (ECF No. 40 ¶ 289), but Courtroom 478 was established by court administration, not by the D.A. Defendants, as an anteroom for property owners to meet with prosecutors to discuss preliminary issues in forfeiture cases.  The criminal motions court remains available for parties to forfeiture proceedings; indeed, Plaintiffs' counsel have vigorously litigated Mr. Geiger's forfeiture case in criminal motions court.  (*See* ECF No. 38-4, Declaration of Jennifer Kralle; ECF No. 41-3, state court docket of Geiger forfeiture proceedings).[7]

As to each of these claims, Plaintiffs have not demonstrated that they have suffered an "injury-in-fact" that is "fairly traceable" to the conduct of the D.A. Defendants and, as to the third and sixth counts of the amended complaint, they have not shown that the requested relief will redress their alleged injuries.  Because Plaintiffs cannot establish Article III standing, these claims are subject to dismissal.

"[T]he irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must have "suffered a concrete, particularized, injury-in-fact, which must be actual or imminent, not conjectural or hypothetical."  *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (internal

---

[7] As a practical matter, with respect to real property owners, the need for a prompt post-deprivation hearing has been rendered moot by the D.A. Defendants' October 1, 2014, policy ensuring that any future application for an *ex parte* "seize and seal" order comports with the requirements of due process.  (*See* Ex. C).  As will be discussed, moreover, personal property owners have an adequate post-deprivation remedy in the form of a motion for return of property pursuant to Pa.R.Crim.P. 588.  *See Commonwealth v. Allen*, 107 A.3d 709, 720 (Pa. 2014) ("The availability of a motion for the return of property under criminal procedural rule 588 has been held to satisfy the requirement of post-deprivation process" (citing *McKenna v. Portman*, 538 Fed.Appx. 221, 224-25 (3d Cir. 2013)).

marks and citation omitted).  Second, the plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  *Id.* (quoting *Lujan*, 504 U.S at 560).  Finally, "the plaintiff must establish that a favorable decision likely would redress the injury."  *Id.*

With respect to the first count, Plaintiffs cannot dispute that the alleged injury – the temporary seizure of property pursuant to *ex parte* "seize and seal" orders – is "fairly traceable" to the orders themselves, not to the prosecutors' applications for them.  Indeed, Plaintiffs acknowledge that forfeiture prosecutors seeking *ex parte* "seize and seal" orders against their property relied on provisions of the Forfeiture Act (*see* ECF No. 40 ¶ 243), which expressly authorize the state court to "enter a restraining order or injunction, require the execution of a satisfactory performance bond or take any other action to preserve the availability of property" subject to forfeiture, 42 Pa.C.S. § 6802(f), and to do so "without notice or opportunity for a hearing . . . if the Commonwealth demonstrates there is probable cause to believe the property with respect to which the order is sought would be subject to forfeiture under this chapter," *id.* at § 6802(g).  Under Pennsylvania law, "there is a strong presumption that legislation is constitutional," *Montgomery Co., Pa. v. MERSCORP, Inc.*, 16 F.Supp.3d 535, 539 (E.D.Pa. 2014), and the D.A. Defendants cannot be liable under § 1983 for seeking relief in reliance on such a statute, particularly where their applications were subject to judicial approval.

Similarly, as to the third and sixth counts of the amended complaint, any injury suffered by Plaintiffs associated with forfeiture proceedings in "Courtroom 478" is attributable to court administration, and not to the D.A. Defendants.  Self-evidently, the D.A. Defendants do not control the allocation of judicial resources in the Court of Common Pleas; thus, they clearly could not have a "policy and practice" affecting where property owners are directed by the court

to appear for post-deprivation proceedings or whether a judge presides over that courtroom.  For this reason, the relief sought by Plaintiffs – *i.e.*, declarations that the alleged "policies and practices" are unconstitutional and injunctive relief prospectively enjoining their application – could not remedy the alleged injuries because it would not affect court administration in the Court of Common Pleas.

