## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOS SOUROVELIS, DOILA WELCH, NORYS HERNANDEZ and NASSIR GEIGER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>CITY OF PHILADELPHIA; MICHAEL A. NUTTER, in his official capacity as Mayor of Philadelphia; PHILADELPHIA DISTRICT ATTORNEY'S OFFICE; R. SETH WILLIAMS, in his official capacity as District Attorney of Philadelphia; and CHARLES H. RAMSEY, in his official capacity as Commissioner of the Philadelphia Police Department;<br><br>      Defendants. | Civil Action No.  14-4687<br><br>Assigned to<br>the Honorable Judge Robreno<br><br>Special Management Track |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT

**Institute for Justice**
William H. Mellor*
Scott G. Bullock*
Darpana M. Sheth*
Robert P. Frommer*
901 North Glebe Road; Suite 900
Arlington, VA 22203
wmellor@ij.org; sbullock@ij.org;
dsheth@ij.org; rfrommer@ij.org
Tel: (703) 682-9320
Fax: (703) 682-9321
*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**Kairys, Rudovsky, Messing & Feinberg**
David Rudovsky (I.D. Number 15168)
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
drudovsky@krlawphila.com
Tel:  (215) 925-4400
Fax:  (215) 925-5365

*Local Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

PROCEDURAL HISTORY..................................................................................................4

STATEMENT OF FACTS ...................................................................................................5

    I.     PHILADELPHIA'S FORFEITURE PROGRAM IS UNPRECEDENTED IN SCALE .................5

    II.    PHILADELPHIA'S POLICIES AND PRACTICES PROMOTE THIS ENORMOUS VOLUME OF FORFEITURE AT THE EXPENSE OF THE DUE-PROCESS RIGHTS OF PROPERTY OWNERS ...........................................................................................6

        A. Defendants' "Seize and Seal" Policy ...........................................................7

        B. Defendants' Policy and Practice of Imposing Unconstitutional Conditions in Settlement and "Unsealing" Agreements ...................................9

        C. Defendants' Policy and Practice of Running Courtroom 478 ..........................9

    III.    PLAINTIFFS SUFFER DUE TO DEFENDANTS' POLICIES AND PRACTICES ...................11

        A. Christos Sourovelis ........................................................................................11

        B. Doila Welch ...................................................................................................12

        C. Norys Hernandez ...........................................................................................13

        D. Nassir Geiger .................................................................................................13

ARGUMENT......................................................................................................................14

    I.    THIS COURT HAS JURISDICTION OVER ALL PLAINTIFFS AND ALL SIX CLAIMS ......14

        A. Standard of Review Under Rule 12(b)(1) ......................................................15

        B. Defendants' Voluntary Cessation of Their "Seize and Seal" Policy After Being Sued Does Not Moot Plaintiffs' First and Second Claims for Relief. .......................................................................................................16

            1. *Contrary to Defendants' Representations, the McCann Declaration Does Not Actually Announce a Material Policy Change on Either of Plaintiffs' First or Second Claims* ....................18

2. *Defendants' Purported Policy Change Does Not Moot Plaintiffs' Challenge to Their "Seize and Seal" Policy Because It Is Not Binding and Can Be Revoked at Any Time* ..............20

3. *Any Purported Policy Change Does Not Moot Plaintiffs' Request for Retrospective Relief, Including Nominal Damages* ..........21

C. Plaintiffs Sourovelis's and Welch's Claims Are Not Moot Due to the Philadelphia D.A.'s Office's Voluntary Dismissal of Their Underlying Forfeiture Actions ...........................................................................22

1. *Under Binding Precedent, Plaintiffs Sourovelis and Welch Have Standing to Litigate Class Certification and the Merits of Their Claims* ..................................................................23

2. *The Claims of Plaintiffs Sourovelis and Welch Relate Back to the Time the Class-Certification Motion Was Filed* ............................25

3. *Plaintiffs Sourovelis and Welch Also Have Standing to Request Retrospective Relief* ...........................................................27

D. Plaintiffs Have Article III Standing to Raise Their First, Third, and Sixth Claims, Which Are All Fairly Traceable to Defendants' Conduct ........27

1. *Defendants' "Seize and Seal" Policy is the Direct Cause of Plaintiffs' Constitutional Injuries.* ....................................................28

2. *Defendants' Policies and Practices in Courtroom 478 Are the Direct Cause of Plaintiffs' Injuries Under Their Third and Sixth Claims.* ..............................................................................29

II. YOUNGER ABSTENTION DOES NOT APPLY TO PLAINTIFFS' CLAIMS......................33

A. The State Court Forfeiture Proceedings Are Inadequate to Raise Plaintiffs' First, Second, Third, and Fourth Claims.........................................34

B. This Court Should Exercise Jurisdiction Over Plaintiffs' Fifth and Sixth Claims Because Defendants Have a Direct Financial Interest in the Outcome of those State Court Forfeiture Proceedings .........................37

III. THE COMPLAINT STATES CLAIMS FOR VIOLATIONS OF DUE PROCESS...................39

A. Standard of Review on Rule 12(b)(6) ............................................................39

B. Plaintiffs' Second through Sixth Claims State Plausible Claims for Violations of Due Process...............................................................................40

C.  The Philadelphia D.A.'s Office Is a Proper Entity Under Section 1983. ........43

CONCLUSION.................................................................................................................47

CERTIFICATE OF SERVICE .......................................................................................48

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Allen v. Distict Attorney's Office of Philadelphia*, 644 F. Supp.2d 600 (E.D. Pa. 2009) ............ 46

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ................................................................. 17, 20

*Alvarez v. Smith*, 558 U.S. 87 (2009) .................................................................................. 30

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ......................................................................... 30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................. 39

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................................................. 39, 40

*Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525 (7th Cir. 1988) ...................................... 36

*Brinson v. City of Philadelphia*, Civ. Action No. 11-7479, 2012 WL 642057
    (E.D. Pa. Feb. 28, 2012) ........................................................................................ 45, 46

*Brist v. Cnty. of Delaware*, No. 94-1426, 1995 WL 50954 (E.D. Pa. Feb. 7, 1995) ................... 26

*Brown v. Phila. Hous. Auth.*, 350 F.3d 338 (3d Cir. 2003) ........................................... 26

*Burns v. Pa. Dep't of Correction*, 544 F.3d 279 (3d Cir. 2008) ................................... 21

*Camara v. Municipal Court*, 387 U.S. 523 (1967) ......................................................... 40

*Carey v. Piphus*, 435 U.S. 247 (1978) ............................................................................ 27

*Citizens for Health v. Leavitt*, 428 F.3d 167 (3d Cir. 2005) ........................................ 22

*Citizens for Health v. Thompson*, No. 03-2267, 2004 WL 765356 (E.D. Pa. 2004) ................... 22

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .......................... 17, 20

*City of Philadelphia v. Glim*, 149 Pa. Cmwlth. 491 (1992) .......................................... 44

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............... 33

*Commonwealth v. 2338 North Beechwood Street*, 65 A.3d 1055 (Pa. Cmmw. Ct. 2013) ........... 36

*Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 Univ. Drive*,
    104 A.3d 411 (Pa. 2014) .......................................................................................... 41

*Conover v. Montemuro*, 477 F.2d 1073 (3d Cir. 1972) .............................................................. 35

*Corr. Med. Care, Inc. v. City of Philadelphia*, No. 3980 AUG.TERM 2004,
    2004 WL 3051560 (Pa. Com. Pl. Dec. 20, 2004) ...................................................... 44

*Domenech v. City of Philadelphia*, No. 06 CV 1325, 2007 WL 172375
    (E.D. Pa. Jan. 18, 2007) .................................................................................. 45

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................... 32

*Found. for Fair Contracting, Ltd. v. G&M E. Contracting*,
    259 F. Supp. 2d 329 (D.N.J. 2003) ........................................................................ 31

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ............................................ 39

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 17

*Fuentes v. Shevin*, 407 U.S. 67 (1972) ...................................................................... 34

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013) ....................................... 24

*Gerstein v. Pugh*, 420 U.S. 103 (1975) ................................................................ *passim*

*Gibson v. Berryhill*, 411 U.S. 564 (1973) ............................................................. 33, 37

*Gould Elecs. Inc. v. United States*, 220 F.3d 169 (3d Cir. 2000) ................................... 15, 16

*Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277 (3d Cir. 1993) ...................... 15

*Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195 (3d Cir. 1992) ...................... 33

*Heyl & Patterson Intern., Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*,
    663 F.2d 419 (3d Cir. 1981) ................................................................................. 32

*Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) ......................................................... 20, 21

*Hough v. Com., Dep't of Transp.*, 155 Pa. Cmwlth. 162 (1993) ..................................... 44

*HSP Gaming, L.P. v. City Council for City of Philadelphia*, 595 Pa. 508 (2007) ................... 44

*Jaguar Cars v. Cottrell*, 896 F. Supp. 691 (E.D. Ky. 1995) .......................................... 38

*Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991) ............................... 15

*Kent v. Philadelphia D.H.S.*, 503 F. App'x 128 (3d Cir. 2012) ...................................... 44

*Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277 (2012) ............................. 17, 20, 22

*Knox v. Union Tp. Bd. of Educ.*, No. 2:13-5875, 2015 WL 769930
(D.N.J. Feb. 13, 2015) ............................................................................................... 33

*Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013) ......................... 40

*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) ....................................................... 30, 36

*Krimstock v. Safir*, No. 99 Civ. 12041 MBM, 2000 WL 1702035
(S.D.N.Y. Nov. 13, 2000) ........................................................................................... 36

*Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895 (3d Cir. 1987) ........................... 15

*Luizer v. Heigel*, 88 Pa. D. & C. 378 (Com. Pl. 1954) .................................................. 24

*Lusardi v. Xerox Corp.*, 975 F.2d 964 (3d Cir. 1992) .................................................... 26

*Malley v. Briggs*, 475 U.S. 335 (1986) ................................................................... 28, 29

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ....................................................... 31, 42

*Moore v. City of E. Cleveland*, 431 U.S. 494 (1977) ..................................................... 41

*Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884 (3d Cir. 1977) ..................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ................... 33

*Musko v. McLandless*, No. 94-3938, 1995 WL 262520 (E.D. Pa. May 1, 1995) ............ 36

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
508 U.S. 656 (1993) .............................................................................................. 17, 20

*Olde Disc. Corp. v. Tupman*, 1 F.3d 202 (3d Cir. 1993) ............................................... 33

*Paige v. Comp. Clinic*, No. 2010, 1980 WL 194241 (Pa. Comm. Pl. Oct. 31, 1980) .......... 44

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738 (2007) .......... 17

*Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .................................................. 23, 24

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) .................................................................................... 40

*People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) .......... 20

*Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia*,
    595 Pa. 538 (2007) ................................................................. 44

*Reitz v. Cnty. of Bucks*, 125 F.3d 139 (3d Cir. 1997) ..................... 43, 45, 46

*Remigio v. Kelly*, No. 04 Civ. 1877JGKMHD, 2005 WL 1950138
    (S.D.N.Y. Aug. 12, 2005) ....................................................... 36

*Russell v. City of Philadelphia*, 428 F. App'x 174 (3d Cir. 2011) .............. 44

*Simms v. District of Columbia,* 872 F. Supp. 2d 90 (D.D.C. 2012) .............. 30

*Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008) ...................... 30

*Sosna v. Iowa*, 419 U.S. 393 (1975) ...................................... 23, 24

*State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird*,
    371 N.J. Super. 228 (App. Div. 2004) ........................................ 42

*Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698 (11th Cir. 2014) ................ 25

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ........................... 35

*Tumey v. Ohio*, 273 U.S. 510 (1927) ..................................... 30, 43

*United States v. Assorted Computer Equip.*, No. 03-2356, 2004 WL 784493
    (W.D. Tenn. Jan. 9, 2004) ..................................................... 37

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968) ........... 17

*United States v. W.T. Grant Co.*, 345 U.S. 649 (1953) ....................... 17

*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004) ..................... 26

*Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir. 1987) ......................... 24, 25

*Williams v. City of Philadelphia,* 270 F.R.D. 208 (E.D. Pa. 2010) ........... 25, 27

*Wood v. City of Philadelphia*, No. 1348 C.D. 2013, 2014 WL 1004119
    (Pa. Commw. Ct. Mar. 13, 2014) ............................................. 44

## Statutes and Codes

29 U.S.C. § 216(b) .......................................................... 24

16 Pa. Cons. Stat. §§ 7701–7742 ............................................. 44

42 Pa. Cons. Stat. § 6801 ........................................................................................... 8

42 Pa. Cons. Stat. § 6802 ........................................................................................... 8

42 Pa. Cons. Stat. § 6802(f) ....................................................................................... 7

53 Pa. Cons. Stat. § 16257 ........................................................................................ 43

## **Other Authorities**

7 Standard Pennsylvania Practice 2d § 39:4 ............................................................24

Isaiah Thompson, *The Cash Machine*, Phila. City Paper, Nov. 28, 2012, *available at*
    http://citypaper.net/article.php?The-Cash-Machine-19189 ...................................... 11

Newberg on Class Actions § 2:8 (5th ed. 2014) ....................................................... 22

Pursuant to this Court's March 20, 2015 Order (ECF No. 54), plaintiffs Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger ("Named Plaintiffs"), on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), respectfully submit this Memorandum in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Class-Action Complaint.

