IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOS SOUROVELIS, et al.,  : CIVIL ACTION
            : No. 14-4687
   Plaintiffs,   :
            :
 v.          :
            :
CITY OF PHILADELPHIA, et al., :
            :
   Defendants.   :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.         May 12, 2015

Table of Contents

BACKGROUND AND PROCEDURAL HISTORY . . . . . . . . . . . . . . . 2
LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . 6
DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  A. Voluntary Cessation, Mootness, and Standing . . . . 9
    1. Defendants' Voluntary Cessation. . . . . . . 10
    2. Voluntary Dismissal of Forfeiture Actions. . . 14
    3. Traceability to Defendants' Conduct. . . . . . 18
      a. Defendants' "Seize and Seal" Policy . . . 19
      b. Defendants' Proceedings in Courtroom 478. 21
  B. Younger Abstention. . . . . . . . . . . . . . . . . 24
  C. The Complaint States Claims Under Rule 12(b)(6) . . 25
    1. Count Two. . . . . . . . . . . . . . . . . . . 25
    2. Count Three. . . . . . . . . . . . . . . . . . 28
    3. Count Four . . . . . . . . . . . . . . . . . . 30
    4. Count Five . . . . . . . . . . . . . . . . . . 31
    5. Count Six. . . . . . . . . . . . . . . . . . . 32
  D. The D.A.'s Office is a Proper Party . . . . . . . . 33
CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . 39

   Named Plaintiffs Christos Sourovelis, Doila Welch,

Norys Hernandez, and Nassir Geiger ("Plaintiffs"), on behalf of

themselves and all others similarly situated under Federal Rule

of Civil Procedure 23(b)(2), bring this class action to enjoin

and declare unconstitutional Philadelphia's civil-forfeiture policies and practices.

This suit is brought against the City of Philadelphia, Mayor Michael A. Nutter, Police Commissioner Charles H. Ramsey (together, "City Defendants"), the Philadelphia District Attorney's Office ("D.A.'s Office"), and District Attorney R. Seth Williams (together, "D.A. Defendants") (all together, "Defendants"). Defendants have filed a joint motion to dismiss Plaintiffs' claims. For the reasons that follow, the Court will deny Defendants' motion to dismiss.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On November 17, 2014, Plaintiffs filed their Amended Complaint. ECF No. 40. Named Plaintiffs Sourovelis, Welch, and Hernandez are the owners of real property against which forfeiture proceedings commenced by the D.A. Defendants under the Controlled Substances Forfeiture Act ("Forfeiture Act"), 42 Pa. C.S. §§ 6801-6802, were pending in the Court of Common Pleas of Philadelphia County ("Court of Common Pleas") at the time the Amended Complaint was filed. Am Compl. ¶¶ 9-14. Plaintiff Geiger, who was first named in the Amended Complaint, is the owner of a 2000 Buick LeSabre, against which a proceeding under

the Forfeiture Act is presently pending in the Court of Common Pleas. See id. ¶ 15.

In their Amended Complaint, Plaintiffs allege that Defendants have been unconstitutionally employing civil forfeiture procedures to confiscate property from residents for the properties' alleged involvement in crime--even when property owners have no involvement in or even knowledge of the crimes alleged. Id. ¶ 2. Plaintiffs state that Philadelphia's "robo-forfeiture" program uses "form" legal documents and "endless proceedings" to generate millions of dollars in revenue outside of its appropriated budget. Id. ¶ 3. Plaintiffs allege that through these boilerplate allegations, officials execute ex parte "seize and seal" orders against homes and other real property, without providing constitutionally adequate procedures for citizens to challenge the orders--thus violating their due process rights. See id. ¶ 21. Accordingly, Plaintiffs' six claims challenge the following "policies and practices":

> (i) Defendants' policy and practice of applying for and executing ex parte seizures of homes and other real properties without providing any evidence of exigent circumstances or necessity to justify proceeding without affording affected owners notice or an opportunity to be heard;
>
> (ii) Defendants' policy and practice of requiring real property owners to waive their statutory and constitutional rights in order to be let back into

their property or have the forfeiture petition
withdrawn;

(iii) Defendants' policy and practice of failing to
provide property owners with a prompt, post-
deprivation hearing before a neutral arbiter where
those owners may contest the basis for the seizure,
restraint, or indefinite retention of their property
pending an ultimate hearing on the merits;

(iv) Defendants' policy and practice of repeatedly
"relisting" civil-forfeiture proceedings, which forces
property owners to appear in person for these
proceedings over and over again or else permanently
lose their property through a default judgment;

(v) The policy and practice of retaining forfeited
property and its proceeds for use by the Philadelphia
District Attorney's Office and the Philadelphia Police
Department; and

(vi) Defendants' policy and practice of having
prosecutors and employees of the Philadelphia District
Attorney's Office control "hearings" in Courtroom 478.

Id. ¶ 4.

Defendants filed a joint motion to dismiss Plaintiffs'

Amended Complaint on March 16, 2015, arguing that Plaintiffs'

claims should be dismissed on the following grounds:

(1) Because the underlying forfeiture proceedings
against the real property owned by Plaintiffs
Sourovelis and Welch have been discontinued, the
claims of these plaintiffs have been rendered moot and
must be dismissed pursuant to Federal Rule of Civil
Procedure 12(b)(1).

(2) Because, since on or about September 22, 2014, the
D.A. Defendants have not submitted an application for
an ex parte "seize and seal" order, which is the
source of the constitutional violations alleged in the
first and second counts of the amended complaint, and

a policy established by the District Attorney on October 1, 2014, ensures that subsequent applications will be warranted by exigent circumstances, a case or controversy is not presented as to the first and second counts of the amended complaint, which must be dismissed pursuant to Rule 12(b)(1).

