# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CHRISTOS SOUROVELIS, DOILA WELCH, NORYS HERNANDEZ, and NASSIR GEIGER on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Civil Action No. 2:14-cv-04687-ER |
| vs. | Assigned to the Honorable Judge Robreno |
| CITY OF PHILADELPHIA; MICHAEL A. NUTTER, in his official capacity as Mayor of Philadelphia; PHILADELPHIA DISTRICT ATTORNEY'S OFFICE; R. SETH WILLIAMS, in his official capacity as District Attorney of Philadelphia; and CHARLES H. RAMSEY, in his official capacity as Commissioner of the Philadelphia Police Department, | **Special Management Track** |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CERTIFY SETTLEMENT CLASSES AND GRANT FINAL APPROVAL OF SETTLEMENT OF PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS ......................................................................................2

    I.      DEFENDANTS' PRACTICES BEFORE THE LAWSUIT.....................................2

          A.  Defendants' "Seize and Seal" Policy .................................................2

          B.  Defendants' Practice of Requiring Property Owners to Relinquish Rights.......4

    II.     PLAINTIFFS FILE THE INSTANT SUIT CHALLENGING DEFENDANTS' POLICIES AND PRACTICES .....................................................................................5

    III.    THE PROPOSED SETTLEMENT AGREEMENT RESOLVES PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF...................................................................10

          A.  Defendants Agree to Amend the Policies and Practices Motivating Plaintiffs' First Claim for Relief .................................................................11

          B.  Defendants Agree to Amend the Policies and Practices Motivating Plaintiffs' Second Claim for Relief.................................................................12

          C.  The Proposed Settlement Agreement Includes Notice Provisions .................13

          D.  The Agreement Specifies that Attorneys' Fees Can Be Recovered from Prior Litigation of Claims 1 and 2 .........................................................15

    IV.    THE COURT PRELIMINARILY APPROVES THE PROPOSED SETTLEMENT AGREEMENT AND PROPOSED NOTICE .....................................................16

    V.     THERE ARE NO OBJECTIONS TO THE PROPOSED SETTLEMENT AGREEMENT...........17

ARGUMENT ........................................................................................................18

    I.      STANDARD OF REVIEW ........................................................................18

    II.     THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED ............................19

          A.  The Settlement Classes Satisfy Rule 23(a) and Rule 23(b)(2) ......................20

          B.  Plaintiffs' Counsel Satisfies Rule 23(g)..........................................................22

    III.    NOTICE TO PROSPECTIVE CLASS MEMBERS WAS REASONABLE. ............................23

IV.   THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND
      ADEQUATE…............................................................................................................23

      A.   The Complexity, Expense, and Likely Duration of Ongoing Litigation of
           Plaintiffs' First and Second Claims Weigh in Favor of Settlement Approval
           ....................................................................................................................25

      B.   The Lack of Objections Weighs in Favor of Settlement Approval .................26

      C.   Counsel Had an Adequate Appreciation of this Case's Merits Before Settling
           Plaintiffs' First and Second Claims for Relief.................................................26

      D.   The Risks of Establishing Liability Potentially Weigh in Favor of Settlement
           Approval ..........................................................................................................28

      E.   The Risks of Maintaining the Class Action Do Not Weigh Against Settlement
           Approval ..........................................................................................................28

      F.   The Fifth, Seventh, Eighth, and Ninth *Girsh* Factors Do Not Apply .............30

      G.   The *Prudential* Factors Do Not Weigh Against Settlement Approval ............30

CONCLUSION.........................................................................................................................31

CERTIFICATE OF SERVICE ................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Baby Neal ex rel. Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ............................................................. 21

*Benjamin v. Dep't of Pub. Welfare*,
    No. 1:09-CV-1182, 2014 WL 4793736 (M.D. Pa. Sept. 25, 2014)................................. 25

*Boone v. City of Phila.*,
    668 F. Supp. 2d 693 (E.D. Pa. 2009) .................................................... 26, 29, 30

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015)............................................................ 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)............................................................ 24

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)............................................................ 23

*Gates v. Rohm And Haas Co.*,
    Civ. A. No. 06-1743, 2008 WL 4078456 (E.D. Pa. Aug. 22, 2008)................................ 27

*Girsh v. Jepson*,
    521 F.2d 153 (3d. Cir. 1975)......................................................... passim

*Harris v. Reeves*,
    761 F. Supp. 382 (E.D. Pa. 1991) ...................................................... 23, 29

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)............................................................ 26

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010)............................................................ 20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).......................................................... 25, 26

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    176 F.R.D. 158 (E.D. Pa. 1997)......................................................... 24

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012)...................................................... 18, 27, 28

**Page(s)**

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
　106 F. Supp. 2d 721 (D.N.J. 2000) ................................................................. 30

*In re Prudential Ins.  Co. of Am.  Sales Practice Litig. Agent Actions*,
　148 F.3d 283 (3d Cir. 1998)................................................................ 24, 25, 29, 30

*In re Warfarin Sodium Antitrust Litig.*,
　391 F.3d 516 (3d Cir. 2004)................................................................. 18

*Inmates of Northumberland Cnty. Prison v. Reish*,
　No. 08-CV-345, 2011 WL 1627951 (M.D. Pa. Apr. 29, 2011).................................. 26, 30

*Kaplan v. Chertoff*,
　Civ. A. No. 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ............................. 27, 29

*McAlarnen v. Swift Transp. Co.*,
　Civ. A. No. 09-1737, 2010 WL 365823 (E.D. Pa. Jan. 29, 2010) .................................. 27

*Pastrana v. Lane*,
　Civ. A. No. 08-468, 2012 WL 602141 (E.D. Pa. Feb. 24, 2012) .................. 19, 24, 26, 30

*Sullivan v. DB Invs., Inc*,
　667 F.3d 273 (3d Cir. 2011) (*en banc*) .................................................... 19, 20

*United States v. James Daniel Good Real Prop.*,
　510 U.S. 43 (1993)......................................................................... 7

*Williams v. City of Phila.*,
　270 F.R.D. 208 (E.D. Pa. 2010)........................................................... 19

*Williams v. City of Phila.*,
　Civ A. No. 08-1979, 2011 WL 3471261 (E.D. Pa. Aug. 8, 2011)............................ 28, 30

## RULES AND STATUTES

42 Pa. Cons. Stat. § 6802(f) ................................................................ 2, 6

42 Pa. Cons. Stat. § 6802(g) ............................................................... 2, 6

42 Pa. Cons. Stat. § 6802(j) ................................................................ 8

Fed. R. Civ. P. 23(a) ................................................................. passim

Fed. R. Civ. P. 23(a)(4)..................................................................... 22

**Page(s)**

Fed. R. Civ. P. 23(b)(2) ................................................................................... passim

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 19

Fed. R. Civ. P. 23(e) ..................................................................................... passim

Fed. R. Civ. P. 23(e)(1) .............................................................................................. 23

Fed. R. Civ. P. 23(e)(3) .............................................................................................. 19

Fed. R. Civ. P. 23(e)(4) .............................................................................................. 19

Fed. R. Civ. P. 23(e)(5) .............................................................................................. 19

Fed. R. Civ. P. 23(g) ........................................................................................... 23, 31

Fed. R. Civ. P. 23(g)(1) .............................................................................................. 20

Fed. R. Civ. P. 23(g)(1)(A) ................................................................................... 20, 22

Fed. R. Evid. 902(5) ................................................................................................... 17

Local Rule of Civil Procedure 7.1 ................................................................................. 1

**OTHER AUTHORITIES**

*Notice of Proposed Settlement Agreement and Hearing in Class Action for Owners of Property Threatened with Civil Forfeiture*, Office of the District Attorney, City of Philadelphia (Sept. 2, 2015, 4:29 AM), https://phillyda.wordpress.com/2015/09/02/notice-of-proposed-settlement-agreement-and-hearing-in-class-action-for-owners-of-property-threatened-with-civil-forfeiture/ ................................................................................................................... 17

*Forms and Reports*, Philadelphia Police Department, https://www.phillypolice.com/forms/index.html (last visited Oct. 27, 2015) ............................ 17

*Forfeiture Proposed Settlement Agreement*, Philadelphia Police Department, https://www.phillypolice.com/assets/forms-reports/Sourovelis-ProposedSettlementAgreement.pdf (last visited Oct. 27, 2015) .......................................... 17, 18

*Forfeiture Settlement Notice*, Philadelphia Police Department, https://www.phillypolice.com/assets/forms-reports/Sourovelis-SettlementNotice.pdf (last visited Oct. 27, 2015) ................................................................................................. 18

Pursuant to Federal Rule of Civil Procedure 23(e) and Local Rule 7.1, Named Plaintiffs

Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger, on behalf of themselves

and all others similarly situated (collectively, "Plaintiffs"), respectfully submit this Memorandum

in Support of their Unopposed Motion to Certify Settlement Classes and Grant Final Approval of

Settlement of Plaintiffs' First and Second Claims for Relief.

