IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOS SOUROVELIS, et al., : CIVIL ACTION
         : NO. 14-4687
   Plaintiffs,  :
         :
  v.      :
         :
CITY OF PHILADELPHIA, et al., :
         :
   Defendants.  :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.      March 30, 2017

**<u>Table of Contents</u>**

I. INTRODUCTION........................................... 2

II. FACTUAL BACKGROUND.................................... 4

  A. <u>Civil Forfeiture Procedures Prior to October 2015</u>.. 7

  B. <u>Defendants' Interim Measures</u>...................... 9

  C. <u>Civil Forfeiture Procedures Adopted in 2016</u>...... 10

III. PROCEDURAL HISTORY................................... 11

IV. LEGAL STANDARDS...................................... 14

  A. <u>Rule 12(b)(1)</u>..................................... 14

  B. <u>Rule 12(b)(6)</u>..................................... 16

V. THE FJD DEFENDANTS' MOTION TO DISMISS ............... 17

  A. <u>Rule 12(b)(1)</u>..................................... 18

    1. <u>Standing, Mootness, and Ripeness</u>............. 19

      a. <u>Challenge to Prior Procedures</u>.......... 22

        b.    Challenge to Current Procedures.........27

    2.    Federalism and Comity.......................30

  B.    Rule 12(b)(6).....................................32

    1.    Count Three..................................34

    2.    Count Seven..................................38

        a.    Adjudication...........................38

        b.    Use of Criminal Procedures.............40

        c.    Adequate Notice........................41

    3.    Proper Defendants...........................42

VI.  THE CITY DEFENDANTS' MOTION TO DISMISS................43

VII. CONCLUSION..........................................47

## I.   INTRODUCTION

Plaintiffs filed this putative class action on August 11, 2014, challenging Philadelphia's civil forfeiture policies and practices.  Plaintiffs originally filed six claims under 42 U.S.C. § 1983 against the City of Philadelphia, the Mayor, and the Police Commissioner (the "City Defendants"); and the Philadelphia District Attorney and D.A.'s Office (the "D.A. Defendants").  After all of Plaintiffs' claims survived a motion to dismiss and the parties settled Counts One and Two, Plaintiffs filed a Second Amended Complaint, adding four state court administrators as defendants and adding a seventh claim. The new defendants - the Honorable Sheila A. Woods-Skipper, in her official capacity as Chair of the Administrative Governing

Board of the First Judicial District of Pennsylvania (the "FJD"); the Honorable Jacqueline F. Allen, in her official capacity as a member of the Administrative Governing Board of the FJD; Joseph H. Evers, in his official capacity as Court Administrator of the FJD; and Charles A. Mapp, in his official capacity as Chief Deputy Court Administrator of the FJD (the "FJD Defendants") – have moved to dismiss all of the claims against them (Counts Three, Four, Six, and Seven).  The City Defendants have moved to dismiss Counts Four and Six against them.  Plaintiffs oppose both motions.  The Court held a hearing to address the FJD Defendants' motion.[1]  As the City Defendants had previously moved to dismiss the same claims against them that are the subject of their instant motion, the Court determined to consider the City's motion on submission without a hearing.

   For the reasons that follow, the Court will deny both the FJD Defendants' motion to dismiss and the City Defendants' motion to dismiss.

---

[1]      At the hearing, the Court also considered the parties' joint report, pursuant to Federal Rule of Civil Procedure 26(f), as to Count Five.  The Court subsequently entered a scheduling order as to Count Five.  See ECF No. 195.

## II.   FACTUAL BACKGROUND

In their Second Amended Complaint, Plaintiffs allege the following facts, which are presumed to be true for the purposes of the instant motions to dismiss.

Civil forfeiture statutes permit states and the federal government to file actions, under certain circumstances, to obtain ownership of private real and personal property that is related to certain categories of criminal activity.  In Pennsylvania, the Controlled Substances Forfeiture Act, 42 Pa. Cons. Stat. Ann. §§ 6801 and 6802 (the "CSFA"), provides that certain real and personal property that is connected to a violation of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. Cons. Stat. Ann. §§ 780-101 to 780-144, is subject to forfeiture by the Commonwealth of Pennsylvania. 42 Pa. Cons. Stat. Ann. § 6801.  The CSFA sets forth the property that is subject to forfeiture by the Commonwealth, see id., and provides a procedure for the forfeiture proceedings, which must be filed in the court of common pleas of the judicial district where the property is located, see id. § 6802.

Plaintiffs' claims in this action relate to property forfeited through civil forfeiture proceedings brought by the D.A.'s Office in the Court of Common Pleas of Philadelphia County.  The majority of the property, Plaintiffs allege, was

forfeited pursuant to the CSFA.[2]  Second Am. Compl. ¶ 41
[hereinafter SAC], ECF No. 157.  According to Plaintiffs,
Philadelphia's civil forfeiture program is one of the largest
municipal forfeiture programs in the country, and "unprecedented
in scale."  Id. at 14, ¶ 54. Plaintiffs allege that the D.A.'s
Office forfeited over $90 million worth of property from 1987 to
2012 through civil forfeiture proceedings, id. ¶ 53, yielding an
average of $5.6 million in forfeiture revenue each year, id.
¶ 54.  Forfeiture data Plaintiffs obtained from the Pennsylvania
Office of the Attorney General indicates that the D.A.'s Office
collected over $72.6 million in forfeiture revenue from fiscal
years 2002 through 2014.  Id. ¶ 57.  Plaintiffs allege that this
amount constitutes nearly one-fifth of the general budget of the
D.A.'s Office as appropriated by the City of Philadelphia.  Id.
¶ 60.

Plaintiffs allege that the City and D.A. Defendants
seize large quantities of personal property for forfeiture,
including cash, cell phones, clothing, jewelry, prescription
medication, and licensed firearms.  Id. ¶ 81.  Plaintiffs claim
that the majority of the cash seized involves small amounts of
money.  Id. ¶ 73.  For example, in 2010, Philadelphia filed
8,284 currency forfeiture petitions, with an average of $550 at

---

[2]      According to Plaintiffs, there are at least 29 other
Pennsylvania statutes authorizing civil forfeiture.  See Pls.'
Notice of Suppl. Authority at 1, ECF No. 196.

issue in each case.  Id. ¶ 74.  Plaintiffs also allege that the City and D.A. Defendants file civil forfeiture petitions on 300 to 500 real properties (mostly private residences) each year. Id. ¶ 83.  Approximately 100 of these real properties are forfeited and sold at auction annually; and a significant majority of the remaining cases settle under threat of civil forfeiture.  Id.