Because the "injury-in-fact" alleged by Plaintiffs in the first, third, and sixth counts of their amended complaint is not "fairly traceable to the challenged action" of the D.A. Defendants, but rather results from "the independent action of some third party not before the court," *Toll Bros., Inc.*, 555 F.3d at 137, Plaintiffs cannot establish Article III standing as to those claims.  Accordingly, they must be dismissed.

## III.  Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

### A.  Standard of Review

The legal standard for a Rule 12(b)(6) motion is well-established.  Under that rule, the court must dismiss an action on motion made before a responsive pleading is filed when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  To plead a viable cause of action, the allegations contained in a complaint must do more than posit a "speculative" or "conceivable" claim; rather, they must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The court must disregard both "legal conclusions" and "conclusory statements" and must scrutinize the well-pleaded factual allegations to ensure that they are more than "merely consistent with a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted); *see also Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (disregarding "bald assertions" and "legal conclusions" in evaluating a motion to dismiss).

Rather than merely alleging a plaintiff's entitlement to relief, a complaint must "show" such entitlement through well-pleaded factual allegations. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). "A plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B.**    **Argument**

**1.**    **INSOFAR AS THE NAMED PLAINTIFFS ARE THE OWNERS OF PROPERTY AGAINST WHICH FORFEITURE PETITIONS ARE PENDING IN STATE COURT, THEIR CLAIMS MAY BE ADJUDICATED IN THOSE PROCEEDINGS AND THIS COURT SHOULD ABSTAIN FROM DECIDING THEM.**

To the extent that the court determines that it may exercise jurisdiction over Plaintiffs' amended complaint, it should nevertheless abstain from doing so in deference to ongoing state court proceedings. *See In re Standard & Poor's Rating Agency Litig.*, 23 F.Supp.3d 378, 409 (S.D.N.Y. 2014) (finding *Younger* abstention "required" where all requirements set forth in *Sprint Communications, Inc. v. Jacobs*, --- U.S. ----, 134 S.Ct. 584 (2013), were satisfied; *see also Agarwal v. Schylkill County Tax Claim Bureau*, No. 3:CV-09-1921, 2010 WL 5175121, at *9 (M.D.Pa. Aug. 5, 2010) ("*Younger* abstention is mandatory if these conditions are met" (citing *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 68 (1st Cir. 2005)); *Ralston v. Zats*, No. Civ. A. No. 94-3723, 1997 WL 560602, at *12 (E.D.Pa. Aug. 26, 1997) ("Unlike *Younger* abstention, *Burford* abstention is not mandatory"). Because principles of comity and federalism militate in favor of abstention, Plaintiffs' amended complaint must be dismissed.

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States "held that principles of federalism and comity require district courts to abstain from enjoining pending state criminal proceedings absent extraordinary circumstances."   *Port Authority Police Benevolent Ass'n v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 173 (3d Cir. 1992).  Thus, *Younger* established that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."  *Sprint*, 134 S.Ct. at 588.  The Court later "extended *Younger* abstention" to two other classes of cases – namely, "particular state civil proceedings that are akin to criminal prosecutions" (*i.e.*, civil enforcement proceedings) and state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts."  *Id*. (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)).  These "three 'exceptional' categories . . . define *Younger*'s scope"; district courts are otherwise "obliged to decide cases within the scope of federal jurisdiction."  *Id*. at 588, 591.  Additionally, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), the Supreme Court "delineated three requirements which must be satisfied before a federal court may abstain from hearing a case over which it has jurisdiction: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues."  *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994); *see also Sprint*, 134 F.3d at 593 ("[t]he three *Middlesex* conditions . . . [are] *additional* factors appropriately considered by the federal court before invoking *Younger*" (emphasis in original)).  If those conditions are satisfied and one of the three "exceptional" categories of cases is presented, "the prospect of undue interference with state proceedings counsels against federal relief," *Sprint*, 134 S.Ct. at 588, and

the federal suit must be dismissed.  *See Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) ("[*Younger v. Harris*] contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts").