## <u>INTRODUCTION</u>

Defendants' motion to dismiss cobbles together inapplicable doctrines of mootness, voluntary cessation, and abstention, unsupported arguments on standing, along with half-formed assertions that Plaintiffs fail to state valid claims under Rule 12(b)(6). Although each of Defendants' arguments affects only certain Named Plaintiffs or only certain claims, Defendants pray that all together their attempted vivisection of Plaintiffs' Complaint will result in a dismissal with prejudice, and thereby avoid the merits of Plaintiffs' challenge to their enormously profitable (and enormously unconstitutional) civil-forfeiture program.

As summarized below, none of Defendants' arguments have merit and most of their defenses, even if sustained, would neither require dismissal of the Amended Complaint nor limit the scope of the lawsuit in any material way to conserve judicial or party resources. In any event, Defendants' seven arguments are wrong on the law and on the facts.

*First*, Defendants argue that the Philadelphia D.A.'s Office conduct in temporarily suspending applications for a "seize and seal" order and requiring a supervisor to review any future applications moots two of Plaintiffs' claims, which challenge Defendants' "seize and seal" policy (First Claim) and their practice of requiring property owners to forego constitutional rights in agreements to vacate "seize and seal" orders as well as in settlement agreements (Second Claim). However, Defendants' claims of voluntary cessation are unfounded because:

(1) it is far from clear that the policy and practices Plaintiffs challenge under both claims have actually ceased; (2) the purported policy change is nonbinding and revocable; and, (3) any cessation of challenged conduct would not moot Plaintiffs' request for retrospective relief, including nominal damages.

*Second*, Defendants attempt to dismiss two Named Plaintiffs (Sourovelis and Welch) on mootness grounds because the Philadelphia D.A.'s Office dismissed their state-court forfeiture actions. However, under binding authority, it is clear that both these Plaintiffs have standing to litigate class certification and request prospective injunctive relief on behalf of the proposed class because Plaintiffs' still-pending motion for class-certification was filed ***before*** the dismissals. Moreover, the dismissals do not divest these Plaintiffs of standing to seek retrospective relief, including nominal damages.

*Third*, Defendants argue that all Named Plaintiffs lack standing to raise a challenge to Defendants' "seize and seal" policy (First Claim), a challenge to the failure of Defendants to provide a prompt, post-deprivation hearing (Third Claim), or a challenge to the policy and practice of the Philadelphia D.A.'s Office running the initial forfeiture proceedings in Courtroom 478 (Sixth Claim). Defendants point the finger at the state court system, arguing that challenged policies and practices are not their own but those of court administration. Again Defendants are wrong on all counts. The fact that a state court judge has approved an *ex parte* application to "seize and seal" in no way absolves Defendants in misleading state courts through boilerplate and conclusory allegations of exigent circumstances, where none are present. Additionally, on Plaintiffs' Third and Sixth Claims, federal courts have ruled on similar challenges without confronting any issues on standing. Moreover, the facts show that in reality the Philadelphia D.A.'s Office controls the procedures and proceedings in Courtroom 478.

*Fourth*, Defendants invoke *Younger* abstention to argue that this Court should not exercise its jurisdiction over all of Plaintiffs' claims, despite earlier conceding that two Named Plaintiffs (Sourovelis and Welch) have no pending state court proceedings. Consequently, the Court need not even address this argument. In any event, *Younger* abstention does not apply to any of the due-process claims Plaintiffs raise because, again under binding precedent, their very challenge is to the adequacy of those state-court proceedings due to the lack of any preliminary hearings and Plaintiffs' claims of bias in those proceedings.

*Fifth*, Defendants argue that four of Plaintiffs' claims fail to state plausible claims for relief. *Sixth*, Defendants similarly argue that Plaintiff Geiger should be dismissed for failure to state any claim. Addressing these arguments together, Plaintiffs demonstrate how Defendants make mostly conclusory allegations (failing to grasp the gravamen of Plaintiffs' claims) and dispute the well-pleaded facts of the Amended Complaint to reach the merits, and improperly rely on cases in more advanced procedural postures.

*Seventh*, Defendants argue that the Philadelphia D.A.'s Office should be dismissed because it is not amenable to suit under Section 1983 as all suits against departments of the City must be brought against the City. This argument is inconsequential because dismissing the office would not narrow this litigation in any way, as Plaintiffs have also named D.A. Williams and the City of Philadelphia as defendants. In any event, Defendants are wrong: The Philadelphia D.A.'s Office is an independent entity created by state law, not a department of the City created by the City Charter. Moreover, the cases which Defendants cite are wrong on the law.

Accordingly, this Court should deny Defendants' motion to dismiss.

# PROCEDURAL HISTORY

On August 11, 2014, three real-property owners, plaintiffs Sourovelis, Welch, and

Hernandez, filed this putative class action challenging six different policies and practices

implementing the City's civil-forfeiture program. (Compl., ECF No. 1.) Contemporaneously,

Plaintiffs filed a motion for class certification under Rule 23(b)(2). (ECF No. 3.) That motion is

fully briefed and still pending before this Court. On November 17, 2014, Plaintiffs filed an

amended complaint adding plaintiff Geiger, who had personal property seized for forfeiture.

(Am. Compl., ECF No. 40.)

The Amended Complaint names as Defendants the City of Philadelphia, Mayor Michael

Nutter, and Police Commissioner Charles H. Ramsey, as well as the Philadelphia District

Attorney's Office and D.A. R. Seth Williams (together, the "Philadelphia D.A.'s Office").

Plaintiffs seek nominal damages and declaratory and injunctive relief under 42 U.S.C. § 1983 on

behalf of a class of "all persons who own property that currently is or will be the subject of a

civil-forfeiture petition brought by the Philadelphia D.A.'s Office." (*Id.* ¶ 231; Req. Relief ¶ 1.)

The Amended Complaint asserts the following six claims challenging specific policies and

practices of Defendants:

> **First Claim:** Applying for and executing *ex parte* orders to "seize and seal" real
> property without providing evidence of exigent circumstances or necessity violates due
> process under *United States v. James Daniel Good Real Property*. (*Id.* ¶¶ 238–52.)

> **Second Claim:** Requiring property owners to waive their statutory and constitutional
> rights in order to be let back into their property or have the forfeiture petition withdrawn
> is an unconstitutional condition that violates the substantive due-process rights of
> property owners. (*Id.* ¶¶ 253–65.)

> **Third Claim:** Failing to provide property owners with a prompt, post-deprivation
> hearing before a neutral arbiter where those owners may contest the basis for the seizure,
> restraint, or indefinite retention of their property pending an ultimate hearing on the
> merits violates due process under *Mathews v. Eldridge*. (*Id.* ¶¶ 266–71.)

**Fourth Claim:** Repeatedly "relisting" civil-forfeiture proceedings, which forces property owners to appear in person for these proceedings over and over again or else permanently lose their property through a default judgment violates due process under *Mathews v. Eldridge*. (*Id*. ¶¶ 272–78.)

**Fifth Claim:** Retaining forfeited property and its proceeds for use by the Philadelphia D.A.'s Office and the Philadelphia Police Department violates due process by presenting a conflict of interest. (*Id*. ¶¶ 279–87.)

**Sixth Claim:** Having prosecutors and employees of the Philadelphia D.A.'s Office control "hearings" in Courtroom 478 violates due process because of its direct financial interest in the outcome of those proceedings. (*Id*. ¶¶ 288–93.)

On March 16, 2015, Defendants filed a joint motion to dismiss. (ECF No. 52.)

## STATEMENT OF FACTS

Philadelphia's civil-forfeiture policies and practices have created a revenue-generating machine that mechanically processes forfeitures with little to no judicial oversight at the expense of property owners' due-process rights.

## I. PHILADELPHIA'S FORFEITURE PROGRAM IS UNPRECEDENTED IN SCALE.

Philadelphia's aggressive civil-forfeiture program yields $5.8 million in forfeiture revenue each year. (Am. Compl. ¶¶ 41–44.) From Fiscal Years 2002–2012, the Philadelphia D.A.'s Office collected $64 million—43% of the statewide forfeiture revenue. (*Id*. ¶ 45.)

The Philadelphia D.A.'s Office uses forfeiture funds to purchase vehicles, equipment, and other items and services of institutional value, and to pay salaries, including salaries of the prosecutors that administer Philadelphia's civil-forfeiture program, a direct conflict of interest. (*Id*. ¶¶ 40–41, 50–53, 280–82.) From Fiscal Years 2002–2012, the Philadelphia D.A.'s Office spent more than $25 million of its forfeiture revenue on salaries—more than twice the amount spent on salaries by all other county D.A. offices combined, but, tellingly, spent none on community-based drug and crime-fighting programs. (*Id*. ¶¶ 52, 54.) Under an agreement with Defendant Police Commissioner Ramsey, the Philadelphia D.A.'s Office shares its substantial

forfeiture proceeds with the Philadelphia Police Department.  (*Id.* ¶¶ 55, 283–84.)

Philadelphia forfeits without due process an enormous amount of personal property, including cash and cars, for civil forfeiture.  (*Id.* ¶¶ 3, 56, 59–64, 66, 68–70.)  The bulk of Philadelphia's forfeiture revenue comes from confiscating cash—often less than $100 per forfeiture.  (*Id.* ¶¶ 59–64.)  Taking such small amounts of money from people never convicted (or even charged) of a crime raises serious concerns about whether the seized money is even connected to criminal activity.  (*Id.* ¶¶ 60, 65.)  Additionally, Philadelphia seized and forfeited 3,290 vehicles from Fiscal Years 2002–2012, (*id.* ¶ 66), and all manner of other personal property, including, but not limited to, cell phones, clothing, jewelry, prescription medication, licensed firearms, and in one instance, a woman's jumper cables.  (*Id.* ¶ 68.)

Philadelphia also uses civil forfeiture to seize and forfeit real property on a scale unlike any other Pennsylvania county.  (*Id.* ¶ 69–71.)  From Fiscal Years 2002–2012, Philadelphia forfeited 1,172 real properties compared to just 56 real properties forfeited by all other counties combined.  (*Id.* ¶ 72.)

## II.   PHILADELPHIA'S POLICIES AND PRACTICES PROMOTE THIS ENORMOUS VOLUME OF FORFEITURE AT THE EXPENSE OF THE DUE-PROCESS RIGHTS OF PROPERTY OWNERS.

The enormous volume of forfeiture cases—and attendant revenue—is all accomplished through a mechanized system operated by a specialized prosecution unit of the Philadelphia D.A.'s Office called the Public Nuisance Task Force.  (*Id.* ¶¶ 19, 73–77.)  This Task Force generates such a high volume of civil-forfeiture petitions by relying on its prosecution assistants, paralegals, and staff to rotely copy arrest reports and property receipts onto forms that become the Notice of Forfeiture and Petition for Forfeiture.  (*Id.* ¶¶ 78, 81.)  It is the Philadelphia D.A.'s Office's policy and practice to send property owners threatened with civil forfeiture three form documents:  (i) a notice of forfeiture; (ii) a verified petition for forfeiture; and (iii) a notice of

hearing.  (*Id.* ¶ 89.)

## A.    Defendants' "Seize and Seal" Policy

Before filing petitions for forfeiture of real property, as alleged in the Amended

Complaint, it is the policy and practice of the Philadelphia D.A.'s Office to obtain *ex parte*

temporary restraining orders for real property and an *ex parte* order to "seize and seal" the

premises by relying on 42 Pa. Cons. Stat. § 6802(f) and (g).[1]  (*Id.* ¶¶ 82, 84.)  The Philadelphia

D.A.'s Office interprets these statutory provisions to allow the seizure of real property without

providing the owner with notice or opportunity to be heard.  (*Id.* ¶ 87, 243; *see also* Defs.' Mem.

Law Supp. Mot. Dismiss, ECF No. 52-1, ("Defs.' Mem.") 16; Defs.' Mem. Law Opp. Pls.' Mot.

Prelim. Inj., ECF No. 28-1, 17.)  Indeed, as with Named Plaintiffs Sourovelis, Welch, and

Hernandez, property owners frequently learn their home is threatened with forfeiture only when

armed police officers show up with the order to seize and seal the premises.  (Am. Compl. ¶¶ 88,

116.)