(3) Because Plaintiffs cannot demonstrate an "injury in fact" that is "fairly traceable" to the conduct alleged in counts one, three, and six of the amended complaint that will likely be remedied by the requested relief, they lack Article III standing to bring these claims, which must be dismissed pursuant to Rule 12(b)(1).

(4) Insofar as the named plaintiffs are the owners of property against which civil forfeiture petitions are presently pending in the Court of Common Pleas, their constitutional claims could be raised in their state court forfeiture proceedings and this court should abstain from deciding them in this case.

(5) Because Defendant Philadelphia District Attorney's Office is not an entity amenable to suit under 42 U.S.C. § 1983, this defendant must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

(6) Because the amended complaint fails to state a claim upon which relief may be granted as to Plaintiff Geiger, the claims of this plaintiff must be dismissed pursuant to Rule 12(b)(6).

(7) Because the second, fourth, fifth, and sixth counts of the amended complaint fail to state claims upon which relief may be granted, those claims must be dismissed pursuant to Rule 12(b)(6).

Defs.' Mem. 3-4, ECF No. 52. Plaintiffs filed a response on April

3, 2015 (ECF No. 55), and Defendants filed a reply[1] on April 13,

2015 (ECF No. 56). The motion is now ripe for disposition.

---

[1]        More specifically, Defendants filed a joint motion for leave to file a reply brief, which the Court will grant.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for

relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583
F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009)) (internal quotation marks omitted). In
deciding a Rule 12(b)(6) motion, the Court limits its inquiry to
the facts alleged in the complaint and its attachments, matters
of public record, and undisputedly authentic documents if the
complainant's claims are based upon these documents. See Jordan
v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d
Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

As is relevant here, "[i]f a claim does not present a
live case or controversy, the claim is moot, and a federal court
lacks jurisdiction to hear it." United States v. Virgin Islands,
363 F.3d 276, 285 (3d Cir. 2004). A challenge for mootness is
properly brought by a Rule 12(b)(1) motion, and constitutes a
factual attack on the jurisdictional facts; thus, the court may
consider evidence outside the pleadings. See Gould Elecs. Inc.
v. United States, 220 F.3d 169, 176-77 (3d Cir. 2000). "[T]he
standard for surviving a Rule 12(b)(1) motion is lower than that

for a Rule 12(b)(6) motion," however, and "[a] claim may be
dismissed under Rule 12(b)(1) only if it 'clearly appears to be
immaterial and made solely for the purpose of obtaining
jurisdiction' or is 'wholly insubstantial and frivolous.'" <u>Id.</u>
at 178 (quoting <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d
1406, 1409 (3d Cir. 1991)).

      "A motion to dismiss for want of standing is also
properly brought pursuant to Rule 12(b)(1), because standing is
a jurisdictional matter." <u>Ballentine v. United States</u>, 486 F.3d
806, 810 (3d Cir. 2007). "In evaluating whether a complaint
adequately pleads the elements of standing," however, "courts
apply the standard of reviewing a complaint pursuant to a Rule
12(b)(6) motion to dismiss for failure to state a claim:
'Court[s] must accept as true all material allegations set forth
in the complaint, and must construe those facts in favor of the
nonmoving party.'" <u>In re Schering Plough Corp. Intron/Temodar
Consumer Class Action</u>, 678 F.3d 235, 243 (3d Cir. 2012)
(alteration in original) (quoting <u>Ballentine</u>, 486 F.3d at 810).

## III. DISCUSSION

      The Court will first address Defendants' factual
challenges to the Court's jurisdiction over four of Plaintiffs'
six claims and over claims of named Plaintiffs Sourovelis and

Welch on the grounds of voluntary cessation, mootness, and standing. Next, the Court will address Defendants' argument that this Court should abstain from exercising its jurisdiction over Plaintiffs' claims under Younger v. Harris, 401 U.S. 37 (1971). The Court will then address Defendants' arguments that Plaintiffs fail to state claims under Rule 12(b)(6). Finally, the Court will discuss whether the D.A.'s Office is a proper party to this constitutional challenge under § 1983.

> A.   Voluntary Cessation, Mootness, and Standing

Defendants assert that because the D.A.'s Office has recently changed its "seize and seal" order practice, Plaintiffs' first two claims (challenging Defendants' "seize and seal" policy and practice of imposing unconstitutional conditions) are moot. Defs.' Mem. 10-14. Defendants also argue that the voluntary dismissal of state forfeiture actions against homes owned by Sourovelis and Welch--after this lawsuit was filed--has mooted those Plaintiffs' claims. Id. at 6-10. Additionally, Defendants contend that Plaintiffs' first, third, and sixth counts are not "fairly traceable" to Defendants' conduct, but instead are caused by the state court system, and therefore must be dismissed for lack of standing. Id. at 14-17. The Court disagrees.

1.   <u>Defendants' Voluntary Cessation</u>

Defendants assert that "[t]he D.A. Defendants have not applied for an <u>ex parte</u> 'seize and seal' order since on or about September 22, 2014." <u>Id.</u> at 12. Moreover, "[o]n October 1, [2014,] . . . the District Attorney implemented a policy ensuring that any future application for an <u>ex parte</u> 'seize and seal' order comports with the requirements of <u>James Daniel Good Real Property</u>[2]," <u>id.</u>--in that "approval by the First Assistant District Attorney, or his or her designee" is required, and "such approval may be given only where 'exigent circumstances' are presented, as that term is defined in <u>James Daniel Good Real Property</u>." <u>Id.</u> 13-14. Thus, Defendants argue, Plaintiffs' first and second claims are moot.

Plaintiffs correctly contend, however, that these purported changes to Defendants' procedures--enacted only after litigation ensued--do not moot said claims. <u>See</u> <u>Knox v. Serv. Employees Int'l Union, Local 1000</u>, 132 S. Ct. 2277, 2287 (2012) (noting that post-litigation "maneuvers" that may be "designed

---

[2]      In <u>United States v. James Daniel Good Real Property</u>, the Supreme Court held that "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." 510 U.S. 43, 62 (1993).

to insulate a decision from review . . . must be viewed with a critical eye"). As was recently emphasized by the Supreme Court,

> [A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.

Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013) (citation omitted) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.")). Accordingly, the Supreme Court has held that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000) (citing United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)). As discussed below, Defendants fail to meet this stringent test. See City of Mesquite, 455 U.S. at 289 n.10.

Defendants point to the declaration of First Assistant District Attorney ("ADA") Edward F. McCann, Jr., in the attempt to substantiate the definitive nature of these policy changes.

11

However, this declaration emphatically denies that it has ever had any unconstitutional policy or practice, and it essentially indicates that it will <u>continue</u> to require the demonstration of "exigent circumstances" as defined by <u>James Daniel Good Real Property</u>--albeit with an added layer of required approval. Defs.' Mem. Ex. C, McCann Decl. ¶¶ 3, 6. But if the D.A.'s Office charted a course that may have run afoul of due process rights before--as Plaintiffs allege that it has[3]--then a directive to essentially stay the course cannot, of itself, ensure that the D.A.'s Office will not run aground on rocky constitutional shoals again.

What's more, nothing in the McCann declaration makes this policy permanently binding on future district attorneys.

---

[3]     In this vein, Plaintiffs' response to Defendants' motion to dismiss reads as follows:

> As illustrated by Plaintiff Sourovelis's experience, it has been the Philadelphia D.A.'s practice to treat simple possession or the single sale of a controlled substance as exigent circumstances, justifying <u>ex parte</u> seizure—–in direct contravention of <u>James Daniel Good</u> and its progeny. (Am. Compl. ¶ 246; Sourovelis Decl. ¶¶ 4,7.) Since the Philadelphia D.A.'s Office claims there is nothing impermissible in its past practices, the so-called "new" policy is hardly a definitive or permanent change, as opposed to a possible gloss on past practices. After all, how can Defendants [] remedy a problem they claim never existed?

Pls.' Resp. 18-19.

Conceivably, these procedures could be changed or revoked just as easily as the two-page declaration was drafted--rendering this policy no more than a parchment barrier. Cf. City of Mesquite, 455 U.S. at 289 (holding that "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision"). Ultimately, this declaration fails to provide the kind of "unconditional and irrevocable" promise found sufficient to moot a claim. See Already, LLC, 133 S. Ct. at 728.

With respect to Plaintiffs' second claim, the McCann declaration does not address Plaintiffs' challenge to the alleged unconstitutional conditions imposed in settlement agreements and agreements to vacate "seize and seal" orders. Defendants' allegedly changed policies and practices make no guarantees as to these settlement arrangements, and accordingly, this second claim is not moot.

Finally, regardless of Defendants' ostensibly altered procedures, named Plaintiffs Sourovelis, Welch, and Hernandez are also entitled to seek nominal damages and a declaration that Defendants' "seize and seal" policy and practice of imposing unconstitutional conditions violated their rights to due process. See Houchins v. KQED, Inc., 438 U.S. 1, 25-26 (1978)

13

("[A] defendant's corrective action . . . following commencement of suit does not deprive the court of power to decide whether the previous course of conduct was unlawful."); see, e.g., Burns v. Pa. Dep't of Corr., 544 F.3d 279, 283-84 (3d Cir. 2008) (holding that although the Department of Corrections "promise[d] to refrain from the future seizure of funds from [an inmate's] account," "[a] completed violation, if proven, would entitle [the plaintiff] to at least an award of nominal damages").

Thus, Plaintiffs' first and second claims are not mooted by Defendants' voluntary cessation. See Knox, 132 S. Ct. at 2287 ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)).

### 2.   Voluntary Dismissal of Forfeiture Actions

Defendants also argue that "[b]ecause the state court forfeiture proceedings against Plaintiffs Sourovelis and Welch have been discontinued . . . [t]heir claims are now moot and must be dismissed." Defs.' Mem. 6. Defendants assert that "[d]ismissal of a class action complaint is required . . . when the named plaintiffs' claims are rendered moot prior to class certification if 'there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and

14

consequently there is no longer a "case or controversy" within
the meaning of Article III of the Constitution.'" Defs.' Mem. 7-
8 (quoting <u>Lusardi v. Xerox Corp.</u>, 975 F.2d 964, 974-75 (3d Cir.
1992)) (citing <u>Brown v. Phila. Hous. Auth.</u>, 350 F.3d 338, 343
(3d Cir. 2003)). Defendants conclude that, because "a case or
controversy is no longer presented as to the claims of Mr.
Sourovelis and Ms. Welch by virtue of the December 18, 2014,
orders of the Court of Common Pleas . . . discontinu[ing] . . .
the underlying forfeiture proceedings," said claims must be
dismissed. <u>Id.</u> at 9-10. But Defendants are mistaken.

        To begin with, regardless of the discontinuance of the
forfeiture proceedings, Plaintiffs Sourovelis and Welch may
still properly continue to seek class certification and request
prospective injunctive relief on behalf of the proposed class.
In <u>United States Parole Commission v. Geraghty</u>, the Supreme
Court held that "an action brought on behalf of a class does not
become moot upon expiration of the named plaintiff's substantive
claim, even though class certification has been denied." 445
U.S. 388, 404 (1980); <u>see also</u> <u>Wilkerson v. Bowen</u>, 828 F.2d 117,
121 (3d Cir. 1987) (applying <u>Geraghty</u> to circumstances where
named plaintiffs' claims expired while a class certification

motion was pending).[4]  The Geraghty Court also discussed the
relevance of the exception to mootness for inherently transitory
claims. 445 U.S. at 399.