## <u>INTRODUCTION</u>

Federal courts routinely approve class settlements for injunctive relief where the

government has agreed to remedy its challenged policies.  Here, Plaintiffs filed a class-action

lawsuit for primarily injunctive and declaratory relief, challenging the constitutionality of six of

Defendants' civil-forfeiture policies and practices.[1]  Defendants have agreed to remedy two of

those:  (1) the policy and practice of seizing real property without providing notice or an

opportunity to be heard and without providing particularized evidence of exigent circumstances;

and (2) the practice of requiring property owners to relinquish certain statutory or constitutional

rights in order to be let back into their homes or have the forfeiture petition withdrawn.

Because the proposed settlement classes of property owners (preliminarily approved by

the Court) satisfy the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure,

the settlement classes should be certified under Rule 23(b)(2).  Additionally, because the

settlement classes were provided reasonable notice and the terms of the agreement are fair,

reasonable, and adequate, this Court should approve the proposed class settlement of Plaintiffs'

First and Second Claims for Relief.

---

[1] The Defendants to Plaintiffs' class-action suit are the City of Philadelphia, Mayor Michael A. Nutter, Police Commissioner Charles H. Ramsey (collectively, "City Defendants"), and the Philadelphia District Attorney's Office and District Attorney R. Seth Williams (collectively, "District Attorney Defendants").

## STATEMENT OF THE FACTS

Defendants engaged in various policies in enforcing civil forfeiture.  After Plaintiffs challenged these policies in a class action, Defendants agreed to change two of these policies and the parties negotiated a settlement agreement, which this Court preliminarily approved.  After publication of notice of the agreement in conformance with this Court's directions, there were no objections.

## I.   DEFENDANTS' PRACTICES BEFORE THE LAWSUIT

As relevant here, Defendants engaged in two kinds of practices in enforcing civil forfeiture.  First, they routinely applied for, obtained, and executed orders to "seize and seal" homes and other real property—without providing any warning, opportunity to be heard, or particular evidence of an emergency or necessity.  Second, they required property owners to give up statutory and constitutional rights in order to be let back into their homes or to have forfeiture petitions withdrawn.

### A.   Defendants' "Seize and Seal" Policy

Historically, the Philadelphia District Attorney's Office interpreted provisions of the Controlled Substances Forfeiture Act (42 Pa. Cons. Stat. § 6802(f) and (g)) to authorize the seizure of real property without providing owners notice or any opportunity to be heard.  (*See, e.g.*, Defs.' Mem. Law Supp. Mot. Dismiss, ECF No. 52-1, ("Defs.' Mem.") 16; Defs.' Mem. Law Opp. Pls.' Mot. Prelim. Inj., ECF No. 28-1, 17.)[2]  For example, in 2014, the Philadelphia District Attorney's Office applied for and obtained *ex parte* orders to "seize and seal" real

---

[2] Generally, when moving for an *ex parte* "seize and seal" order, the District Attorney Defendants simultaneously filed a motion for a temporary restraining order to restrict transfer of property and a notice of initial hearing on both motions.  (*See, e.g.*, Decl. Daren Waite, ECF No. 28-2, ¶ 3.)

property in 126 out of 147 real-property forfeiture cases.[3]  (*See* Decl. Scott G. Bullock Supp.

Opp. Defs.' Mot. Dismiss, ECF No. 55-1, ¶¶ 3-4.)  In a three-month sample of 24 forfeiture

cases—which Plaintiffs' counsel culled by interviewing 24 real property owners who challenged

the forfeiture of their property—the Philadelphia District Attorney's Office filed 22 *ex parte*

"seize and seal" applications.[4]  (Decl. Darpana M. Sheth Supp. Mot. Prelim. Inj., ECF No. 22,

¶ 3, Ex. 1.)

In many respects, these "seize and seal" applications were form documents, containing

identical language the Commonwealth was requesting *ex parte* seizure so as to "avoid a

prolonged confrontation," "preserve the ability of the property for . . . forfeiture," and "minimize

the risk of injury to all parties."  (*See, e.g.*, Decl. Darpana M. Sheth Supp. Pl.'s Mot. Prelim. Inj.,

ECF No. 22, Ex. 4; Decl. Scott G. Bullock Supp. Opp. Defs.' Mot. Dismiss, ECF No. 55, Ex. D-

2; Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF No. 23, Ex. 4.)  However, none of

these applications contained specific allegations as to why "seize and seal" orders were

necessary.  (*See, e.g.*, Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF No. 23-4, Ex. 4(A);

Decl. Doila Welch Supp. Mot. Prelim. Inj., ECF No. 35-3, Ex. 2(A).)

Additionally, these applications contained minimal factual allegations and usually

attached a Philadelphia Police Department Arrest Report.  (*See, e.g.*, Decl. Markela Sourovelis

Supp. Mot. Prelim. Inj., ECF No. 23, Ex. 4(A); Decl. Doila Welch Supp. Mot. Prelim. Inj., ECF

No. 35-3, Ex. 2(A).)  In making these applications, prosecutors within the District Attorney's

Office often treated simple possession or the single sale of a controlled substance as exigent

---

[3] Plaintiffs' counsel reviewed these court records after purchasing them on the Philadelphia Courts Civil Docket Access website.  (*See* Decl. Scott G. Bullock Supp. Opp. Defs.' Mot. Dismiss, ECF No. 55-1, ¶ 4, Ex. A.)

[4] Since filing its preliminary-injunction motion, Plaintiffs' counsel has—through a legal staffing agency—continued interviewing property owners who appear in Courtroom 478 to challenge forfeiture of their property.  (*See* Decl. Briana Elzey, ECF No. 55-7, ¶¶ 3-5.)

circumstances warranting *ex parte* seizure of property.  For example, after Plaintiff Sourovelis's

son was arrested for selling $40 worth of a controlled substance to a confidential informant

outside Plaintiff Sourovelis's home, the prosecutor applied for and obtained an order to "seize

and seal" the Sourovelises' home.  (*See* Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF

No. 23, ¶¶ 4, 7.)

### B.    Defendants' Practice of Requiring Property Owners to Relinquish Rights

Before Plaintiffs filed this class action, prosecutors within the Philadelphia District

Attorney's Office also required property owners to relinquish certain statutory and constitutional

rights in order to "unseal" the property for the duration of the forfeiture proceeding or to have the

forfeiture petition against the property withdrawn.  (*See, e.g.*, Decl. Daren Waite, ECF No. 28-2,

Ex. 1(A).)  For example, in unsealing agreements, prosecutors often required property owners to

prospectively waive any statutory innocent-owner defense or constitutional defense that the

forfeitures constituted excessive fines.  (*See* Am. Compl. ¶ 107.)  Also, prosecutors required

property owners to bar specific individuals—including relatives—from homes subject to "seize

and seal" orders.  (*See id.*, ¶¶ 10, 12, 107, 257.)  For instance, in an unsealing agreement

permitting him back in his home, Plaintiff Sourovelis had to agree to bar his son from the

property.  (*See, e.g.*, Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF No. 23-8, Ex. 8.)

Similarly, under the terms of an agreement to unseal Plaintiff Hernandez's home, she had to

agree to bar her nephew from the premises.  (*See, e.g.*, Decl. Steven Agami, ECF No. 28-3, Ex.

2(A).)  Likewise, an unsealing agreement proposed to Plaintiff Welch provided that she had to

agree to bar her husband from her home.  (*See, e.g.*, Decl. James Dellafiora, ECF No. 28-4, Ex.

3(A).)

Prosecutors also included similar conditions in agreements to dismiss forfeiture petitions.

For example, the proposed Stipulation and Agreement offered to Plaintiff Sourovelis to withdraw the forfeiture petition against his home required Plaintiff Sourovelis to agree to the following conditions:

- Waiving, in any future forfeiture action, any affirmative defense based on *res judicata*, laches, innocent owner, or the Excessive Fine Clause;

- Subjecting "any prospective lessee, tenant, buyer or transferee of the property" to prior review by the Commonwealth;

- Giving the Commonwealth power to reject any prospective lessee, tenant, buyer, or transferee; and

- Screening prospective lessees, tenants, buyers, residents, or transferees of the property, including credit history and reference checks.