Plaintiffs allege that the City Defendants, the D.A. Defendants, and the FJD Defendants had various roles in creating and implementing Philadelphia's civil forfeiture procedures. Those procedures have changed over the course of this lawsuit in response to the partial settlement of Plaintiffs' claims and negotiations among the parties in response to the remaining claims.  As such, Plaintiffs' Second Amended Complaint contains allegations relating to three sets of procedures: (1) the civil forfeiture procedures that existed at the time they filed this action, which Plaintiffs allege were in place from approximately January 2, 2007, through October 19, 2015 ("the Prior Procedures"); (2) the civil forfeiture procedures in place from October 19, 2015, through July 25, 2016, pursuant to interim measures adopted by Defendants in response to the instant lawsuit; and (3) the current civil forfeiture procedures, which the First Judicial District adopted on July 25, 2016 ("the

Current Procedures"). The relevant details of each of these three sets of procedures are set forth below.

A.   Civil Forfeiture Procedures Prior to October 2015

Plaintiffs allege that, prior to January 2007, the court administrators of the First Judicial District, predecessors of the FJD Defendants, assigned forfeiture matters to a criminal court judge or criminal motions judge of the Court of Common Pleas. See SAC ¶¶ 114-19. From 1999 to 2004, a criminal court judge heard all forfeiture cases in a dedicated courtroom in the Criminal Justice Center, with a complete court staff, including a stenographer, a Clerk of Quarter Sessions, and criminal listing support staff. Id. ¶ 115. At some point between 2004 and 2007, a shortage of personnel resulted in no Clerk of Quarter Sessions or stenographer in the forfeiture courtroom. Id. ¶ 122.

In January 2007, the FJD Defendants notified Assistant District Attorneys that forfeiture and related proceedings would be transferred to the Civil Court Division. Id. ¶ 123. Accordingly, the FJD Defendants transferred forfeiture proceedings to Courtroom 478 in City Hall. Id. Courtroom 478 lacked a presiding judge or any officer with adjudicative ability, and had no stenographer, court reporter, or Clerk of Quarter Sessions. Id. ¶ 124. Instead, Assistant District

7

Attorneys with the Public Nuisance Task Force – the unit of the
D.A.'s Office that filed and litigated civil forfeiture
petitions – fully controlled the proceedings.  Id. ¶ 129.  Cases
involving personal property were frequently assigned to a
paralegal instead of a prosecutor.  Id. ¶ 130.

Under this procedure, upon the filing of a civil
forfeiture petition, property owners were required to appear in
Courtroom 478 at 9 a.m. to attempt to reclaim their property.
Id. ¶ 127.  If a property owner failed to appear, prosecutors
marked the case for default judgment without any determination,
judicial or otherwise, as to the reason the property owner did
not appear.  Id. ¶ 132.  If the property owner did appear, the
assigned prosecutor or paralegal would discuss the case with the
property owner, frequently advising the owner that he or she did
not need an attorney.  Id. ¶ 135.  Plaintiffs allege that
prosecutors and paralegals (1) routinely gave property owners a
set of over 50 pattern interrogatories, to be answered under
penalty of perjury; (2) compelled owners of real property to
execute agreements to unseal their residences on certain
conditions, including barring specific individuals from entering
indefinitely and waiving statutory and constitutional defenses;
and (3) relisted civil proceedings an average of five times
each, requiring property owners to appear each time or risk
default of their property.  See id. ¶¶ 136-41.

8

B.   Defendants' Interim Measures

Plaintiffs filed this suit on August 11, 2014, challenging the constitutionality of the above procedures. Plaintiffs allege that on or about June 25, 2015, the FJD Defendants met with the D.A.'s Office to discuss changes to the administration of civil forfeiture proceedings.  Id. ¶ 143.  As an interim measure, beginning on October 19, 2015, Court of Common Pleas Trial Commissioners, who are not judges,[3] began presiding over all forfeiture and related proceedings in Courtroom 478.  See id. ¶ 144.  These proceedings were recorded, and the Trial Commissioners were assisted by courtroom clerks. See id.  The Trial Commissioners began referring all disputed matters to a criminal motions judge.  Id.  In January 2016, the FJD Defendants moved civil forfeiture proceedings from Courtroom 478 to a criminal courtroom.  Id. ¶ 145.  Following a seizure of property, property owners are served with civil forfeiture petitions, which contain a date for a pretrial conference.  Id. ¶ 146.  Property owners are required to answer forfeiture petitions within 30 days, often before the pretrial conference,

---

[3]      The website of the First Judicial District Municipal Court, Civil Division, explains that Trial Commissioners are "not judges but they do have the authority to handle all requests that do not require . . . judicial determination." First Jud. Dist. of Pa., Mun. Ct., Civ. Div., http://www.courts.phila.gov/municipal/civil (last visited March 16, 2017).  As Plaintiffs point out, the website specifically states that "legal determination[s]" are "beyond" the "accepted scope of responsibilities" for Trial Commissioners.  Id.

9

at which the owners are informed of their rights.  Id. ¶ 147.
Forfeiture petitions are docketed as criminal matters unless the
property owner requests a jury trial.  Id. ¶ 150.

### C.   Civil Forfeiture Procedures Adopted in 2016

Plaintiffs allege that on July 25, 2016, the FJD
Defendants posted General Court Regulation No. 2 of 2016 (the
"GCR"),[4] entitled "Proceedings Seeking Civil Forfeiture of Real
Estate and Seized Property," on the First Judicial District's
website.  See id. ¶ 152.

Plaintiffs allege that the GCR is problematic because,
inter alia, it: (1) requires civil forfeiture petitions to be
administered by criminal judges applying criminal rules of
procedure; (2) implicates Fifth Amendment rights by requiring an
answer to be filed, with default judgment as a penalty, without
any notice that the answer may be used in related criminal
proceedings; (3) increases a risk of erroneous deprivation by
deferring an explanation of the forfeiture process until the
pretrial conference; (4) authorizes Trial Commissioners, who are
not judges, to perform adjudicative acts, such as deciding
whether a case presents any genuine issues of material facts or
whether property owners knowingly and voluntarily waive their
right to a jury trial; (5) fails to advise property owners of

---

[4]      The nature of this regulation and its source of
authority are discussed below.  See infra at 25-26.

the burdens of proof they must meet; (6) fails to advise property owners of their right to request a prompt post-deprivation hearing; and (7) does not clarify any of the procedures that will apply in a post-deprivation hearing.  See id. ¶ 154.