Here, the *Middlesex* conditions, which are not particularly onerous, are clearly satisfied. The first condition requires that state proceedings be both ongoing and judicial in nature.  *See, e.g., New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 369-70 (1989) ("*NOPSI*").  Here, Plaintiffs Hernandez and Geiger, the only plaintiffs as to which a live controversy is still presented, are the owners of property against which forfeiture proceedings are presently pending in the Court of Common Pleas; thus, their state cases are clearly ongoing and judicial in nature.  The second *Middlesex* condition requires that the pending state proceedings involve important state interests.  In assessing this factor, courts look not to the state's interest in the outcome of the case, but rather to the "importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 364-65.   Both the Commonwealth of Pennsylvania and the City of Philadelphia have a compelling interest in the procedure by which property related to criminal conduct is seized and forfeited, and in ensuring that this process comports in all respects with the requirements of the federal and state constitutions.  *See O'Neil*, 32 F.3d at 792 ("the City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular").  The third and final *Middlesex* condition is that *Younger* abstention is only appropriate if the state proceedings provide an adequate opportunity to adjudicate the constitutional issues raised in federal court.  *See Middlesex*, 457 U.S. at 431 ("Minimal respect for the state process, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights" (emphasis in

original)); *Huffman*, 420 U.S. at 610-11 (rejecting assumption that state court judges "will not be faithful to their constitutional responsibilities").   Plaintiffs certainly have an adequate opportunity to raise their constitutional claims in state court by, for example, asserting affirmative defenses, filing counterclaims, and/or noting appeals in their pending state cases.  *See Musko v. McClandless*, Civ. A. No. 94-3938, 1995 WL 262520, at *4 (E.D.Pa. May 1, 1995) (finding the third *Middlesex* condition satisfied where the plaintiff had "filed a counterclaim in the state court action which parallels his claims in this case"); *Commonwealth v. Real Property and Improvements at 2338 N. Beechwood Street*, 65 A.3d 1055 (Pa.Cmwlth. 2013) (recognizing that constitutional challenges to civil forfeiture procedure may be raised by affirmative defense in state court and considering due process claims on appeal).   Because all three *Middlesex* conditions are satisfied, this case passes the threshold test for *Younger* abstention.

The remaining question is whether any of the three "exceptional circumstances" identified by the Supreme Court is presented.  *See Sprint*, 134 S.Ct. at 594 ("*Younger* extends to the three 'exceptional circumstances' identified in *NOPSI*, but no further").   The state proceedings in the instant case fall squarely within the category of civil enforcement proceedings.  As one court recently explained:

> The threshold question in determining whether an action qualifies as a "civil enforcement proceeding" for *Younger* purposes is "that the state civil enforcement proceeding must be 'quasi-criminal' in nature." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (quoting *Sprint*, 134 S.Ct. at 593). To determine whether a proceeding is "quasi-criminal" the Court must examine whether: "(1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges." *Sprint*, 134 S.Ct. at 592; *see also ACRA Turf Club*, 748 F.3d at 138.

*NCAA v. Corbett*, 25 F.Supp.3d 557, 565 (M.D.Pa. 2014).

Here, these questions must be answered in the affirmative.  The plaintiffs' state court civil forfeiture proceedings were brought by the Commonwealth of Pennsylvania; the proceedings were initiated to sanction wrongful conduct; and the forfeiture proceedings are closely related to criminal cases.  *See 2338 N. Beechwood Street*, 65 A.3d at 1063 ("In concluding that forfeiture proceedings are quasi-criminal punitive proceedings, [*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 University Drive*, 61 A.3d 1048 (Pa.Cmwlth. 2012)] relied upon cases by the United States Supreme Court holding that the Fourth and Fifth Amendment protections in criminal cases are applicable in forfeiture proceedings"); *Commonwealth v. Allen*, 59 A.3d 677 (Pa.Cmwlth. 2012) ("forfeiture proceedings are . . . civil in form, but quasi-criminal in character) (internal marks and citation omitted)); *Commonwealth v. Perez*, 941 A.2d 778, 780 (Pa.Cmwlth. 2008) (civil forfeitures "are the *in rem* consequence for wrongdoing prescribed by statute" and property is not forfeited "as a result of the criminal conviction, but through a separate proceeding, civil in form but quasi-criminal in nature").  Because civil forfeiture is, by definition, quasi-criminal in nature, the instant case plainly relates to ongoing state civil enforcement proceedings, one of the three "exceptional circumstances" for which the Supreme Court has determined *Younger* abstention is warranted.