The Philadelphia D.A.'s Office routinely applies for and obtains *ex parte* "seize and seal"

orders in civil-forfeiture actions against homes or other real properties.  (*See id.* ¶¶ 239–42;

Decl. Darpana M. Sheth Supp. Mot. Prelim. Inj., ECF No. 22, ("Sheth Decl.") ¶ 3, Ex. 1

(showing DA filed *ex parte* applications in 22 out of 24 cases in a three-month sample).)  In

2014 alone, the Philadelphia D.A.'s Office applied for and obtained *ex parte* orders to "seize and

seal" real property in 126 out of 147 real-property forfeiture cases.  (*See* Decl. Scott G. Bullock

Supp. Opp. Defs.' Mot. Dismiss ("Bullock Decl.") ¶ 3-4 , Ex. A.)  Significantly, these

---

[1] The Controlled Substances Forfeiture Act provides an *ex parte* procedure to obtain "a restraining order or injunction, require the execution of a satisfactory performance bond or take any other action to preserve the availability of [the] property . . . for forfeiture." 42 Pa. Cons. Stat. § 6802(f). Under § 6802(g), an *ex parte* temporary restraining order may be entered "if the Commonwealth demonstrates that there is probable cause to believe that the property with respect to which the order is sought would be subject to forfeiture [ ] and that provision of notice will jeopardize the availability of the property for forfeiture." (*See* Am. Compl. ¶ 34.)

applications, like the ones submitted in the forfeiture actions against the homes of Plaintiffs

Sourovelis, Welch, and Hernandez contain only boilerplate, conclusory allegations that the

Commonwealth is moving for forfeiture of the real property under 42 Pa. Cons. Stat. §§ 6801,

6802 "because it was used and/or continues to be used (or intended to be used) to commit, or to

facilitate the commission of, violations of the Controlled Substances Act." (Am. Compl. ¶ 84;

*see, e.g.*, Sheth Decl. ¶¶ 3–4, 6 & Ex. 4.) These applications also contain only minimal factual

allegations copied verbatim from the Philadelphia Police Department Arrest Report, which is

incorporated and attached to the application. (Am. Compl. ¶ 84, *see, e.g.* Bullock Decl." ¶ 3–4&

Ex. A.)

Further, it is the policy and practice of the Philadelphia D.A.'s Office to apply for orders

to seize and seal real property without notice or a hearing and without presenting facts

demonstrating that:

- seizure is needed to preserve the property for forfeiture or that providing notice will jeopardize the availability of the property for forfeiture (Am. Compl. ¶¶ 85, 244);

- exigent circumstances, as defined by *James Daniel Good*, exist (*id*. ¶¶ 85, 245); or

- less restrictive means will be insufficient to protect Defendants' interests during the pendency of the civil-forfeiture proceedings (*id*. ¶¶ 86, 247).

It is the policy and practice of the Philadelphia D.A.'s Office to treat simple possession or the

single sale of controlled substances in a particular real property as exigent circumstances

warranting *ex parte* seizure. (*Id*. ¶ 246.) The fact that Defendants have applied for and executed

"seize and seal" orders in more than 85 percent of real-property forfeiture cases (Bullock Decl.

¶ 4), and that all of these applications contain only boilerplate allegations—with the same

typographical error—demonstrates Defendants' policy and practice of pursuing "seize and seal"

orders without any case-by-case assessment of necessity or exigency, as required by the Supreme

Court.  (Am. Compl. ¶¶ 84–86; *see, e.g.*, Sheth Decl. ¶¶ 3–4, 6 & Ex. 4.)

**B.      Defendants' Policy and Practice of Imposing Unconstitutional Conditions in Settlement and "Unsealing" Agreements**

Particularly in cases of real-property forfeitures, it is the policy and practice of the

Philadelphia D.A.'s Office to impose onerous conditions on property owners as a condition of

withdrawing, discontinuing, or settling the forfeiture action against their property.  (Am. Compl.

¶¶ 107; 202–03, 254–57; *see, e.g.*, Decl. Daren Waite ("Waite Decl."), ECF No. 28-2, Ex. 1(A).)

For example, a typical settlement agreement proposed to Plaintiff Sourovelis included the

following onerous conditions:

- Waiving, in any future forfeiture action, any affirmative defense based on *res judicata*, laches, innocent owner, or the Excessive Fine Clause;
- Subjecting "any prospective lessee, tenant, buyer or transferee of the property" to prior review by the Commonwealth;
- Giving the Commonwealth power to reject any prospective lessee, tenant, buyer, or transferee; and
- Screening prospective lessees, tenants, buyers, residents, or transferees of the property, including credit history and reference checks.

(Am. Compl. ¶ 144; Waite Decl. Ex. 1(A).)  The Philadelphia D.A.'s Office has also imposed a

condition barring specific individuals, including relatives, from the property.  (Am. Compl.

¶¶ 10, 12, 107, 257.)  Most egregiously, in cases in which the Philadelphia D.A.'s Office has

obtained an *ex parte* "seize and seal" order, prosecutors compel property owners to agree to these

kinds of conditions in order in "unsealing agreements" to lift the "seize and seal" order and gain

entry into their homes.  (*Id.* ¶¶ 107, 257.)

**C.      Defendants' Policy and Practice of Running Courtroom 478**

All property owners—real and personal—must enter "Courtroom" 478 for these

"hearings," where assistant district attorneys with the Public Nuisance Task Force fully control

the proceedings with the misleading appearance of a standard courtroom. (*Id*. ¶¶ 97, 99; Decl.

Briana Elzey ("Elzey Decl.") ¶¶ 4, 10–11.) On average there are 55 cases listed to be heard at

9:00 a.m. in Courtroom 478. (Am. Compl. ¶ 96; Elzey Decl. ¶ 6.) There is no judge, no jury, or

a court reporter; only prosecutors and employees of the Philadelphia D.A.'s Office and a Trial

Commissioner, whose role is strictly clerical. (Am. Compl. ¶ 99; Elzey Decl. ¶¶ 11, 14.) Rather

than making their case in front of an impartial fact-finder, the property owner faces a prosecutor

who:

(1) calls civil-forfeiture cases in "Courtroom" 478 on a docket calendar that the prosecutors control; (Am. Compl. ¶ 101; Elzey Decl. ¶¶ 12, 18–19);

(2) marks cases for default judgment; (Am. Compl. ¶ 102);

(3) authoritatively explains legal aspects of the forfeiture process to property owners (Am. Compl. ¶¶ 103–04; Elzey Decl. ¶ 22);

(4) advises property owners that they do not need counsel (Am. Compl. ¶ 105; Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF No. 23, ("Sourovelis Decl.") ¶ 11;Bullock Decl., Ex. D, Welch Decl. ¶ 14);

(5) dictates the terms of unsealing property or settlements; (Am. Compl. ¶ 107; Elzey Decl. ¶¶ 21–23);

(6) relists cases for "hearing," instructing property owners to return to Courtroom 478 at a specific date and time (Am. Compl. ¶¶ 108–09; Elzey Decl. ¶¶ 20–21; and

(7) unilaterally determines whether any documentation provided by the property owner is sufficient. (Am. Compl. ¶ 108.)

Prosecutors routinely give property owners a set of more than 50 pattern interrogatories,

with multiple discrete subparts, which must be answered under penalty of perjury. (*Id*. ¶ 106.)

When a case is relisted or continued, the assigned assistant district attorney fills in a form from

the Forfeiture Program of the Civil Trial Division of the First Judicial District of Pennsylvania

Court of Common Pleas of Philadelphia County, which instructs the property owner to return to

Courtroom 478 in City Hall on a specified date (typically a month later) at 9:00 AM. (*Id*. ¶ 109;

Elzey Decl. ¶¶ 20-21; Bullock Decl. Ex. E) The form advises the property owner that "FAILURE

TO APPEAR MAY RESULT IN YOUR PETITION BEING DISMISSED OR YOUR PROPERTY BEING

FORFEITED." (Am. Compl. ¶ 109; *See* Bullock Decl. Ex. E.)

In a review of 8,284 civil-forfeiture cases, property owners have been forced to return to

Courtroom 478 an average of five times, risking a default judgment if they failed to appear just

once. (Am. Compl. ¶ 111.) And more than 100 property owners were required to return to

Courtroom 478 ten times or more. (*Id.* (citing Isaiah Thompson, "The Cash Machine," *Phila.*

*City Paper*, Nov. 28, 2012, *available at* http://citypaper.net/article.php?The-Cash-Machine-

19189).)

### III. PLAINTIFFS SUFFER DUE TO DEFENDANTS' POLICIES AND PRACTICES.

Named Plaintiffs represent a cross-section of Philadelphia property owners.

#### A. Christos Sourovelis

Plaintiff Christos Sourovelis has owned his single-family home in the Somerton section

of Philadelphia for almost a decade. (Am. Compl. ¶ 9.) Defendants evicted Plaintiff Sourovelis

and his family from their home for more than a week without any notice or opportunity to be

heard after officers found their then 22-year-old son with a small amount of drugs and drug

paraphernalia. (*Id.* ¶¶ 10, 119.) Made homeless, Plaintiff Sourovelis, his wife, and their two

daughters were forced to stay at their eldest son's home for an entire week. (*Id.* ¶ 129;

Sourovelis Decl. ¶ 8.) The family suffered hardships from being kicked out of their home

including having their pregnant daughter sleep on a couch, having dirty clothes, and their

younger daughter missing school. (Am. Compl. ¶ 148; Sourovelis Decl. ¶ 9.)

No judge was present when Plaintiff Sourovelis came to Courtroom 478, and ADA Waite

called out their address. (Am. Compl. ¶¶ 131–32; Sourovelis Decl. ¶ 11.) ADA Waite

confirmed that they were not represented by counsel and advised them that they would probably

not need a lawyer as their case did not seem like it would be going to trial.  (Am. Compl. ¶ 132; Sourovelis Decl. ¶ 11.)  Under instruction of ADA Waite, Plaintiff Sourovelis signed an unsealing agreement.  (Am. Compl. ¶¶ 133–34; Sourovelis Decl. ¶¶ 12–13, Exs. 7–8.)  In order to be let back into his home, Mr. Sourovelis was forced to agree to a number of unconstitutional conditions, including barring his son from the property, relinquishing, in any future forfeiture action, both Mr. Sourovelis's innocent-owner defense under Pennsylvania law as well as his constitutional right to challenge the forfeiture of his home as an excessive fine.  (Am. Compl. ¶¶ 10, 136; Sourovelis Decl. Ex. 8.)  Mr. Sourovelis has never been charged with any crime. (Am. Compl. ¶ 9.)  Defendants voluntarily discontinued the forfeiture case against Mr. Sourovelis's home after this federal lawsuit was filed.  (*See* Defs.' Mem. 5.)

### B.      Doila Welch

Plaintiff Doila Welch lives in a row home in South Philadelphia with her children, brother, and sister.  (Am. Compl. ¶ 11.)  Plaintiff Welch suffers from lupus and severe rheumatoid arthritis, which make it difficult for her to be mobile.  (*Id.* ¶ 11; Bullock Decl. Ex. D, Welch Decl. ¶ 4.)  Neither Plaintiff Welch nor anyone else with an ownership interest in the property has been charged with any crime.  (Am. Compl. ¶ 11.) After police arrested her husband for selling drugs and her son for alleged conspiracy, Defendants obtained, but did not execute, an *ex parte* order to seize Plaintiff Welch's home and seal it to prevent entry.  (Am. Compl. ¶¶ 159– 60, 165; Bullock Decl. Ex. D, Welch Dec. ¶¶ 6–8 & Ex.3.)  Plaintiff Welch's matter was relisted multiple times and she was forced to go to Courtroom 478 despite her condition and in lieu of at least one doctor's appointment.  (Am. Compl. ¶¶ 166–67; Bullock Decl. Ex. D, Welch Decl. ¶¶ 14, 16.)

Defendants discontinued the case against Plaintiff Welch's home after this litigation

commenced.  (*See* Defs.' Mem. 5.)  Plaintiff Welch sustained irreparable injuries due to Defendants' actions including severe hardship living with the uncertainty of whether her family could remain in their home, strains on her relationships with her husband and children, and anxiety about her son's whereabouts.  (Am. Compl. ¶¶ 186–91; Welch. Decl. ¶¶ 19 –22.)

### C.    Norys Hernandez.

Plaintiff Norys Hernandez and her sister, Sonia Gonzalez, together own a rowhouse in which Sonia resided with her children.  (Am. Compl. ¶ 192.)  After Plaintiff Hernandez's nephew (Ms. Gonzalez's son) was arrested outside the home for selling and possessing a small amount of drugs, Defendants obtained an *ex parte* seize and seal order.  (*Id*. ¶¶ 193–95.)  After the matter was relisted several times, ADA Agami indicated to Plaintiff Hernandez and Ms. Gonzales could return to their property if they would sign a proposed unsealing order.  (*Id*. ¶¶ 199–202.)  Plaintiff Hernandez and Ms. Gonzalez signed the agreement on October 6, 2014, and were let back into their home.  (*Id*. ¶ 203.)  Under the terms of the agreement, Plaintiff Hernandez's nephew is prohibited from entering the property.  (*Id*.)

### D.    Nassir Geiger

Plaintiff Nassir Geiger was arrested for possession of empty Ziplock bags, and police seized his 2000 Buick LeSabre and $580 in cash.  (*Id*. ¶¶ 206, 208–09.)  Plaintiff Geiger believed that his car and money were simply seized as evidence and that they would be returned to him upon complying with the terms of the plea agreement.  (*Id*. ¶ 211. )  He learned only later that the Philadelphia D.A.'s Office was attempting to permanently keep his property through civil forfeiture.  (*Id*.)  The Philadelphia D.A.'s Office never informed Plaintiff Geiger that he would need to file a motion for return of property in order to stop storage fees from accruing on his vehicle.  (*Id*. ¶ 212.)  After the Philadelphia D.A.'s Office relisted his case for his car (*id*. ¶¶ 213,

217), it informed Plaintiff Geiger that he owed more than $1,800 in storage fees accrued since his car had been seized (*id.* ¶ 218). Plaintiff Geiger lost his money by default (which was noticed for a separate hearing than the one for his car) and had to purchase a new car to get to work. (*Id.* ¶¶ 219–220). This matter is ongoing.