Plaintiffs aptly argue that "[a]s in Geraghty . . .
Plaintiffs' claims are inherently transitory. Every day the
D.A.'s Office brings forfeiture actions which then cycle through
Courtroom 478 [of the Philadelphia Court of Common Pleas] where
most of these actions are resolved through default judgment or
settlement." Pls.' Resp. 23. According to Plaintiffs, "[u]nder
these circumstances[,] when any plaintiff will not be in the
challenged system throughout the federal litigation, courts have
applied the inherently transitory exception, particularly in the

---

[4]      The cases Defendants cite are distinguishable, as the
complaints or motions for class certification were filed after
the named plaintiffs' claims expired. See Brown, 350 F.3d at 343
(plaintiffs' claim was moot "at the time the Complaint was
filed," and thus, "subject matter jurisdiction was also lacking
in the District Court"); Lusardi, 975 F.2d at 982, 983 (noting
that "district court review of a pending certification motion
relates back to its filing, if plaintiff had a live claim at
that time," and that "[n]o motion to certify was pending at the
time plaintiffs' claims were settled").

Moreover, Genesis Healthcare Corp. v. Symczyk, 133 S.
Ct. 1523 (2013)--a Fair Labor Standards Act ("FLSA") case cited
at length by Defendants--did not center on Rule 23 class
jurisprudence, but instead on the FLSA provision permitting an
action on behalf of an individual and "other employees similarly
situated." Id. at 1529 (quoting 29 U.S.C. § 216(b)). The Court
stressed that cases like Geraghty were "inapposite" because
"Rule 23 actions are fundamentally different from collective
actions under the FLSA." Id.

class-action context, to allow plaintiffs to continue to litigate their claims." Id. at 24 (citing Geraghty, 445 U.S. at 399). And Defendants do not dispute these assertions in their reply to Plaintiffs' response.

District courts in the Third Circuit have relied on Geraghty and Wilkerson to permit named plaintiffs to continue to litigate on behalf of a class even though their own claims for prospective injunctive relief became moot before a class was certified. See, e.g., Williams v. City of Philadelphia, 270 F.R.D. 208, 220 (E.D. Pa. 2010) (noting that because Wilkerson controlled, it was not necessary to rule on the issue of dismissing the named plaintiffs, as it could create a "black hole . . . to constantly add new named plaintiffs or file new class-action complaints when previous named plaintiffs' claims are resolved" (internal quotation marks and citation omitted)); Brist v. Cnty. of Delaware, No. 94-1426, 1995 WL 50954, at *6 (E.D. Pa. Feb. 7, 1995) (permitting named plaintiff with a pre-certification mooted claim for damages and injunctive relief to continue representing the class).

Here, Plaintiffs filed their motion for class certification roughly four months before the D.A.'s Office dismissed the forfeiture actions of Plaintiffs Sourovelis and

Welch in December 2014. ECF No. 3. Consequently, dismissal of Plaintiffs Sourovelis and Welch's claims is not warranted.

And finally, as was discussed <u>supra</u> p. 9, Plaintiffs Sourovelis and Welch may also request nominal damages and declaratory relief based on the violation of their due-process rights, as nominal damages are properly awarded for violations of procedural due process. <u>See</u> <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978) ("By making the deprivation of such rights actionable for nominal damages . . . the law recognizes the importance to organized society that those rights be scrupulously observed.").

### 3.   Traceability to Defendants' Conduct

Defendants next assert that Plaintiffs lack standing to raise their first, third, and sixth claims (which challenge, respectively, Defendants' "seize and seal" policy, the lack of a prompt post-deprivation hearing, and the practice of the D.A.'s Office running Courtroom 478), because the injuries recited in those claims are not traceable to Defendants' conduct--but instead are attributable to the actions of the Court of Common Pleas and the Pennsylvania court administration. Defs.' Mem. 14–17. The Court is not persuaded.

a.   <u>Defendants' "Seize and Seal" Policy</u>

Defendants contend that the actual cause of the Plaintiffs' injuries under their challenge to Defendants' "seize and seal" policy is "not from the D.A. Defendants applying for such relief, but from the state court granting it." Defs.' Mem. 14. Defendants argue that, because Plaintiffs' injuries are not "fairly traceable to the challenged action of the [Defendants]" and are "the result of the independent action of some third party not before the court," <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal quotation marks and alterations omitted), Plaintiffs lack standing to raise their first claim.

Plaintiffs are not challenging the final judicial stamp of approval on the "seize and seal" orders, however, but the "bald, conclusory allegation[s]" found in the orders that fail to provide any "particularized showing of exigent circumstances." Am. Compl. ¶¶ 84–86. Plaintiffs further assert that it has been the policy and practice of the D.A.'s Office to claim exigency when the facts showed only "mere possession or the single sale of [a] controlled substance[]." <u>Id.</u> ¶ 246.

Plaintiffs have sufficiently pled a traceable injury, and Defendants' argument that the state court's granting of the

application breaks the causal chain is not persuasive. As stated

by the Supreme Court in Malley v. Briggs,

> the . . . "no causation" rationale in this case is
> inconsistent with our interpretation of § 1983. As we
> stated in Monroe v. Pape, 365 U.S. 167, 187 (1961),
> § 1983 "should be read against the background of tort
> liability that makes a man responsible for the natural
> consequences of his actions." Since the common law
> recognized the causal link between the submission of a
> complaint and an ensuing arrest, we read § 1983 as
> recognizing the same causal link.