(Decl. Daren Waite, ECF No. 28-2, Ex. 1(A).)

The District Attorney's Office has imposed similar conditions as part of settlement negotiations in forfeiture actions involving personal property, including, but not limited to, requiring that respondents not permit specific individuals to possess, use, or operate seized vehicles and providing for the "automatic forfeiture" of vehicles if "used in violation of the law." (Proposed Settlement Agreement Pls.' 1st & 2d Claims for Relief (attached hereto as Exhibit A), ECF No. 91, at 4.)

## II.   PLAINTIFFS FILE THE INSTANT SUIT CHALLENGING DEFENDANTS' POLICIES AND PRACTICES.

On August 11, 2014, plaintiffs Sourovelis, Welch, and Hernandez commenced this class-action litigation challenging the constitutionality of various policies and practices of Defendants in prosecuting civil-forfeiture cases, including the policies and practices described above. (Compl., ECF No. 1.)  Simultaneously, these plaintiffs filed a motion for class certification under

Federal Rule of Civil Procedure 23(b)(2).[5]  (ECF No. 3.)  On November 17, 2014, Plaintiffs

amended the Complaint to add Nassir Geiger, who had his car and money seized for forfeiture.

(First Am. Compl., ECF No. 40.)  The Amended Complaint alleged the same six claims as

Plaintiffs' original complaint.

 Plaintiffs' First Claim for Relief alleges that Defendants' "seize and seal" policy violates

the Due Process Clause of the Fourteenth Amendment.  (*Id*. ¶¶ 243-48.)  Specifically, Plaintiffs

alleged that the following policies and practices of Defendants related to applying for and

obtaining *ex parte* "seize and seal" orders violate the Due Process Clause of the Fourteenth

Amendment:

 (1) The policy and practice of relying on 42 Pa. Cons. Stat. § 6802(f) and (g) to seize real property without first providing owners or residents of the property with notice and a meaningful opportunity to be heard;

 (2) The policy and practice of applying for *ex parte* orders to seize and seal real property without providing any particularized evidence that the order is needed to preserve the specific property for civil forfeiture or that providing notice will jeopardize the availability of the property for forfeiture;

 (3) The policy and practice of applying for *ex parte* orders to seize and seal real property without proffering any particularized evidence of exigent circumstances as defined by *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), and its progeny;

 (4) The policy and practice of treating mere possession or the single sale of controlled substances in a particular real property as exigent circumstances warranting *ex parte* seizure; and

---

[5] On October 2, 2014, Defendants filed a response in opposition to Plaintiffs' class-certification motion.  (ECF No. 29.)  On November 19, 2014, Plaintiffs filed a motion for leave to file a reply in support of their motion for class certification.  (ECF No. 41.)  On January 9, 2015, the District Attorney Defendants filed a motion for leave to file a surreply in further opposition to Plaintiffs' motion for class certification.  (ECF No. 45.)  On January 16, 2015, the Court dismissed all pending motions for leave to file replies and surreplies without prejudice.  (*See* Order, ECF No. 49.)  On June 17, 2015, the Court issued an order denying Plaintiffs' class certification motion without prejudice.  (*See* Order, ECF No. 82.)  On June 26, 2015, the Court issued an order providing, in pertinent part, that any motion for class certification subsequently filed would relate back to the time the initial class certification motion was filed.  (*See* Order, ECF No. 87.)

> (5) The policy and practice of applying for an *ex parte* order to seize and seal real property without proffering any evidence that a temporary restraining order restricting transfer of the property or other less restrictive means will be insufficient to protect Defendants' interests during the pendency of the civil-forfeiture proceedings.

(*Id*. ¶¶ 243-47.)

On September 8, 2014, the Named Plaintiffs filed a motion for a preliminary injunction on their First Claim for Relief.  (ECF No. 20.)  The United States Supreme Court held, in *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), that—absent exigent circumstances—the Due Process Clause requires the government to provide owners notice and an opportunity to be heard before it seizes their real property.  Accordingly, Plaintiffs requested that this Court declare Defendants' "seize and seal" policy unconstitutional and preliminarily enjoin Defendants from applying for and executing "seize and seal" orders for real property without first providing affected owners with notice and an opportunity to be heard.  (Mem. Supp. Pl.'s Mot. Prelim. Inj., ECF No. 21, 8-9, 19.)  Subsequently, the motion was fully briefed,[6] and—after a status conference in which the parties indicated possible settlement of this claim—on January 16, 2015, this Court dismissed Plaintiffs' preliminary-injunction motion without prejudice.  (*See* Order, ECF No. 49.)

Plaintiffs' Second Claim for Relief challenged Defendants' policy and practice of requiring property owners to give up statutory and constitutional rights under the doctrine of unconstitutional conditions.  (Am. Compl. ¶¶ 144, 256-57.)  Specifically, Plaintiffs alleged that the following policies and practices of Defendants related to unsealing agreements and

---

[6] On October 2, 2014, Defendants filed a response in opposition to Plaintiffs' preliminary-injunction motion. (ECF No. 28.)  On October 24, 2014, Plaintiffs filed a motion for leave to file a reply memorandum in support of their motion for a preliminary injunction on their First Claim for Relief.  (ECF No. 35.)  On November 10, 2014, the District Attorney Defendants filed a motion for leave to file a surreply memorandum in further opposition to Plaintiffs' motion for a preliminary injunction.  (ECF No. 38.)

agreements to withdraw forfeiture petitions violate the Due Process Clause of the Fourteenth

Amendment:

> (1) Compelling property owners to agree that if Defendants attempt to forfeit the property in the future, the property owner waives his or her rights to assert an innocent-owner defense under 42 Pa. Const. Stat. § 6802(j) or to assert a constitutional defense that forfeiture of the property would constitute an excessive fine;
>
> (2) Compelling property owners to agree to bar specific individuals from their property;
>
> (3) Requiring, as conditions of an unsealing agreement or settlement agreement, that property owners subject any prospective lessee, tenant, buyer or transferee of the property to prior review by the Commonwealth;
>
> (4) Giving the Commonwealth power to reject any prospective lessee, tenant, buyer, or transferee; and
>
> (5) Screening prospective lessees, tenants, buyers, residents, or transferees of the property, including credit history and reference checks;

(Am. Compl. ¶¶ 144, 256-57.)  Defendants have imposed similar conditions as part of settlement

negotiations in forfeiture actions involving personal property, including, but not limited to,

requiring that respondents not permit specific individuals to possess, use, or operate seized

vehicles and providing for the "automatic forfeiture" of vehicles if "used in violation of the law."

(Ex. A at 4.)

In their operative complaint, Plaintiffs sought, in pertinent part, preliminary and

permanent injunctions against Defendants prohibiting them from engaging in the policies and

practices that motivated Plaintiffs' First and Second Claims for Relief.  (*See* Am. Compl., Req.

for Relief.)  Plaintiffs also sought a declaration that these policies and practices were

unconstitutional and that the City of Philadelphia and the Philadelphia District Attorney's Office

were liable, class certification, nominal damages, and attorneys' fees.  (*See id.*)

Plaintiffs sought discovery on these claims.  (*See* Hr'g Tr. (ECF No. 58) at 10:7–12, Jan.

15, 2015; *see also* Hr'g Tr. (ECF No. 59) at 6:24–7:24, Mar. 2, 2015.)  However, the Court

stayed discovery in a January 16, 2015 order and, in light of a then-pending motion to dismiss, continued the stay on March 2, 2015. (*See* Order, ECF No. 49; Hr'g Tr. (ECF No. 59) at 8:23–9:2, Mar. 2, 2015.)