## III. PROCEDURAL HISTORY

Plaintiffs initiated this action on August 11, 2014, ECF No. 1, and amended their complaint on November 17, 2014, ECF No. 40.  Plaintiffs filed a Second Amended Complaint on September 15, 2016.  ECF No. 157.  Plaintiffs Sourovelis, Welch, and Hernandez are the owners of real property against which the D.A. Defendants commenced, under the CSFA, forfeitures that were pending in the Court of Common Pleas of Philadelphia County at the time the First Amended Complaint was filed.  SAC ¶¶ 9-17.  Plaintiff Geiger is the owner of personal property against which the D.A. Defendants commenced a civil forfeiture proceeding.  Id. ¶¶ 18-22.  Plaintiffs' Second Amended Complaint asserts the following seven claims:

> (1)  the City and D.A. Defendants' policy and practice of failing to provide notice or a hearing before seizing real property violates the Due Process Clause of the Fourteenth Amendment (Count One);

> (2)  the City and D.A. Defendants' policy and practice of requiring real property owners to waive their constitutional and statutory rights in order to obtain access to their property or have the forfeiture petition withdrawn violates the Due

11

        Process Clause of the Fourteenth Amendment (Count Two);

    (3)    Defendants' policy and practice of failing to provide a prompt, post-deprivation hearing violates the Due Process Clause of the Fourteenth Amendment (Count Three);

    (4)    Defendants' policy and practice of repeatedly "relisting" forfeiture proceedings violates the Due Process Clause of the Fourteenth Amendment (Count Four);

    (5)    the City and D.A. Defendants' retention of forfeited property and its proceeds violates the Due Process Clause of the Fourteenth Amendment (Count Five);

    (6)    Defendants' policy and practice of prosecutors controlling forfeiture hearings violates the Due Process Clause of the Fourteenth Amendment (Count Six);

    (7)    Defendants' administration of civil forfeiture and related proceedings, including notices to property owners, the timing of filings, and access to court hearings, violates the Due Process Clause of the Fourteenth Amendment (Count Seven).

Id. ¶¶ 290-360.  The instant motions to dismiss relate to Counts Three, Four, Six, and Seven.

On March 16, 2015, Defendants filed a joint motion to dismiss Plaintiffs' claims.  ECF No. 52.  The Court denied the motion on May 28, 2015.  ECF Nos. 66, 67.  Defendants subsequently sought reconsideration of the Court's order, which the Court denied on September 7, 2016.  ECF No. 150.

The parties settled Counts One and Two in an agreement the Court approved on November 4, 2015.[5] ECF No. 104. On August 1, 2016, Plaintiffs filed a motion seeking to (1) join the FJD Defendants with respect to Counts Three, Four, and Six; (2) file a Second Amended Complaint adding a Seventh Claim and other new allegations; and (3) sever Count Five. ECF No. 139. The Court granted the motion on September 14, 2016.[6] ECF No. 155.

On September 15, 2016, Plaintiffs filed the Second Amended Complaint, which (1) substituted current Mayor of Philadelphia James F. Kenney for former Mayor Michael A. Nutter; (2) substituted current Philadelphia Police Department Commissioner Richard Ross, Jr., for former Commissioner Charles

---

[5]     The agreement, in essence, (1) prohibited the City Defendants and D.A. Defendants from seeking any ex parte "seize and seal" order against real property under the CSFA unless certain specific criteria are met; (2) required the D.A. Defendants to move to vacate any ex parte "seize and seal" order presently in effect using model forms agreed upon by the parties; (3) required the D.A. Defendants to provide notice to civil forfeiture respondents who have entered into an unsealing agreement or settlement agreement – all of which are now void and unenforceable – that the conditions of those agreements no longer applied; and (4) required the D.A. Defendants to produce certain documents to Plaintiffs regarding "seize and seal" applications filed in civil forfeiture cases. See ECF No. 104.

[6]     Pursuant to the Court's September 14, 2016, order, Count Five (the conflict of interest claim) is now severed from the claims at issue in the instant motions: Counts Three, Four, Six, and Seven.

H. Ramsey; (3) added the FJD Defendants; and (4) added Count

Seven.[7]  ECF No. 157.

In response to the Second Amended Complaint, the City

Defendants filed a motion to dismiss Counts Four and Six of the

Second Amended Complaint, ECF No. 158, the D.A. Defendants filed

an answer, ECF No. 161, and the FJD Defendants moved to dismiss

all claims against them, ECF No. 173.  Plaintiffs have opposed

both the City Defendants' motion to dismiss, ECF No. 165, and

the FJD Defendants' motion to dismiss, ECF No. 175.  The City

Defendants filed a motion for leave to file a reply brief on

October 5, 2016.  ECF No. 166.  The FJD Defendants filed a

motion for leave to file a reply brief on February 1, 2017.  ECF

No. 180.  Plaintiffs filed a motion for leave to file a sur-

reply brief in opposition to the FJD Defendants' motion to

dismiss on February 14, 2017.  ECF No. 186.

The Court held a hearing, and is now ready to rule on

both motions to dismiss.

## IV.  LEGAL STANDARDS

### A.   Rule 12(b)(1)

A party may move to dismiss a complaint for lack of

subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The

---

[7]     The City, Mayor Kenney, and Commissioner Ross are
referred to herein as the "City Defendants."  The District
Attorney's Office and District Attorney Williams are referred to
herein as the "D.A. Defendants."

Court's method of review is determined by whether the Rule 12(b)(1) motion presents a "facial" or "factual" attack on the claim at issue.  <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 357 (3d Cir. 2014).  A facial attack "contests the sufficiency of the pleadings," <u>In re Schering-Plough Corp.</u>, 678 F.3d 235, 243 (3d Cir. 2012), "whereas a factual attack concerns the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites," <u>CNA v. United States</u>, 535 F.3d 132, 139 (3d Cir. 2008) (alterations in original) (quoting <u>U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 514 (3d Cir. 2007)).

     "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000).  "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), <u>i.e.</u>, construing the alleged facts in favor of the nonmoving party."  <u>Aichele</u>, 757 F.3d at 358.

     By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings."  <u>Gould Elecs.</u>, 220 F.3d at 176.  A factual attack places the burden of proof on plaintiff to show "that jurisdiction does in fact

15

exist." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.[8]

B.   Rule 12(b)(6)

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Phila., 868 F.2d 644, 645 (3d Cir. 1989)). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is

---

[8]     As discussed below, the FJD Defendants' motion to dismiss Plaintiffs' Second Amended Complaint pursuant to Rule 12(b)(1) is a facial attack. See infra 18-19.

entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## V.   THE FJD DEFENDANTS' MOTION TO DISMISS

The FJD Defendants move to dismiss all four claims against them pursuant to Rules 12(b)(1) and 12(b)(6). See ECF

No. 173.  The FJD Defendants argue that (1) Plaintiffs lack standing to challenge the FJD's civil forfeiture procedures because they cannot allege a real and imminent threat of future injury; (2) Plaintiffs' claims regarding the new civil forfeiture procedures are not ripe because there are no factual allegations about how the FJD's Current Procedures are applied; (3) Plaintiff's claims regarding the previous civil forfeiture procedures are moot because the challenged procedures no longer exist; (4) the FJD's civil forfeiture procedures provide due process; (5) federalism and comity principles bar this Court from hearing Plaintiffs' claims; and (6) the FJD Defendants are not proper defendants for Plaintiffs' claims that certain state statutes are unconstitutional because the FJD did not enact and does not enforce those statutes.  See FJD Defs.' Mem. Law. Supp. Mot. Dismiss [hereinafter "FJD Mem."], ECF No. 173.