Even where, as here, an exceptional circumstance is presented and the *Middlesex* conditions are satisfied, courts have sometimes found abstention inappropriate if dismissal of the federal case would result in great, immediate, and irreparable injury to the federal plaintiffs, *see Kugler v. Helfant*, 421 U.S. 117, 123 (1975), or if declining to abstain would not "in any way impair the ability of the state courts of Pennsylvania to adjudicate anything that is currently before them," *Marks v. Stinson*, 19 F.3d 873, 884 (3d Cir. 1994).  Neither of those concerns is implicated here.  There is no apparent reason why requiring Plaintiffs to bring their constitutional

claims in state court, rather than federal court, would result in any injury to them – let alone great, immediate, and irreparable injury.  Indeed, providing state appellate courts an opportunity to determine the propriety of the procedures applied in the Court of Common Pleas would seem to be the most efficient way of bringing about the wholesale changes in state civil forfeiture proceedings that Plaintiffs purportedly seek.  Providing guidance to lower courts and correcting their errors is, after all, a primary function of state appellate courts; in fact, recent decisions of the Commonwealth's appellate courts have dramatically altered forfeiture procedure in Pennsylvania.  *See Commonwealth v. Allen*, 107 A.3d 709, 718 (Pa. 2014) (concluding that the "failure to file a return motion during the pendency of the criminal charges . . . or within thirty days following dismissal of the charges results in waiver" of the right to return of property seized by police); *Commonwealth v. 605 University Drive*, 104 A.3d 411 (Pa. 2014) (holding that Pennsylvania Rules of Civil Procedure apply in forfeiture proceedings to the extent they are not in conflict with specific provisions of the Forfeiture Act); *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836 (Pa.Cmwlth. 2014) (*en banc*) (altering state court analyses of innocent owner and constitutional excessive fines defenses).  Moreover, as Plaintiffs' amended complaint attacks virtually every aspect of the civil forfeiture process presently in place in the City of Philadelphia, and seeks a return of all property subject to forfeiture, it is inconceivable how a ruling in the instant case could possibly *not* impair the state court's ability to adjudicate the ongoing civil cases.

In sum, this is precisely the type of case to which the *Younger* abstention doctrine was intended to apply.  Because the court should abstain from deciding Plaintiffs' claims, the amended complaint should be dismissed.

23

2.    **THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE IS AN IMPROPER DEFENDANT TO THIS ACTION.**

Plaintiffs' claims against the Philadelphia District Attorney's Office fail as a matter of law because a civil action may not be brought against a department or division of the City of Philadelphia, such as the District Attorney's Office.  Pursuant to 53 P.S. § 16257:

> All bonds, contracts and obligations heretofore executed, judgments entered, claims filed, and suits now pending in the name of any department of said city, formerly having had a corporate existence, are declared to be good and valid, and to inure to the use of the city, but no such department shall be taken to have had, since the passage of the act to which this is a supplement, a separate corporate existence, and hereafter all suits growing out of their transactions, and all claims to be filed for removing nuisances, together will all bonds, contracts and obligations, hereafter to be entered into or received by the said departments, shall be in the name of the City of Philadelphia.