## ARGUMENT

Section I addresses Defendants' factual challenge to the jurisdiction of this Court over four of Plaintiffs' six claims and over two Named Plaintiffs (Sourovelis and Welch) on the grounds of voluntary cessation, mootness, and standing. Section II addresses Defendants' argument that this Court should abstain from exercising its jurisdiction over all of Plaintiffs' claims under *Younger*. Section III first responds to Defendants' perfunctory arguments that Plaintiffs wholly fail to state claims under Rule 12(b)(6). Finally, Section III C explains why the Philadelphia D.A.'s Office is a proper party to this constitutional challenge under Section 1983.

## I.       THIS COURT HAS JURISDICTION OVER ALL PLAINTIFFS AND ALL SIX CLAIMS.

This Court has jurisdiction over all Named Plaintiffs and all six claims for relief. Nothing that the Philadelphia D.A.'s Office has done since the filing of this case affects the Court's jurisdiction, including the supposed voluntarily cessation of unconstitutional policies and practices and the dismissal of two state forfeiture proceedings against property owned by Named Plaintiffs.

Defendants argue that because the Philadelphia D.A.'s Office has changed its practice with respect to applications for *ex parte* orders to seize real property, Plaintiffs' first two claims challenging Defendants' "seize and seal" policy and challenging Defendants' practice of imposing unconstitutional conditions are moot. (Defs.' Mem. 10–14.) Similarly, Defendants assert that the Philadelphia D.A.'s voluntary dismissal of state forfeiture actions against homes

owned by Plaintiffs Sourovelis and Welch, after this lawsuit was filed, has mooted those plaintiffs' claims. (Defs.' Mem. 6–10.) Additionally, Defendants assert that three of Plaintiffs' claims (First, Third, and Sixth Claims) are not "fairly traceable" to Defendants' conduct, but rather are caused by the state court system, and thus must be dismissed for lack of standing. (Defs.' Mem. 14–17.)

Notwithstanding Defendants' post-litigation tactics and attempts to blame the state court system, this lawsuit presents a live controversy challenging Defendants' policies and practices, and is, therefore, properly before this Court. Plaintiffs now set forth the correct burdens and standard of review and explain why Defendants are wrong as a matter of law as to each argument.

### A. Standard of Review on Rule 12(b)(1)

"[T]he standard for surviving a Rule 12(b)(1) motion is lower than that for a Rule 12(b)(6) motion." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Id.* at 178 (3d Cir. 2000) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, "[d]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1280–81 (3d Cir. 1993) (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)).

While extrinsic evidence may be considered, the Third Circuit has cautioned against reaching the merits of a claim on a Rule 12(b)(1) motion. *Gould*, 220 F.3d at 178. This is particularly true here, where Defendants also bring challenges under Rule 12(b)(6). Consequently, the Third Circuit has articulated a relaxed standard of proof where the jurisdictional question is intertwined with the merits, in recognition of the fact that Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6) such as assuming the truth of the plaintiffs' allegations. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977) (reversing 12(b)(1) factual dismissal and stating "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage").

### B. Defendants' Voluntary Cessation of Their "Seize and Seal" Policy After Being Sued Does Not Moot Plaintiffs' First or Second Claims for Relief.

Defendants contend that because the Philadelphia D.A.'s Office temporarily suspended its "seize and seal" policy, Plaintiffs' first and second claims are moot. (Defs.' Mem. 10–14.) Specifically, Defendants assert that the Philadelphia D.A.'s Office has not applied for an *ex parte* "seize and seal" order since September 22, 2014. (Defs.' Mem. 12.) They further state that on October 1, 2014, the District Attorney instituted a policy requiring "approval by the First Assistant District Attorney, or his or her designee, of any application for an *ex parte* 'seize and seal' order, and that such approval may be given only where 'exigent circumstances' are presented, as that term is defined in *James Daniel Good Real Property*." (Defs.' Mem. 13–14; Ex. C, Decl. of First Assistant D.A. Edward F. McCann, Jr. ("McCann Decl."), ECF No. 52-4.) These interim and less-than-definitive alterations in Defendants' policies and practices, after being sued, do not moot Plaintiffs' challenge to Defendants' "seize and seal" policy and have no effect on Plaintiffs' claim challenging Defendants' practice of imposing unconstitutional

conditions.  *See Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012)

(cautioning that post-litigation "maneuvers designed to insulate" actions from review "must be

viewed with a critical eye").

"It is well settled that a defendant's voluntary cessation of a challenged practice does not

deprive a federal court of its power to determine the legality of the practice."  *City of Mesquite v.

Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).[2]  As the Supreme Court recently explained:

> [A] defendant cannot automatically moot a case simply by ending its unlawful
> conduct once sued.  Otherwise, a defendant could engage in unlawful conduct,
> stop when sued to have the case declared moot, then pick up where he left off,
> repeating this cycle until he achieves all his unlawful ends.

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013); *see also Knox*, 132 S. Ct. at 2287 ("[A]

dismissal for mootness would permit a resumption of the challenged conduct as soon as the case

is dismissed."); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203–04

(1968) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did the

courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'")

(quoting *United States v. W.T. Grant Co.*, 345 U.S. 649, 632 (1953)).  Consequently, the

Supreme Court has established a high bar to establish mootness under the doctrine of voluntary

cessation:  The defendant "bears the formidable burden of showing that is ***absolutely clear*** the

allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth,

Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (emphasis added).

Defendants fail by a wide margin in seeking to meet this "stringent" test.  *City of

Mesquite*, 455 U.S. at 289, n.10.  First, Defendants' post-litigation changes to its "seize and seal"

---

[2] *See also Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2751 (2007) (holding
action was not mooted because school district failed to meet "heavy burden" of showing that challenged practice of
using "racial tiebreaker" to assign students to oversubscribed schools "could not reasonably be expected to recur,"
but rather "vigorously defend[ed] the constitutionality of its race-based program"); *Ne. Fla. Chapter of the
Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (new statute "differs only
in some insignificant respect" and "disadvantages them in the same fundamental way").

practice are not material, especially in light of the Defendants' continued contention that the specific practice and policy attacked in this lawsuit is constitutional. Second, Defendants cannot meet their heavy burden of demonstrating that, under the doctrine of voluntary cessation, Plaintiffs' challenge to Defendants' "seize and seal" policy (First Claim) or their challenge to Defendants' practice of imposing unconstitutional conditions (Second Claim) is moot because any change in conduct or policy is nonbinding and revocable. Third, Defendants' changes do not moot Plaintiffs' request for either nominal damages or a declaration that those policies and practices as implemented in the past violated Plaintiffs' due-process rights.

### 1. Contrary to Defendants' Representations, the McCann Declaration Does Not Actually Announce a Material Policy Change on Either of Plaintiffs' First or Second Claims.

In an attempt to avoid a ruling on the constitutionality of their "seize and seal" policy and their practice of imposing unconstitutional conditions in negotiations with property owners, Defendants submit the McCann declaration. However, this declaration does not effectuate a material policy change that would moot Plaintiffs' First or Second Claims.

With respect to Plaintiffs' First Claim, the Philadelphia D.A.'s Office flatly denies that it ever has had any unconstitutional policy or practice:

> The Philadelphia District Attorney has never had, and will never have, a policy or practice that violates the due process rights of the citizens of Philadelphia, whether under the rule of *James Daniel Good Real Property* or otherwise; thus, the Office disputes liability as to the first count of the complaint.

McCann Decl. ¶ 3. As illustrated by Plaintiff Sourovelis's experience, it has been the Philadelphia D.A.'s practice to treat simple possession or the single sale of a controlled substance as exigent circumstances, justifying *ex parte* seizure—in direct contravention of *James Daniel Good* and its progeny. (Am. Compl. ¶ 246; Sourovelis Decl. ¶¶ 4,7.) Since the Philadelphia D.A.'s Office claims there is nothing impermissible in its past practices, the so-

called "new" policy is hardly a definitive or permanent change, as opposed to a possible gloss on past practices. After all, how can Defendants can remedy a problem they claim never existed? Under the McCann declaration, Defendants can continue the practice of applying for *ex parte* "seize and seal" orders using boilerplate allegations of exigent circumstances, with the only change of requiring a supervisor to review these applications. And the fact that the Philadelphia D.A.'s Office has refrained for several months from submitting such *ex parte* applications is no assurance that it will not do so in the future. Thus, far from being moot, the essential controversy over whether the District Attorney's Office complies with *James Daniel Good* is very much alive.

Additionally, the McCann declaration fails to ensure that future applications will comport with the due-process requirements set forth in *James Daniel Good.* The McCann declaration says nothing about what constitutes exigent circumstances, nothing about ensuring necessity of requesting an *ex parte* order, and nothing about ensuring that less restrictive means are insufficient. Furthermore, it does not address any of the actual steps Defendants will take to ensure people's homes are not seized without affording them notice or an opportunity to be heard. Thus, Defendants' conclusory and self-serving statements fail to meet their heavy burden to demonstrate that they will no longer seize real property *ex parte* without providing proof of exigent circumstances.

With respect to Plaintiffs' Second Claim, the McCann declaration is entirely silent as to Defendants' policy and practice of imposing unconstitutional conditions in settlement agreements as well as agreements to vacate "seize and seal" orders. Consequently, it is far from "absolutely clear" that "wrongful behavior could not reasonably be expected to recur" as to Plaintiffs' Second Claim. Defendants make no attempt to address how the Philadelphia D.A.'s

Office's change in its "seize and seal" policy—if there is a policy change—even affects Plaintiffs' second claim.

### 2. Defendants' Purported Policy Change Does Not Moot Plaintiffs' Challenge to Their "Seize and Seal" Policy Because It Is Not Binding and Can Be Revoked at Any Time.

Moreover, even if the McCann declaration was more definitive and detailed, it would still be inadequate because it only articulates a new but not necessarily permanent "policy." Nothing in the declaration permanently binds either the current District Attorney, or any successor, and therefore, this declaration falls far short of the kind of "unconditional and irrevocable" promise found sufficient to moot a claim. *See Already, LLC*, 133 S. Ct. at 728. Indeed, as the Defendants continue to defend the legality of the challenged policy, there is no reason to credit any assertion that the change is either material or permanent in nature. *Cf. Knox*, 132 S. Ct. at 2287.

Courts have repeatedly held that even legislative repeal of an unconstitutional practice is insufficient to show that the "behavior could not reasonably be expected to recur." *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (holding city's repeal of challenged ordinance and replacement with new ordinance that slightly changed old one did not moot challenge to case).[3] If the legislative repeal of an unconstitutional practice is insufficient to moot a challenge to that practice, the mere announcement of a policy change by an executive official is also insufficient. *See id.*; *Houchins*

---

[3] *See also City of Mesquite*, 455 U.S. at 289 (holding that "the city's repeal of the objectionable language would not preclude it from reenacting the precisely same provision"); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008) ("[N]either the City's initial representation that it would no longer enforce [the challenged ordinance] nor its formal repeal of that ordinance a few months later deprived the District Court of jurisdiction, particularly given that plaintiffs' complaint alleged a long history of unconstitutional conduct under the ordinance[.]").

*v. KQED, Inc.*, 438 U.S. 1, 25–26 n.13 (1978) (cautioning courts "to beware of efforts to defeat injunctive relief by protestations of [ ] reform").[4]

### 3. Any Purported Policy Change Does Not Moot Plaintiffs' Request for Retrospective Relief, Including Nominal Damages.

Notwithstanding Defendants' purported policy change, Plaintiffs Sourovelis, Welch, and Hernandez are also entitled to nominal damages and a declaration that Defendants' "seize and seal" policy and practice of imposing unconstitutional conditions violated their rights to due process. *See id.* ("[A] defendant's corrective action . . . following commencement of suit does not deprive the court of power to decide whether the previous course of conduct was unlawful.").

As noted *supra* at 11-13, the Philadelphia D.A.'s Office applied for and obtained *ex parte* "seize and seal" orders against Plaintiffs Sourovelis, Welch, and Hernandez, causing them injury. Additionally, the Philadelphia D.A.'s Office imposed unconstitutional conditions such as barring relatives from the premises before agreeing to vacate the "seize and seal" orders against these plaintiffs. (Sourovelis Decl. Ex. 8; Bullock Decl. Ex. D, Welch Decl. ¶ 6.) Moreover, the Philadelphia D.A.'s Office included a series of unconstitutional conditions in their initial proposals to settle the forfeiture actions against these plaintiffs' homes. (*See, e.g.*, Waite Decl., Ex. 1(A).) Thus, Plaintiffs are entitled to nominal damages. *See Burns v. Pa. Dep't of Correction*, 544 F.3d 279, 283–84 (3d Cir. 2008) (holding that although Department of Corrections promised to refrain from the future seizure of funds from inmate account, the due-process violation was "complete at the time that his account was originally assessed" and "[a] completed violation, if proven, would entitle plaintiff to at least an award of nominal damages").