475 U.S. 335, 344 n.7 (1986) (parallel citation omitted).

Although the specific facts of Malley concerned the

immunity afforded a police officer whose request for a warrant

allegedly caused an unconstitutional arrest, the Court's

rejection of this "no causation" argument applies with equal

force to the case at bar. The fact that state court judges have

approved these ex parte "seize and seal" applications does not

break the causal chain. Indeed, Plaintiffs allege that the

D.A.'s Office has had a policy and practice of claiming exigent

circumstances when none were present--for instance, in

"treat[ing] mere possession or the single sale of controlled

substances in a particular real property as exigent circumstances

warranting ex parte seizure." Am. Compl. ¶ 246. Viewing the

factual allegations in the light most favorable to the nonmoving

Plaintiffs, Plaintiffs have shown injury traceable to Defendants'

actions, and Defendants have failed to shift responsibility for

the execution of its policies and practices onto the shoulders of state judicial officials and administrators.

      b.   <u>Defendants' Proceedings in Courtroom 478</u>

Defendants make similar traceability arguments as to their role in Plaintiffs' third and sixth claims (challenging, respectively, the lack of a prompt post-deprivation hearing, and the practice the D.A.'s Office running Courtroom 478), asserting that proceedings in Courtroom 478 are "attributable to court administration, and not to the D.A. Defendants." Defs.' Mem. 16. Plaintiffs, too, echo their earlier argument, contending that "the facts contradict Defendants' characterization that it is the state court system, rather than the Philadelphia D.A.'s Office, that runs Courtroom 478." Pls.' Resp. 30.

Plaintiffs point to a number of different federal courts that have ruled on similar claims without requiring plaintiffs to sue judicial officers or the court system. <u>See</u> Pls.' Resp. 30 (citing <u>Smith v. City of Chicago</u>, 524 F.3d 834, 835 (7th Cir. 2008) (permitting a suit against the City of Chicago, superintendent of police department, and state's attorney addressing entitlement to "prompt, postseizure, probable cause hearing"), <u>vacated as moot sub nom. Alvarez v. Smith</u>, 558 U.S. 87 (2009); <u>Krimstock v. Kelly</u>, 306 F.3d 40, 43

n.1, 45 (2d Cir. 2002) (permitting a suit against Commissioner of the New York City Police Department, Property Clerk of the New York City Police Department, and City of New York considering lack of "prompt post-seizure hearing"); Simms v. District of Columbia, 872 F. Supp. 2d 90, 95 (D.D.C. 2012) (permitting a suit against the District of Columbia, chief of police, and mayor "considering what post-seizure process is required").

Defendants attempt to distinguish these cases by arguing that "[i]n none of those cases, however, was the practice at issue directly attributable to court administration, as is the case in Philadelphia." Defs.' Reply Br. 13. In support, Defendants point to the notice[5] of hearing--bearing the heading of the Court of Common Pleas--which property owners receive as to when they must appear in Courtroom 478. Id. at 14– 15. Defendants also proffer the declaration of ADA Beth Grossman, which essentially explains that no court reporter or "Quarter-Sessions clerk" has assigned to said proceedings[6] "[b]ecause [judicial] resources have been withheld"--and thus

---

[5]      Plaintiffs point out that, "[w]hile these notices nominally bear the heading of the Court of Common Pleas[,] . . . in practice prosecutors and paralegals of the D.A.'s Office fill out this notice by hand after talking with property owners. See Am. Compl. ¶ 109." Pls.' Resp. 31.

[6]      Not to mention the fact that no judges preside over the proceedings in Courtroom 478. See Am. Compl. ¶ 99.

"prosecutors in Courtroom 478 have been forced to [] assume roles traditionally held by court personnel." Defs.' Reply Br. Ex. A, Grossman Decl. ¶¶ 3, 7.

The facts in the Amended Complaint clearly and plausibly allege that it is the Task Force of the D.A.'s Office that runs Courtroom 478. Am. Compl. ¶¶ 99-109. Defendants' assertion that it is "[s]elf-evident[]" that "the D.A. Defendants do not control the allocation of judicial resources in the Court of Common Pleas," Defs.' Mem. 16, does not insulate the D.A. Defendants from scrutiny into how they use the resources they have been given, and into the constitutional adequacy of the proceedings they administer with those resources.

Further, the focus of Plaintiffs' third and sixth claims is not on the logistics of Courtroom 478, but instead on what prosecutors and other employees of the D.A.'s Office do in that room. Plaintiffs' factual allegations clearly claim that the D.A.'s Office exercises complete control over the proceedings in Courtroom 478: the ADAs call the forfeiture cases; mark cases for default judgment; explain the forfeiture process to property owners; dictate settlement conditions and conditions to vacate "seize and seal" orders; relist cases for subsequent hearings; and determine whether property owners must

23

return with additional information or documentation. Am. Compl.
¶¶ 101-09.

The funding laments laced through ADA Grossman's
declaration--that because of such constraints, "prosecutors in
Courtroom 478 have been forced to [] assume roles traditionally
held by court personnel"--essentially admit to the due process
infirmities that may exist in the proceedings they administer.
Accordingly, this Court, like other federal courts that have
addressed this issue, has subject matter jurisdiction to hear
Plaintiffs' third claim challenging the failure to provide a
prompt post-deprivation hearing and Plaintiffs' sixth claim on
prosecutorial bias in Courtroom 478 proceedings.

   B.   Younger Abstention

It is well settled that federal courts have a
"virtually unflagging obligation . . . to exercise the
jurisdiction given them." Colo. River Water Conservation Dist.
v. United States, 424 U.S. 800, 817 (1976). Thus, "[t]he
doctrine of abstention . . . is an extraordinary and narrow
exception to the duty of a District Court to adjudicate a
controversy properly before it. Abdication of the obligation to
decide cases can be justified under this doctrine only in . . .
exceptional circumstances." Id. at 813.

24

Nevertheless, Defendants urge this Court to abstain under <u>Younger v. Harris</u>, 401 U.S. 37 (1971), due to the pendency of forfeiture proceedings in state court. Defs.' Mem. 18-23. However, Defendants' argument is unavailing because, as Defendants have admitted, named Plaintiffs Sourovelis and Welch no longer have pending forfeiture actions, <u>id.</u> at 5, 20, and therefore there is no ongoing state proceeding for the Court to abstain in favor of. Defendants do not dispute this state of affairs in their reply to Plaintiffs' response. Accordingly, this claim must fail.