On March 16, 2015, Defendants filed a joint motion to dismiss the Amended Complaint.[7] (ECF No. 51). Raising arguments concerning mootness, voluntary cessation, standing, and abstention, Defendants contested this Court's jurisdiction over Plaintiffs' First and Second Claims for Relief. (Mem. Supp. Def.'s Joint Mot. Dismiss 1st Am. Compl., ECF No. 52-1, 3-4.) Defendants also argued that the Philadelphia District Attorney's Office was not a party amenable to suit and that Plaintiffs' second count failed to state a claim upon which relief could be granted. (*Id.* at 3-4, 24, 28.) After reviewing the full briefing[8] and hearing oral argument on the motion, this Court denied Defendants' motion on May 12, 2015. (*See* ECF No. 52; Order, ECF No. 66.) Subsequently, Defendants filed a motion for reconsider the Court's rulings concerning Plaintiff Geiger. (ECF No. 73) This motion is fully briefed and currently pending, but is not pertinent to the Proposed Settlement Agreement. Meanwhile, Plaintiffs continue to litigate their remaining four claims, which are in the discovery phase.[9]

---

[7] On October 2, 2014, Defendants first filed motions to dismiss Plaintiffs' original complaint. (ECF Nos. 27 & 30.) The District Attorney Defendants and the City Defendants filed motions to dismiss the Amended Complaint on January 12, 2015 and January 13, 2015, respectively. (ECF Nos. 46 & 47.) On January 16, 2015, the Court dismissed the pending motions to dismiss without prejudice. (*See* Order, ECF No. 49.)

[8] On April 3, 2015, Plaintiffs filed a response in opposition to Defendants' joint motion to dismiss. (ECF No. 55.) On April 13, 2015, Defendants filed a joint motion for leave to file a reply memorandum in further support of their motion to dismiss the Amended Complaint, which was granted. (ECF Nos. 56 & 67.)

[9] Plaintiffs' Third, Fourth, Fifth, and Sixth Claims assert that Defendants' failure to provide a prompt post-deprivation hearing, repeated "relisting" of forfeiture proceedings, retention of forfeited property and its proceeds, and policy and practice of prosecutorial control of Courtroom 478 in Philadelphia's City Hall, respectively, violate the Due Process Clause of the Fourteenth Amendment. (*See* Am. Compl. ¶¶ 266-93.)

III.   **THE PROPOSED AGREEMENT RESOLVES PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF.**

In response to Plaintiffs' suit, Defendants changed their policies and procedures related to Plaintiffs' First and Second Claims for Relief.  The District Attorney Defendants warrant that they have not filed applications for any *ex parte* "seize and seal" orders since on or about September 22, 2014.  (Ex. A, at 3.)   The District Attorney Defendants warrant that: (1) since on or about November 5, 2014, they have not required property owners to waive any statutory or constitutional defense as a condition of an unsealing agreement or settlement agreement; (2) since on or about March 16, 2015, they have not required real property owners to agree to bar relatives from entering property or residing together as a condition of an unsealing or settlement agreement; (3) since April 1, 2015, they have not required real property owners to give the Commonwealth of Pennsylvania power to review or reject any prospective lessees, tenants, buyers, residents, or transferees of the owners' property or require property owners to screen prospective lessees, tenants, buyers, residents, or transferees of the property as conditions of unsealing or settlement agreements; and (4) since June 11, 2015, they have neither required personal property owners to restrict specific individuals from using their property nor provided for the "automatic forfeiture" of personal property in the future as conditions of a settlement agreement.  (*Id.* at 4-5.)

After six months of negotiations, the Named Plaintiffs and Defendants executed the Proposed Settlement Agreement for Plaintiffs' First and Second Claims for Relief (the "Proposed Settlement Agreement").  The Proposed Settlement Agreement—summarized below—intends to set forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and all members of the settlement classes defined therein, the City Defendants, and the District Attorney Defendants resolve Plaintiffs' First and Second Claims for Relief.

A.    **Defendants Agree to Amend the Policies and Practices Motivating Plaintiffs' First Claim for Relief.**

Under the Proposed Settlement Agreement, the District Attorney Defendants agree that they will not seek—absent the provision of notice or an opportunity to be heard—a "seize and seal" order against any home or other real property under the Controlled Substances Forfeiture Act except when all of the following circumstances are met:

(1) Prior approval of the application from a person specifically designated (and previously identified to Plaintiffs) by the Philadelphia District Attorney's Office before it is submitted to the Court of Common Pleas of Philadelphia County;

(2) Specific, particularized, and credible facts demonstrating that exigent circumstances exist under *James Daniel Good*;[10] and

(3) Specific, particularized, and credible facts demonstrating that less restrictive measures are insufficient to protect the Commonwealth's interests in preventing the sale, destruction, or continued unlawful use of the real property and that providing notice would jeopardize this interest.

(Ex. A at 8-10.) The District Attorney Defendants also agreed to move to vacate any *ex parte* "seize and seal" order presently in effect on a property owner's home no later than thirty days after the Proposed Settlement Agreement's effective date.[11] (*Id.* at 10.) The District Attorney Defendants agree that if—after vacatur of a prior order—they determine that exigent circumstances are presented and less restrictive measures are inadequate, they will comply with the above-stated procedures to apply for a new *ex parte* "seize and seal" order and will provide notice in conformance with the Proposed Settlement Agreement's terms. (*Id.*) Under the

---

[10] Under the Proposed Settlement Agreement, "[e]xigent circumstances include, but are not limited to, persistent illegal activity occurring at the property, after, on multiple occasions, (i) arrests have been made or search warrants have been executed, and (ii) contraband has been discovered at the property during those arrests or executions of search warrants." (Ex. A at 8.) Moreover, "[t]he mere fact that law enforcement observed controlled substances present at a property, that law enforcement observed controlled substances being sold or distributed at a property, that a property was purchased with criminal proceeds, or that a property is considered deteriorated does not constitute exigent circumstances." (*Id.*) Further, "[c]onclusory allegations are insufficient to establish exigent circumstances" and "[m]erely attaching a copy of any police report concerning the alleged criminal activity that serves as the predicate for civil forfeiture is insufficient to establish exigent circumstances." (*Id.* at 9.)

[11] The "effective date" is defined as the date the Court provides final approval for the settlement. (Ex. A at 7.)

Proposed Settlement Agreement, if a property owner whose property is currently subject to a "seize and seal" order is represented by an attorney and knowingly and voluntarily agrees—in writing—to the continued sealing of his or her property, the District Attorney Defendants may—within thirty days of the effective date—seek to reinstate the "seize and seal" order after providing the property owner with proper notice and presenting the petition to reinstate the "seize and seal" order at a hearing before a judge of the Court of Common Pleas.  (*Id.*)

### B. Defendants Agree to Amend the Policies and Practices Motivating Plaintiffs' Second Claim for Relief.

Defendants have also agreed to no longer require property owners to relinquish certain rights in order to be let back into their homes or have the forfeiture petition withdrawn.  Under the Proposed Settlement Agreement, the following conditions contained in unsealing and settlement agreements are void and unenforceable:

(1) Giving up statutory or constitutional defenses or claims in any future proceedings, including any condition for "automatic forfeiture" of property;

(2) Restricting access to the property by any relative, defined to include up to fifth-degree relatives;

(3) Restricting access to the property by any non-relative, unless the non-relative has been convicted of distributing illegal controlled substances;

(4) Giving the Commonwealth the power to review, approve, or reject prospective lessees, tenants, buyers, residents, or transferees of the property; and

(5) Requiring property owners to screen or disclose personal information (including, but not limited to, social security numbers and date of birth) about prospective lessees, tenants, buyers, residents, or transferees of the property.

(*See id*. at 6, 12)  The District Attorney Defendants agree to inform—within 30 days of the effective date of the Proposed Settlement Agreement—all property owners who have entered into unsealing or settlement agreements containing the above conditions that these conditions no longer apply.  (*Id*. at 12-13.)

In drafting the terms of unsealing agreements vacating prior *ex parte* "seize and seal" orders, and in drafting the terms of settlement agreements involving real property or vehicles, the District Attorney Defendants agree to use, as templates, the model forms attached as appendices to the Proposed Settlement Agreement.  (*Id*. at 13.)  The parties agree that such unsealing agreements and consent motions may vary depending upon the factual circumstances of a given case, but also agree that the agreements and motions will in no event contain the unenforceable conditions listed above.  (*See id*. at 11-13.)

### C.      The Proposed Settlement Agreement Includes Notice Provisions.

Because discovery was stayed and Plaintiffs were not able to obtain any discovery on these claims, the Proposed Settlement Agreement includes notice provisions requiring the District Attorney's Office to produce relevant documents on a rolling basis beginning thirty days from the agreement's effective date and to complete production within sixty days.  Specifically, the District Attorney Defendants agree to produce all applications for *ex parte* "seize and seal" orders—and related documents—filed since August 11, 2012, as well as all unsealing and settlement agreements—and corresponding forfeiture petitions and court orders—filed since August 11, 2012.  (*Id*. at 13-14.)