### A.   Rule 12(b)(1)

The FJD Defendants move to dismiss all of the claims against them under Rule 12(b)(1) on the basis that (1) Plaintiffs lack standing; (2) Plaintiffs' claims are not ripe; (3) Plaintiffs' claims are moot; and (4) principles of federalism and comity prevent this Court from hearing Plaintiffs' claims.  See FJD Mem. at 10-19; 27-30.

Plaintiffs argue that the FJD Defendants' motion presents a facial, rather than factual, attack on Plaintiffs' claims, because it contests the sufficiency of Plaintiffs' pleadings.  See Pls.' Opp. at 14-15, ECF No. 175.  The FJD Defendants do not state whether they intend to make a facial or factual attack, do not respond to Plaintiffs' assertion that their motion presents a facial attack, and do not contest any of Plaintiffs' alleged facts through declarations or documentary evidence.  Accordingly, the Court will treat the FJD Defendants' motion as a facial attack.  The Court will therefore consider only the allegations of Plaintiffs' Second Amended Complaint and the documents referenced therein, and construe the alleged facts in favor of Plaintiffs.  See Gould Elecs., 220 F.3d at 176.

### 1.   Standing, Mootness, and Ripeness

The FJD Defendants argue that Plaintiffs lack standing to challenge the Current Procedures because Plaintiffs' property was subject to civil forfeiture under the Prior Procedures, which are no longer in effect, and therefore they cannot allege a future injury with respect to the Current Procedures.  See FJD Mem. at 10-14.  The FJD Defendants also argue that, to the extent Plaintiffs have standing to challenge the Current Procedures, their claims are not ripe.  See id. at 14-17.  Finally, the FJD Defendants argue that Plaintiffs' claims

regarding the Prior Procedures are moot because the procedures Plaintiffs complain about are no longer in effect.  See id. at 17-19.

Plaintiffs respond that the FJD Defendants fundamentally misunderstand their claims.  Plaintiffs contend that they are not bringing separate challenges to the Prior Procedures and the Current Procedures.  Rather, according to Plaintiffs, they allege that Philadelphia's civil forfeiture procedures were, and still are, unconstitutional, and that the changes the FJD Defendants have implemented have not rendered the procedures constitutional.  Plaintiffs further argue that this Court already determined that they had standing at the outset of this litigation, and Plaintiffs' claims have not become moot during the litigation because (1) their claims are inherently transitory, and (2) their anticipated class-certification motion will relate back to August 11, 2014, when they filed the original complaint and motion for class certification.  See Pls.' Opp. at 16-21.

Article III of the United States Constitution limits federal court jurisdiction to justiciable cases or controversies.  In order for a federal court to hear a plaintiff's claim, the plaintiff must have standing, and the claim must be both ripe and not moot.  Article III standing requires (1) injury in fact, (2) causation, and (3)

redressability.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  "The requirements for standing do not change in the class action context."  In re Horizon Healthcare Servs. Data Breach Litig., 846 F.3d 625, 634 (3d Cir. 2017).  Accordingly, "[n]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Id. (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).

"The ripeness doctrine determines 'whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'"  Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009) (quoting Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003)).

A plaintiff's claim becomes moot "when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'"  United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers, 842 F.3d 201, 208 (3d Cir. 2016) (quoting Cnty of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).  "The central question of all mootness problems is whether changes in circumstances that

prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." Id. (quoting Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007)).

### a.   Challenge to Prior Procedures

As Plaintiffs point out, this Court already determined that Plaintiffs had standing to challenge Philadelphia's civil forfeiture procedures at the beginning of this litigation. See Sourovelis v. City of Phila., 103 F. Supp. 3d 694, 700-06 (E.D. Pa. 2015). Accordingly, Plaintiffs have standing to challenge the civil forfeiture procedures that were in place when this litigation was filed. Further, this Court permitted Plaintiffs to amend their complaint to assert claims against the FJD Defendants for their part in creating the civil forfeiture procedures in place prior to October 2015.

The FJD Defendants seek to distinguish the Court's prior ruling, claiming that the Court's previous determination that Plaintiffs have standing to challenge past civil forfeiture is irrelevant, because "Plaintiffs' requested relief against the FJD is only forward-looking, injunctive relief." See FJD Mem. at 11. This assertion is simply incorrect. Plaintiffs challenge both the past practices that were in place at the time they filed this litigation, as well as the interim measures and Current Procedures that Defendants, including the FJD

Defendants, have enacted after the filing of this action.  In the Second Amended Complaint, Plaintiffs seek many forms of relief, including the retrospective relief of the return of their property and a declaration that previous civil forfeiture procedures were unconstitutional.[9]  See SAC at 70.

The FJD Defendants also argue that Plaintiffs "concede" that the previous civil forfeiture procedures no longer exist, and therefore that Plaintiffs' claims regarding those procedures are "futile."  FJD Mem. at 18.  However, this Court previously held that Plaintiffs had standing to challenge past civil forfeiture procedures, even though the District Attorney's Office had already made changes to the Prior Procedures by that time, because Plaintiffs have standing to seek retrospective relief to remedy the alleged past deprivation of their constitutional rights.  See Sourovelis, 103 F. Supp. 3d at 702 (holding that Plaintiffs have standing to seek a declaration that past, changed practices are unconstitutional and violated due process); Houchins v. KQED, Inc., 438 U.S. 1, 25-26 (1978) ("[A] defendant's corrective action . . . following commencement of suit does not deprive the court of power to decide whether the previous course of conduct was unlawful.").

---

[9]      As a result, the cases the FJD Defendants cite, in which courts have held that plaintiffs solely seeking prospective injunctive relief must allege a future injury, do not establish that Plaintiffs here lack standing to challenge the Prior Procedures.  See FJD Mem. at 11-13.

Finally, the FJD Defendants argue that any claims based on past practices are now moot because, as discussed above, the civil forfeiture procedures have changed.  See FJD Mem. at 17-19.  As Plaintiffs argue, the Court previously considered and rejected this same argument.  The Court explained:

> [A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.  Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.

Sourovelis, 103 F. Supp. 3d at 701 (quoting Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013)).

The FJD Defendants argue that, unlike the interim changes that were made prior to the Court's previous ruling, the GCR is a "court order," which is "not some informal policy that was drafted to get out from under litigation."  FJD Mem. at 18.  Accordingly, there is "no indication" that the FJD will simply abandon the GCR and Local Rule 588 when the case is over.  Id. at 19.  As the Court previously explained, "the Supreme Court has held that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  Sourovelis, 103 F. Supp. 3d at 701 (quoting Friends of the Earth, Inc. v. Laidlaw

24

Envt'l Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)).
Plaintiffs argue that a "court order" is not sufficient to meet
this burden, as the Supreme Court and Third Circuit have both
held that even legislative repeal of an unconstitutional
practice is insufficient to moot a claim.  See Pls.' Opp. at 24
(citing Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v.
City of Jacksonville, Fla., 508 U.S. 656, 662 (1993); People
Against Police Violence v. City of Pittsburgh, 520 F.3d 226, 231
n.2 (3d Cir. 2008)).