*See also Allen v. District Attorney's Office of Philadelphia*, 644 F.Supp.2d 600, 611 (E.D.Pa. 2009) ("the District Attorney's Office 'is not an entity for purposes of § 1983 liability"); *Brinson v. City of Philadelphia*, No. 11-7479, 2012 WL 642057, at *2 (E.D.Pa. Feb. 28, 2012) ("The Philadelphia District Attorney's Office is not an appropriate defendant in this case . . . [because] [l]ocal prosecutorial offices are not legal entities separate from the local governments of which they are a part and, accordingly, may not be sued under § 1983") (citing *Reitz v. County of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability")); *Domenech v. City of Philadelphia*, No. 06-1325, 2007 WL 172375, at *2 (E.D.Pa. Jan. 18, 2007) ("Plaintiff's § 1983 claims against the district attorney's office cannot stand because the [Phildelphia] District Attorney's Office is not an entity that can be sued under [42] U.S.C. § 1983").

Consistent with this authority, Plaintiffs' claims against the Philadelphia District Attorney's Office fail as a matter of law and must be dismissed.

3.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
RELIEF AS TO PLAINTIFF GEIGER.

According to the amended complaint, Plaintiff Geiger "is a full-time sanitation worker for the City of Philadelphia" whose "car, a 2000 Buick LeSabre, and $580.00 in cash were seized on January 17, 2014," following his arrest on charges of selling drugs.  (ECF No. 40 ¶¶ 15, 207-08).  Mr. Geiger subsequently "accepted a plea agreement whereby he pled guilty to one count of possession of drug paraphernalia – the empty ziplock bags [recovered by policy from his automobile incident to his arrest]" and was required to pay "a $200 fine and perform[ ] 20 hours of community service," after which his "record would be expunged."  (*Id*. at ¶ 210).  Plaintiffs fault the D.A. Defendants for "never inform[ing] Mr. Geiger that he would need to file a motion for return of property in order to stop storage fees from accruing on his vehicle"; instead, he later learned, in the context of a forfeiture proceeding, that "he would need to pay [$1,800 in storage fees] to get his car returned."  (*Id*. at ¶¶ 212, 218).  Plaintiffs acknowledge that the cash seized by police from Mr. Geiger "was forfeited through a default judgment," and while they allege that he "never received a copy of the hearing notice or forfeiture petition for his money" (*id*. at ¶ 219), their claim as to him appears to relate to the fact that he was "forced to go without any car for more than two months" (*id*. at ¶ 220).

It is unclear what procedural due process, if any, is alleged to be lacking in the case of Plaintiff Geiger.  As the first count of the complaint relates only to orders applicable to real property, it does not apply to him, nor does the second count, which relates to property owners allegedly being compelled to waive certain rights during negotiations following the execution of *ex parte* "seize and seal" orders.  The third count, alleging a failure to provide a prompt, post-deprivation hearing, would not seem to apply, as Mr. Geiger, who was apparently represented by counsel in his criminal case, does not complain of any such deprivation following his arrest.

Neither does the fourth count – the alleged "repeated[ ] 'relisting'" of forfeiture proceedings (*id.* at 51 – seem to apply, as the amended complaint references him coming to court for forfeiture proceedings only twice, in June and August 2014.  (*Id.* at ¶¶ 213, 217, 218).  It is not at all clear how the fifth count, alleging a violation of due process related to the statutorily authorized distribution of the proceeds of forfeited property, violates due process with respect to him. Finally, as to the sixth count – the alleged policy and practice of the Commonwealth of "having prosecutors run the forfeiture proceedings in Courtroom 478" (*id.* at ¶ 289) – this appears to relate to the alleged failure to provide a prompt post-deprivation hearing before a judge, but Mr. Geiger does not assert that he was denied such a hearing within the context of his criminal case.