Moreover, it has been Defendants' position throughout this litigation that the Sections 6801(b), 6802(f) and (g) of the Controlled Substances Forfeiture Act authorize *ex parte* seizures

---

[4] Had Defendants proceeded to enter into a binding settlement agreement or consent decree with Plaintiffs on these claims, such a binding agreement would have mooted Plaintiffs' First and Second Claims.

of real property.  (Defs.' Mem. 16; Defs.' Mem. Law Opp. Pls.' Mot. Prelim. Inj. 17.)

Consequently, Plaintiffs Sourovelis, Welch, and Hernandez are entitled to a declaration that, as

these provisions have been applied to authorize the *ex parte* seizure of their homes, Sections

6801(b), 6802(f), and 6802(g) are unconstitutional under *James Daniel Good*.

In sum, Plaintiffs' First and Second Claims for injunctive relief, declaratory relief, and

nominal damages are not mooted by Defendants temporarily refraining from applying for *ex*

*parte* "seize and seal" orders or requiring a supervisor to review any future application.  *See*

*Knox*, 132 S. Ct. at 2287 ("A case becomes moot only when it is impossible for the court to grant

any effectual relief whatever to the prevailing party.").

### C. Plaintiffs Sourovelis's and Welch's Claims Are Not Moot Due to the Philadelphia D.A.'s Office's Voluntary Dismissal of their Underlying Forfeiture Actions.

Defendants argue that "[b]ecause the state court civil forfeiture proceedings against

Plaintiffs Sourovelis and Welch have been discontinued . . . their claims are now moot and must

be dismissed."  (Defs.' Mem. 6.)  As a preliminary matter, this Court need not address this

argument as Defendants concede that Plaintiff Hernandez has standing (Defs.' Mem. 8 n.3, 10).

*See Citizens for Health v. Thompson*, No. 03-2267, 2004 WL 765356, at *8 (E.D. Pa. 2004)

("Because the Court may reach the merits of the case if at least one plaintiff has standing, the

Court will not examine the standing of the other plaintiffs."), *aff'd on other grounds sub nom.*

*Citizens for Health v. Leavitt*, 428 F.3d 167 (3d Cir. 2005).[5]

In any event, Defendants' attempt to dismiss Plaintiffs Sourovelis and Welch from this

action is without support.  Both plaintiffs have standing to seek class certification and request

prospective injunctive relief on behalf of the proposed class.  This is true because Plaintiffs'

---

[5] To the extent Defendants argue that the Court should dismiss the entire action (*see* Defs.' Mem. 7-8), they are incorrect as a matter of law.  "So long as at least one class representative has standing, the case may proceed with that party acting as the class's representative."  Newberg on Class Actions § 2:8 (5th ed. 2014).

class-certification motion was filed ***before*** Plaintiffs' Sourovelis's and Welch's forfeiture actions were dismissed and is still pending. Additionally, both plaintiffs have standing to seek nominal damages and retrospective declaratory relief.

### 1. Under Binding Precedent, Plaintiffs Sourovelis and Welch Have Standing to Litigate Class Certification and the Merits of Their Claims.

Plaintiffs Sourovelis and Welch have standing to seek class certification and request prospective injunctive relief on behalf of the proposed class. In *Parole Commission v. Geraghty*, the Supreme Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's claim, even though class certification has been denied." 445 U.S. 388, 404 (1980); *see also Gerstein v. Pugh*, 420 U.S. 103 (1975); *Sosna v. Iowa*, 419 U.S. 393 (1975). The plaintiff in *Geraghty* brought a class action challenging the validity of federal guidelines on parole release but was released from prison while appealing the denial of class certification. *Id*. at 390. The Supreme Court rejected the government's claim of mootness, holding that the plaintiff had standing to litigate class certification and noted the exception to mootness for inherently transitory claims. *Id*. at 403.

As in *Geraghty*, *Gerstein*, and *Sosna*, Plaintiffs' claims are inherently transitory. Every day the Philadelphia D.A.'s Office brings forfeiture actions which then cycle through Courtroom 478 where most of these actions are resolved through default judgment or settlement. Indeed, before dismissing the forfeiture cases against Plaintiff Sourovelis's home, the Philadelphia D.A.'s Office attempted to settle the forfeiture action by proposing onerous conditions. (*See* Waite Decl. Ex. 1(A).) It was only due to the filing of this class action that the Philadelphia D.A.'s Office decided to dismiss the forfeiture actions involving these two plaintiffs.[6]

---

[6] Defendants incorrectly imply that these were voluntary settlements or court-ordered dismissals. (Defs.' Mem. 9.) Under Pennsylvania Rule of Civil Procedure 229, the Philadelphia D.A.'s Office voluntarily ***discontinued*** its prosecution of the forfeiture actions it had filed against the property of Plaintiffs Sourovelis and Welch. Although

Moreover, in the nearly five months since Plaintiff Geiger was added to the lawsuit, his forfeiture case (which was transferred to the Civil Division when he exercised his right to demand a jury trial) has made its way to a May trial date.  (*See* Docket, Case No. 141002748, *Commonwealth v. 2000 Buick* (Court C.P. Phila. Cnty.))  Under these circumstances when any plaintiff will not be in the challenged system throughout the federal litigation, courts have applied the inherently transitory exception, particularly in the class-action context, to allow plaintiffs to continue to litigate their claims.  *See Geraghty*, 445 U.S. at 399; *Sosna*, 419 U.S. at 399–400; *Gerstein*, 420 U.S. at 111 n.11 (1975).[7]

The Third Circuit extended the *Geraghty* rule to situations in which named plaintiffs' claims expired while the motion for class certification is pending.  *See Wilkerson v. Bowen*, 828 F.2d 117, 121 (3d Cir. 1987).  In *Wilkerson*, the named plaintiffs challenged, on behalf of a class, the validity of federal regulations for evaluating disability claims based on alcoholism and seeking declaratory and injunctive relief.  *Id*. at 119.  When the named plaintiffs received the disability benefits, the district court dismissed the named plaintiffs from the action.  *Id*. at 121. The Third Circuit reversed, holding that "*Geraghty* is applicable whether the particular claim of the proposed class plaintiff is resolved while class certification motion is pending in the district

the prosecutor insisted on filing a consent motion, neither consent from Plaintiffs Sourovelis and Welch or a court order was required to dismiss the actions under Rule 229.  *See* 7 Standard Pennsylvania Practice 2d § 39:4 (footnote removed) ("The exercise of the right to discontinue lies within the discretion of the person who holds that right, whether he or she is the plaintiff, or a defendant who has raised a counterclaim.") (citing *Luizer v. Heigel*, 88 Pa. D. & C. 378, 381 (Com. Pl. 1954) ("Such a discontinuance would have been discretionary . . . and since it was as to all defendants, neither defendant could have prevented it."))

[7] Defendants quote at length from *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), a Fair Labor Standards Act ("FLSA") case.  But the Supreme Court's discussion on mootness in that case did not center on Rule 23 class jurisprudence, but rather on the FLSA provision permitting an action on behalf of an individual and "other employees similarly situated[.]"  *Id*. at 1529 (quoting 29 U.S.C. § 216(b)).  The Court observed that cases like *Geraghty* and *Sosna* were "inapposite" because "Rule 23 actions are fundamentally different from collective actions under the FLSA[.]"  *Id*.

court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in *Geraghty*)." *Id.*[8]

### 2. The Claims of Plaintiffs Sourovelis and Welch Relate Back to the Time the Class-Certification Motion Was Filed.

Plaintiffs filed a still-pending motion for class certification **before** the Philadelphia D.A.'s Office dropped the state forfeiture actions against the property of Plaintiffs Sourovelis and Welch. Relying on *Geraghty* and *Wilkerson*, district courts in the Third Circuit have allowed named plaintiffs to continue to litigate on behalf of a class post-certification even though their own claims for prospective injunctive relief became moot before a class was certified.

For example, in *Williams v. City of Philadelphia*, the named plaintiffs brought an action challenging prison conditions on behalf of inmates of the Philadelphia Prison System seeking injunctive and declaratory relief. 270 F.R.D. 208, 210 (E.D. Pa. 2010). After the named plaintiffs were released from custody, the district court held that the "case will not become moot after the class action is certified because a controversy between Defendants and a member of the class represented by the named plaintiffs is sufficient to satisfy Article III's 'case or controversy' requirement." *Id.* at 220. The court thus concluded "that mootness will not be an issue after certification or at trial." *Id.*

Significantly, the court further held that because *Wilkerson* governed the outcome of the case, it was not even necessary to rule on the issue of dismissing—and substituting—the named plaintiffs. *Id.* at 220. The court observed that it could create a "'black hole . . . to constantly add

---

[8] Recently, the Eleventh Circuit went a step further and held that mooted named plaintiffs have standing relating back to the filing of a class action complaint. *See Stein v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 707 (11th Cir. 2014) ("The relation-back doctrine allows a named plaintiff whose individual claims are moot to represent class members not because the named plaintiff has moved to certify a class but because the named plaintiff will adequately present the class claims and unless the named plaintiff is allowed to do so the class claims will be capable of repetition, yet evading review. And when, as here, the relation-back doctrine applies, certification relates back not to the filing of the motion to certify but to the filing of the complaint.") (quotation marks and citation omitted).

new named plaintiffs or file new class-action complaints when previous named plaintiffs' claims are resolved[.]" *Id.* (citation omitted); *see also Brist v. Cnty. of Delaware*, No. 94-1426, 1995 WL 50954, at *6 (E.D. Pa. Feb. 7, 1995) (permitting named plaintiff with a pre-certification mooted claim for damages and injunctive relief to continue representing the class on the merits).[9]

The cases Defendants cite are plainly distinguishable as the complaints or motions for class certification were filed ***after*** the named plaintiffs' claims expired. *See Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003) (plaintiffs' claim was moot "at the time the Complaint was filed" and thus "subject matter jurisdiction was also lacking in the District Court"); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3d Cir. 1992) ("No motion to certify was pending at the time plaintiffs' claims were settled."). Indeed, Lusardi confirms that "district court review of a ***pending certification motion relates back to its filing, if plaintiff had a live claim at that time***." 975 F.2d at 983 (emphasis added).

Here, Plaintiffs filed their motion for class certification nearly four months ***before*** the Philadelphia D.A.'s Office dismissed the forfeiture actions of Plaintiffs Sourovelis and Welch in December 2014. (*See* ECF No. 4 and Defs.' Mem. Exs. A–B.)[10] Consequently, the dismissals

---

[9] Brist sought damages "and a declaration that the weight restrictions be held null and void, because of the failure of the Borough of Darby and County of Delaware to give adequate and due notice of the weight restriction[.]" Br. for Appellants, *Brist v. Cnty. of Delaware*, No. 96-1230, 1996 WL 33649234 (3d Cir. May 14, 1996).

[10] Defendants assert that the Philadelphia D.A.'s Office's dismissal of the Sourovelis and Welch forfeiture actions was not an attempt to "pick off" plaintiffs. *See* Defs.' Mem. 10; *see also Weiss v. Regal Collections*, 385 F.3d 337, 343 (3d Cir. 2004) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions[.]") (internal citation omitted). Defendants' protestations ring hollow in light of the timing of those dismissals and their separate arguments to dismiss Plaintiff Geiger from the lawsuit for failure to state a claim. (*See* Defs.' Mem. 25–27.) But regardless of Defendants' motivations for their conduct after Plaintiffs filed this lawsuit, Plaintiffs Sourovelis and Welch, as discussed *supra*, have standing to request retrospective relief, request prospective relief on behalf of the proposed class, and litigate the class-certification issue. Accordingly, Plaintiffs Sourovelis and Welch cannot be dismissed from this action.

do not divest Plaintiffs Sourovelis and Welch of standing to litigate the issue of class certification or the merits of their claims.[11]

### 3. *Plaintiffs Sourovelis and Welch Also Have Standing to Request Retrospective Relief.*

Plaintiffs Sourovelis and Welch also still have standing to request nominal damages and an attendant declaration that Defendants violated their due-process rights. Nominal damages are properly awarded as a matter of law for violations of procedural due process. *Carey v. Piphus*, 435 U.S. 247, 259–64 (1978) ("[The law recognizes the importance to organized society that those rights be scrupulously observed[.]").