C.    <u>The Complaint States Claims Under Rule 12(b)(6)</u>

Defendants further assert that the second, third,[7] fourth, fifth, and sixth counts of Plaintiffs' Amended Complaint fail to state claims upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). The Court disagrees.

1.    <u>Count Two</u>

Plaintiffs' second claim alleges that Defendants require property owners to surrender constitutional rights in order to either have their homes or other real property unsealed or to settle or dismiss the forfeiture petitions against their property. Am. Compl. ¶¶ 254-65. Pursuant to the unconstitutional

---

7        As to named Plaintiff Geiger only.

conditions doctrine, "the government may not deny a benefit to a person because he exercises a constitutional right." Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2594 (2013) (internal quotation marks omitted); see also Koslow v. Pennsylvania, 302 F.3d 161, 174 (3d Cir. 2002) ("The unconstitutional conditions doctrine is based on the proposition that government incentives may be inherently coercive." (internal quotation marks omitted)). The Supreme Court has invoked this doctrine with respect to various kinds of government action, beyond discretionary government benefits alone. See, e.g., Camara v. Mun. Court, 387 U.S. 523, 540 (1967) ("[A]ppellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection.").

Plaintiffs plausibly plead that Defendants impose excessively coercive and unconstitutional conditions--for instance, requiring that property owners prospectively waive the right to assert constitutional defenses in future actions, and indefinitely barring individuals, such as relatives, from entering property. Am. Compl. ¶¶ 254-65. Although Defendants

claim[8] that "no constitutional concern would seem to be implicated" by the challenged conditions in settlement agreements, Defs.' Mem. 12 n.6, Defendants are incorrect--at least as to the fact that restricting access by relatives may implicate constitutional issues. See Moore v. City ofco E. Cleveland, 431 U.S. 494, 504 (1977) ("The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."). Viewing the factual allegations in the light most favorable to the nonmoving Plaintiffs, the Plaintiffs have sufficiently pled an unconstitutional conditions claim alleging excessively coercive settlement and unsealing arrangements. See Frost v. R.R. Comm'n of Cal., 271 U.S. 583, 593 (1926) ("In reality, the carrier is given no choice, except a choice between the rock and the whirlpool--an option to forego a privilege which may be vital to his livelihood or submit to a requirement which may constitute an intolerable burden.").

---

[8] Defendants also assert that this claim is "duplicative" of Plaintiffs' first claim. Defs.' Mem. 29. Defendants are mistaken, however, as this second claim challenges both a practice that occurs after the "seize and seal" of real property, as well as the conditions offered in subsequent settlement deals.

2.   <u>Count Three</u>

The third count of Plaintiffs' Amended Complaint claims that Defendants fail to provide a prompt post-deprivation hearing to individuals whose property has been seized. See Am. Compl. ¶¶ 266–71. Defendants concede that this claim is sufficiently pled, but assert that it does not apply to Plaintiff Geiger because he was represented by counsel in his criminal case. Defs.' Mem. 25. But that is immaterial. Whatever procedures Plaintiff Geiger may have been afforded in his criminal case have no bearing on his claim as to the inadequate procedures in his civil forfeiture case. <u>See</u> Am. Compl. ¶ 211 (noting Plaintiff Geiger believed his car and money were seized as evidence and "learned only later that the Philadelphia D.A.'s Office was attempting to permanently keep his property through civil forfeiture").

Defendants also aver that Plaintiff Geiger "cannot[] allege that [he] was deprived of any right to due process because he failed to take advantage of an available and adequate procedure for return of his property," via a motion for return of personal property pursuant to Pennsylvania Rule of Criminal Procedure 588. Defs.' Mem. 26. But as the Plaintiffs aptly assert, "[t]he ability of criminal defendants to move for return

of property under Pennsylvania Rule of Criminal Procedure 588 is
of no moment as Pennsylvania Rules of Civil Procedure govern
civil-forfeiture actions." Pls.' Resp. 41 (citing <u>Commonwealth</u>
<u>v. All That Certain Lot or Parcel of Land Located at 605 Univ.</u>
<u>Drive</u>, 104 A.3d 411, 430 (Pa. 2014) ("We therefore hold that the
[Pennsylvania] Rules of Civil Procedure apply to forfeiture
proceedings.")).[9] Plaintiffs argue that "Defendants' policy and
practice of failing to provide prompt post-deprivation hearings
violates the Due Process Clause of the Fourteenth Amendment
because it fails to give property owners a chance to contest the
basis for the deprivation at a meaningful time and in a
meaningful manner." Am. Compl. ¶ 269. Regardless of cases
finding Rule 588 to provide sufficient post-deprivation process
in other contexts, it is not clear as a matter of law that
Plaintiffs were on notice of the availability of this remedy,
and--even if they were aware--it is unclear whether a Rule 588
motion would provide a constitutionally sufficient "chance to
contest the basis for the deprivation at a meaningful time and

---

[9]      In Defendants' reply to Plaintiffs' response, they
point to <u>McKenna v. Portman</u>, which found that "Pennsylvania Rule
of Criminal Procedure 588 provides an adequate post-deprivation
remedy when police seize property pursuant to an investigation."
538 F. App'x 221, 225 (3d Cir. 2013). But this non-precedential
opinion concerned police seizures of personal property pursuant
to a search warrant, and it did not speak to the adequacy of the
civil forfeiture proceedings at issue in the instant case.
Simply pointing to Rule 588 does not end the inquiry here.

in a meaningful matter" in this context. Drawing all factual
inferences in favor of the nonmoving Plaintiffs, count three
adequately pleads a claim for relief.