In addition, the District Attorney Defendants agree to produce—for a period of eighteen months from the settlement's effective date—the following documents on a monthly basis:

   a.  The complete miscellaneous docket report of the Court of Common Pleas of
       Philadelphia County in all civil-forfeiture cases in which a "seize and seal" order is in
       place, along with all documents and any attachments filed in such miscellaneous
       dockets, including but not limited to applications for temporary restraining orders, *lis
       pendens*, interrogatories, and responses to interrogatories;

   b.  Any and all applications made in the Court of Common Pleas of Philadelphia County
       for a "seize and seal" order (whether filed *ex parte* or after notice), including all
       supporting documentation, affidavits, and police reports, unless such production
       would be prohibited under Pennsylvania or federal law, in which case the District

Attorney Defendants will provide redacted copies of the documentation, where appropriate, along with an explanation of why redaction is necessary;

c.   Any court order regarding an application for a "seize and seal" order;

d.   The complete miscellaneous docket report of the Court of Common Pleas of Philadelphia County in all civil-forfeiture cases in which an unsealing agreement is executed, along with all documents and any attachments filed in such miscellaneous dockets, including but not limited to applications for temporary restraining orders, *lis pendens*, interrogatories, and responses to interrogatories;

e.   Copies of all documents verifying that civil-forfeiture respondents have consented to "seize and seal" orders and are represented by counsel, including but not limited to all written agreements, all petitions to reinstate the "seize and seal" order, and all orders issued thereunder;

f.   The complete miscellaneous docket report of the Court of Common Pleas of Philadelphia County in all civil-forfeiture cases in which a settlement agreement is executed, along with all documents and any attachments filed in such miscellaneous dockets, including but not limited to applications for temporary restraining orders, *lis pendens*, interrogatories, and responses to interrogatories;

g.   All unsealing agreements entered into between civil-forfeiture respondents and the Philadelphia District Attorney's Office; and

h.   All settlement agreements entered into between civil-forfeiture respondents and the Philadelphia District Attorney's Office.

(*Id*. at 14-16.)

The Proposed Settlement Agreement contemplates that this Court will retain jurisdiction over Plaintiffs' First and Second Claims for Relief for eighteen months after the settlement's effective date, but may extend the term of its jurisdiction based on a finding of substantial noncompliance.  (*Id*. at 16.)

In the event the parties to the settlement are unable to resolve any claims of substantial noncompliance,[12] any party may petition the Court to order specific performance of the settlement.  (*Id*. at 17.)

---

[12] A claim of substantial noncompliance can be made on the following grounds:

- 14 -

The Proposed Settlement Agreement does not cover any claim for money damages against Defendants.  (*See* Hr'g Tr. (ECF No. 94) at 6:6-10, Jul. 20, 2015.)  No property owners will receive any cash payment as a result of the Proposed Settlement Agreement.  (*See* Notice of Proposed Settlement Agreement (attached hereto as Exhibit B), at 2.)  However, property owners are free to pursue or not pursue any damages claims they may have.  (*See id.*)

**D.     The Agreement Specifies that Attorneys' Fees Can Be Recovered from Prior Litigation of Claims 1 and 2.**

Under the Proposed Settlement Agreement, Plaintiffs may later be awarded attorneys' fees or costs to compensate them for their prior time and work in litigating their First and Second Claims for Relief.  (Ex. A at 17.)    Additionally, the prevailing party on a claim of substantial noncompliance with the agreement may seek an award of reasonable attorneys' fees and costs associated with drafting and litigating the noncompliance claim.  (*Id.*)  However, the parties may not otherwise petition the Court to recover attorneys' fees and costs associated with enforcing the Proposed Settlement Agreement, including the monitoring provisions.  (*Id.*)  The amount of any attorneys' fees and costs will be made public.  (*Id.*)

---

(a)   the District Attorney Defendants submitted an application for an *ex parte* "seize and seal" order to the Court of Common Pleas of Philadelphia County that was not supported by exigent circumstances or necessity, as required under *James Daniel Good*;

(b)   the District Attorney Defendants executed an unsealing or settlement agreement that included any of the following unconstitutional conditions:  (1) prospective waiver of statutory or constitutional defenses or claims in any future proceeding, including any condition providing for automatic forfeiture; (2) restricting access to the property by any relative; (3) restricting access to the property by any non-relative who has not been convicted of distributing an illegal controlled substance; (4) giving the Commonwealth the prerogative to review, approve, or reject prospective lessees, tenants, buyers, residents, or transferees of the property; or (5) requiring property owners to screen or disclose personal information (including, but not limited to social security numbers and dates of birth) about prospective lessees, tenants, buyers, residents, or transferees of the property; or

(c)   the District Attorney Defendants executed an unsealing or settlement agreement containing any other condition on the exercise of constitutional rights where the Respondent was not represented by counsel.

(Ex. A at 16-17.)

IV.   **THE COURT PRELIMINARILY APPROVES THE PROPOSED SETTLEMENT AGREEMENT AND PROPOSED NOTICE.**

On June 22, 2015, the parties filed a joint motion to certify settlement classes and preliminarily approve settlement of Plaintiffs' First and Second Claims for Relief.  After a July 20, 2015 hearing on the parties' joint motion, and after the parties filed a proposed notice of settlement agreement (the "Proposed Notice"), the Court preliminarily approved the Proposed Settlement Agreement, issuing an order on August 28, 2015.  (*See* Order, ECF No. 97.)  The Court also preliminarily approved the following settlement classes (the "Settlement Classes") under Federal Rule of Civil Procedure 23(a) and (b)(2):

- For purposes of the First Claim for Relief in the Amended Complaint, all persons holding legal title to or otherwise having a legal interest in real property against which an *ex parte* "seize and seal" order is presently in effect, or will in the future be in effect;

- For purposes of the Second Claim for Relief in the Amended Complaint, all persons holding legal title to or otherwise having a legal interest in real or personal property against which a civil-forfeiture petition has been filed, or will in the future be filed, in the Court of Common Pleas of Philadelphia County and who entered into an unsealing agreement or a settlement agreement;

(*Id*. at 2-4.)  According to the Court, "the parties ha[d] sufficiently demonstrated that the proposed classes w[ould] likely satisfy both Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy, as well as 23(b)(2)'s requirement that the Defendants' actions apply generally to the class."  (*Id*. at 3.)

The Court also approved the Proposed Notice, instructing the parties to publish it twice in both the *Philadelphia Inquirer* and the *Philadelphia Daily News* between September 7 and September 14, 2015.  (*Id*. at 4.)  Per the Court's August 28, 2015 order, objections to the Proposed Settlement Agreement were due on October 7, 2015, responses to any objections were due on October 21, 2015, and a fairness hearing was scheduled for November 2, 2015.  (*Id*.)

V.      **THERE ARE NO OBJECTIONS TO THE PROPOSED SETTLEMENT AGREEMENT.**

Class members were provided an opportunity to comment or object. The Notice of

Proposed Settlement Agreement for Plaintiffs' First and Second Claims for Relief (the "Notice")

was posted in both the *Philadelphia Inquirer* and *Philadelphia Daily News* on September 9, 2015

and again on September 11, 2015, per the Court's order. (Decl. Darpana M. Sheth Supp. Mot.

Certify Settlement Classes Grant Final Approval Settlement Pls. 1st & 2d Claims Relief

(attached hereto as Exhibit C), ¶¶ 7-11.) In addition, since on or about September 2, 2015, the

Notice and Proposed Settlement Agreement have been available in Courtroom 478 in

Philadelphia's City Hall. *Id.*, ¶ 5.

The parties to the agreement have also published notice online. The District Attorney

Defendants posted the Notice at the Philadelphia District Attorney Office's website.[13] *Notice of*

*Proposed Settlement Agreement and Hearing in Class Action for Owners of Property Threatened*

*with Civil Forfeiture*, Office of the District Attorney, City of Philadelphia (Sept. 2, 2015, 4:29

AM), https://phillyda.wordpress.com/2015/09/02/notice-of-proposed-settlement-agreement-and-

hearing-in-class-action-for-owners-of-property-threatened-with-civil-forfeiture/. The City

Defendants posted links to the Notice and the Proposed Settlement Agreement in the "Forms and

Reports" section of the Philadelphia Police Department's website.[14] *Forms and Reports*,

Philadelphia Police Department, https://www.phillypolice.com/forms/index.html (last visited

Oct. 27, 2015). Specifically, the Proposed Settlement Agreement and the Notice themselves

were posted at separate web addresses. *Forfeiture Proposed Settlement Agreement*, Philadelphia

---

[13] For evidentiary purposes, the Philadelphia District Attorney Office's website is a self-authenticating document. *See* Fed. R. Evid. 902(5) (referring to "publication purporting to be issued by a public authority" as self-authenticating).