        The FJD Defendants seem to imply that the GCR is akin
to a judicial order issued in a state court case, and therefore
that this Court should give it greater deference than, for
example, a legislative order, or the informal practices
implemented by the D.A.'s Office prior to the Court's previous
motion to dismiss ruling.  That is not so.  The GCR is an
administrative, procedural rule signed by Judge Allen in her
capacity as an administrative judge, and does not have the
imprimatur of a judicial order.  See GCR, FJD Mot. Ex. A, ECF
No. 173.  As the Supreme Court of Pennsylvania has explained,
"[a]dministrative judges . . . are charged with the
administration of their respective divisions."  Petition of
Blake, 593 A.2d 1267, 1269 (Pa. 1991).  In that capacity, they
are classed with the appointment and assignment of the personnel
of their division, and have "a host of other supervisory duties

25

to facilitate the speedy and proper administration of justice."
Id.  Under this power and directive, the administrative judge of
the FJD – whether Judge Allen or some future administrative
judge – would have the power to promulgate a new general court
regulation further changing the FJD's civil forfeiture
procedures, including reverting to the procedures in place from
2007 through October 2015.[10]

Indeed, Plaintiffs allege that, prior to 2007, civil
forfeiture proceedings were handled by judges, until the FJD,
facing a shortage of resources, decided to give those
responsibilities to prosecutors and paralegals in Courtroom 478
instead.  See SAC ¶¶ 114-30.  While there may be "no indication"
that the FJD will "abandon" the GCR, there is also no indication
that it will not; particularly if it again faces resource
constraints.  The FJD Defendants' assertions that the FJD will
not revert to the Prior Procedures are simply not enough to meet
their "formidable burden" of demonstrating that the previous
civil forfeiture procedures will not reoccur.

---

[10]     At the hearing, counsel for the FJD Defendants
represented that general court regulations such as the GCR are
provided to the state rules procedure committee to ensure that
the draft general court regulation is not in conflict with the
state procedural rules, but there is no notice and comment
period, and a draft general court regulation is not provided to
the Board of Judges for a vote.  See Hr'g Tr. 46:6-25; 47:1,
Mar. 15, 2017, ECF No. 200.

As a result, the Court find that Plaintiffs have standing to assert claims against the FJD Defendants for their role in creating and implementing past civil forfeiture procedures, and that Plaintiffs' claims have not become moot.

### b.   Challenge to Current Procedures

The FJD Defendants argue that Plaintiffs lack standing to seek prospective relief regarding the new civil forfeiture procedures implemented under the GCR, because Plaintiffs do not plausibly allege that they will be subject to civil forfeiture proceedings in the future, and thus they cannot allege an injury with respect to those practices.  See FJD Mem. at 10-14.  The FJD Defendants also argue that Plaintiffs' claims regarding the new practices are not "ripe" because Plaintiffs do not have ongoing forfeiture proceedings, and therefore they are basing their claims on speculation about how the GCR might be applied in the future.  See FJD Mem. at 14-17.

With respect to both arguments, Plaintiffs respond that the FJD Defendants misconstrue their claims, and that Plaintiff's claims "are not (and need not be) specific to the court regulation or Local Rule 588."  Pls.' Opp. at 25. Plaintiffs argue that they are challenging "the FJD Defendants' procedures generally, having alleged that they were unconstitutional when this litigation commenced and remain

unconstitutional today." Id.  Plaintiffs contend, therefore, that because the Court determined that Plaintiffs had standing to challenge the FJD Defendants' procedures at the outset of this litigation, and none of the FJD Defendants' changes have mooted their claims, they still have standing now.  See id. Plaintiffs argue that the FJD Defendants' ripeness argument fails for the same reason: Plaintiffs are not making a separate, pre-enforcement challenge to the GCR.  Instead, Plaintiffs argue, they challenge the constitutionality of the procedures that were in place, and allege that new changes the FJD Defendants have made have not remedied the constitutional deficiencies.

The FJD Defendants respond that Plaintiffs have added "a new claim based on new facts (and against a new party)," which is "no different for standing purposes than if they brought a separate case with prospective claims challenging the FJD's current forfeiture procedures."  FJD Reply at 3, ECF No. 180.  According to the FJD Defendants, Plaintiffs must establish standing separately for each claim and form of relief sought, which they have not done with respect to their claims challenging the Current Procedures.  See id.

Plaintiffs respond in their surreply that the FJD Defendants' argument that the Second Amended Complaint must be treated like a new case for standing purposes is not supported

by any authority, and would drag the Court into an endless "black hole" of litigation, defeating the point of the "inherently transitory" exception to the mootness doctrine. Pls.' Surreply Ex. A, at 1-3, ECF No. 186-1 (citing Williams v. City of Phila., 270 F.R.D 208, 220 (E.D. Pa. 2010)). Plaintiffs explain that if the Court concluded that Plaintiffs lack subject matter jurisdiction to challenge the new aspects of the civil forfeiture procedures, they would move for leave to amend their complaint to add new named plaintiffs who own property against which civil forfeiture petitions have been filed under the procedures currently in effect. See id. At that point, the FJD Defendants could make cosmetic changes to their procedures again, and the cycle would continue. See id. at 3.

The Court agrees with Plaintiffs' characterization of their claims. Every one of the four counts asserted against the FJD Defendants – Counts Three, Four, Six, and Seven – contains allegations that the pre-October 2015 civil forfeiture procedures were unconstitutional, and then alleges that the changes to the procedures have not fixed these deficiencies. Therefore, Plaintiffs do not need to add new named plaintiffs in order to allege that changes to the procedures did not remedy the constitutional deficiencies. This is not like a new case being brought based on the Current Procedures; instead,

Plaintiffs claim that the procedures were unconstitutional, and still are, despite the enactment of the Current Procedures.

Accordingly, the Court finds that Plaintiffs have standing with respect to all of their claims against the FJD Defendants, and that those claims are ripe.

### 2.   Federalism and Comity

The FJD Defendants' final argument in support of their Rule 12(b)(1) motion is that the Court should abstain from hearing Plaintiffs' claims because "[f]ederalism and comity principles prevent this Court from dictating to the FJD how to operate its courts."  FJD Mem. at 27-30.

In response, Plaintiffs argue that (1) federal courts regularly exercise jurisdiction over challenges to the constitutional adequacy of state-court administration; (2) Plaintiffs' requested relief would not entail impermissible federal supervision of state court operations; (3) this Court previously considered and rejected the argument that this case raises abstention issues under Younger v. Harris, 401 U.S. 37 (1971); and (4) this Court invited Plaintiffs to join the FJD Defendants to this lawsuit to establish jurisdiction over them. See Pls.' Opp. at 28-31.