More importantly, the amended complaint does not, and cannot, allege that Plaintiff Geiger was deprived of any right to due process because he failed to take advantage of an available and adequate procedure for return of his property.  Individuals who have property seized incident to arrest are expected to seek the return of their property through their criminal proceedings by filing a return motion pursuant to Rule 588 of the Pennsylvania Rules of Criminal Procedure.  *See Allen*, 107 A.3d at 718.  Return motions can be filed by "a person aggrieved by a search and seizure" and must "be filed in the court of common pleas for the judicial district in which the property was seized."  Pa.R.Crim.P. 588(A).  A return motion may be, and often is, filed pre-trial and joined with a motion to suppress at a time when the defendant is almost certainly represented by counsel.  *See* Pa.R.Crim.P. 588(C).

As the Pennsylvania Supreme Court recently explained, that process redounds both to the arrestee's benefit and detriment.  On the one hand, arrestees have "the opportunity to move for return of the [p]roperty during the pendency of the criminal proceedings, or while the trial court retain[s] jurisdiction for thirty days following the dismissal of charges."  *Allen*, 107 A.3d at 717.

26

On the other hand, an arrestee waives the return of his property if he "fails to file a return motion during the pendency of the criminal charges against him or within thirty days following the dismissal of the charges." *Id*. Once the return is waived, the property eventually escheats to the Commonwealth.

The Third Circuit has already found that "Pennsylvania Rule of Criminal Procedure 588 provides an adequate post-deprivation remedy when police seize property pursuant to an investigation." *McKenna*, 538 Fed.Appx. at 225; *see also Potts v. City of Philadelphia*, 224 F.Supp.2d 919, 938 (E.D.Pa. 2002) (holding that Rule 588 was "an adequate post-deprivation remedy" to gun and permit seizure); *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F.Supp.2d 555, 571 (E.D.Pa. 2011) (rejecting plaintiff's due process claim because he has "not alleged that he has availed himself of Rule 588, much less that the procedure the rule establishes is "unavailable or patently inadequate"); *Barber v. Pennsylvania Dep't of Agriculture*, No. CIV.A.9-1462, 2010 WL 1816791, at *4 (W.D.Pa. May 3, 2010) ("Several courts have already determined that Pennsylvania has put into place adequate post-deprivation remedies. Plaintiffs have not alleged that Pa. R. Crim. Pro. 588 was inadequate or unavailable in any way." (internal citations omitted)).

As a general matter, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Because Plaintiff Geiger had a procedure available to him that has repeatedly been found by courts to be adequate and failed to take advantage of that procedure, he has failed to state a claim for a constitutional due process violation. Accordingly, the claims brought by this plaintiff must be dismissed with prejudice.

4.    **THE SECOND, FOURTH, FIFTH, AND SIXTH COUNTS OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1.  Thus, a state or municipality "may not authorize the deprivation of a protected liberty or property interest without providing a procedure in connection with that deprivation that meets the requirements of due process."  *Sample v. Diecks*, 885 F.2d 1099, 1114 (3d Cir. 1989) (internal citations omitted).  "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin*, 227 F.3d at 116).

Here, the first count of Plaintiffs' amended complaint – to the extent the court determines it may exercise jurisdiction over it – satisfies these requirements, as the Commonwealth's alleged policy and practice of obtaining and executing *ex parte* "seize and seal" orders allegedly results in a temporary deprivation of real property.  While the third count, alleging the deprivation of a prompt, post-deprivation hearing, is not fairly attributed to a policy or practice of the D.A. Defendants and is largely mooted by the policy related to *ex parte* "seize and seal" orders and the availability of a motion for return of property pursuant to Pa.R.Crim.P. 588, it is sufficiently pleaded insofar as it alleges the denial of a procedure due.  The remaining counts, however, appear to be almost entirely derivative of the deprivations alleged in these two counts.