Just like the District Attorney's voluntary cessation of *ex parte* "seize and seal" orders, the dismissals of the underlying forfeiture actions have no effect on the ability of Plaintiffs Sourovelis or Welch to pursue nominal damages and retrospective declaratory relief.[12]

### D. **Plaintiffs Have Article III Standing to Raise Their First, Third, and Sixth Claims, Which Are All Fairly Traceable to Defendants' Conduct.**

Defendants contend that Plaintiffs' injuries in their First, Third, and Sixth Claims, result not from Defendants' conduct, but from the Court of Common Pleas and the Pennsylvania court administration. (Defs.' Mem. 14–17.) As explained *supra* at 4–5, Plaintiffs' First Claim challenges Defendants' "seize and seal" policy, Plaintiffs' Third Claim challenges the lack of a prompt post-deprivation hearing, and Plaintiffs' Sixth Claim challenges the practice of the

---

[11] Defendants seem to be conflating standing with the class-certification inquiry as whether Plaintiffs Sourovelis and Welch will adequately represent the proposed class—an issue not currently before the Court. (*See* Defs.' Mem. 8, n.3.) In any event, Plaintiffs Sourovelis and Welch are adequate class representatives who will continue to vigorously pursue their claims on behalf of the class. *See Williams*, 270 F.R.D. at 219–20 ("Following *Wilkerson*, the Third Circuit has consistently held that a putative class representative whose claim was mooted after the class certification motion was filed but before the motion was decided is not automatically disqualified from representing a class.").

[12] For the reasons set forth in Section I, subsection C, Plaintiffs Geiger's and Hernandez's claims would not be mooted in the event their state court forfeiture actions were resolved during the pendency of this litigation.

Philadelphia D.A.'s Office running Courtroom 478. Defendants' arguments as to each of these three claims are wrong on the facts and the law.

### 1. Defendants' "Seize and Seal" Policy Is the Direct Cause of Plaintiffs' Constitutional Injuries.

Defendants assert that the real source of the Plaintiffs' injuries under their challenge to Defendants' "seize and seal" policy is "not from the D.A. Defendants applying for such relief, but from the state court granting it." (Defs.' Mem. 14.) Defendants' position is wrong both as a matter of fact and as a matter of law.

As a factual matter, Defendants have conceded their own role in the causing the injuries under Plaintiffs' First Claim by arguing that they have ceased the offending conduct and adopted a new policy to ensure compliance with due process. (*See* Defs.' Mem. 12–14.) As detailed above, the Philadelphia D.A.'s Office has routinely applied for *ex parte* "seize and seal" orders in almost all real-property forfeiture cases. These applications contain only boilerplate allegations—with the same typographical error—that fail to specifically allege any facts demonstrating necessity or exigency. (Am. Compl. ¶¶ 84–86; Sheth Decl. ¶ 3 Ex. 4.) Thus, these applications falsely state that exigency and necessity warrant the *ex parte* seizure of real property. Indeed, it has been the policy and practice of the Philadelphia D.A.'s Office to claim exigency when the facts only showed simple possession or the one-time sale of a controlled substance, as in Plaintiff Sourovelis's case. (Compl. ¶ 246; Sourovelis Decl. ¶ 4.) After directly having suffered from the D.A.'s policy of misrepresenting that their factual circumstances warranted *ex parte* seizure of their property, Plaintiffs have standing to challenge it.

As a legal matter, the Supreme Court has rejected Defendants' argument that the state court's granting of the application breaks the causal chain. In *Malley v. Briggs*, plaintiffs brought suit claiming that state troopers "caused plaintiffs to be unconstitutionally arrested by

presenting a judge with a complaint and a supporting affidavit which failed to establish probable cause." 475 U.S. 335, 337 (1986). The state troopers and other state defendants had argued that "in a case like this the officer should not be liable because the judge's decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest." *Id*. at 345 n.7. The Supreme Court emphatically rejected this "no causation" argument as "inconsistent with our interpretation of Section 1983." *Id*. The Supreme Court reasoned that Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id*. ("Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read Section 1983 as recognizing the same causal link.").

Under *Malley*, the fact that state court judges have approved these *ex parte* "seize and seal" applications does not break the causal chain. Indeed, the evidence submitted by Plaintiffs shows that the Philadelphia D.A.'s Office has had a policy and practice of deliberately misstating the facts, claiming exigent circumstances when none were present. (Sourovelis Decl. Ex. 4, Welch Decl. Ex. 2.) By alleging facts that are clearly wrong, Defendants cannot escape liability for their own policy and practice.

### 2. Defendants' Policies and Practices in Courtroom 478 Are the Direct Cause of Plaintiffs' Injuries Under Their Third and Sixth Claims.

Defendants similarly refuse to acknowledge their role on Plaintiffs' Third and Sixth Claims, arguing that proceedings in Courtroom 478 "are attributable to court administration and not to the D.A. Defendants." (Defs.' Mem. 16.) Plaintiffs challenge both the lack of a prompt, post-deprivation hearing (Third Claim)[13] and the fact that

---

[13] Contrary to Defendants' characterization, Courtroom 478 does not actually provide any kind of hearing, as required by the Due Process Clause (much less a prompt, post-deprivation hearing) for the simple reason that there is no judge in Courtroom 478. The core requirement of due process is the opportunity to be heard "which must be

Courtroom 478 proceedings are run by prosecutors with a direct financial interest in the outcome of forfeiture proceedings (Sixth Claim). Federal courts have ruled on similar claims without confronting any issues of Article III standing, and the facts contradict Defendants' characterization that it is the state court system, rather than the Philadelphia D.A.'s Office, that runs Courtroom 478.

The federal courts have ruled on similar claims without requiring plaintiffs to sue judicial officers or the court system. The fact that plaintiffs in those cases did not name any judicial officer or court administration as a defendant did not preclude any of these courts, which have an independent duty to ensure they have jurisdiction, from ruling on those plaintiffs' claims to a prompt, post-deprivation hearing. *See Smith v. City of Chicago*, 524 F.3d 834, 835 (7th Cir. 2008), *vacated as moot, sub nom. Alvarez v. Smith*, 558 U.S. 87 (2009) (suit against city, superintendent of police department, and state's attorney addressing entitlement to "prompt, post-seizure, probable cause hearing"); *Krimstock v. Kelly*, 306 F.3d 40, 43 n.1, 45 (2d Cir. 2002) (suit against Commissioner of the New York City Police Department, the Property Clerk of the New York City Police Department, and the City of New York considering lack of "prompt post-seizure hearing"); *Simms v. District of Columbia,* 872 F. Supp. 2d 90, 95 (D.D.C. 2012) (suit against the District of Columbia, the Chief of Police and the Mayor "considering what post-seizure process is required.")

Similarly, it is not necessary to sue judicial entities or persons acting in adjudicative roles to maintain an action claiming that the procedures used engender

---

granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). A proceeding that lacks a fair and neutral arbiter run by those with a direct financial interest in the outcome of the proceeding can hardly be said to be a "hearing" under the Due Process Clause. *See Tumey v. Ohio*, 273 U.S. 510, 531 (1927).

prosecutorial bias.  *See Marshall v. Jerrico*, *Inc.*, 446 U.S. 238, 241 (1980) (challenging, in administrative action, bias on the part of the prosecuting entity while accepting "the determination of the Administrative Law Judge and alleg[ing] no unfairness in the proceedings before him").

The facts as alleged in the Amended Complaint clearly and plausibly establish that it is the Task Force of the Philadelphia D.A.'s Office that runs Courtroom 478.  (Am. Compl. ¶¶ 99-109) That the Defendants dispute these facts by asserting it "[s]elf-evident," that "the D.A. Defendants do not control the allocation of judicial resources in the Court of Common Pleas" (Defs.' Mem. 16), does nothing more than create an issue of fact for discovery and trial.  Indeed, even at this stage, Defendants fail to submit any relevant evidence supporting their bald assertions.  Under Rule 12(b)(1), factual attacks on jurisdiction demand evidence, not what is "self-evident" to Defendants' counsel.  *See Found. for Fair Contracting, Ltd. v. G & M E. Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 335 (D.N.J. 2003) (noting that in a Rule 12(b)(1) factual challenge, "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited discovery hearings").

The only document Defendants submit in support of their "blame it on the state court administrator" argument is the form notice of hearing which property owners receive as to when they must appear in Courtroom 478.  (*See* Defs.' Mem. 14–15.)  While these notices nominally bear the heading of the Court of Common Pleas, there is no dispute that in practice prosecutors and paralegals of the Philadelphia D.A.'s Office fill out this notice by hand after talking with property owners.  (*See* Am. Compl. ¶ 109; Bullock Decl., Ex. D ; Elzey Decl. ¶ 20.)  Moreover, this form notice contradicts

Defendants' claims that Courtroom 478 simply operates "as an anteroom for property owners to meet with prosecutors to discuss preliminary issues in forfeiture cases." (Defs.' Mem. 15.) The notice expressly cautions property owners to appear on time and that failure to appear may result in losing their property. (*See* Bullock Decl. Ex. D.)

Moreover, the crux of Plaintiffs' Third and Sixth Claims is not the formation of Courtroom 478, but rather what prosecutors and other employees of the Philadelphia D.A.'s Office do inside Courtroom 478. The facts show that the Philadelphia D.A.'s Office exercises complete control over the proceedings in Courtroom 478. It is the ADAs who call the forfeiture cases, mark cases for default judgment, explain the forfeiture process to property owners; dictate settlement conditions and conditions to vacate "seize and seal" orders; relist cases for subsequent "hearings," and determine whether property owners must return with additional information or documentation. (Am. Compl. ¶¶ 101–09; Elzey Decl. ¶¶ 11-12, 19–22.) Defendants' formalistic arguments to the contrary cannot defeat the proper jurisdiction of this Court.[14]

Consequently, this Court, like other federal courts, has jurisdiction to hear Plaintiffs' Third Claim challenging the failure to provide a prompt post-deprivation hearing and Plaintiffs' Sixth Claim on prosecutorial bias in Courtroom 478 proceedings.[15]

---

[14] Defendants' argument that the "criminal motions court remains available for parties to forfeiture proceedings" (Defs.' Mem. 15), is an argument on the merits of Plaintiffs' claims, not an argument as to the lack of causation or redressability.

[15] To the extent this Court decides Plaintiffs should also join the Court of Common Pleas or state court administration as defendants in this class action, the appropriate remedy is to grant Plaintiffs leave to amend the Complaint, not to dismiss the action. *See Heyl & Patterson Intern., Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**II.** *YOUNGER* **ABSTENTION DOES NOT APPLY TO PLAINTIFFS' CLAIMS.**

Federal courts have a "virtually unflagging obligation" to exercise jurisdiction where it exists. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Indeed, "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in . . . exceptional circumstances. . . ." *Olde Disc. Corp. v. Tupman*, 1 F.3d 202, 211 (3d Cir. 1993) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)) (alterations in original).[16]

Nevertheless, Defendants urge this Court to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), due to the pendency of forfeiture proceedings in state court. (Defs.' Mem. 18–23.) This argument is unavailing because Defendants concede that two Named Plaintiffs (Sourovelis and Welch) do not have pending forfeiture actions (Defs.' Mem. 5, 20), and consequently there is no ongoing state proceeding to abstain in favor of. And as explained *supra* at 23–27, Plaintiffs Sourovelis and Welch have standing to request all the relief Plaintiffs seek. This Court should not waste judicial resources in addressing this non-starter.

Should the Court reach this issue, however, *Younger* does not apply to the types of due-process claims raised by Plaintiffs. The Supreme Court has made clear that *Younger* does not apply when the underlying state court proceeding is inadequate to raise plaintiffs' federal claims. *Gerstein*, 420 U.S. at 108 n.9; *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). Plaintiffs brought suit in federal court because the state forfeiture proceedings did not provide an adequate

---

[16] A court may not consider evidence outside the pleadings when deciding whether *Younger* abstention applies. *See Knox v. Union Tp. Bd. of Educ.*, No. 2:13-5875, 2015 WL 769930, at *5 n.7 (D.N.J. Feb. 13, 2015) ("A *Younger* motion to dismiss is 'in the nature of' a 12(b)(6) motion in that matters outside of the pleadings are not to be considered.") (citing *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992)).

opportunity to raise their claims in those proceedings.  Due to the challenged policies and

practices of the Philadelphia D.A.'s Office, property owners are trapped in a cycle of seemingly

endless Courtroom 478 "hearings" before they ever go before a judge.  Here, the state court

forfeiture proceedings are inadequate on two grounds:  (1) there is no opportunity to raise their

claims about adequate procedures in Courtroom 478, including the lack of a preliminary hearing;

and (2) the forum is inadequate due to prosecutorial bias.

### A.    The State Court Forfeiture Proceedings Are Inadequate to Raise Plaintiffs' First, Second, Third, and Fourth Claims.

Time and again, the Supreme Court has observed that *Younger* does not apply when a

federal plaintiff is complaining about the lack of adequate procedures in the underlying state

proceeding itself, including the lack of a preliminary hearing.  In the seminal due-process case of

*Fuentes v. Shevin*, for instance, plaintiffs challenged the constitutionality of Pennsylvania and

Florida statutes permitting the summary seizure of personal property through an *ex parte*

application for a writ of replevin.  407 U.S. 67, 69 (1972).  As with Defendants' *ex parte* "seize

and seal" policy, neither state's statute required notice be given to the possessor of the property

and neither provided the possessor an opportunity to contest the seizure in any kind of pre-

deprivation hearing.  *Id*. at 70.  As Named Plaintiffs in this case, the plaintiff in *Fuentes* sought

declaratory and injunctive relief against continued enforcement of the prejudgment replevin

procedures.  *Id*. at 71.  Notwithstanding the pending state-court proceedings, the Supreme Court

observed that *Younger* abstention was not appropriate because the plaintiffs were challenging the

*ex parte* "prejudgment seizure of property to which they had already been subjected."  *Id*. at 71

n.3.