### 3.   Count Four

The fourth count of Plaintiffs' Amended Complaint
concerns Defendants' practice of repeatedly "relisting"
forfeiture proceedings. Id. ¶¶ 272-78. As to this claim,
Defendants simply remark that "it is unclear how the alleged
'policy and practice' of the D.A. Defendants deprives a property
owner of a due process right," and "it is not clear what process
is denied Plaintiffs by virtue of this alleged conduct over and
above the conduct alleged in the third count." Defs.' Mem. 29.
However, Plaintiffs specifically allege that repeatedly
relisting forfeiture actions "forc[es] members of the putative
class to return to Courtroom 478 for each listing in order to
preserve their interest in the property, or else lose their
property forever through a default judgment," Am. Compl. ¶ 274,
which "imposes a high risk of erroneous deprivation of
property." Id. ¶ 276. Further, Plaintiffs assert that "[t]he
private interests affected by the 'relisting' procedure outweigh
Defendants' interests in maintaining the policy." Id. ¶ 276.
Despite Defendants' skepticism, viewed in the light most

favorable to the nonmoving Plaintiffs, this claim sufficiently pleads a due process violation.

### 4.   Count Five

Plaintiffs' fifth Claim asserts that Defendants' retention of forfeited property and monetary proceeds constitutes a violation of due process. Id. ¶¶ 279-287; see also id. ¶¶ 50-55 (citing data from the state Attorney General's Office that shows how the D.A.'s Office allocates forfeiture proceeds for both institutional and personal benefit and further alleging a profit-sharing agreement with the Philadelphia Police Department). In their motion to dismiss, Defendants dispute Plaintiffs' factual allegations as to the distribution of these proceeds. Defs.' Mem. 30 ("Any such [financial] incentive, however, is not realized by the prosecutors themselves [because] the proceeds are [statutorily] allocated for specific purposes subject to annual audits."). As this claim appears to be inherently a factual issue, resolution via a Rule 12(b)(6) motion would be improper--which is illustrated by the posture of the cases cited by Defendants. See Marshall v. Jerrico, Inc., 446 U.S. 238, 241 (1980) (addressing a similar claim on summary judgment); State ex rel. Cnty. of Cumberland v. One 1990 Ford Thunderbird, 852 A.2d 1114, 1118-24 (N.J. Super. Ct. App. Div

2004) (same; cataloguing relevant U.S. Supreme Court case law on the subject).[10]

     5.  <u>Count Six</u>

Plaintiffs' sixth claim alleges that prosecutors essentially act like judges in running forfeiture proceedings in Courtroom 478. Am. Compl. ¶¶ 288-93. Coupled with Defendants' alleged direct pecuniary interest in the outcome of the forfeiture proceedings, these allegations state a claim[11] based on a violation of the due-process guarantee of an impartial neutral arbiter. See <u>Tumey v. Ohio</u>, 273 U.S. 510, 531 (1927) (finding a due process violation where a village mayor's compensation was derived, in part, from fines he imposed).

---

[10]    In referring to the case law on this issue, Defendants remark that "[i]t is not at all clear why" Plaintiffs classify this claim as "'inherently a factual issue,'" when "directly analogous case law . . . suggests there could be no due process violation." Defs.' Reply Br. 18 (quoting Pls.' Resp. 42). However, the cases cited by Defendants do not address the particular statutory and financial schemes at issue in the instant case, and thus, there are factual questions to resolve as to Plaintiffs' fifth claim--a claim which truly goes to the heart of this case.

[11]    Defendants incorrectly assert that this claim is duplicative of Plaintiffs' third claim regarding the lack of a prompt post-deprivation hearing. Defs.' Mem. 29. A claim regarding the lack of a prompt post-deprivation hearing is not coextensive with a claim regarding the lack of a neutral arbiter.

* * *

Overall, viewing the facts in the light most favorable to the nonmoving Plaintiffs, the Court concludes that each of the six counts of Plaintiffs' Amended Complaint have sufficiently stated claims for relief under Rule 12(b)(6).

D.   The D.A.'s Office Is a Proper Party

Defendants also assert that the D.A.'s Office is "not an entity amenable to suit under 42 U.S.C. § 1983." Defs.' Mem. 4.[12] In support of this view, Defendants rely on two sources of authority for dismissing the D.A.'s Office as a Defendant in this case: 53 P.S. § 16257 and Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997), and its progeny. But contrary to these sources, the D.A.'s Office is a proper party under § 1983.

Defendants principally rely on § 16257, which requires that all suits lodged against any "department" of the City of Philadelphia be brought "in the name of" the City. See Defs.' Mem. 24.[13] However, this provision is inapplicable, as the D.A.'s

---

[12]      "As a preliminary matter," Plaintiffs allege, "Defendants' arguments are inconsequential: Dismissing the Philadelphia D.A.'s Office would save neither judicial nor parties' resources as Plaintiffs have also sued D.A. Williams and the City of Philadelphia and will still need the same discovery from these parties." Pls.' Resp. 43.

[13]      Specifically, § 16257 states as follows:

33

Office is technically not a <u>department</u> of the City, but is a
separate entity created by state law. 16 P.S. §§ 7701-7742.
Pennsylvania State law dictates that the District Attorney of
Philadelphia is independently elected, and vests the D.A. with
authority to appoint the First Assistant District Attorney,
Assistant District Attorneys, and Detectives. <u>Id.</u> §§ 7701, 7721,
7723, 7741. Moreover, Article III, § 3-100 of Philadelphia's
Home Rule Charter establishes the "offices, departments, boards,
commissions, and agencies" of the City of Philadelphia--and,
importantly, the Philadelphia D.A.'s Office is not among the
many agencies listed.