[14] For evidentiary purposes, the Philadelphia Police Department's website is a self-authenticating document. *See* Fed. R. Evid. 902(5) (referring to "publication purporting to be issued by a public authority" as self-authenticating).

Police Department, https://www.phillypolice.com/assets/forms-reports/Sourovelis-ProposedSettlementAgreement.pdf (last visited Oct. 27, 2015); *Forfeiture Settlement Notice*, Philadelphia Police Department, https://www.phillypolice.com/assets/forms-reports/Sourovelis-SettlementNotice.pdf (last visited Oct. 27, 2015).  On or about September 2, 2015, Plaintiffs' lead counsel—the Institute for Justice—published the Notice and Proposed Settlement Agreement on a website it maintains and dedicates to the issue of civil forfeiture.  (Ex. C, ¶ 3) The Notice and Proposed Settlement Agreement were both posted as separate links under the Legal Documents section of the site.  (*Id.*)

In the Notice, Plaintiffs' counsel and Defendants' counsel both posted their mailing addresses, telephone numbers, and email addresses.[15]  (*Id.*, ¶ 2.)  No objections—in any form—were received by counsel for the parties.  (*Id.*, ¶ 12.)  No objections were filed with this Court either.

**ARGUMENT**

I.   **THE STANDARD OF REVIEW**

As a prerequisite to final approval of a proposed settlement agreement, a court must certify the classes bound by the settlement.  *See In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 259 (E.D. Pa. 2012).  The decision of whether to certify a settlement class is left to the sound discretion of the district court.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004) ("We review the decision of the District Court to certify the class and approve the settlement under an abuse of discretion standard.").

Rule 23(e) directs that, prior to final approval of a settlement agreement that would bind class members, the court must provide direct notice in a reasonable manner to such class

---

[15] The phone number posted by Plaintiffs' lead counsel—the Institute for Justice—was a dedicated line created for the sole purpose of receiving objections—if any—to the Proposed Settlement Agreement.  (Ex. C, ¶¶ 3-5.)

members and may approve the agreement "only after a hearing and on finding that it is fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e).[16]  The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *See, e.g.*, *Girsh v. Jepson*, 521 F.2d 153, 156 (3d. Cir. 1975); *Pastrana v. Lane*, Civ. A. No. 08-468, 2012 WL 602141, at *2 (E.D. Pa. Feb. 24, 2012) (J. Robreno) (noting that "[w]hether a settlement is fair . . . is a discretionary determination committed to the district judge" and approving a Rule 23(b)(2) settlement where the plaintiffs were seeking injunctive relief).

As detailed below, the Court should certify the proposed settlement classes because they meet the requirements of Rule 23(a) and (b)(2).  Additionally, the Court should approve the proposed settlement for Plaintiffs' First and Second Claims for Relief because the notice provided by the parties per the Court's direction was reasonable and the terms of the settlement agreement are fair, reasonable, and adequate.

## II.    THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED.

To obtain class certification, the Settlement Classes must satisfy all the prerequisites of Rule 23(a) and comply with Rule 23(b)(2)'s requirement that final injunctive or declaratory relief is appropriate with respect to the classes as a whole.  *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*); *Williams v. City of Phila.*, 270 F.R.D. 208, 213 (E.D. Pa. 2010).  Under Rule 23(a), Plaintiffs must demonstrate that:

   (1) The class is so numerous that joinder of all members is impracticable;

   (2) There are questions of law or fact common to the class;

---

[16] Rule 23(e) has three other requirements.  Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  The Parties filed the Proposed Settlement Agreement with this Court on June 22, 2015 and July 29, 2015.  (*See* ECF Nos. 83-1 & 91.)  Rule 23(e)(4) concerns class actions "previously certified under Rule 23(b)(3)."  Since Plaintiffs' class-action suit was never certified under Rule 23(b)(3), Rule 23(e)(4) is inapplicable. Rule 23(e)(5) provides that any class members may object to an agreement that requires court approval.  This Court's August 28, 2015 Order provided for an objection period that ended on October 7, 2015.  (*See* Order, ECF No. 97, at 4.)  Accordingly, Rules 23(e)(3), 23(e)(4), and 23(e)(5) do not militate against settlement approval.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

*See also In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010).  If the Rule 23(a) requirements are satisfied, class certification is proper under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that generally apply to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Sullivan*, 667 F.3d at 296.

In addition, in certifying a class, a court must appoint class counsel.  *See* Fed. R. Civ. P. 23(g)(1).  In appointing class counsel, a court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

As set forth below, the Settlement Classes should be certified and Plaintiffs' counsel should be appointed as their class counsel.

### A.      The Settlement Classes Satisfy Rule 23(a) and Rule 23(b)(2)

The Settlement Classes here meet the four prerequisites of Rule 23(a).[17]  The classes of property owners potentially number in the thousands, making joinder impracticable.  *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("[G]enerally if the named plaintiff

---

[17] Some courts have held that—as a preliminary requirement for certification—a settlement class must be "ascertainable."  *See, e.g.*, *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 n.5 (3d Cir. 2015).  The Settlement Classes are readily ascertainable by referencing the forfeiture petitions filed by the Philadelphia District Attorney's Office and the docket for the Trial Division of the Court of Common Pleas for the First Judicial District of Pennsylvania.  *See Montgomery Cnty. ex rel. Becker v. Merscorp, Inc.*, 298 F.R.D. 202, 209–10 (E.D. Pa. 2014) (finding ascertainability "easily" met when the identities of each class member was a matter of public record).

demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met").  Additionally, with respect to Defendants' policies and practices motivating their First and Second Claims for Relief, Plaintiffs' constitutional challenge presents common questions of law and fact that are of central importance to the litigation, including whether those policies and practices violate the Due Process Clause.  *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("[B]ecause they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions.") (citation and internal quotation marks omitted).  Moreover, the Named Plaintiffs' First and Second Claims for Relief are typical of those of the rest of the class because they all arise out of the same course of conduct by Defendants in investigating and prosecuting civil-forfeiture actions and all rest on the same legal theories.  *See id.* at 58 ("[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.").  Further, the interests of the class will be adequately protected by the Named Plaintiffs (the Named Plaintiffs have no conflicts of interest with the unnamed class members) and by their experienced *pro bono* counsel.  *See id.* at 55 (deeming the adequacy requirement met where the named plaintiffs' claims were not "antagonistic to the class" and "the attorneys for the class representatives [we]re experienced and qualified to prosecute the claims on behalf of the entire class").

    In addition, with respect to their First and Second Claims for Relief, the Named Plaintiffs seek the same declaratory and injunctive relief that would apply to all members of the class equally, making this a quintessential Rule 23(b)(2) class.  *See id.* at 58 (holding that 23(b)(2) is "almost automatically satisfied in actions primarily seeking injunctive relief").

Accordingly, as recognized by this Court in its August 28, 2015 order, the Settlement Classes satisfy Rule 23(a) and (b)(2) and are, hence, suitable for class certification. Moreover, having satisfied the requirements of Rule 23(a)(4), the Named Plaintiffs are suitable class representatives.[18]

## B.   Plaintiffs' Counsel Satisfies Rule 23(g).

Counsel for Plaintiffs—the Institute for Justice and local counsel David Rudovsky—satisfy all four Rule 23(g)(1)(A) factors. First, the Institute for Justice performed extensive pre-filing work to identify and investigate potential claims, including observing proceedings in Courtroom 478, and researching and developing legal theories. Second, the Institute for Justice is a nationwide, public-interest law firm with extensive experience in cutting-edge constitutional challenges to protect both people's property and their due-process rights. Furthermore, local counsel David Rudovsky rounds out the experience of Plaintiffs' counsel by having successfully litigated more than twenty civil-rights class actions concerning police and other governmental misconduct. Third, the Institute for Justice is the nation's leading expert in civil forfeiture—in addition to publishing a landmark study evaluating the civil-forfeiture laws of 50 states and the federal government, the Institute for Justice has a proven track record in successfully challenging civil forfeitures as well as forcing governments to comply with their own forfeiture laws. Finally, Plaintiffs' counsel will devote sufficient resources to vigorously represent the class and bring about systemic reform to Defendants' civil-forfeiture program. As with all of its cases, the Institute for Justice is providing Plaintiffs with free legal representation and Mr. Rudovsky has also agreed to provide his services pro bono.