The Court finds Plaintiffs' arguments – which the FJD Defendants do not even address in their reply – persuasive.  The

issue is not the power of the federal court to intervene to
redress the violation, but rather the degree and nature of the
intervention.  The FJD Defendants rely primarily on O'Shea v.
Littleton, 414 U.S. 488 (1974), in which the Supreme Court
refused to enter an injunction that would require it to
continuously supervise and monitor state court operations,
including "periodic reporting," because it would raise issues
under Younger, 401 U.S. 37.  O'Shea, 414 U.S. at 501.  However,
in this case, Plaintiffs do not seek any ongoing monitoring of
the civil forfeiture procedures, nor any type of remedy that
would entangle this Court with the management of the First
Judicial District.  Rather, Plaintiffs seek a declaration that
the Prior Procedures and Current Procedures are
unconstitutional, and an injunction enjoining those practices.
If Plaintiffs obtain their desired relief, the FJD would be free
to design any appropriate procedures, provided those procedures
accord with due process.  Accordingly, it does not violate
notions of federalism and comity for this Court to exercise
jurisdiction over the FJD to remedy any due process violations.[11]

---

[11]     The Supreme Court and the Third Circuit have generally
approved of this practice.  See, e.g., Gerstein v. Pugh, 420
U.S. 103, 107 & n.8 (1975) (exercising jurisdiction over class
action in which the plaintiffs alleged that the defendants,
various state officials including judges, had violated the
plaintiffs' constitutional rights by detaining them without
holding judicial hearings on the issue of probable cause for
detention); Georgevich v. Strauss, 772 F.2d 1078, 1088 (3d Cir.

Indeed, this Court previously rejected the City and D.A. Defendants' arguments that it abstain from exercising its jurisdiction over Plaintiffs' claims.

\*     \*     \*

For the foregoing reasons, the Court will deny the FJD Defendants' motion to dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

B.   Rule 12(b)(6)

The FJD Defendants argue that the Court should dismiss the claims against them for failure to state a claim because (1) the FJD's procedures provide due process in accordance with the Fourteenth Amendment; and (2) the FJD Defendants are not the proper defendants because the FJD did not enact the Control Substances Forfeiture Act.  See FJD Mem. at 19-27; 30.

The FJD Defendants specifically argue that the FJD's current civil forfeiture procedures provide adequate due process because (1) Local Rule 588 provides a procedure for a post-deprivation hearing; (2) respondents receive a hearing before an impartial judicial officer; (3) the FJD is not required to

---

1985) (discussing various Supreme Court decisions "set[ting] to rest any concerns about the propriety of suing state judges in federal court").  In Georgevich, the Third Circuit ultimately abstained from exercising jurisdiction, after concluding that state law already required the relief that the plaintiffs sought.  See Georgevich, 772 F.2d at 1094-95.

advise claimants of their rights; (4) the GCR does not implicate Fifth Amendment rights; and (5) Plaintiffs fail to allege that the FJD's Current Procedures for common law forfeitures are unconstitutional. <u>See</u> FJD Mem. at 19-27.

As an initial matter, it is unclear which claims the FJD Defendants intend to attack with these arguments, as they do not refer to specific claims. The Second Amended Complaint contains four claims against the FJD Defendants, alleging that the following policies and procedures violate due process: (1) failure to provide a prompt post-deprivation hearing (Count Three); (2) repeated re-listing of civil forfeiture proceedings (Count Four); (3) allowing prosecutors, as opposed to neutral arbitrators, to control the civil forfeiture courtroom (Count Six); and (4) failure to provide adequate notice and use civil rules of procedure (Count Seven). As Plaintiffs note, the FJD Defendants' arguments could apply only to Counts Three and Seven: (1) none of the arguments relate to re-listing hearings (Count Four); and (2) the arguments relate to the procedures currently in place, and therefore cannot apply to Count Six, which solely relates to the procedures in place prior to October 2015. Accordingly, the Court will discuss the applicability of the FJD Defendants' arguments to Counts Three and Seven.

1.   <u>Count Three</u>

In Count Three, Plaintiffs allege that the FJD Defendants fail to provide for a prompt post-deprivation hearing following the seizure of property subject to civil forfeiture. <u>See</u> SAC ¶¶ 319-29.  The FJD Defendants argue that Plaintiffs' allegations fail to state a claim because Local Rule 588, which the First Judicial District enacted prior to the filing of the instant action, provides for a prompt post-deprivation hearing. <u>See</u> FJD Mem. at 19-23.  Plaintiffs argue that (1) the Court already considered and rejected this exact same argument with respect to State Rule 588, and (2) whether or not Local Rule 588 actually provides constitutionally adequate due process protections involves questions of fact not resolvable on a motion to dismiss.  <u>See</u> Pls.' Opp. at 34-37.

Plaintiffs' allegations regarding Count Three in the Second Amended Complaint are virtually unchanged from those in the First Amended Complaint, with the exception of additional allegations relating to the FJD Defendants and the procedures implemented following the filing of this lawsuit.  Plaintiffs allege that the FJD Defendants have a "policy and practice of administering civil-forfeiture proceedings against seized or restrained property when they know or should reasonably know that those proceedings afford property owners no meaningful opportunity to contest the seizure or restraint at a meaningful

time before the ultimate hearing on the merits." SAC ¶ 325.
With respect to the Current Procedures, Plaintiffs allege that
the GCR fails to cure the due process deprivation because it
"forces property owners to wait at least 60 days before being
informed of the availability of post-deprivation relief and then
an indefinite amount of time before a prompt, post-deprivation
hearing is scheduled." Id. ¶ 327.

        The FJD Defendants argue that, contrary to Plaintiffs'
allegations, persons against whose property civil forfeiture
proceedings are filed are provided with a prompt, post-
deprivation hearing in accordance with Local Rule 588, which the
First Judicial District adopted on August 11, 2016 (over two
years after the instant action was filed). See FJD Mem. at 20-
23. Local Rule 588 states that the Office of Judicial Records
"shall schedule a prompt hearing" on a motion for the return of
property. See FJD Mot. Ex. B, Local R. 588, ECF No. 173. The
FJD Defendants argue that this rule provides constitutionally
adequate due process. See FJD Mem. at 20-23.

        As Plaintiffs point out in response, the Court already
considered and rejected similar arguments with respect to
Pennsylvania Rule of Criminal Procedure 588 in its decision
denying the City and D.A. Defendants' motion to dismiss the
First Amended Complaint. See Sourovelis, 103 F. Supp. 3d at
708. The Court held that, regardless of cases finding

35

Pennsylvania Rule 588 to provide sufficient post-deprivation process in other contexts, it is not clear as a matter of law that a Pennsylvania Rule 588 motion would provide a constitutionally sufficient chance to contest the basis for the deprivation at a meaningful time and in a meaningful manner in this context.  See id. at 708.  The FJD Defendants attempt to distinguish this Court's previous opinion by arguing that the Court discussed only Pennsylvania Rule 588, and, unlike that rule, the newly-enacted Local Rule 588 specifically states that a "prompt hearing" will be scheduled.  See FJD Mem. at 22.