Count two, which appears to apply solely to real property owners, alleges that, "[a]fter applying for and obtaining orders to seize and seal homes of Plaintiffs Sourovelis, Hernandez,

Welch, and members of the putative class *on the basis of ex parte applications that deprive them of notice or an opportunity to be heard*, Defendants and their agents require property owners to agree to certain conditions in order to re-enter their properties."  (ECF No. 40 ¶ 254 (emphasis added)).  As the italicized portion of the above-quoted allegation suggests, this claim involves no greater deprivation of process than is alleged in the first count of the amended complaint.  Thus, it is appears to be duplicative.   Plaintiffs further allege that "Defendants propose similar conditions as part of settlement deals," an alleged "policy and practice" that "impair[s] the property owners' access to the courts to assert their constitutional rights."  (*Id.* at ¶ 255).  The suggestion, at least in the absence of an *ex parte* "seize and seal" order, impairs litigants' access to the courts strains credulity, and Plaintiffs do not bother to explain how that could possibly be the case.  Indeed, such "conclusory statements" are insufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 678.

Similarly, as to the fourth count of the amended complaint – the "repeatedly relisting" of forfeiture proceedings – it is unclear how the alleged "policy and practice" of the D.A. Defendants deprives a property owner of a due process right.   While Plaintiffs cite the inconvenience these relistings occasion for forfeiture claimants, no deprivation of life, liberty, or property is threatened.  As noted, moreover, the sixth count faults the Commonwealth for staffing Courtroom 478 (and, apparently, for the absence of court personnel), but it is not clear what process is denied Plaintiffs by virtue of this alleged conduct over and above the conduct alleged in the third count.

As to the fifth count, which complains that Defendants retain the proceeds of forfeited property as specifically authorized by statute, *see* 42 Pa.C.S. § 6801(e – h), it is unclear how those allegations, if true, result in a due process violation.  Apparently, Plaintiffs intend to argue

that forfeiture prosecutors are improperly motivated to pursue forfeiture cases by virtue of a profit incentive.  Any such incentive, however, is not realized by the prosecutors themselves.  To the contrary, by statute, the proceeds are allocated for specific purposes subject to annual audits. Courts have found no due process violation in constitutional challenges to similar provisions. *See State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird*, 852 A.2d 1114, 1124 (N.J. App. Div. 2004) (finding no due process violation in similar forfeiture provision under New Jersey law where "[n]o government official stands to profit economically from vigorous enforcement" (quoting *Marshall v. Jerrico*, 446 U.S. 238, 250 (1980)).  Because the personal profit motive applicable in cases such as *Tumey v. Ohio*, 273 U.S. 510 (1927) (due process violation where judge had a "direct, personal, pecuniary interest" in the outcome of proceedings), *Ward v. Village of Monroeville*, 409 U.S. 57 (1972) (violation where "mayor's court" generated revenue for municipality as adjudicator of violation charges), and *Connally v. Georgia*, 429 U.S. 245 (1977) (fee scheme for the issuance of search warrants incentivized judges to grant warrants), is absent here, "[t]he biasing influence . . . [is] too remote and insubstantial to violate the constitutional constraints applicable . . . performing prosecutorial functions."  *One 1990 Ford Thunderbird*, 852 A.2d at 1122 (quoting *Marshall*, 446 U.S. at 243-44).

Because the second, fourth, fifth, and sixth counts do not plausibly allege violations of Plaintiffs' due process rights, these counts are subject to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV.      Conclusion

For the foregoing reasons, Defendants' joint motion to dismiss the amended complaint should be granted, with prejudice.


/s/ *Bryan C. Hughes*_____                    /s/ *Dimitrios Mavroudis*_____
BRYAN C. HUGHES                                  DIMITRIOS MAVROUDIS
Office of the District Attorney                  City of Philadelphia Law Department
Three South Penn Square, 13th Floor             1515 Arch Street, 14th Floor
Philadelphia, PA 19107                           Philadelphia, PA 19102
(215) 686-5775                                   (215) 683-5444
bryan.hughes@phila.gov                           dimitrios.mavroudis@phila.gov

Counsel for Defendants R. Seth Williams          Counsel for Defendants City of Philadelphia,
and Philadelphia District Attorney's Office      Mayor Michael A. Nutter, and Police
                                                 Commissioner Charles H. Ramsey