Similarly, in *Gerstein v. Pugh*, plaintiffs challenged Florida's procedure of charging all

non-capital offenses by information (rather than indictment) and holding arrestees for trial

without any preliminary hearing. 420 U.S. at 105. Plaintiffs filed a class action under Section 1983, "claiming a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief." *Id*. at 107. The district court granted relief, ordering the defendants "to give the named plaintiffs an immediate preliminary hearing." *Id*. Notwithstanding the ongoing state criminal proceedings, the Supreme Court unanimously held that the plaintiffs' claim was not barred by *Younger* abstention. *Id*. at 108 n.9. Specifically, the Supreme Court observed that:

> The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution . . . .

*Id.* (citing *Conover v. Montemuro*, 477 F.2d 1073, 1082 (3d Cir. 1972)).

Relying on *Gerstein*, the Third Circuit has already rejected Defendants' *Younger* argument in a closely analogous case. In *Stewart v. Abraham*, plaintiffs brought a class action challenging the Philadelphia D.A.'s Office's "rearrest policy" under which it reinstated criminal charges that were dismissed at a preliminary hearing by simply rearresting the defendant and refiling a complaint. 275 F.3d 220, 224 (3d Cir. 2001). The District Attorney argued that the district court should have abstained from exercising its jurisdiction under *Younger* in deference to the ongoing state criminal prosecutions. *Id*. at 225. The Third Circuit held that the district court properly exercised jurisdiction because similar to *Gerstein*:

> [T]he equitable relief requested is not aimed at the state prosecutions, but at the legality of the re-arrest policy. . . . The issues here raised could not have been raised in defense of Stewart's criminal prosecution, and the injunction sought would not bar his prosecution.

*Id*. at 225.

Just like the requested injunctions in *Gerstein* and *Stewart*, the injunction Plaintiffs seek is not directed at the underlying state forfeiture proceedings themselves, but at Defendants'

policies and practices—*i.e.*, seizing real property *ex parte* (First Claim); imposing

unconstitutional conditions during the state forfeiture proceedings themselves (Second Claim),

failing to provide a prompt post-deprivation hearing (Third Claim), and relisting Courtroom 478

proceedings (Fourth Claim)—claims that cannot be raised in defending against the forfeiture

action.[17]  Other courts have also exercised jurisdiction over claims by federal plaintiffs that they

were denied a preliminary hearing in the underlying state proceeding, squarely holding that

*Younger* did not apply.  *See, e.g.*, *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 529 (7th Cir.

1988) (rejecting *Younger* because the requested injunction simply required "the hearing to

precede the penalty" and did not "prevent the state from litigating the merits in its own

tribunal").

　　Significantly, in the forfeiture context, courts have refused to abstain under *Younger*

because the state forfeiture proceedings did not provide an adequate opportunity to raise a due

process right to a preliminary hearing.  *See Remigio v. Kelly*, No. 04 Civ. 1877JGKMHD, 2005

WL 1950138, at *12 (S.D.N.Y. Aug. 12, 2005) (noting that forfeiture proceeding "has stalled in

some sort of legal purgatory since [plaintiff's car was seized] offering [plaintiff] no adequate

opportunity to press his due-process claims"); *Krimstock v. Safir*, No. 99 Civ. 12041 MBM, 2000

WL 1702035, at *3 (S.D.N.Y. Nov. 13, 2000), *rev'd on other grounds sub nom. Krimstock v.

Kelly*, 306 F.3d 40 (2d Cir. 2002) (holding that due process required hearing to determine

whether city was likely to succeed on the merits of forfeiture action).

---

[17] For this reason, Defendants' reliance on *Commonwealth v. 2338 North Beechwood Street*, 65 A.3d 1055 (Pa. Cmmw. Ct. 2013) and *Musko v. McLandless*, No. 94-3938, 1995 WL 262520 (E.D. Pa. May 1, 1995) is misplaced. Neither case involved the right to a preliminary hearing and plaintiffs' claims in those cases were capable of being raised in the state proceeding through affirmative defenses.  *Beechwood* addressed plaintiff's claim that her "due process rights were violated when she was not informed of her right to a jury trial" in forfeiture proceedings.  65 A.3d at 1057.  *Musko* involved a claim by the plaintiff that his neighbor abused local zoning law to "violate[] his civil and constitutional rights by improperly using the legal process to search and seize his property and to arrest and confine him unlawfully."  1995 WL 262520 at *2.

Enjoining Defendants' policies and practices raised in Plaintiffs' first four claims would require Defendants to provide the Named Plaintiffs and other real-property owners with notice and a hearing before seizing their homes and other real property, refrain from imposing unconstitutional conditions in negotiations with property owners; provide a prompt post-deprivation hearing for all property, and refrain from relisting "hearings" causing property owners to be stalled in the legal purgatory of Courtroom 478. Because there is no opportunity to raise these claims in the underlying state proceeding,[18] this Court should not abstain under *Younger*.

B.     **This Court Should Exercise Jurisdiction Over Plaintiffs' Fifth and Sixth Claims Because Defendants Have a Direct Financial Interest in the Outcome of those State Court Forfeiture Proceedings.**

*Younger* abstention is also inappropriate because the state court forfeiture proceedings are inadequate "by reason of bias to adjudicate the issues pending before it." *Gibson*, 411 U.S. at 577. In *Gibson,* Alabama outlawed the practice of optometry by employees of business corporations. *Id*. at 568. Optometrists brought a complaint with the Alabama Board of Optometry (the "Board") alleging several optometrists violated the ethics of their profession by working for a corporation. *Id*. The Supreme Court upheld the district court's decision not to abstain because the Board "was composed solely of optometrists in private practice for their own account" and "success in the Board's efforts would possibly redound to the personal benefit of members of the Board[.]" *Id*. at 578. The Supreme Court held more broadly that "***those with substantial pecuniary interest*** in legal proceedings should not adjudicate these disputes." *Id*. at 579 (emphasis added). Yet, that is precisely what occurs in Courtroom 478. Indeed, in the case

---

[18] Although Defendants claim Plaintiffs could raise their claims by asserting counterclaims (Defs.' Mem. 21), counterclaims are generally not permissible in civil-forfeiture actions because the action is *in rem* and any counterclaim would necessarily be *in personam*. *See United States v. Assorted Computer Equip.*, No. 03-2356, 2004 WL 784493, at *2 (W.D. Tenn. Jan. 9, 2004) ("Counterclaims are generally not allowed by third parties in civil *in rem* forfeiture proceedings.").

at bar, the personal benefit is not just a possibility, but a certainty as prosecutors and other members of Public Nuisance Task Force of the Philadelphia D.A.'s Office have at least some of their salaries paid with forfeiture proceeds. (Am. Compl. ¶¶ 50, 281–82.)

While *Gibson* involved a tribunal rather than a prosecuting entity, courts have applied *Gibson* to include claims of bias by attorneys. For example, in *Jaguar Cars v. Cottrell*, a car manufacturer challenged a Motor Vehicle Commission in federal court, and the district court declined to abstain under *Younger*. 896 F. Supp. 691 (E.D. Ky. 1995). Although the Commission Attorneys did not "possess the power to vote, they clearly posses[ed] and exercise[d] the power to influence the Commission in its decisions." *Id*. at 695. Abstention was not appropriate because not only did "[t]he majority of the Commission's members . . . have a direct pecuniary interest in the matter at bar[,] . . . ***the Commission's counsel [were] hardly nonpartisans***." *Id*. at 696 (emphasis added).

Similarly, Defendants are hardly nonpartisan in pursuing civil forfeitures. Plaintiffs' Fifth Claim challenges the direct pecuniary interest that the Philadelphia D.A.'s Office and the Philadelphia Police Department have in forfeiture proceeds. (Am. Compl. ¶¶ 279–87.) And this forfeiture revenue benefits them not only institutionally by providing better equipment, vehicles, and other items and services, but also personally, by paying for their salaries. (*Id*. ¶¶ 281–82.)

Moreover, the gravamen of Plaintiffs' Sixth Claim is that the Philadelphia D.A.'s Office has commandeered functions traditionally reserved for the judiciary. For property owners in Philadelphia, the Philadelphia D.A.'s Office acts as both a prosecutorial and adjudicatory body much more than a prosecutorial one. When the forfeiture process begins in "Courtroom" 478, the proceeding is guided not by a judge or magistrate, but by prosecutors. (Am. Compl. ¶¶ 99-109.) Plaintiffs enter a courtroom where there is no judge, no jury, no court reporter, but rather

ADAs sitting at both counsel tables.  (*Id.*)  Rather than making their case in front of an impartial fact-finder, the property owners face a prosecutor who acts like a judge:  calling civil-forfeiture cases; marking them for entry of a default judgment; explaining the law to parties; dictating the terms of orders to vacate "seize and seal orders"; assessing the sufficiency of documentation; relisting cases calling parties back to the courthouse.

In sum, the fact that the Philadelphia D.A.'s Office has a direct financial incentive in forfeiting as much property as possible and acts in an adjudicatory capacity makes abstention inappropriate.

## III.   THE COMPLAINT STATES CLAIMS FOR VIOLATIONS OF DUE PROCESS.

After setting forth the appropriate standard of review under Rule 12(b)(6), this section addresses Defendants' grab bag of arguments as to why Plaintiffs fail to state a claim under their Second through Sixth Claims.  (*See* Defs.' Mem. 24–30.)  Some of Defendants' arguments apply only to Plaintiff Geiger.  (*Id*. 25–27.)  Most of Defendants' arguments are half-formed, simply citing a section of the Amended Complaint and stating in conclusory fashion that it does not state a claim.  (*Id*. 28–30.)

### A.   Standard of Review on Rule 12(b)(6)

To prevent dismissal under Rule 12(b)(6), civil complaints must "set out 'sufficient factual matter' to show that the claim is facially plausible."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In examining a complaint under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Id*. at 210.  "[A] well-pleaded complaint may proceed

even if it strikes a savvy judge that actual proof of those facts alleged is improbable and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. In deciding a motion to dismiss under Rule 12(b)(6), courts are limited to the complaint and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## B.    Plaintiffs' Second through Sixth Claims State Plausible Claims for Violations of Due Process.

Plaintiffs' Second Claim alleges that Defendants require property owners to surrender constitutional rights in order to either have their homes or other real property unsealed or in order to settle or dismiss the forfeiture petitions against their property. (Am. Compl. ¶¶ 254–65.)[19] Under the doctrine of unconstitutional conditions, the government "may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) (citation and internal quotation marks omitted). The Supreme Court has applied this doctrine beyond discretionary government benefits to various kinds of government action. *See, e.g.*, *Camara v. Municipal Court*, 387 U.S. 523 (1967) ("[A]ppellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection.").

Plaintiffs plausibly allege that Defendants impose unconstitutional conditions including prospectively waiving the right to assert constitutional defenses in future actions and barring individuals, including relatives, from indefinitely entering property. (Am. Compl. ¶¶ 253–65.) Contrary to Defendants' assertion (*see* Defs.' Mem. 29), this claim is not "duplicative" of Plaintiffs' First Claim challenging Defendants' "seize and seal" policy because it not only

---

[19] Defendants contend that Plaintiffs' Second Claim applies solely to real-property owners. (Defs.' Mem. 28.) Without the benefit of discovery, it is impossible for Plaintiffs to know whether Defendants impose similar unconstitutional conditions on personal-property owners. Drawing all inferences in favor of Plaintiffs, as one must do under Rule 12(b)(6), it is plausible that Defendants may require personal-property owners to, for example, prospectively waive Eighth Amendment defenses.

challenges a discrete practice occurring after the initial "seize and seal" of real property but, as Defendants recognize, also challenges conditions in settlement deals. Moreover, Defendants claim that "no constitutional concern would seem to be implicated" by the challenged conditions in settlement agreements (Defs.' Mem. 12 n.6) is flatly wrong. *See, e.g.*, *Moore v. City of E. Cleveland*, 431 U.S. 494, 504 (1977) ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition.").

Plaintiffs' Third Claim alleges that Defendants fail to provide a prompt, post-deprivation hearing to individuals whose property has been seized. (*See* Am. Compl. ¶¶ 266–71.) Defendants concede that this claim is sufficiently pleaded and only argue that this claim does not apply to Plaintiff Geiger because he was represented by counsel in his criminal case. (Defs.' Mem. 25, 28.) Whatever procedures Plaintiff Geiger was afforded in his ***criminal*** case is immaterial to his complaint regarding the lack of adequate procedures in his ***civil*** forfeiture case. (*See* Am. Compl. ¶ 211 (noting Plaintiff Geiger believed his car and money were seized as evidence and "learned only later that the Philadelphia D.A.'s Office was attempting to permanently keep his property through civil forfeiture")). It is Plaintiffs' position that once the Philadelphia D.A.'s Office affirmatively files a civil-forfeiture action, due process requires a prompt, post-deprivation hearing at which the government must demonstrate probable cause to continue retaining seized property for the duration of the forfeiture proceeding. The ability of criminal defendants to move for return of property under Pennsylvania Rule of Criminal Procedure 588 is of no moment as Pennsylvania Rules of Civil Procedure govern civil-forfeiture actions. *See Commonwealth v. All That Certain Lot or Parcel of Land Located at 605 Univ. Drive*, 104 A.3d 411, 430 (Pa. 2014).