    Accordingly, Pennsylvania courts limit dismissal of
departments of the City under § 16257 to departments created

---

All bonds, contracts and obligations heretofore
executed, judgments entered, claims filed, and suits
now pending in the name of any department of said
city, formerly having had a corporate existence, are
declared to be good and valid, and to inure to the use
of the city; but no such department shall be taken to
have had, since the passage of the act to which this
is a supplement, a separate corporate existence, and
hereafter all suits growing out of their transactions,
and all claims to be filed for removing nuisances,
together will all bonds, contracts and obligations,
hereafter to be entered into or received by the said
departments, shall be in the name of the city of
Philadelphia.

under the authority of the Home Rule Charter or City Code.[14] In like manner, the Third Circuit has dismissed defendants under § 16257 when they were found to be departments created by the Home Rule Charter. See Russell v. City of Philadelphia, 428 F. App'x 174, 177 (3d Cir. 2011) (holding that the Philadelphia Prison System, established by the City's Home Rule Charter, § 3-100(d), and a prison within the system, were departments of the City under § 16257); Kent v. Phila. D.H.S., 503 F. App'x 128, 130 n.2 (3d Cir. 2012) (holding that the Department of Human Services, formerly known as the Department of Public Welfare and established by Home Rule Charter § 3-100(d), was a department of the City under § 16257).

Defendants' argument also rests on the Third Circuit's decision in Reitz v. County of Bucks, a case about municipal liability and--in Plaintiffs' words--a "source of much mischief

---

[14]     See, e.g., HSP Gaming, L.P. v. City Council, 939 A.2d 273, 276 n.4 (Pa. 2007) (holding that the Planning Commission, established by the Home Rule Charter under § 3-100(e), was a department of the City under § 16257); Phila. Entm't & Dev. Partners, L.P. v. City of Philadelphia, 939 A.2d 290, 292 n.1 (Pa. 2007) (holding that the Department of Licenses and Inspections, established by the Home Rule Charter under § 3-100(d), was a department of the City under § 16257); Wood v. City of Philadelphia, No. 1348 C.D. 2013, 2014 WL 1004119, at *1 (Pa. Commw. Ct. Mar. 13, 2014) (discussing how the Philadelphia Parking Authority and the Bureau of Administrative Adjudications, established under Philadelphia Code, §§ 12-2801 to 12-2809, were departments of the City under § 16257).

on Section 1983 liability for D.A. Offices in the Commonwealth."
Pls.' Resp. 45.

In the Reitz case, plaintiffs--"members of a large
family of which one was convicted of violating Pennsylvania
narcotics laws" and whose property had been seized for civil
forfeiture--filed suit against Bucks County, the Bucks County
D.A.'s Office, and individual prosecutors, claiming "that the
named defendants failed to comply with court orders directing
the return of their property and intentionally or negligently
mishandled said property." 125 F.3d at 141, 142.

In contrast to the instant case, the plaintiffs in
Reitz specifically argued "that the prosecutors are the
employees of the County, and that the County is liable for the
misconduct of its employees, and thus the County is liable for
the misconduct of the prosecutors." Id. at 144. Thus, the
crucial question was decidedly not whether the Bucks County
D.A.'s Office was an entity that could be sued under § 1983, but
instead whether the D.A.'s Office was liable for an "actionable
custom or policy on the part of this Office in its prosecutorial
capacity" or for a "failure to train its employees that
constitutes a deliberate indifference to the constitutional
rights of the plaintiffs." Id. at 145. Moreover, for purposes of

deciding the issue, the Third Circuit "accept[ed] plaintiffs'[]
proposition that the District Attorney's Office is a separate
entity," id., and stated, in relevant part,

> [t]he plaintiffs recognize both "that the County and
> the District Attorney's Office are separate entities"
> and that the District Attorney is, under the
> Constitution of Pennsylvania, Article IX, § 4, an
> independently elected official of the County, as
> "opposed to non-elected County offices controlled by
> the elected County Commissioners." Nonetheless,
> plaintiffs contend "that the District Attorney's
> Office and its staff are employees of the County of
> Bucks." Further, plaintiffs assert that the evidence
> here shows that the County of Bucks "is the employer
> of the defendant District Attorney as a matter of
> policy and practice [and] with deliberate indifference
> failed to adequately discipline, train . . . or
> otherwise direct" their employees and agents
> concerning the rights of citizens.

Id. at 146 (alterations in original). The Reitz Court's central
holding, as to the Bucks County D.A. Office, was that plaintiffs
had "presented no evidence of any actionable custom or policy on
the part of this Office in its prosecutorial capacity nor of any
failure to train its employees that constitutes a deliberate
indifference to the constitutional rights of the plaintiffs."
Id. at 145. Thus, the Court held that "the district court did
not err in also granting summary judgment in favor of the Bucks
County District Attorney's Office." Id.

At the end of the opinion--essentially in one line
that is arguably dicta--the Reitz Court summarily remarked that

37

"the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability." Id. at 148. The Third Circuit neither explained nor cited authority for this proposition, but simply referenced the district court's similarly uncited remark that "[t]he Bucks County District Attorney's Office is not a legal entity for the purpose of § 1983 liability." Reitz v. Cnty. of Bucks, No. 95-6603, 1996 WL 530021, at *2 (E.D. Pa. Sept. 17, 1996).

Since Reitz, district courts have relied on this single line without any explanation, independent analysis, or scrutiny into the precise contours of § 16257, and have thus held that the D.A.'s Office is not an independent state entity for purposes of § 1983 liability. See, e.g., Brinson v. City of Philadelphia, No. 11-7479, 2012 WL 642057, at *2 (E.D. Pa. Feb. 28, 2012); Allen v. Dist. Attorney's Office of Phila., 644 F. Supp. 2d 600, 611 (E.D. Pa. 2009); Domenech v. City of Philadelphia, No. 06-1325, 2007 WL 172375, at *2 (E.D. Pa. Jan. 18, 2007). This Court declines to walk down this unexamined path--a path not supported by a close reading of Reitz. Accordingly, the Court concludes that neither § 16257 nor Reitz bars suit against the D.A.'s Office under the circumstances of this case.

38

**V.    CONCLUSION**

       For the foregoing reasons, the Court will deny Defendants' motion to dismiss Plaintiffs' Amended Complaint. An appropriate order follows.