---

[18] Plaintiffs Sourovelis, Hernandez, and Welch seek to be class representatives for Plaintiffs' First Claim for Relief. Plaintiffs Sourovelis, Hernandez, Welch, and Geiger seek to be class representatives for Plaintiffs' Second Claim for Relief.

Accordingly, under Rule 23(g) the Institute for Justice and local counsel David Rudovsky are appropriate counsel for the Settlement Classes.

### III.  NOTICE TO PROSPECTIVE CLASS MEMBERS WAS REASONABLE.

Because the settlement agreement would bind class members, Rule 23(e)(1) requires some form of notice of the settlement to all class members.  "[T]he trial court has broad discretion in determining the timing and manner" of the notice.  *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991).  Where—as here—a class is very large, includes unascertained members (*i.e.* future respondents in forfeiture proceedings), and includes other members who could be identified only at great time and expense, it is frequently impractical to provide individual notice to class members.  *See id.*  In such cases, "notice . . . through the media" is one of the "the best way[s] to provide whatever notice is required."  *Id.*

The Notice of Proposed Settlement approved by this Court was—as required in the Court's August 28, 2015 order—posted twice in the *Philadelphia Inquirer* and twice in the *Philadelphia Daily News* between September 7 and September 14, 2015 and included information regarding the substance of the settlement and a disclosure regarding attorneys' fees. (*See* Ex. B; Ex. C, ¶¶ 10-14.)  Furthermore, the Proposed Settlement Agreement itself was available for perusal online (since September 2, 2015) and at Courtroom 478 in Philadelphia's City Hall.  (Ex. C, ¶¶ 6-9.)  Therefore, the method of notice here conformed with the requirements of Rule 23(e).

### IV.  THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Final approval of a class action settlement requires a finding by the Court that the settlement is "fair, reasonable, and adequate."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010).  In *Girsh v. Jepson*, the Third Circuit outlined nine factors for district courts to

consider in making this finding: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (alterations omitted)).  None of these nine factors are dispositive—courts must look at the totality of circumstances.  *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) ("These factors are a guide and the absence of one or more does not automatically render the settlement unfair.  Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh*.").

As set forth below, the first three *Girsh* factors weigh strongly in favor of settlement approval.  The fourth and sixth *Girsh* factors are—at worst—neutral, and the fifth, seventh, eighth and ninth *Girsh* factors—which all concern damages—are inapplicable.  Accordingly, the Proposed Settlement Agreement is "fair, reasonable, and adequate."  *See, e.g.*, *Pastrana*, 2012 WL 602141, at *4 (deeming a 23(b)(2) settlement "fair, reasonable, and adequate" under the nine-factor *Girsh* test where three factors weighed in favor of settlement approval, three factors were neutral, and three factors—all related to damages—were inapplicable).

In 1998, the United States Court of Appeals for the Third Circuit expanded on the nine *Girsh* factors, maintaining that—because "there has been a sea-change in the nature of class actions, especially with respect to mass torts" since *Girsh* was decided—consideration of

additional factors was sometimes appropriate in determining whether a settlement was fair, reasonable, and adequate.[19]  *In re Prudential Insurance Co. of America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).  As explained below, the only one of these factors potentially relevant to the Proposed Settlement Agreement—the reasonableness of attorneys' fees provisions—does not militate against settlement approval.

### A.    The Complexity, Expense, and Likely Duration of Ongoing Litigation of Plaintiffs' First and Second Claims Weigh in Favor of Settlement Approval.

The first *Girsh* factor considers the complexity, expense, and likely duration of ongoing litigation.  This factor is "intended to capture 'the probable costs, in both time and money, of continued litigation.'"  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.)*, 494 F.2d 799, 801 (3d Cir. 1974)).  Continued litigation with respect to Plaintiffs' First and Second Claims for Relief would entail significant extra time and expense, especially considering that a failure to finalize settlement on these claims would require additional briefing and discovery.  Accordingly, the first *Girsh* factor weighs in favor of approving the Proposed Settlement Agreement.  *See, e.g., Benjamin v. Dep't of Pub. Welfare of Com. of Pa.*, No. 1:09-CV-1182, 2014 WL 4793736, at *5 (M.D. Pa. Sept. 25, 2014) (slip mem. op.) ("As settlement has eliminated potential delay, mitigated expenses, and will provide immediate benefit to the class, this factor weighs in favor of approval.").

---

[19] These factors are: the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.  *In re Prudential Insurance Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

**B.      The Lack of Objections Weighs in Favor of Settlement Approval.**

The second *Girsh* factor considers the reaction of the class to the settlement.  Where there are few objectors and many potential class members, there is a strong presumption in favor of approving a settlement.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the [s]ettlement and the number of objectors creates a strong presumption that this factor weighs in favor of the [s]ettlement."); *Inmates of Northumberland Cnty. Prison v. Reish*, No. 08-CV-345, 2011 WL 1627951, at *3 (M.D. Pa. Apr. 29, 2011) (approving settlement where four comments were received out of 200 class members and where none of the four objected to the terms of the settlement); *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (approving settlement where three formal objections were received from a potential class of 37,000).

Class members were instructed to send any objections to Plaintiffs' and Defendants' counsel, and none were received.  No objections were filed with the Court either.  As in *In re Cendant*, *Reish*, and *Boone*, there is a strong presumption in favor of settlement approval here. *See also Pastrana*, 2012 WL 602141, at *4 ("The second *Girsh* factor weighs in favor of approving settlement because no objections were returned to the Settlement Agreement . . . .").

Given that there were objections made to the Proposed Settlement Agreement, the second *Girsh* factor weighs in favor of approval.

**C.      Counsel Had an Adequate Appreciation of this Case's Merits Before Settling Plaintiffs' First and Second Claims for Relief.**

The third *Girsh* factor considers the stage of the proceedings.  This factor measures whether counsel has an "adequate appreciation of the merits of the case before negotiating" settlement.  *Gen. Motors*, 55 F.3d at 813.  In determining whether counsel has an adequate appreciation of a case's merits, this Court has historically considered both the extent of motion

practice and the amount of discovery conducted (or, in the alternative, the amount of pre-filing

investigation, including interviews).  *See, e.g.*, *Kaplan v. Chertoff*, Civ. A. No. 06-5304, 2008

WL 200108, at *11 (E.D. Pa. Jan. 24, 2008) ("Finally, a number of the *Girsh* factors suggest that

the settlement will receive final approval. First, the case has already been litigated for over a

year; there has been significant motion practice and some discovery has been conducted.").

In fact, even where a case has not been litigated for a long period of time, extensive

motion practice can adequately inform counsel of a case's merits.  *See, e.g.*, *Gates v. Rohm &*

*Haas Co.*, Civ. A. No. 06-1743, 2008 WL 4078456, at *5 (E.D. Pa. Aug. 22, 2008) (finding that

the third *Girsh* factor weighed in favor of settlement approval—even though "[p]rocedurally, the

case [wa]s still at an early stage"—given "significant motion practice"); *see also McAlarnen v.*

*Swift Transp. Co.*, Civ. A. No. 09-1737, 2010 WL 365823, at *7-8 (E.D. Pa. Jan. 29, 2010)

(approving a settlement in a case where "little discovery ha[d] occurred" where "[s]ubstantial

briefing and research on the issues ha[d] taken place").  Plaintiffs and Defendants have—like the

parties in *McAlarnen*, *Gates*, *Kaplan*—engaged in extensive motion practice for over a year,

having filed 16 briefs—and conducted corresponding legal research—concerning Defendants'

motions to dismiss and Plaintiffs' class-certification and preliminary-injunction motions first

filed on August 11 and September 8, 2014, respectively.

Just as with motion practice, extensive pre-filing investigation is a way for counsel to

appreciate a case's merits, even where a case is short-lived.  As recognized by this Court, "even

if a settlement occurs in an early stage of litigation, there are means for class counsel to apprise

themselves of the merits of the litigation," such as "conducting significant independent discovery

or investigations to develop the merits of their case," as well as "interviewing witnesses."  *In re*

*Processed Egg Products*, 284 F.R.D. at 270 (approving a settlement where class counsel

warranted that they "conducted extensive investigations into the case in preparation for filing of the complaint"). Like the attorneys representing the *In re Processed Egg Products* plaintiffs, class counsel here engaged in extensive factual investigation with respect to their First and Second Claims for Relief. For example, Plaintiffs' counsel reviewed court records in connection with 147 cases where Defendants sought "seize and seal" orders and interviewed scores of real property owners. (*See* Decl. Darpana M. Sheth Supp. Mot. Prelim. Inj., ECF No. 22, ¶¶ 2-3; Decl. Scott G. Bullock Supp. Opp. Defs.' Mot. Dismiss, ECF No. 55-2, ¶ 4, Ex. A; Decl. Briana Elzey, ECF No. 55-7, ¶¶ 3-5.)