Plaintiffs argue that Local Rule 588, just like Pennsylvania Rule 588, does not provide a definitive time frame for a hearing.  See Pls.' Opp. at 35.  Plaintiffs explain that they allege that property owners must wait an "indefinite" period of time before a hearing is scheduled, and that Local Rule 588 does not contradict this allegation, as it states only that a "prompt hearing" will be scheduled, without defining the term "prompt" or providing any particular timeframe.  See id. at 35-36.  Plaintiffs assert that the FJD Defendants' argument that property owners are in fact provided with "prompt" hearings introduces factual questions not appropriate for resolution on a motion to dismiss.  See id.

The Court finds that Plaintiffs have the better of this argument.  Local Rule 588 provides only that a "prompt

hearing" shall be scheduled, without suggesting, even as a general rule, what may be a reasonable time period depending on the circumstances of any one case, or what procedures will be followed at the hearing - basic information necessary for the Court to evaluate whether property owners may contest the deprivation "at a meaningful time and in a meaningful manner" as required under Mathews v. Eldrige, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Determining whether constitutional due process is actually provided under the circumstances would thus require the determination of factual questions not resolvable on a motion to dismiss.[12]   None of the cases the FJD Defendants cite suggest otherwise.[13]

     As a result, the Court will deny the FJD Defendants' motion to dismiss Count Three for failure to state a claim.

---

[12]     The Court is not suggesting that the FJD needs to commit to a specific time table, a matter left to the discretion of that court, or that this Court purports to superintend the FJD's determination of its own practices and procedures. However, some basic information is needed for this Court to evaluate the constitutionality of the Current Procedures.

[13]     With one exception, the cases the FJD Defendants cite holding that Pennsylvania Rule 588 provides adequate due process in other contexts are the same cases the City and D.A. Defendants previously cited, and that the Court considered and distinguished in its previous opinion.  See Sourovelis, 103 F. Supp. 3d at 708.  The sole new case, Williams v. Sminkey, No. 13-2057, 2016 WL 161498 (E.D. Pa. Jan. 14, 2016), does not apply to civil forfeiture proceedings and thus is distinguishable for the same reasons the Court distinguished the remainder of the cases the FJD Defendants cite.

2.  <u>Count Seven</u>

Count Seven relates to the FJD Defendants' role in administering civil forfeiture proceedings.  Specifically, Plaintiffs allege that the procedures violate due process by (1) allowing criminal judges and trial commissioners to adjudicate civil forfeiture proceedings, (2) applying criminal procedures to civil proceedings, and (3) failing to provide property owners with adequate notice of their constitutional rights and legal responsibilities.  <u>See</u> SAC ¶¶ 354-60.

The FJD Defendants argue that Plaintiffs have failed to state a claim because (1) there is no constitutional issue with having criminal judges adjudicate civil forfeiture proceedings; (2) there is no constitutional requirement to provide individualized notice to property owners under <u>City of West Covina v. Perkins</u>, 525 U.S. 234, 241 (1999); and (3) Plaintiffs do not provide any factual basis to support their allegation that common law forfeiture procedures violate due process.  <u>See</u> FJD Mem. at 23-27.

a.  <u>Adjudication</u>

First, the FJD Defendants argue that it is not unconstitutional for criminal judges to adjudicate civil forfeiture proceedings.  Plaintiffs respond that they also allege that Trial Commissioners – who are not judges and do not

38

have the authority to make legal determinations – are actually adjudicating legal issues at civil forfeiture proceedings.  See Pls.' Opp. at 37-38 (citing SAC ¶ 154(d), which alleges that Trial Commissioners "perform adjudicative acts beyond the scope of their authorities, such as deciding whether a case presents any genuine issue of material fact, or whether property owners are knowingly and voluntarily waiving their right to a jury trial").  The FJD Defendants reply that the GCR provides that all motions for default or summary judgment are assigned to a judge for disposition, and if the parties reach an agreement at or before the pretrial conference, the matter is scheduled before a judge.  See FJD Reply at 5 (citing GCR §§ 10, 12(f)). In their surreply, Plaintiffs argue that the question of which acts Trial Commissioners perform is a factual issue not suitable for resolution on this motion to dismiss.  See Pls.' Surreply at 4-5.

As an initial matter, while Plaintiffs' well-pleaded allegations must be accepted as true for purposes of this motion, the Court need not accept as true allegations that are directly contradicted by indisputably authentic documents on which the complaint relies, or matters of public record.  See Pension Benefit, 998 F.3d at 1197; ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994).  Thus, the Court need not

accept Plaintiffs' allegations as true to the extent that they directly contradict the unambiguous text of the GCR.

However, the Court disagrees with the FJD Defendants' assertions that the GCR directly contradicts the allegations in Count Seven.  Instead, Plaintiffs appear to have based their allegations on the GCR itself.  While the FJD Defendants are correct that the GCR provides that all motions will be assigned to a judge for disposition, the GCR also allows Trial Commissioners to preside over pretrial conferences, at which certain binding legal determinations may be made.  See GCR § 12, FJD Mot. Ex. A, ECF No. 173.  Specifically, a Trial Commissioner may determine at a pretrial conference "[w]hether there are any genuine issues of material fact," and whether property owners would like to waive their rights to a jury trial.  See id. Therefore, at this stage of the proceedings, Plaintiffs have plausibly alleged that permitting non-judicial Trial Commissioners to adjudicate these legal questions deprives property owners of due process, including the fair administration of justice.

### b.   Use of Criminal Procedures

Second, the FJD Defendants argue that there is no constitutional issue with using criminal judges and criminal procedures for civil forfeiture proceedings, because criminal

judges are impartial adjudicators, as due process requires.
Plaintiffs respond that the FJD Defendants mischaracterize their
allegations: they do not allege that criminal judges are not
impartial, but instead that reliance upon criminal procedures by
criminal judges causes the repeated re-listing of proceedings,
which in turn denies due process.  See Pls.' Opp. at 38-39
(citing SAC ¶¶ 154, 334, 357-58).  The Court agrees with
Plaintiffs that their allegations of repeated and unjustified
re-listing of civil forfeiture petitions state a plausible claim
for a due process violation.

c.  Adequate Notice

Third, the FJD Defendants argue that Plaintiffs have
failed to state a claim with respect to notice because the
Supreme Court held in Perkins, 525 U.S. at 241, that
individualized notice of state law remedies is not required when
the remedies are "established by published, generally available
state statutes and case law."  FJD Mem. at 24-25 (quoting
Perkins, 525 U.S. at 241).  Because the GCR discusses the rights
of property owners, the FJD Defendants argue, no additional
notice is required.  See id.  Plaintiffs respond that Perkins
did not establish that statutory notice is always sufficient to
satisfy due process, and a determination of whether it is
sufficient requires consideration of factual issues, such as the

41

content of the notice provided through the statutes.  See Pls.'
Opp. at 39-40.  Plaintiffs' characterization of Perkins is
correct; the case involved a motion for summary judgment, and
the Supreme Court concluded statutory notice was sufficient to
satisfy due process based on the factual circumstances of that
case.  See Perkins at 238.  Plaintiffs have therefore plausibly
alleged that the FJD Defendants provide insufficient notice to
property owners.