Plaintiffs' Fourth Claim challenges Defendants' policy and practice of repeatedly "relisting" forfeiture proceedings. (Am. Compl. ¶¶ 272–78.) Defendants' sole argument here is that the Amended Complaint fails to allege any deprivation of property. (Defs.' Mem. 29.) To the contrary, Plaintiffs specifically allege that by relisting forfeiture actions, Defendants are "forcing members of the putative class to return to Courtroom 478 for each listing in order to preserve their interest in the property or else lose their property forever through a default judgment;" (Am. Compl. ¶ 274), which creates a "high risk of erroneous deprivation of property." (*Id*. ¶ 276.) Moreover, Plaintiffs allege that "[t]he private interests affected by the "relisting" procedure outweigh Defendants' interests in maintaining the policy." (*Id*. ¶ 276.)

Plaintiffs' Fifth Claim challenges Defendants' policy and practice of retaining forfeited property and its proceeds as a violation of due process. (*Id*. ¶¶ 279–287.) Defendants seek to dismiss this claim by disputing Plaintiffs' factual allegations as to the distribution of these proceeds. *Compare* Defs.' Mem. 30 ("Any such [financial] incentive, however, is not realized by the prosecutors themselves [because] the proceeds are allocated for specific purposes subject to annual audits.") *with* Am. Compl. ¶¶ 50–55 (detailing, based on data obtained from the state Attorney General's Office, how the Philadelphia D.A.'s Office allocates forfeiture proceeds for both institutional and personal benefit and further alleging a profit sharing agreement with the Philadelphia Police Department). Plaintiffs' Fifth Claim is inherently a factual issue, making resolution on 12(b)(6) motion improper. This is demonstrated by the cases Defendants cite, which were decided after an examination of the facts. *See Marshall*, 446 U.S. at 241 (ruling on similar claim on summary judgment); *State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird*, 371 N.J. Super. 228, 236 (App. Div. 2004) (same).

As explained previously, *supra* at 5, 29–30, Plaintiffs' Sixth Claim alleges that prosecutors essentially act like judges in running forfeiture proceedings in Courtroom 478. (Am. Compl. ¶¶ 288-93.) In light of Defendants' direct pecuniary interest in the outcome of those proceedings, this practice violates the due-process guarantee of an impartial neutral arbiter. *See Tumey*, 273 U.S. at 531. Defendants incorrectly contend that this claim is simply duplicative of Plaintiffs' Third Claim challenging the lack of a prompt, post-deprivation hearing. (Defs.' Mem. 29.)

### C. The Philadelphia D.A.'s Office Is a Proper Entity Under Section 1983.

Despite the Philadelphia D.A. Office's pivotal role in the policies and practices challenged by Plaintiffs, Defendants argue that it is "not an entity amenable to suit under Section 1983." (Defs.' Mem. 4, see also *id* 24.) As a preliminary matter, Defendants' arguments are inconsequential: Dismissing the Philadelphia D.A.'s Office would save neither judicial nor parties' resources as Plaintiffs have also sued D.A. Williams and the City of Philadelphia and will still need the same discovery from these parties.

In any event, Defendants misguidedly rely on two questionable sources of authority for dismissing the Philadelphia D.A.'s Office from this action: (1) Section 16257 of the Pennsylvania Statutes; and (2) *Reitz v. County of Bucks*, 125 F.3d 139 (3d Cir. 1997) and its progeny. Contrary to these authorities, the Philadelphia D.A.'s Office is a proper party under Section 1983.

Defendants primarily rely on a statutory provision that requires suits against any "department" of the City of Philadelphia to be brought "in the name of" the City. *See* Defs.' Mem. 24 (quoting 53 Pa. Cons. Stat. § 16257). But this provision is simply inapplicable to the Philadelphia D.A.'s Office because that office is not a ***department*** of the City of Philadelphia.

Rather, it is a subdivision (independent from both the state and the City) created by state law. 16 Pa. Cons. Stat. §§ 7701–7742. These provisions mandate that the District Attorney of Philadelphia is independently elected (*id*. § 7701) and grant the District Attorney the authority to appoint the First Assistant District Attorney, Assistant District Attorneys, and Detectives. *Id.* §§ 7721, 7723, 7741.

By contrast, Article III, Section 3-100 of the City's Charter establishes the "offices, departments, boards, commissions, and agencies" of the City of Philadelphia. Notably, the Philadelphia D.A.'s Office is not listed. Not surprisingly, Pennsylvania courts limit dismissal of departments of the City under Section 16257 to departments created under the authority of the Home Rule Charter or City Code.[20] And both times the Third Circuit dismissed a defendant under Section 16257, it did so because it was a department created by the Home Rule Charter. *Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011) (holding that the Philadelphia Prison System, established by City Charter, Article III § 3-100(d), and a prison within the system, were departments of the City under Section 16257); *Kent v. Philadelphia D.H.S.*, 503 F. App'x 128, 130 (3d Cir. 2012) (Department of Human Services (formerly known as the Department of Public Welfare), established by City Charter, Article III § 3-100(d)).

---

[20] *See HSP Gaming, L.P. v. City Council for City of Philadelphia*, 595 Pa. 508, 514 n.4 (2007) (holding that the Planning Commission, established by city Charter, Article III § 3-100(e), was a department of the city under § 16257); *Philadelphia Entm't & Dev. Partners, L.P. v. City of Philadelphia*, 595 Pa. 538, 540 n.1 (2007) (Department of Licenses and Inspections, established by city Charter, Article III § 3-100(d)); *Wood v. City of Philadelphia*, No. 1348 C.D. 2013, 2014 WL 1004119, at *1 (Pa. Commw. Ct. Mar. 13, 2014) (Philadelphia Parking Authority and the Bureau of Administrative Adjudications, established under Philadelphia Code, Title 12, §§ 12-2801 – 12-2809); *City of Philadelphia v. Glim*, 149 Pa. Commw. 491, 496-97 (1992) (Fire Department, established by city Charter, Article III § 3-100(d)); *Hough v. Com., Dep't of Transp.*, 155 Pa. Commw. 162, 164 n.1 (1993) (Fairmount Parks Commission, established by the city Charter, Article V § 5-600(e)); *Corr. Med. Care, Inc. v. City of Philadelphia*, No. 3980 AUG.TERM 2004, 2004 WL 3051560, at *1 (Pa. Com. Pl. Dec. 20, 2004) (Philadelphia Prison System, established by city Charter, Article III § 3-100(d)); *Paige v. Comp. Clinic*, No. 2010, 1980 WL 194241 (Pa. Comm. Pl. Oct. 31, 1980) (Philadelphia General Hospital, established by city Charter, Article III § 3-100(f)).

The nonbinding, unreported cases on which Defendants rely are wrong on the law. In *Domenech v. City of Philadelphia*, the court failed to address the fact that Commonwealth law created the Philadelphia D.A.'s Office and only cited as authority cases in which City's Charter created the department in question. No. 06 CV 1325, 2007 WL 172375, *2 (E.D. Pa. Jan. 18, 2007). Similarly, *Brinson v. City of Philadelphia*, Civ. Action No. 11-7479, 2012 WL 642057 (E.D. Pa. Feb. 28, 2012) was also wrongly decided. *Brinson* did not discuss Section 16257 but merely cited the statute in summarily dismissing the Philadelphia D.A.'s Office. *Id.* at *2.

Defendants also rely on a line of cases beginning with the Third Circuit's decision in *Reitz*, a case about the contours of municipal liability and the source of much mischief on Section 1983 liability for D.A. Offices in the Commonwealth. In *Reitz*, plaintiffs were "members of a large family of which one was convicted of violating Pennsylvania narcotics laws" and whose property had been seized for civil forfeiture. 125 F.3d at 141. The plaintiffs filed suit against, *inter alia*, Bucks County, the Bucks County D.A.'s Office, and individual prosecutors, alleging "that the named defendants failed to comply with court orders directing the return of their property and intentionally or negligently mishandled said property." *Id.* at 142. The plaintiffs argued "that the prosecutors are the employees of the County, and that the County is liable for the misconduct of its employees, and thus the County is liable for the misconduct of the prosecutors." *Id.* at 144. The "controlling question" for municipal liability was not whether the Bucks County D.A.'s Office was an entity that could be sued, but rather whether "the plaintiffs have proven the absence of training that can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional torts occurred." *Id.*

In its analysis, the Third Circuit "accept[ed] plaintiffs' proposition that the District Attorney's Office is a separate entity," but held that "the plaintiffs have presented no evidence of

any actionable custom or policy on the part of this Office in its prosecutorial capacity nor of any failure to train its employees . . ." *Id.* at 145. In relevant part, the Court stated:

> The plaintiffs recognize both "that the County and the District Attorney's Office are separate entities" and that the District Attorney is, under the Constitution of Pennsylvania, Article IX, § 4, an independently elected official of the County, as "opposed to non-elected County offices controlled by the elected County Commissioners." ***Nonetheless, plaintiffs contend "that the District Attorney's Office and its staff are employees of the County of Bucks."*** Further, plaintiffs assert that the evidence here shows that the County of Bucks "is the employer of the defendant District Attorney as a matter of policy and practice [and] with deliberate indifference failed to adequately discipline, train . . . or otherwise direct" their employees and agents concerning the rights of citizens. However, as the Supreme Court made clear in *Monell*, municipal liability simply cannot be predicated upon a showing of respondeat superior, and thus the plaintiffs' argument that the individual prosecutors are employees of the county will have no effect on a determination of municipal liability.

*Id.* at 146 (emphasis added). Thus, the Court's central holding is that plaintiffs failed to show any policy or practice on the part of the Bucks County D.A.'s Office that could be imputed to the County. After addressing other arguments, the *Reitz* court then summarily stated (mistakenly quoting from the district court opinion), "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability[.]" *Id.* at 148.

District courts have subsequently quoted this single line from *Reitz*, without any independent analysis. *See, e.g.*, *Allen v. Dist. Attorney's Office of Philadelphia*, 644 F. Supp.2d 600, 611 (E.D. Pa. 2009); *Brinson* 2012 WL 642057, at *2. To the extent *Reitz* and its progeny held that the D.A.'s Offices in the Commonwealth are not an entity for purposes of Section 1983 liability, Plaintiffs maintain they are both wrong and unsupported by any of the reasoning in the *Reitz* opinion itself.

In summary, although Defendants are able to point to quotes stating that the D.A.'s office is not an entity under § 1983, they are not able to identify any sound legal analysis on that point.

Indeed, neither Section 16257 of the Pennsylvania Statutes nor the *Reitz* case forecloses suit against the Philadelphia D.A.'s Office.

## **CONCLUSION**

For the foregoing reasons, this Court has and should exercise its jurisdiction over all Plaintiffs and all six claims, which plausibly state grounds for the requested relief.

Dated:  April 3, 2015

Respectfully submitted,

<table>
<tr><td><strong>INSTITUTE FOR JUSTICE</strong></td><td><strong>KAIRYS, RUDOVSKY, MESSING & FEINBERG</strong></td></tr>
<tr><td>By:    /s/ Darpana M. Sheth</td><td></td></tr>
<tr><td>William H. Mellor*</td><td>David Rudovsky (I.D. Number 15168)</td></tr>
<tr><td>Scott G. Bullock*</td><td>The Cast Iron Building</td></tr>
<tr><td>Darpana M. Sheth*</td><td>718 Arch Street</td></tr>
<tr><td>Robert P. Frommer*</td><td>Suite 501 South</td></tr>
<tr><td>901 North Glebe Road, Suite 900</td><td>Philadelphia, PA 19106</td></tr>
<tr><td>Arlington, VA 22203</td><td>Email:  drudovsky@krlawphila.com</td></tr>
<tr><td>Email:  wmellor@ij.org; sbullock@ij.org;</td><td>Tel:  (215) 925-4400</td></tr>
<tr><td>dsheth@ij.org; rfrommer@ij.org</td><td>Fax:  (215) 925-5365</td></tr>
<tr><td>Tel: (703) 682-9320</td><td></td></tr>
<tr><td>Fax: (703) 682-9321</td><td></td></tr>
</table>

*\*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of April, 2015, a true and correct copy of this

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served upon the following

counsel of record by electronic mail to:

Dimitrios Mavroudis
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Tel:  (215) 683-5444
Email:  dimitrios.mavroudis@phila.gov

*Attorney for Defendants City of Philadelphia, Mayor Michael A. Nutter,
and Police Commissioner Charles H. Ramsey*


Elizabeth J. Graham-Rubin
Bryan C. Hughes
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
Tel:  (215) 686-8787
Email: bj.graham-rubin@phila.gov
          bryan.hughes@phila.gov

*Attorney for Defendants Philadelphia District Attorney's Office and
District Attorney R. Seth Williams*


INSTITUTE FOR JUSTICE

/S/  Darpana M. Sheth
Darpana M. Sheth
*Attorney for Plaintiffs*