Though Plaintiffs were not able to conduct discovery with respect to their First and Second Claims for Relief, *see* supra at 8-9, they developed an adequate appreciation of the merits of these claims before negotiating the Proposed Settlement Agreement. Moreover, because the Proposed Settlement Agreement requires Defendants to produce documents that Plaintiffs would have obtained in discovery, the agreement ensures protection of class members' interests. Therefore, the third *Girsh* factor weighs in favor of settlement approval.

### D. The Risks of Establishing Liability Potentially Weigh in Favor of Settlement Approval.

The fourth *Girsh* factor considers the risks of establishing liability. The inherent risks of establishing liability—particularly in an action seeking injunctive relief—potentially weigh in favor of settlement approval. *See, e.g.*, *Williams v. City of Phila.*, Civ A. No. 08-1979, 2011 WL 3471261, at *4 (E.D. Pa. Aug. 8, 2011) ("[T]he risks inherent in seeking injunctive relief are always significant.").

However, even if Plaintiffs were certain to succeed in establishing liability, the fourth *Girsh* factor would be—at worst—neutral with respect to the Proposed Settlement Agreement. Given that the operative complaint sought to enjoin Defendants' policies and practices

motivating Plaintiffs' First and Second Claims for Relief—and given that the Proposed

Settlement Agreement vacates existing "seize and seal" orders, imposes new requirements for *ex*

*parte* seizures going forward, and voids specified conditions in unsealing agreements and

agreements to withdraw forfeiture petitions—the relief sought by Plaintiffs largely mirrors the

relief procured.  Moreover, because the Proposed Settlement Agreement expressly provides that

the Court will retain jurisdiction for at least eighteen months after the settlement's effective

date—with Plaintiffs able to request an extension of time for substantial noncompliance—

Plaintiffs can monitor whether the settlement's terms are substantially similar to the injunctive

relief alternatively sought at trial.

Where—as here—litigants procure settlement terms that are substantially similar to the

injunctive relief sought, the fourth *Girsh* factor's balancing test is satisfied.  *See, e.g.*, *Kaplan*,

2008 WL 200108, at *11 (approving a settlement because "there [we]re risks inherent in

proceeding to trial and, even if plaintiffs [had] succeed[ed] at trial, they would [have] likely

be[en] entitled only to injunctive relief that would have similar results to the proposed

settlement"); *Harris v. Reeves*, 761 F. Supp. at 401 (approving a settlement where "there [wa]s

no assurance that the relief [after trial] would [have] be[en] greater or different than the relief

provided" in the proposed agreement).

## E.   The Risks of Maintaining the Class Action Do Not Weigh Against Settlement Approval.

The fifth *Girsh* factor considers the risks of maintaining the class action through trial.

This factor is neutral, as there are no indications that the classes certified for this settlement

could not be maintained for the duration of the suit.  *See Boone*, 668 F. Supp. 2d at 712.  Courts

in this circuit have continuously held that there is always some risk of decertification in any class

action.  *In re Prudential Ins.*, 148 F.3d at 321.  Due to this presumption, a risk of decertification

that is not any more substantial than the risk in any other class action does not weigh against settlement approval.  *Boone*, 668 F. Supp. at 712.

### F.      The Fifth, Seventh, Eighth, and Ninth *Girsh* Factors Do Not Apply.

The fifth, seventh, eighth, and ninth factors articulated in *Girsh* deal with monetary judgments and settlement funds and therefore do not apply to these Proposed Settlement Agreement, which has been conditionally certified under Federal Rule of Civil Procedure 23(b)(2).  *Pastrana*, 2012 WL 602141, at *5 (deeming the fifth *Girsh* factor "neutral" and the seventh, eighth, and ninth *Girsh* factors inapplicable because the "action was certified under Rule 23(b)(2) for injunctive relief"); *Inmates of Northumberland Cnty. Prison*, 2011 WL 1627951, at *3 (not applying these factors for a class action lawsuit with only injunctive relief claims).

### G.      The *Prudential* Factors Do Not Weigh Against Settlement Approval.

As noted supra at 25, the only *Prudential* factor potentially relevant to this case is the reasonableness of any provision for attorneys' fees.  *See Williams*, 2011 WL 3471261, at *5 ("Since this is a Rule 23(b)(2) class action seeking injunctive relief only, most of the factors set forth in *Prudential* do not apply. The only factor that is relevant is the reasonableness of the provision for attorney's fees.").

Although the Proposed Settlement Agreement does not include an award of attorneys' fees, its provision of attorneys' fees is reasonable.[20]  It allows Plaintiffs to recover attorneys' fees incurred as a result of their counsels' extensive investigation and litigation of Plaintiffs' First and Second Claims for Relief (including moving for a preliminary injunction and successfully

---

[20] Because Plaintiffs do not seek damages (above nominal damages) in this case, the amount of any attorneys' fees awarded will not come at the expense of class members' recovery and will, accordingly, be reasonable.  *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000) (approving an attorneys' fees award where "fees w[ould] not reduce the Class fund").

opposing Defendants' motion to dismiss), and the months of work in negotiating the settlement agreement. (Ex. A at 17.) The provision for attorneys' fees is also reasonable because it allows the prevailing party on a claim of substantial noncompliance to recover associated attorneys' fees and costs, but precludes attorneys' fees for the costs of monitoring or otherwise enforcing the Proposed Settlement Agreement. (*Id.*) The attorneys' fees provision is also reasonable because it requires the amount of any attorneys' fees to be made public. (Ex. B at 4.)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify both Settlement Classes; (2) appoint Christopher Sourovelis, Norys Hernandez, and Doila Welch as class representatives for Plaintiffs' First and Second Claims for Relief and Nassir Geiger as class representative for Plaintiffs' Second Claim for Relief; (3) appoint the Institute for Justice as lead class counsel and David Rudovsky as local class counsel for Plaintiffs' First and Second Claims for Relief under Federal Rule of Civil Procedure 23(g); (4) approve the Proposed Settlement Agreement as fair, reasonable, and adequate; and (5) retain jurisdiction over the Plaintiffs' First and Second Claims for Relief for a term of eighteen (18) months from the date of final approval, with the ability to extend the term of jurisdiction based on a finding of substantial noncompliance.

Dated: October 30, 2015

Respectfully submitted,

INSTITUTE FOR JUSTICE
By: ___/s/ Darpana M. Sheth_____
William H. Mellor*
Scott G. Bullock*
Darpana M. Sheth*
Robert P. Frommer*
901 North Glebe Road, Suite 900
Arlington, VA 22203

KAIRYS, RUDOVSKY, MESSING & FEINBERG
David Rudovsky (I.D. Number 15168)
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
Email: drudovsky@krlawphila.com

Email:  wmellor@ij.org; sbullock@ij.org;          Tel:  (215) 925-4400
dsheth@ij.org; rfrommer@ij.org                    Fax:  (215) 925-5365
Tel: (703) 682-9320
Fax: (703) 682-9321

*Admitted Pro Hac Vice*

                            *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Darpana Sheth, hereby certify that, on this 30th day of October, 2015, true and correct copies of the Memorandum in Support of Plaintiffs' Unopposed Motion to Certify Settlement Classes and Grant Final Approval of Settlement of Plaintiffs' First and Second Claims for Relief and accompanying attachments were electronically filed using the Court's ECF system and sent via the ECF electronic notification system to the following counsels of record:

Michael R. Miller
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Tel:  (215) 683-5444
Email:  Michael.R.Miller@phila.gov

*Counsel for Defendants City of Philadelphia, Mayor Michael A. Nutter, and Police Commissioner Charles H. Ramsey*

Elizabeth J. Graham-Rubin
Bryan C. Hughes
Douglas M. Weck, Jr.
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
Tel:  (215) 686-8787
Email: bj.graham-rubin@phila.gov;
        bryan.hughes@phila.gov;
        douglas.weck@phila.gov

*Counsel for Defendants Philadelphia District Attorney's Office and District Attorney R. Seth Williams*

/s/ Darpana M. Sheth
Darpana M. Sheth
*Counsel for Plaintiffs*

- 33 -