Accordingly, the Court will deny the FJD Defendants'
motion to dismiss Count Seven for failure to state a claim.

### 3.   Proper Defendants

Finally, the FJD Defendants argue that they are "not
proper defendants" for Plaintiffs' challenge to the
constitutionality of Sections 6801 and 6802 of the Controlled
Substances Forfeiture Act, because the FJD did not enact the
statutes and does not defend them.  See FDJ Mem. at 30.  As
Plaintiffs point out, however, they are not solely challenging
the constitutionality of any section of the Controlled
Substances Forfeiture Act, which did not establish all of the
policies and procedures that Plaintiffs challenge.  Rather,
Plaintiffs are challenging various aspects of Philadelphia's
civil forfeiture policies and practices.

With respect to the FJD Defendants, in particular, Plaintiffs allege that the FJD Defendants had a role in establishing the unconstitutional policies and practices of (1) failing to provide a prompt post-deprivation hearing; (2) repeatedly re-listing civil forfeiture hearings; (3) allowing prosecutors and paralegals, as opposed to neutral arbitrators, to control civil forfeiture proceedings; and (4) failing to establish constitutionally adequate procedures for notice and procedural rules.  None of these alleged policies and procedures, or lack thereof, are governed by the CSFA.  As Plaintiffs allege that the FJD Defendants had a role in creating these policies and procedures, the FJD Defendants are "proper defendants" for Plaintiffs' claims.

*     *     *

For the foregoing reasons, the Court will deny the FJD Defendants' motion to dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(6) for failure to state a claim.

## VI.  THE CITY DEFENDANTS' MOTION TO DISMISS

The City Defendants move to dismiss Counts Four and Six of the Second Amended Complaint on the basis that (1) Plaintiffs have not plausibly alleged that the City's policies or customs caused the conduct at issue in Counts Four and Six; and (2) Plaintiffs have failed to alleged conduct by a City

policymaker in connection with those two claims.  See City
Defs.' Mot. Dismiss, ECF No. 158.  The City Defendants request
dismissal with prejudice, on the basis that Plaintiffs have
already had two opportunities to amend their complaint, as well
as fifteen months of discovery.  Id.  Plaintiffs respond that
(1) Federal Rule of Civil Procedure 12(g) precludes the City
Defendants' motion, as it is a successive motion to dismiss
raising arguments previously available to them; and (2) the City
Defendants' arguments are meritless.  See Pls.' Opp. to City
Defs.' Mot. Dismiss [hereinafter Pls.' City Opp.], ECF No. 165.
The Court agrees that Rule 12(b) precludes the City Defendants'
motion.

     Rule 12(g)(2) states that, "[e]xcept as provided in
Rule 12(h)(2) or (3), a party that makes a motion under this
rule must not make another motion under this rule raising a
defense or objection that was available to the party but omitted
from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Rule
12(h)(2), in turn, provides that "[f]ailure to state a claim
upon which relief can be granted . . . may be raised: (A) in any
pleading allowed or ordered under Rule 7(a); (B) by motion under
Rule 12(c); or (C) at trial."  Fed. R. Civ. P. 12(h)(2).  Under
Rule 12(h)(3), "[i]f the court determines at any time that it
lacks subject-matter jurisdiction, the court must dismiss the
action."  Fed. R. Civ. P. 12(h)(3).

The Court denied Defendants' joint motion to dismiss the First Amended Complaint on May 12, 2015.  ECF Nos. 66, 67.  The Court specifically rejected Defendants' arguments that Counts Four and Six failed to state a claim for relief under Rule 12(b)(6).  See Sourovelis, 103 F. Supp. 3d at 708-09.  The only changes Plaintiffs have made to Counts Four and Six in their Second Amended Complaint are the addition of a single paragraph to each count explaining how the GCR does not cure the problems alleged in each claim.  As Plaintiffs point out, filing an amended complaint does not affect Rule 12(g)'s prohibition against successive motions to dismiss.  See Pls.' City Opp. at 2-3 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.")).

While the City Defendants make new arguments in the instant motion that Defendants did not make in their motion to dismiss the First Amended Complaint, none of those arguments relate to the only new material in Counts Four and Six: Plaintiffs' allegations regarding the GCR.  Instead, the City Defendants' arguments in the instant motion relate solely to allegations that appeared in the First Amended Complaint.  The

City Defendants therefore could have (and should have) made those arguments in their previous motion to dismiss.

In response, the City Defendants argue that Rule 12(h)(2) permits a defense based on failure to state a claim "to be presented through a Rule 12(b)(6) motion filed before an answer, a Rule 12(c) motion filed after an answer, or even during trial," and therefore that they are able to file a motion to dismiss pursuant to Rule 12(b)(6) at this stage of the case. See City Reply at 1 (citing Fed. R. Civ. P. 12(h)(2)(C)), ECF No. 166-1.  The City Defendants misunderstand Rule 12(h)(2). The rule does not permit a party to file duplicative, successive motions to dismiss under Rule 12(b)(6), as the City Defendants have done here, but instead permits a party to raise the defense of a failure to state a claim at one of three additional stages in the litigation: in any pleading allowed or ordered under Rule 7(a), in a Rule 12(c) motion for judgment on the pleadings, or at trial.  See Fed. R. Civ. P. 12(h)(2)(C).

As the Third Circuit has explained, "[t]he procedural bar of Rule 12(g)(2) . . . covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted." Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 321 (3d Cir. 2015).  A successive motion to dismiss filed under Rule 12(b)(6) is "plainly neither a Rule 7(a) pleading nor a motion raised a trial," nor is it a Rule 12(c) motion.  Id. at 320-21.  As a

result, no exception to Rule 12(h)(2) covers a successive motion
to dismiss, and it is "improper" for a district court to
consider such a motion.  Id. at 321.

Therefore, the Court will deny the City Defendants'
motion to dismiss Counts Four and Six of Plaintiffs' Amended
Complaint pursuant to Rule 12(g)(2).

## VII. CONCLUSION

For the foregoing reasons, the Court will deny the FJD
Defendants' motion to dismiss Plaintiffs' Second Amended
Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1)
and 12(b)(6).  The Court will also deny the City Defendants'
Partial Motion to Dismiss Counts Four and Six of Plaintiffs'
Second Amended Complaint.

An appropriate order follows.