**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| CHRISTOS SOUROVELIS, *et al.*, | |
| Plaintiffs, | Civil Action No. 2:14-cv-04687 |
| vs. | Assigned to the Honorable Judge Robreno |
| CITY OF PHILADELPHIA, *et al.*, | **Special Management Track** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DISCOVERY RESPONSES ON COUNT FIVE
FROM THE DISTRICT ATTORNEY DEFENDANTS**

**INSTITUTE FOR JUSTICE**
Darpana M. Sheth*
Robert P. Frommer*
Robert Peccola*
Milad Emam*
Dan Alban*
901 North Glebe Road
Suite 900
Arlington, VA 22203
E-mail:  dsheth@ij.org; rfrommer@ij.org;
rpeccola@ij.org; memam@ij.org;
dalban@ij.rog
Tel:  (703) 682-9320
Fax:  (703) 682-9321

**KAIRYS, RUDOVSKY, MESSING & FEINBERG**
David Rudovsky (I.D. Number 15168)
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
E-mail:  drudovsky@krlawphila.com
Tel:  (215) 925-4400
Fax:  (215) 925-5365

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES .................................................................................... iv

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .......................................................................................3

I.      Background Regarding Plaintiffs' Conflict-of-Interest Claim. ...........................4

II.     The District Attorney Defendants Have Refused to Produce Relevant Discovery on the Conflict-of-Interest Claim. ................................................................................6

        A.     The District Attorney Defendants have improperly narrowed the time frame of some of their discovery responses.......................................7

                1.     The District Attorney Defendants have withheld pre-FY 2012 salary information....................................................................................7

                2.     The District Attorney Defendants have withheld pre-FY 2012 audit information submitted to the Attorney General. ...........................9

        B.     The District Attorney Defendants have withheld records showing breakdowns of expenses paid for with forfeiture proceeds.......................................10

                1.     The District Attorney Defendants' response has not provided an expense breakdown....................................................................11

                2.     Plaintiffs try to obtain expense breakdowns. ..............................12

        C.     The District Attorney Defendants have withheld supervisor-level performance reviews. .........................................................................14

        D.     The District Attorney Defendants have refused to produce Prosecutor Notes in native format and have only produced these notes with unjustified redactions. ...17

LEGAL STANDARDS .........................................................................................20

ARGUMENT ......................................................................................................22

I.      Information Regarding the District Attorney Defendants' Practices Before August 11, 2012, Is Relevant to Count Five......................................................23

II.     A Breakdown of Expenses Paid for With Forfeiture Proceeds Is Relevant and
        Should Be Compelled. ...................................................................................27

III.    Performance Reviews of Public Nuisance Task Force Supervisors Are Relevant
        and Should Be Compelled. .............................................................................30

IV.     The District Attorney Defendants Must Produce Prosecutor Notes in Native
        Format, or at Least Unredacted Notes in Non-Native Format............................31

        A.      The District Attorney Defendants should have produced the Prosecutor Notes
                in native format.. ................................................................................32

        B.      The District Attorney Defendants' privilege log demonstrates how many
                redactions are unjustified. ....................................................................33

V.      Plaintiffs' Discovery Requests Are Proportional...............................................36

CONCLUSION....................................................................................................39

CERTIFICATE OF SERVICE ...............................................................................41

**TABLE OF AUTHORITIES**

**CASES**                                                                              **PAGE(S)**

*Bank of Mongolia v. M & P Global Fin. Servs., Inc*., 258 F.R.D. 514
    (S.D. Fla. 2009) .......................................................................................... 26

*Barnes Foundation v. Township of Lower Merion*, No. 96-372, 1996 WL 653114
    (E.D. Pa. Nov. 1, 1996) ............................................................................. 29

*Bell v. Reading Hospital*, Civ. A. No. 13-5927, 2016 WL 162991
    (E.D. Pa. Jan. 14, 2016) ............................................................................ 21

*Brooks v. Macy's, Inc.*, No. 10 Civ. 5304(BSJ)(HBP), 2011 WL 1793345
    (S.D.N.Y. May 6, 2011) ............................................................................ 38

*Carter v. City of Philadelphia*, Civ. A. No. 97-4499, 2000 WL 632988
    (E.D. Pa. May 5, 2000) ............................................................................. 18

*Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387
    (E.D. Pa. Jan. 31, 2007*)* ........................................................................... 27

*Commonwealth v. Irland*, 153 A.3d 469
    (Pa. Commw. Ct. 2017) ............................................................................... 5

*Dawe v. Corrections USA, Inc.*, 263 F.R.D. 613 (E.D. Cal. 2009) ............................................... 22

*Dixon v. Williams*, No. 4:13-CV-02762, 2016 WL 631356
    (M.D. Pa. Feb. 17, 2016) .......................................................................... 20

*First Niagara Risk Management, Inc. v. Folino*, 317 F.R.D. 23 (E.D. Pa. 2016) ....................... 21

*Groark v. Timek*, 989 F. Supp. 2d 378 (D.N.J. 2013) ..................................................... 22, 34, 35

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977*)* ........................ 24

*Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976) ........................................... 38

*Maples v. Safeway, Inc.*, No. 5:14-CV-05082-JLV, 2016 WL 4444746
    (D.S.D. Aug. 23, 2016) ............................................................................ 38

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ............................................................... 27

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) .............................. 24

*Mutual Industries, Inc. v. American International Industries*, No. 11-5007, 2013 WL 3716516(E.D. Pa. July 15, 2013) ............................................................................ 20

*Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978) .............................................. 20

*Perez v. Blhazhkevych*, No. 3:15-CV-1341, 2016 WL 1337666 (M.D. Pa. Apr. 4, 2016) ........................................................................................ 20

*Peskoff v. Faber*, 240 F.R.D. 26 (D.D.C. 2007) ...................................................... 26

*Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999)............... 27

*Scouler v. Craig*, 116 F.R.D. 494 (D.N.J. 1987) ...................................................... 22

*Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694 (E.D. Pa. 2015) ............... 3, 37

*Susquehanna Commercial Finance, Inc. v. Vascular Resources, Inc.*, No. 1:09–CV–2012, 2010 WL 4973317 (M.D. Pa. Dec. 1, 2010) .......................................................... 22

*Torres v. Kuzniasz*, 936 F. Supp. 1201 (D.N.J. 1996) .................................. 24, 25, 35

*Wells v. Xpedx*, No. 8:05-CV-2193-T-EAJ, 2007 WL 1200955 (M.D. Fla. Apr. 23, 2007) ...................................................................................... 26

*Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692 (D.N.J. 2015) ............................................ 20

## RULES

Fed. R. Civ. P. 26(b)(1) ................................................................................ 20, 21, 37

Fed. R. Civ. P. 26(b)(5)(A)(ii) ............................................................................ 22, 31

Fed. R. Civ. P. 34(b)(2)(E)(i) ............................................................................. 11, 12

## STATUTES

18 Pa. Cons. Stat. § 3021(d) ...................................................................................... 5

18 Pa. Cons. Stat. § 3144 ........................................................................................... 5

18 Pa. Cons. Stat. § 6501(d)(3) .................................................................................. 5

18 Pa. Cons. Stat. § 7707(f) ....................................................................................... 5

42 Pa. Cons. Stat. § 6801(i) .................................................................................... 9, 10

42 Pa. Cons. Stat. § 6801(j) ........................................................................................10

42 Pa. Cons. Stat. § 6801.1(e)–(f) ............................................................................. 5

65 Pa. Cons. Stat. § 67.101 ...................................................................................... 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ..............................20, 21

Fed. R. Civ. P. 34(a)(1) advisory committee's note to 2006 amendment....................................21

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment ...........................................32

Katherine S. Button et al., *Power Failure: Why Small Sample Size Undermines the Reliability of Neuroscience*, 14 Nature Reviews Neuroscience 365 (2013) .................................25

John P.A. Ioannidis, *Why Most Published Research Findings Are False*, 2 PLOS Medicine e124 (Aug. 2005) ..........................................................................................25

Office of the District Attorney, Philadelphia Police Department, *About Us*, http://www.phillypolice.com (last visited Apr. 20, 2017) ............................................................37

Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2218 (3d ed.)......................................................22

Named Plaintiffs Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion to Compel Discovery Responses on Count 5 from the District Attorney Defendants.[1]

## INTRODUCTION

What do Philadelphia police and prosecutors do with forfeiture proceeds?  The answer to this question is essential to Count 5 of Plaintiffs' Second Amended Complaint, which alleges that Defendants' use of forfeited property and its proceeds creates an unconstitutional risk of bias under the Due Process Clause.  To prove this claim, Plaintiffs have worked diligently with the District Attorney Defendants to obtain information regarding expenses paid for with forfeiture proceeds and how they may improperly influence District Attorney employees.  However, there remain four intractable areas that require the Court's intervention.

First, Plaintiffs seek information from before August 11, 2012.  The District Attorney Defendants have refused to produce information based on the two-year statute of limitations for Section 1983 claims.  Plaintiffs suggested FY 2010 as a compromise because District Attorney Williams took office in January 2010, but the District Attorney Defendants rejected this offer. Plaintiffs are challenging a decades-long government policy and practice.  And because some years might be anomalous in terms of forfeiture revenue and expenses, Plaintiffs require at least six years of data from FY 2010 to FY 2015 to account for any anomalies.

---

[1]  The District Attorney Defendants are the Philadelphia District Attorney's Office and District Attorney R. Seth Williams.  The City Defendants are the City of Philadelphia, Mayor James F. Kenney, and Police Commissioner Richard Ross, Jr.  "Defendants" refers collectively to the District Attorney Defendants and the City Defendants.  Plaintiffs are submitting a motion to compel discovery from the City Defendants concurrently.

Second, Plaintiffs seek a breakdown of expenses the District Attorney Defendants paid for with forfeiture proceeds.  The District Attorney Defendants have refused to produce information on specific purchases made with forfeiture proceeds, instead providing only broad spending categories.  This information is relevant to Count 5 as proof of a conflict of interest because it will show the degree to which the District Attorney's Office supplements its budget with forfeiture proceeds.  Specific purchases made with forfeiture proceeds will be indicative of the ways in which the District Attorney Defendants are incentivized to use forfeiture to supplement their budget.  For example, using forfeiture proceeds to make major capital expenditures, to add personnel, or to pay for any other major cost outside the general budgetary process shows a high degree of reliance on forfeiture proceeds to maintain such items beyond the original expenditure.  Without expenditure details, it is difficult for Plaintiffs to offer this kind of analysis to show an institutional conflict of interest under Count 5.

Third, Plaintiffs seek supervisor-level performance reviews of Public Nuisance Task Force employees.[2]  Similar reviews which the District Attorney Defendants produced for other employees proved highly relevant as to how enforcement of civil forfeiture is tainted by a desire for revenue.  These employees were criticized or commended for their work in collecting forfeiture revenues.  For Plaintiffs to obtain a full picture of how the District Attorney's Office is motivated to enforce civil forfeiture by the revenue it generates, the District Attorney Defendants must be required to produce all similar performance reviews for supervisor-level employees of the Public Nuisance Task Force.

---

[2]  "[T]he Public Nuisance Task Force ("PNTF") prosecutes all forfeiture actions filed by the Philadelphia District Attorney's Office in the Court of Common Pleas of Philadelphia County under the Controlled Substances Forfeiture Act; . . .  PNTF maintains real property subject to forfeiture that has been seized prior to final orders of forfeiture; and . . .  PNTF conducts investigation of certain categories of potentially forfeitable assets (such as real property and vehicles)."  (Decl. Robert A. Peccola Supp. Pls.' Reply Mem. Supp. Mot. Class Cert. ("Aug. 10, 2016 Peccola Decl."), ECF No. 141-1, Ex. 2, Dist. Att'y Defs.' Resps. Req. Admis. No. 5.)

Fourth, Plaintiffs seek Prosecutor Notes regarding underlying forfeiture cases that the District Attorney Defendants maintain in a Microsoft database called "Access." Due to concerns that the notes may contain privileged information regarding this federal class action, the parties agreed to a protective order which would not waive any privilege for disclosed materials. Despite this protective order, the District Attorney Defendants have refused to produce these notes in their native format, instead insisting on producing redacted PDF printouts of only certain fields in the database and a privilege log that is insufficient to justify asserted claims of privilege. The Federal Rules require production of these notes in native format, particularly since the protective order renders redactions unnecessary. To the extent the Court disagrees and does not require the District Attorney Defendants to share the native Access files, it should, at a minimum, rule that the privilege log is inadequate and compel the District Attorney Defendants to produce unredacted Prosecutor Notes in a searchable PDF.

These four categories of information are relevant to Count 5 and they are proportional to this claim because the District Attorney Defendants have ready access to this information and Count 5 "truly goes to the heart of this case." *Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 709 n.10 (E.D. Pa. 2015). The District Attorney Defendants cannot meet their burden to show that the requested discovery is not proportional under Rule 26(b)(1).

## **STATEMENT OF FACTS**

In the following sections, Plaintiffs explain the conflict-of-interest claim, and describe their efforts to obtain information related to the four categories of disagreement, which require this Court's assistance.

## I.      Background Regarding Plaintiffs' Conflict-of-Interest Claim.

Count 5, the conflict-of-interest claim, challenges Defendants' general policy and practice of using forfeited property and its proceeds to pay for salaries and other expenses.  (2d Am. Compl., ECF No. 157, ¶¶ 338–46.)  This practice gives police and prosecutors a direct financial incentive to seize and forfeit property, and therefore presents an unconstitutional conflict of interest under the Due Process Clause.  (*Id*. ¶¶ 2, 62–67, 276.)  Plaintiffs' conflict-of-interest claim encompasses all kinds of civil forfeitures where the Defendants use forfeiture proceeds, as they all raise these same perverse financial incentives.  (*See id.* ¶¶ 41, 79, 276–281, 283, Req. Relief ¶¶ 2(d)–(h), 5(d), 6(a); *see also* Pls.' Notice Supp. Authority, ECF No. 196, 2–3.)

Most forfeitures pursued by the District Attorney Defendants are drug forfeitures under the Controlled Substances Forfeiture Act.[3]  (*See* Dist. Att'y Defs.' Answer Affirmative Defenses, ECF No. 74, ¶ 29.)  Proceeds from drug forfeitures are deposited into a "State Forfeiture Fund," which contains only drug-forfeiture proceeds.  (*See* Decl. Robert Peccola Supp. Mot. Compel Dist. Att'y Defs. ("Peccola D.A. Decl."), Ex. 1, Rooney Dep. Tr. 66:5–10.)  The District Attorney Defendants admit that they keep and use proceeds from drug forfeitures to pay salaries of District Attorney's Office employees and other costs.  (Decl. Robert A. Peccola Supp. Pls.' Reply Mem. Supp. Mot. Class Cert. ("Aug. 10, 2016 Peccola Decl."), ECF No. 141-1, Ex. 2, Dist. Att'y Defs.' Resps. Req. Admis. Nos. 24–26; *id*. Ex. 3, Dist. Att'y Defs.' Resps. Pls.' 1st Interrogs. No. 15.)  The District Attorney Defendants also share forfeiture proceeds with the Philadelphia Police Department, reimbursing police expenses with forfeiture funds that were seized by the police.  (*Id*., Ex. 4, City Defs.' Resps. Req. Admis. No. 9.)

---

[3]  42 Pa. Const. Stat. § 6801(e)–(h).

4

These drug forfeitures—so crucial to Defendants in generating revenue to pay for salaries and other expenses—are just one kind of civil forfeiture authorized by state law.  Like the Controlled Substances Forfeiture Act, at least five other statutes authorize the District Attorney Defendants to retain forfeiture proceeds.[4]

Plaintiffs' conflict-of-interest claim also encompasses so-called common-law forfeitures—forfeitures not authorized by statute.  (*See, e.g.*, 2d Am. Compl., ECF No. 157, ¶ 40.)  The District Attorney's Chief Financial Officer, Dorean Rooney, testified that there is a separate "Common Law Fund," which contains forfeiture proceeds from common-law forfeitures.  (Decl. Robert A. Peccola Supp. Pls.' Mot. Partial Recons., ECF No. 191-3, Ex. 1, Rooney Dep. Tr. 74:19–75:8.)  The City Defendants produced non-controlled substance forfeiture documents showing that at least $333,494 of forfeiture reimbursements came from common law forfeitures between 2008 and 2015.  (Peccola D.A. Decl. ¶ 7, Ex. 2.)  The District Attorney's Office has filed common-law forfeiture actions as recently as November 2016.  (*See* Peccola Decl. Supp. Pls.' Mot. Partial Recons., ECF No. 191-4, Ex. 2.)  Although the viability of common-law forfeitures is in serious doubt,[5] the City Defendants continue to seize property for potential common-law forfeitures and the District Attorney Defendants have not dismissed

---

[4]  *See, e.g.*, 18 Pa. Cons. Stat. § 3021(d), (m) (human trafficking forfeiture statute splitting forfeiture between the prosecutor and the Pennsylvania Commission on Crime and Delinquency); 42 Pa. Cons. Stat. § 6801.1(e)–(f) (terrorism forfeiture statute allowing the District Attorney Defendants to keep or sell forfeited property); 18 Pa. Cons. Stat. § 7707(f) (vehicle "chop shop" forfeiture statute allowing District Attorney Defendants to keep forfeiture proceeds); 18 Pa. Cons. Stat. § 3144 (allowing law enforcement to "utilize[]" property "for investigation or prosecution of sexual offenses"); 18 Pa. Cons. Stat. § 6501(d)(3) (scattering rubbish offense providing the balance of forfeiture proceeds "shall be used for the enforcement of this act").

[5]  Indeed, Pennsylvania's Commonwealth Court recently concluded that "common law forfeiture does not exist in Pennsylvania" and overruled case law to the contrary as "erroneously decided." *Commonwealth v. Irland*, 153 A.3d 469, 486 (Pa. Commw. Ct. 2017).  The court wrote that "[a]bsent a statute that specifically authorizes the forfeiture of property, the Commonwealth had no authority to seek, and the trial court had no authority to order, forfeiture," thus reversing a trial court forfeiture order.  *Id.* The government is seeking further appellate review.  *See* Pet. Allowance Appeal, *Commonwealth v. Irland*, No. 97 MAL 2017 (Feb. 10, 2017) (ECF No. 1).

common-law forfeitures which have been filed—rather, they continue to relist them.  (*See* Hr'g Tr. 39:6–40:17, March 15, 2017.)  The fact that these cases have not been dismissed, and the property returned, suggests the power of the financial incentives underlying forfeiture.  Plaintiffs will refer to non-drug statutory forfeitures and common-law forfeitures collectively as "non-drug forfeitures."

On February 23, 2017, this Court granted Plaintiffs' motion to certify a Rule 23(b)(2) class on Plaintiffs' conflict-of-interest claim.  (ECF Nos. 187, 188.)  The Court limited the class to those involving drug forfeitures because "the legal basis for the forfeitures, including the extent to which the forfeitures were authorized by state statute, may be highly relevant to Plaintiffs' claims."[6]  (Mem. Op., ECF No. 187, at 20.)  Plaintiffs moved to reconsider the Court's order to the extent it limited the class to those involving drug forfeitures.  (*See* Mem. Supp. Pls.' Mot. Partial Recons., ECF No. 191-1, at 8–9.)  That motion has been fully briefed.[7]

## II. The District Attorney Defendants Have Refused to Produce Relevant Discovery on the Conflict-of-Interest Claim.

The following sections describe the four discovery disputes on Count 5.  Section A addresses the District Attorney Defendants' inconsistent objections to producing information from before August 11, 2012.  Section B addresses discovery regarding expense breakdowns as to how forfeiture proceeds are spent.  Section C addresses discovery regarding District Attorney's Office performance reviews for supervisor-level employees.  Section D addresses the

---

[6]  Under Rule 23(b)(2), the Court granted certification "with respect to Plaintiffs' requests for (1) a declaration that the City and D.A. Defendants' policy and practice of retaining forfeited property and its proceeds is unconstitutional, and (2) an injunction enjoining that policy and practice."  (Order, ECF No. 188, ¶ 1.)  The Court designated Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger as class representatives and designated the Institute for Justice and David Rudovsky as class counsel.  (*Id.* ¶¶ 4–5.)

[7]  Plaintiffs reserve the right to move to compel information on non-drug forfeitures, if necessary, after the Court rules on Plaintiffs' Motion for Partial Reconsideration.

District Attorney Defendants' failure to provide Prosecutor Notes in their native format and their improper redactions of this information.

**A.    The District Attorney Defendants have improperly narrowed the time frame of some of their discovery responses.**

The District Attorney Defendants have objected to some discovery responses on the theory that the scope of discovery is limited to the start of the Section 1983 statute-of-limitations period, August 11, 2012—two years prior to Plaintiffs' filing of this lawsuit.  Although the District Attorney Defendants have responded to other discovery requests by producing information from before August 11, 2012, they have inconsistently limited their discovery responses under this objection in three instances.  First, Plaintiffs will discuss the information the District Attorney Defendants withheld regarding salaries paid with forfeiture proceeds.  Second, Plaintiffs will discuss information the District Attorney Defendants submitted to the Attorney General but withheld from Plaintiffs for years before FY 2012.

**1.    The District Attorney Defendants have withheld pre-FY 2012 salary information.**

Based on a review of Pennsylvania Attorney General Reports obtained through a public records request, Plaintiffs allege that from Fiscal Years 2002 through 2014, the Philadelphia District Attorney's Office spent more than $28.5 million of its $72.6 million forfeiture revenue on salaries—nearly twice the amount spent on salaries by all other county District Attorney Offices combined.  (2d Am. Compl. ¶¶ 57, 64.)  Plaintiffs propounded Interrogatory No. 15 to determine "every person employed by the District Attorney Defendants whose salary or other compensation is derived in any way from property forfeited under the Controlled Substances Forfeiture Act."  (Pls.' 1st Interrogs. Dist. Att'y Defs.' No. 15.)  Although the District Attorney

Defendants responded to this request, they limited their response to "the time period from August 11, 2012[,]" through FY 2015 (Dist. Att'y Defs.' Resps. Pls.' 1st Interrogs. No. 15.) [8]

> Interrogatory No. 18 followed up by asking:
>
> For every person employed by the District Attorney Defendants whose salary or other compensation is derived in any way from property forfeited under the Controlled Substances Forfeiture Act from 2007 to the present (*see* Resp. to Plfs. 1st Set Interrogs. to District Atty Defs., Interrog. 15, as appropriately supplemented), please identify the employee's:
>
>> a) Full name;
>>
>> b) Job title;
>>
>> c) Total compensation—including, but not limited, to salary and benefits—on an annual basis, for each year (calendar or fiscal year, however the District Attorney Defendants operate) from 2007 through 2015 that is derived from civil-forfeiture actions;
>>
>> d) Total compensation—including, but not limited, to salary and benefits—on an annual basis, for each year (calendar or fiscal year, however the District Attorney Defendants operate) from 2007 through 2015.

(Pls.' 2d Interrogs. Dist. Att'y Defs. No. 18.)  The District Attorney Defendants do not dispute that determining the percentage of their employees' salaries paid with forfeiture proceeds is relevant for the conflict-of-interest claim.  Indeed, the District Attorney Defendants raised no objection to Interrogatory No. 18 on this ground.  Rather, their objection is that Interrogatory No. 18 "requests information outside the time period relevant to this lawsuit, which is from August 11, 2012, to the present."  (Dist. Att'y Defs.' Suppl. Resp. Pls.' 2d Interrogs. No. 18.)[9]

---

[8]  The District Attorney Defendants supplemented this Interrogatory response on April 20, 2017, but the response still excludes the fiscal years Plaintiffs seek here.

[9]  Plaintiffs also requested documents showing "expense line items providing details of all employees being paid (i.e., name; title; department, full time/part time; salary/benefits/overtime)." (Pls.' 2d Req. Produc. Dist. Att'y Defs. No. 54(a).)  The District Attorney Defendants objected to this Request because it sought "documents outside the relevant timeframe for this law suit, which is from August 11, 2012, to the present."  (Dist. Att'y Defs.' Resps. Pls.' 2d Req. Produc. No. 54(a).)  They also combined their response with Interrogatory No. 18:  "Documents responsive to subparts (a) and (b) were provided as attachments to Plaintiffs' Interrogatory No. 18."  (*Id.*)

8

The District Attorney Defendants provided a patchwork response by providing a list of employees compensated with forfeiture proceeds—but limited to Fiscal Years  2013 through2015 and omitting to include each employee's total compensation as requested by subsection (d).  (*Id*.)  In March of 2017, the District Attorney Defendants supplemented their response with spreadsheets of total gross salary data for Fiscal Years 2010 through 2015.  (*Id*.)  The supplemental response, however, conspicuously omitted total compensation ***derived from forfeiture proceeds*** from before FY 2012, as requested by subsection (c).[10]  (*Id*.)  To date, Plaintiffs have not received any information regarding individuals paid with forfeiture proceeds from FY 2007 through FY 2012—even though Plaintiffs offered to narrow the scope to FY 2010 through FY 2012.

       **2.**       **The District Attorney Defendants have withheld pre-FY 2012 audit information submitted to the Attorney General.**

The District Attorney Defendants have also withheld pre-FY 2012 audit information regarding drug forfeitures.  The Controlled Substances Forfeiture Act requires each county to conduct an annual audit of all forfeited property and proceeds and their disposition and submit it to the Pennsylvania Attorney General by September 30 of each year.  *See* 42 Pa. Cons. Stat.

---

[10]  This issue has been further complicated by differing explanations as to which set of defendants have possession of this information.  The District Attorney Defendants stated it was the City Defendants who possessed records showing how forfeiture proceeds are spent on salaries.  As late as November 2016, counsel for the City Defendants, on the other hand, claimed that these salary records were in the custody of the District Attorney's Office.  (*See* Decl. Darpana M. Sheth Supp. Pls.' Positions Rule 26(f) Report ("Sheth Decl."), ECF No. 193, Ex. 2 at 1.)  But this proved false.  A November 28, 2016, email from counsel for the District Attorney Defendants reveals that the City's Office of Innovation and Technology was the true custodian of these documents.  (*See* Sheth Decl., Ex. 3, at 1 ("[The salary records] are kept on a City system to which the DAO has no access.  We were only able to comply with [Plaintiffs' discovery] requests so far by having [CFO] Dorean Rooney direct OIT to run queries according to certain parameters.").)  The City Defendants have still refused to produce these records— even though they have true possession, custody, or control over them.  Plaintiffs were neither consulted on these queries of the City's accounting system nor provided with the search terms used.  (Peccola D.A. Decl. ¶ 3.)  Accordingly, Plaintiffs are also moving to compel the City Defendants to produce this information.

§ 6801(i).[11]  Accordingly, Plaintiffs propounded Request for Production No. 25 asking for "[a]ll documents submitted to the Pennsylvania Office of the Attorney General to enable compliance" with this requirement from FY 2007 forward.  (Pls.' 1st Req. Produc. Dist. Att'y Defs. No. 25.)

The District Attorney Defendants only produced this information for Fiscal Years 2013 and 2014, in keeping with their objection to any discovery before August 11, 2012.  (Dist. Att'y Defs.' Resps. Pls.' 1st Req. Produc. No. 25).  By omitting information for fiscal years when District Attorney Williams was in office, the District Attorney Defendants have obscured the full picture of their disposition of forfeiture proceeds.

### B.    The District Attorney Defendants have withheld records showing breakdowns of expenses paid for with forfeiture proceeds.

To evaluate the extent of the conflict of interest, it is critical to know how forfeiture proceeds are spent—on both a macro and a micro level.  Under the Controlled Substances Forfeiture Act, the Attorney General must submit to the state Legislature an annual report giving "an accounting of all proceeds derived from the sale of forfeited property and the use made of unsold forfeited property."  42 Pa. Cons. Stat. § 6801(j).  Before filing this class action, Plaintiffs obtained these annual reports through Pennsylvania's Right-to-Know Law.[12]  (2d Am. Compl. ¶ 52)  These reports list broad spending categories—such as "Training," "Investigative Equipment/Supplies," "Municipal Task Force Support," and "Other"—but do not provide details

---

[11] The provision reads in full:

> Annual audit of forfeited property.—It shall be the responsibility of every county in this Commonwealth to provide, through the controller, board of auditors or other appropriate auditor and the district attorney, an annual audit of all forfeited property and proceeds obtained under this section.  The audit shall not be made public but shall be submitted to the Office of Attorney General. The county shall report all forfeited property and proceeds obtained under this section and the disposition thereof to the Attorney General by September 30 of each year.

[12] 65 Pa. Cons. Stat. §§ 67.101, *et seq.*

regarding specific expenses made with forfeiture proceeds. (Peccola D.A. Decl., Ex. 19, Bates

Nos. DA0038836, DA0038848.)

> **1.      The District Attorney Defendants' response has not provided an expense breakdown.**

Plaintiffs requested breakdowns of expenses paid for with forfeiture funds in their April

2016 Second Set of Requests for Production.  Specifically, Request for Production No. 54 asked

for:

> All documents concerning asset forfeiture income and expenses for fiscal years 2006–2007 through 2014–2015 (*see, e.g.*, attachment A) including, but not limited to, all documents concerning the following:
>
> a. For Salaries—expense line items providing details of all employees being paid (i.e., name; title; department, full time/part time; salary/benefits/overtime);
>
> b. For Municipal Task Force Support—expense line items providing details of employees on the task force (i.e., name, title, department, full time/ part time, salaries/overtime);
>
> *c. A breakdown of all expenses being incurred by the District Attorney's Office, Police or any other department.*

(Pls.' 2d Req. Produc. Dist. Att'y Defs. No. 54 (emphasis added).)[13]

The District Attorney Defendants responded by stating the breakdown in subsection "c"

was "previously provided in the form of checking account ledgers and FAMIS (Philadelphia's

Financial Accounting Management Information System) documents for Fiscal Years 2013

through 2015."  (Dist. Att'y Defs.' Resps. Pls.' 2d Req. Produc. No. 54.)[14]  Because they did not

---

[13]  As for part (b), "Municipal Task Force Support," this line item includes salaries paid to civilian personnel and expenses (i.e., non-salary expenses) paid to uniformed personnel.  (Rooney Dep. Tr. 184:3–186:15).  These items are covered in Interrogatory No. 18—salaries to all personnel (civilian and uniformed) and in Interrogatory No. 54(c)—breakdown of all expenses.  The District Attorney Defendants can streamline their responses by simply responding to RFP No. 54(c) and including all expenses related to uniformed personnel as well.

[14]  The District Attorney Defendants never identified which Bates ranges were purportedly responsive to this request.  *See* Fed. R. Civ. P. 34(b)(2)(E)(i) (requiring parties to "produce documents as they are

identify these documents by Bates Numbers—as they are required to do, *see* Fed. R. Civ. P. 34(b)(2)(E)(i)—it is unclear to which documents they mean to direct Plaintiffs.

However, none of the District Attorney Defendants' production was responsive because none of it provided a breakdown of expenses. For example, the District Attorney Defendants provided a screenshot from the FAMIS accounting database showing that during June 2013 $104,911 was paid in salaries and $800,000 was paid in "other expenses" under a descriptive code associated with the State Forfeiture Fund. (Peccola D.A. Decl., Ex. 3, Bates No. DA0036411.) However, this screenshot does not provide details of which individuals had their salaries paid from this total or of what kinds of expenses constituted $800,000 of "other expenses."

### 2.    Plaintiffs try to obtain expense breakdowns.

In the summer and fall of 2016, Plaintiffs made extensive efforts to obtain a breakdown of expenses paid for with forfeiture proceeds without court intervention. Counsel for Plaintiffs asked the District Attorney Defendants to "[l]ocate and produce underlying documents on which [Attorney General] reports are based."[15] (Peccola D.A. Decl., Ex. 4, at 2.) The District Attorney Defendants provided documentation showing breakdowns of expenses for FY 2015, which they described as "an incredibly burdensome process." (Peccola D.A. Decl., Ex. 5, at 1.) They also

---

kept in the usual course of business or . . . organize and label them to correspond to the categories in the request").

[15] During this time, the parties also addressed the District Attorney Defendants' erroneous premise that Plaintiffs were "seek[ing] to conduct their own audit of the DA's forfeiture accounts for the past ten years." (Peccola D.A. Decl., Ex. 9, at 1.) Plaintiffs explained that they were not trying to audit Defendants' accounting practices and that production was necessary to show how forfeiture funds are actually being spent. (Peccola D.A. Decl., Ex. 13, at 1–2.) During a December 7, 2016, call, counsel for Plaintiffs clarified that Plaintiffs have no interest in auditing District Attorney Defendants' bookkeeping and simply want a breakdown to identify expenditures of forfeiture proceeds. (Peccola D.A. Decl. ¶ 4.)

indicated that other documents may be lost or destroyed "prior to FY 2012, when the present CFO assumed her position."  (*Id.*)

With the FY 2015 production, Plaintiffs were able to see relevant breakdowns for some expenses paid for with forfeiture proceeds.  For example, a non-native-format import of a "Quicken" spreadsheet showed a payment to one "MedEx Logistics." (Peccola D.A. Decl., Ex. 6, Bates No. DA0044744 (Excel file excerpt).)  This company apparently provides the District Attorney Defendants with "Maintenance of Forfeited Property."  (*Id.*)  Only when Plaintiffs reviewed the expense-breakdown documentation of invoices contained in the FY 2015 production could they understand that this expense was for a courier service (the precise nature of what was being transported is still unclear).  (Peccola D.A. Decl., Ex. 7, Bates Nos. DA0044079–DA0044098.)  This kind of detail is important for Count 5 because it shows the true nature of expenses, rather than just broad categories.

On October 20, 2016, after completing review of the FY 2015 production, Plaintiffs' counsel sent a discovery demand letter for "underlying financial records referenced in [District Attorney Defendants' counsel's] July 25, 2016 email."  (Peccola D.A. Decl., Ex. 8, at 2.)  A week later, counsel for the District Attorney Defendants objected that the request "is not fairly related to any issue in dispute in this litigation;" it "is extremely burdensome;" and that "it is unclear, for many years, whether such documents still exist and/or can be located in storage." (Peccola D.A. Decl., Ex. 9, at 1.)  The District Attorney Defendants also requested a proffer from Plaintiffs as to why breakdowns of expenses were necessary.  (*Id.*)

Using examples from the documents produced by the City Defendants, Plaintiffs explained why breakdowns of expenses were relevant.  (Peccola D.A. Decl., Ex. 10, at 1.)  For example, the City Defendants gave both broad spending categories—*e.g.*, the "PD Expenses—

Vehicles" category—as well as details showing the proper breakdown: a payment of $405,000 to Vehicle Associates to pay for the leases on 54 vehicles.  (*Id*.)  The District Attorney Defendants nevertheless held firm and refused to produce.  On December 19, 2016, counsel for the District Attorney Defendants responded to the ongoing email chain about discovery, echoing prior objections that the expense breakdown is irrelevant, disproportionate to the needs of the case, and burdensome, and further speculating that some underlying documents may no longer be available.  The District Attorney Defendants concluded, "[W]e continue to object to this request and will not produce supporting documentation showing expenditures evidenced in Quicken for fiscal years prior to 2015 absent a court order."  (Peccola D.A. Decl., Ex 11, at 1.)

Having reached an impasse, Plaintiffs now move to compel the breakdowns of expenses the District Attorney Defendants paid for with forfeiture proceeds.

### C.    The District Attorney Defendants have withheld supervisor-level performance reviews.

As part of Plaintiffs' attempt to discover the extent to which financial incentives drive the District Attorney Defendants' pursuit of civil forfeiture, Plaintiffs requested performance reviews or evaluations for Public Nuisance Task Force employees.  (Pls.' 3d Req. Produc. Dist. Att'y Defs. No. 68).[16]  The District Attorney Defendants produced performance reviews for many Public Nuisance Task Force employees, but none for supervisors.  (Peccola D.A. Decl.,

---

[16] The request, in its entirety, reads:

> For Fiscal Years 2002 through the present, please provide all performance reviews, appraisals, evaluations, or other similar documents concerning job performance for each current and former employee of the Public Nuisance Task Force, including all Assistant District Attorneys. This request does not include or seek the production of social security numbers, bank account information, driver's license numbers, insurance information or information relating to the employee's family members, if any, contained in any personnel file(s).

(Pls.' 3d Req. Produc. Dist. Att'y Defs. No. 68.)

Ex. 12, Bates Nos. DA0044595, DA0044647, DA0044660 (containing a sampling of these Performance Reviews).)

The reviews the District Attorney Defendants did produce show that bringing in forfeiture revenue is a key component of employee evaluations.  By way of example, a Prosecution Assistant[17] was criticized in a 2004 review for her lack of "timely submission of forfeiture orders. . . ."  (*Id*., Bates No. DA0044660.)  The Prosecution Assistant's supervisor noted that the unsubmitted orders represent over "$900,000" in forfeiture revenue and that it was important that forfeiture orders be submitted as quickly as possible because "*[t]he money generated by the Forfeiture Unit is essential to the functioning of the District Attorney's Office.*"  (*Id*. (emphasis added).)

Conversely, a May 18, 2006, performance review of an Assistant District Attorney on the Public Nuisance Task Force praised the prosecutor for squeezing more money from property owners through "hard bargain" settlements:  "*[I]n a few cases, she was able to effectively drive hard bargains and negotiate settlements in which more money was forfeited than I expected.*" (*Id*., Bates No. DA0044595 (emphasis added).)  Another Public Nuisance Task Force prosecutor was praised for "single-handedly . . . generating approximately $250,000 in forfeited money" within a six-week period.  (*Id*., Bates No. DA0044647.)

Plaintiffs inquired as to why the District Attorney Defendants' responses did not include any supervisor reviews.  Plaintiffs asked what would happen if "a supervisor were to sue the DA's office for discrimination or some other work-place lawsuit—are you saying that the DA's office has no paperwork tracking how supervisors were doing at their jobs?"  (Peccola D.A. Decl., Ex. 13, at 2.)  Counsel for the District Attorney Defendants informed Plaintiffs' counsel

---

[17] Plaintiffs have redacted the names of employees as a professional courtesy.

that he had directed his Human Resources Director to gather the relevant files and that he had "personally reviewed" the files and "confirm[ed] that there are no evaluations, nor is there anything remotely resembling evaluations, for . . . supervisors." (*Id*. at 1.) It struck Plaintiffs as unfathomable that supervisors like Beth Grossman—chief of the Public Nuisance Task Force for decades until approximately February 2015—would not have been subject to any kind of documented evaluation.

On January 24, 2017, however, the District Attorney Defendants informed Plaintiffs that their office had "recently" instituted a policy requiring employees to complete an annual "Supervisor Feedback" form concerning their Chiefs. (Peccola D.A. Decl., Ex. 14, at 1.) Toward the end of 2016, District Attorney's Office employees completed the forms and gave them "to the Deputies (who supervise the Chiefs in the DAO's chain of command) to give them an idea of the employees' perception of their direct supervisor, an opportunity to report concerns, etc." (*Id*.) The District Attorney Defendants identified 19 pages of "Supervisor Feedback" forms for Public Nuisance Task Force Chief Drew Jenemann, and one "missing" page. (*Id*.) Although the District Attorney Defendants "agree that these documents are responsive to one or more of [Plaintiffs'] discovery requests," they refused to "turn them over absent a court order" on the grounds that producing the reviews would conflict with the instructions they gave their employees and that the reviews are not relevant. (*Id*.)

Accordingly, the parties are at an impasse with regard to production of supervisor performance reviews of the Public Nuisance Task Force.

**D.    The District Attorney Defendants have refused to produce Prosecutor Notes in native format and have only produced these notes with unjustified redactions.**

In Request for Production No. 12, Plaintiffs asked for "[a]ll documents concerning the customs, policies, practices, or standard operating procedures related to the administration of Courtroom 478."  (Pls.' 1st Req. Produc. Dist. Att'y Defs. No. 12; *see also id.*, No. 2.[18])  At first, the District Attorney Defendants responded that they did not have documents independently responsive to this request.[19]  Subsequently, they informed Plaintiffs that although there were no records of forfeiture proceedings in Courtroom 478, there were "approximately 1,745 pages of [notes] maintained by their prosecutors in forfeiture cases against real and personal property in the Court of Common Pleas of Philadelphia County" between August 11, 2012, and the present. (Joint Mot. Entry Stipulated Protective Order, ECF No. 117-1, Ex. A, at 2.)

Due to concerns that the notes may contain privileged material concerning the instant federal lawsuit, the parties agreed to a protective order in which the District Attorney Defendants would not waive privilege by producing the notes.  (*Id.* at 2.)  The Agreement subjected the

---

[18]  Requesting "[a]ll documents prepared by individuals listed in [the] Rule 26(a)(1) Initial Disclosures and any supplemental disclosures, including, but not limited to, Assistant District Attorneys Beth Grossman, Daren Waite, Steven Agami, James Dellafiora, and Jennifer Kralle, concerning the investigation, prosecution, administration, and settlement of civil-forfeiture actions."

[19]  The District Attorney Defendants responded:

The operating procedure related to the administration of Courtroom 478 is not a function of the District Attorney Defendants. In response to Request for Production No  2, the District Attorney Defendants have produced, *inter alia*, correspondence by and between former PNTF Chief Beth Grossman and various administrators of the First Judicial Department, which evidences discussions related to changing the administrative procedure of forfeiture cases, as well as a PNTF manual and Community Guide. (See DA0000001–0000146). To the best of their knowledge, the District Attorney Defendants possess no other documents responsive to this request.

(Dist. Att'y Defs.' Resps. Pls.' 1st Req. Produc. No. 12.)

Prosecutor Notes to claims of privilege in the instant class action.[20]  But, to the extent Prosecutor Notes may be subject to claims of privilege in the underlying forfeiture proceedings, the parties agreed "that claims of privilege do not apply in this Class Action and do not shield the Prosecutor Notes from production here."  (*See* Order, ECF No. 128, at 3.)[21]

Despite this protective order, counsel for the District Attorney Defendants refused to simply copy the Microsoft Access files and share them with Plaintiffs to produce these notes in native electronic format as required by the Federal Rules.  Instead, the District Attorney Defendants insisted on printing out only some fields of the database, redacting broad swaths of information from those fields, and then scanning those redacted pages into a PDF document, which was produced to Plaintiffs six months after the discovery request.  (*See* Decl. Darpana M. Sheth Supp. Pls.' Positions Rule 26(f) Report ("Sheth Decl."), ECF No. 193, ¶¶ 5–6.)  In addition to making the documents difficult to read, this method of production made it impossible to tell which fields from the database were missing.  (*Id.* ¶ 6.)  Additionally, the Defendants' printing of records necessarily stripped them of relevant metadata, such as when these records were last saved, accessed, or revised and other information that would prove useful to understanding how the District Attorney Defendants used them.  (*Id.*)  The District Attorney Defendants then took an additional seven months to produce a privilege log that was unclear and inconsistent in its claims of privilege.  For example, it often claimed that documents were related

---

[20]  District Attorney Defendants asserted that some of the Prosecutor Notes contain "attorney-client communications pertaining to the instant Class Action and privileged under the Federal Rules of Evidence and/or attorney work-product prepared or compiled in anticipation of the instant Class Action."  (Joint Mot. Entry Stipulated Protective Order, ECF No. 117-1, Ex. A, at 2.)

[21]  *See also Carter v. City of Philadelphia*, Civ. A. No. 97-4499, 2000 WL 632988, at *1 (E.D. Pa. May 5, 2000) (holding that criminal case documents were not shielded from discovery "in a later civil case aimed entirely at showing that the defendants' prosecutorial conduct in that criminal case violated [the plaintiff's] civil rights").

to litigation—but this claim was untenable since the referenced "litigation" was simply the underlying forfeiture action and not the instant class action.

Unredacted entries in the produced Prosecutor Notes proved relevant to the conflict-of-interest claim.  For example, prosecutors declined to pursue forfeiture of a property because a fire had made the property less valuable.  (Peccola D.A. Decl., Ex. 15, Bates No. DA0039802.) In another case, the author of the note working with federal authorities expressed his desire that the federal investigators and the Philadelphia District Attorney's office would both profit from the forfeiture:  "[H]opefully they can take the house and split with us."  (Peccola D.A. Decl., Ex. 16, Bates No. DA0039928.)

After reviewing the privilege log, counsel for Plaintiffs emailed counsel for the District Attorney Defendants on December 29, 2016, to seek clarification on entries that were unclear or seemed to redact too much information.  (Peccola D.A. Decl., Ex. 17, at 1–2.)  Without addressing these specific concerns, counsel for the District Attorney Defendants responded by describing four "general[]" categories of material claimed privileged:

    (1) "communications related to the instant litigation";

    (2) "the names, contact information, and content of communications from private citizens reporting criminal activity or dangerous conditions on property (citizens make these reports based on their assurance of confidentiality, which we are duty bound to uphold)";

    (3) "the dates of birth, contact information, and social security numbers of third parties, such as potential buyers or tenants"; and

    (4) "reports of related criminal investigations, sometimes by other law enforcement entities."[22]

(Peccola D.A. Decl., Ex. 18, at 1.)  The District Attorney Defendants refused to explain these redactions absent a court order.  (*Id.*)

---

[22] Plaintiffs are not interested in the names or personal contact information mentioned in (2) and (3).

Accordingly, Plaintiffs request that the Court compel production of these notes in native format of Microsoft Access files.  To the extent the Court disagrees, Plaintiffs request that the Court rule on the insufficiency of the privilege log and then compel production of unredacted notes in non-native format.

## LEGAL STANDARDS

Cases are meant to be decided on the merits, and this means that parties must be able to secure the documents and information they need to reach those merits through discovery.  Rule 26 "establishes a liberal discovery policy," *Dixon v. Williams*, No. 4:13-CV-02762, 2016 WL 631356, at *1 (M.D. Pa. Feb. 17, 2016),[23] which means that Plaintiffs are entitled to all information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevance for purposes of discovery "has been 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Perez v. Blhazhkevych*, No. 3:15-CV-1341, 2016 WL 1337666, at *2 (M.D. Pa. Apr. 4, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

A party cannot "refuse discovery simply by making a boilerplate objection that it is not proportional."  Fed. R. Civ. P. 26(b)(1), advisory committee's note to 2015 amendment.[24]  When ruling on discovery objections based on proportionality, courts are to consider the following

---

[23]  *See also id.* at *1–2 (compelling—under the amended Rule 26—production of a legal brief from another case because it "could be reasonably calculated to lead to the discovery of admissible evidence, as it might summarize or highlight critical issues" on the operative claim).

[24]  Indeed, boilerplate objections are never permitted and result in waiver of the objection.  *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704 (D.N.J. 2015) (holding producing party waived boilerplate objections); *Mut. Indus., Inc. v. Am. Int'l Indus.*, No. 11-5007, 2013 WL 3716516, at *4 (E.D. Pa. July 15, 2013) (compelling discovery responses where "Defendant's responses to Plaintiff's requests are simply boilerplate recitations, and fail to provide any detail as to how the requests are burdensome or irrelevant").

factors—"[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "[N]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Bell v. Reading Hosp.*, Civ. A. No. 13-5927, 2016 WL 162991, at *2 (E.D. Pa. Jan. 14, 2016); *id*. at *4 (analyzing factors and compelling discovery by class-action defendants who "have larger amounts of discoverable information, as opposed to the individual plaintiffs" and should "shoulder more of the discovery obligation").

First, the burden is on the party moving to compel "to show that the material it requests is relevant to its claims." *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 28 (E.D. Pa. 2016). Second, if that burden is met, the party resisting discovery must meet its burden to prove that the proportionality factors in Rule 26 "weigh in favor of . . . denying [the] request for otherwise relevant information." *Id.* (compelling production of emails by first determining they were relevant and then determining the objecting party did not meet its burden under "the factors from the recently-amended Rule 26"). The "proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

For electronically stored information, Rule 34 requires either production or an "opportunity to test or sample." Fed. R. Civ. P. 34(a)(1) advisory committee's note to 2006 amendment. Parties seeking direct access to another party's electronic information system may

invoke this authority.  *See* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2218 (3d ed.).  In

analyzing requests to search an opposing party's computer system, courts ask if there is "reason

to believe that the opposing party had been less-than-forthcoming in prior production in the

case."  *Id.* (citing *Dawe v. Corrections USA, Inc*., 263 F.R.D. 613 (E.D. Cal. 2009)).  The party

objecting to the production of electronically stored information bears the burden of showing

undue hardship or expense.  *See Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc*., No.

1:09–CV–2012, 2010 WL 4973317, at *13 (M.D. Pa. Dec. 1, 2010).

The District Attorney Defendants have at various times stated that providing

electronically stored information would be overly burdensome.  Thus, it is their duty under Rule

26(b)(2)(B) to "show that the information is not reasonably accessible because of undue burden

or cost."  And even if they make such a showing, "the court may nonetheless order discovery . . .

if the requesting party shows good cause" pursuant to Rule 26(b)(2)(C).  *Id.*

Finally, when a party withholds documents on the basis of privilege, it must "describe the

nature of the documents, communications, or tangible things not produced or disclosed . . . in a

manner that . . . will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

"In a § 1983 case a claim of governmental privilege '[m]ust be so meritorious as to overcome the

fundamental importance of a law meant to insure each citizen from unconstitutional state

action.'"  *Groark v. Timek*, 989 F. Supp. 2d 378, 389 (D.N.J. 2013) (alteration in original)

(quoting *Scouler v. Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).

## **ARGUMENT**

Plaintiffs are entitled to the four categories of relevant information that the District

Attorney Defendants refuse to produce.

Section I explains why information regarding practices before August 11, 2012, is relevant to a Section 1983 claim that must establish a policy and practice born of many years. Limiting the scope of discovery to after August 11, 2012, provides only a narrow range of information that may include anomalies.

Section II explains why a detailed account of expenses made by the District Attorney Defendants with forfeiture proceeds is relevant to Plaintiffs' conflict-of-interest claim. The District Attorney Defendants have only given broad categories of what they spend forfeiture proceeds on—refusing to produce a breakdown of these expenses and actual accounting figures.

Section III shows why performance reviews of Public Nuisance Task Force supervisors are relevant, especially in light of highly probative reviews of subordinate employees.

Section IV explains why Prosecutor Notes of civil-forfeiture proceedings—which the District Attorney Defendants concede are relevant—must be produced in native format. In the alternative, this Court should rule on the inadequacy of the privilege log and compel the District Attorney Defendants to produce unredacted Prosecutor Notes.

Finally, Section V describes why the District Attorney Defendants cannot meet their burden to show that Plaintiffs' discovery responses are not proportional to the needs of proving the conflict-of-interest claim.

## I.   Information Regarding the District Attorney Defendants' Practices Before August 11, 2012, Is Relevant to Count Five.

Plaintiffs move to compel responses to Interrogatory Nos. 15 and 18 and Requests for Production Nos. 25 and 54 requiring responses and production of documents for FY 2010 through FY2012.

The District Attorney Defendants are wrong that discovery should be limited from August 11, 2012, through the present. Plaintiffs are still seeking salary information, documents

submitted to the Attorney General, expense breakdowns, and Prosecutor Notes for prior years. Information regarding the District Attorney Defendants' actions and practices before FY 2012 are relevant to the conflict-of-interest claim for two reasons.

First, it is incumbent on Plaintiffs to prove "practices of state officials," which are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978) (citation omitted). A policy or practice civil-rights class action cannot be constrained to a narrow time frame of four years, which the District Attorney Defendants have proposed here. The Supreme Court has observed in the civil-rights context, that "[c]onsiderations such as small sample size may, of course, detract from the value of [statistical] evidence." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339 n.20 (1977); *see id.* (analyzing value of statistics in Title VII discrimination suit).

*Torres v. Kuzniasz*, 936 F. Supp. 1201 (D.N.J. 1996) concretely shows why the District Attorney Defendants' proposed four-year sample size here is too small for a *Monell* case. In *Torres*, the plaintiffs filed a Section 1983 suit alleging that the City of Camden violated their rights by "failing to properly train their police officers in the use of force." *Id.* at 1205. In discovery, the court compelled Camden "to produce its Internal Affairs investigations *for the years 1988 through 1996*." *Id.* (emphasis added.) Camden, like the District Attorney Defendants here, incorrectly used the statute of limitations for its time-frame objection. *Id.* at 1206. Camden argued that "the only relevant documents supporting the plaintiffs' claims are those spanning the two-year time frame prior to the incident" giving rise to the suit. *Id.* But the Court held firm that the ***eight-year*** timespan was indeed correct. Documents throughout that eight-year period were "relevant and necessary to the ***plaintiffs' burden of establishing the requisite policy or custom and causation*** required for municipal liability under § 1983, and

because **documents which span a number of years and involve many Camden police officers may be necessary to establish such a policy or custom**." *Id.*

Here, the District Attorney Defendants' practice of keeping and using forfeiture proceeds dates back to at least 1987. (*See* 2d Am. Compl. ¶ 53.) And it continues today. (*Id.* ¶¶ 54–60) Plaintiffs have offered a reasonable compromise of beginning the time frame for discovery with FY 2010 to coincide with when District Attorney Williams took office. This would limit production to only six fiscal years—two years fewer than the *Torres* court forced the resisting party to produce. Narrowing discovery to August 11, 2012, through FY 2015 hampers Plaintiffs' ability to show a consistent policy and practice under Williams's administration.

Second, narrowing discovery to three years would likely deprive Plaintiffs of data necessary to show statistically significant trends. With a small sample size, there is a risk that an anomaly—not representative of the data overall—could bias the findings. *See* Katherine S. Button et al., *Power Failure: Why Small Sample Size Undermines the Reliability of Neuroscience*, 14 Nature Reviews Neuroscience, 365, 367–68 (2013) (finding that results from smaller samples sizes "are more uncertain and therefore fluctuate more in response to analytical changes"); John P.A. Ioannidis, *Why Most Published Research Findings Are False*, 2 PLOS Medicine e124, at 0697 (Aug. 2005) ("[O]ther factors being equal, research findings are more likely true in scientific fields that undertake large studies . . . than in scientific fields with small studies."). For example, in FY 2014there was a decrease in forfeiture revenue to $3.4 million from revenues of $5 million in FY 2013. (Peccola D.A. Decl., Ex. 19, Bates Nos. DA0038836, DA0038848.) Accordingly, Plaintiffs requested 10 years of data to mirror the reports on drug forfeitures they obtained from the Attorney General's Office. And as noted above, as a compromise position, Plaintiffs offered to limit their requests to FY 2010 through FY 2015.

This would allow Plaintiffs access to salary data from before FY 2013 to determine all individuals employed by the District Attorney Defendants whose salaries or other compensation were derived from property forfeited under the Controlled Substances Forfeiture Act as well as what percentage of their salaries were paid for with forfeiture proceeds.  (Pls.' 1st Interrogs. Dist. Att'y Defs. No. 15; Pls.' 2d Interrogs. Dist. Att'y Defs. No. 18.)  It would also give Plaintiffs access to pre-FY 2012 audit information submitted to the Attorney General, which would shed light on the three missing fiscal years that cover District Attorney Williams's tenure.  (Dist. Att'y Defs.' Resps. Pls.' 1st Req. Produc. No. 25.)

Finally, to the extent that electronically stored information is missing or destroyed for years before FY 2013, Plaintiffs are still allowed to obtain this information through data recovery methods—or to take further steps to make sure they cannot be recovered.  *See Bank of Mongolia v. M & P Global Fin. Servs., Inc*., 258 F.R.D. 514, 520 (S.D. Fla. 2009) ("Deleted computer files . . . whether e-mails or otherwise, are discoverable.").  "[T]he producing party has the obligation to search available electronic systems for the information demanded."  *Peskoff v. Faber*, 240 F.R.D. 26, 31 (D.D.C. 2007).  And under Federal Rule of Civil Procedure 26(b)(2)(B), governing electronically stored information, "the producing party is relieved of producing **specifically identified inaccessible** data only upon a showing of undue burden or cost."  *Id*. (emphasis added).  The producing party also "has the obligation to search available electronic systems for deleted emails and files."  *Wells v. Xpedx*, No. 8:05-CV-2193-T-EAJ, 2007 WL 1200955, at *1 (M.D. Fla. Apr. 23, 2007); *see id*. at *2 ("Although Defendant alleges that all responsive emails have been produced to Plaintiff, Defendant has not provided an affidavit or other specific evidence regarding the scope of Defendant's search of its electronic depositories for responsive document.").

26

Here, District Attorney Defendants have not specifically identified years before FY 2012 as "inaccessible," nor have they attested that they searched their files to determine if this is the case.  To the extent District Attorney Defendants maintain that electronically stored data from before FY 2012 is missing after a thorough search, the remedy is to have either Plaintiffs' expert or an independent expert analyze their computer system by way of a mirror image.  *See Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387, at *3 (E.D. Pa. Jan. 31, 2007) ("Plaintiff's expert shall recover all documents from the mirror images, including but not limited to all word-processing documents, email messages, PowerPoint or similar presentations, spreadsheets and other files, including 'deleted' files."); *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999) (compelling deleted electronic data by way of a "'mirror image' copying of the hard drive, and the production of relevant documents").  If, after thoroughly searching the relevant deleted files, the District Attorney Defendants still maintain that years before 2012 are missing, Plaintiffs reserve the right to seek an order compelling District Attorney Defendants to allow either Plaintiffs' expert or an independent computer expert to enter, "mirror-image," and inspect their computer programs.

## II.   A Breakdown of Expenses Paid for With Forfeiture Proceeds Is Relevant and Should Be Compelled.

Plaintiffs move to compel a response to Request for Production No. 54.  In their response, the District Attorney Defendants should provide a breakdown of expenses made with forfeiture proceeds for Fiscal Years 2010 through 2014.  *See* Section I, *supra*.

A breakdown of expenses made with forfeiture proceeds is relevant to showing what personal and institutional benefits the District Attorney Defendants receive from forfeiture.  *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249–50 (1980) (explaining that the relevant question under the Due Process Clause is whether "judgment will be distorted by the prospect of

institutional gain as a result of zealous enforcement efforts").  Documentation showing specific expense breakdowns will also show how capital expenditures made with forfeiture proceeds can create a long-term dependency on forfeiture proceeds for spending.  For example, using forfeiture proceeds to make major purchases, to add personnel, or to pay for any other major cost outside the general budgetary process creates an ongoing need to generate funding through forfeiture proceeds.  If the District Attorney Defendants are purchasing equipment that requires maintenance, how will that maintenance be paid for?  Since the original purchase came from forfeiture proceeds rather than the usual procurement process, will future maintenance expenses also come from forfeiture proceeds?  This creates a snowball effect of needing more and more forfeitures to meet the demands of current forfeiture purchases.

Relevant details regarding capital expenditures are almost completely lacking from the data the District Attorney Defendants have produced.  For example, in reviewing the Microsoft Excel spreadsheets containing broad expense categories from the State Forfeiture Fund for FY 2006 through FY 2015, Plaintiffs identified a 2013 expense entry for $2 million categorized as "Municipal Task Force Support."[25]  (Peccola D.A. Decl., Ex. 20, Bates No. DA0044467 (Excel file excerpt).)  Likely because of the large amount of the expense, someone within the District Attorney's Office marked the entry with an explanatory note that was hidden until "right clicking" the entry.  (*Id*.)  The note revealed that the $2 million was used to pay for a new building for the Philadelphia Police Department.  (*Id*.)  Without this note, there would be no way of knowing what the $2 million was used for in the absence of documents breaking down expenses for all fiscal years other than FY 2015.

---

[25]  Although this particular item does not bear the words "Municipal Task Force Support," CFO Rooney testified that Municipal Task Force Support "generally means all expenses attributable to a police department and/or a task force."  (Rooney Dep. Tr. 184:3–8.)

Breakdowns of expenses paid for with forfeitures funds are thus relevant to showing the direct financial incentive the District Attorney Defendants have in forfeiting property. *Barnes Foundation v. Township of Lower Merion*, No. 96-372, 1996 WL 653114 (E.D. Pa. Nov. 1, 1996) is illuminating.  In *Barnes*, the defendant township sought to compel discovery of the Barnes Foundation's financial records because the foundation had alleged that the township was driving it to financial ruin.  The township requested tax returns, audited financial statements, and "all source documents from which Barnes' financial summary data was ultimately derived." *Id*. at *1.  Examples of "source" documents included micro-level information such as what Plaintiffs are seeking here:  "the precise billings submitted to the foundation for incidental day to day expenses." *Id*.  The foundation described culling these very specific source documents as "clearly burdensome and oppressive." *Id*.  Despite noting that the township's "requests [we]re sweeping in their scope, the Court f[ound] that they [we]re relevant and not overly broad in light of the issues in th[e] case." *Id*. at *4.  The court compelled not just the financial summary statements, but "***all source documents from which the financial summary data*** of the Barnes Foundation . . . ***was ultimately derived***." *Id*. (emphasis added).

Similarly here, while the Attorney General Reports and some broad-level expense categories from the District Attorney Defendants provide a "financial summary," they do not provide all underlying financial data, and they certainly do not provide the level of detail— "precise billings"—the *Barnes* court compelled.

Plaintiffs allege a financial incentive, which necessarily asks where the forfeiture proceeds go and how those proceeds trigger budgetary decisions or influence the number of forfeiture actions brought.  An order consistent with *Barnes* is necessary to provide the Plaintiffs important and relevant information about where forfeiture proceeds—***public monies***—go.  Do

the proceeds go to purchasing new iPhones for District Attorney's Office employees?  Do they

go to purchasing new cars?  Do they go to purchasing food and drink?  Do they go to buying or

renting new facilities?  Do they go to paying for "teambuilding" exercises for employees at

restaurants?  The District Attorney Defendants have refused to produce information answering

these questions.

### III.   Performance Reviews of Public Nuisance Task Force Supervisors Are Relevant and Should Be Compelled.

Plaintiffs move to compel a response to Request for Production No. 68, which includes

performance reviews for supervisors.

The performance reviews that the District Attorney Defendants have already produced

for non-supervisor employees have proven highly relevant to Count 5 because they state that

forfeiture proceeds are "essential" to the office and praise employees for bringing in forfeiture

proceeds.  It stands to reason that supervisor reviews would be, at least, equally relevant, and the

District Attorney Defendants have yet to offer an explanation to the contrary.

The reviews the District Attorney Defendants have already produced show that bringing

in revenue from forfeiture cases is a key component of employee evaluations.  (*See* Peccola D.A.

Decl., Ex. 12, Bates No. DA0044660 (criticizing employee for "[un]timely submission of

forfeiture orders" and noting amount of money at stake); *id.*, Bates No. DA0044647 (praising

employee for "single-handedly . . . generating approximately $250,000 in forfeited money"

within a six-week period).)  In light of these examples, there is no serious dispute that

supervisors' reviews are equally material and probative—thus disproving the District Attorney

Defendants' relevancy objection.

The District Attorney Defendants' other objection—that producing these evaluations

would "compromise" what Defendants told the evaluators—is equally unfounded.  The name of

the person filling out the evaluation could easily be redacted.  Accordingly, the District Attorney

Defendants should be compelled to produce the 20 pages of evaluations responsive to Request

for Production No. 68.

**IV.     The District Attorney Defendants Must Produce Prosecutor Notes in Native Format, or at Least Unredacted Notes in Non-Native Format**.

The District Attorney Defendants' privilege log for Prosecutor Notes (Request for

Produc. Nos. 2, 12) contains many inconsistent, impossible-to-understand, and legally

unsupported redactions.  As demonstrated previously, the Prosecutor Notes are relevant to the

conflict-of-interest claim because they show prosecutors (1) evaluating forfeiture decisions based

on the monetary value of homes, and (2) planning forfeiture actions with federal authorities

based on their ability to split the proceeds.  (Peccola D.A. Decl., Ex. 15, Bates No. DA0039802;

*id*., Ex. 16, Bates No. DA0039928.)

But even if the Defendants' approach of creating a privilege log carries the day, the log is

deficient.  A privilege log must "describe the nature of the documents, communications, or

tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to

assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  The District Attorney Defendants' privilege

log, however, does not allow Plaintiffs to "assess the claim" of privilege. (*See* Peccola D.A.

Decl., Ex. 21.)

As an initial matter, the District Attorney Defendants have not produced any Prosecutor

Notes from before August 11, 2012.  As explained *supra*, § I, this is not justified.  In addition,

the Prosecutor Notes they have produced for after August 11, 2012, are insufficient for two

reasons.  In Subsection A, Plaintiffs will discuss Prosecutor Note redactions that omit relevant

information, which the District Attorney Defendants agreed would not be subject to claims of

privilege.  In Subsection B, Plaintiffs will discuss potential over-redactions that do not make sense in light of the surrounding context in the Prosecutor Notes.

A.      **The District Attorney Defendants should have produced the Prosecutor Notes in native format.**

In February 2016, Plaintiffs and the District Attorney Defendants worked out their concerns that the Prosecutor Notes may contain privileged material concerning the instant federal lawsuit by agreeing to a protective order in which the District Attorney Defendants would not waive privilege by producing the notes.  (Joint Mot. Entry Stipulated Protective Order, ECF No. 117-1, Ex. A, at 2.)  Despite these safeguards preserving any claims of privilege, the District Attorney Defendants did not produce these notes in native electronic format as required by the Federal Rules.[26]

Instead of producing the Prosecutor Notes the way the District Attorney's Office "ordinarily maintains the information," the District Attorney Defendants insisted on printing out only some fields of the database, blotting-out substantial portions of the narratives from those fields, and then scanning those redacted pages into a PDF document, which they produced to Plaintiffs six months after the discovery request.  (*See* Sheth Decl. ¶¶ 5–6.)  The resulting document was difficult to read and, because it was not produced in its native format, fields from the database may have been missing.  (*Id.* ¶ 6.)  Additionally, the Defendants' printing of records necessarily stripped them of relevant metadata, such as when they were last saved, accessed, or revised and other information that would prove useful to understanding how the District Attorney Defendants used them.  (*Id.*)

---

[26]  The Advisory Committee Note to the 2006 amendment to Rule 34 specifies that "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature."  Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment.

This form of production is inadequate under Rule 34 and it violates the very protective order the District Attorney Defendants negotiated.  Under that agreement, the protective order does not permit the District Attorney Defendants to blot out Prosecutor Notes in non-native format.  Rather, the agreement specifically provides that the parties will alert one another should there be any inadvertent disclosure of "claims of privilege in the instant Class Action" (with the issue to then be addressed by the parties).  (*See* Order, ECF No. 128, at 3.)  It also contains a confidentiality provision, providing that the notes can be "disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part" only to certain persons.  (*Id*. at 5.)  The District Attorney Defendants specifically agreed to terms that addressed their concerns regarding privilege and confidentiality, none of which involve redacting large portions of the Prosecutor Notes.

### B.      The District Attorney Defendants' privilege log demonstrates how many redactions are unjustified.

Even if Plaintiffs accept production of the Prosecutor Notes in non-native format, the District Attorney Defendants' heavy-handed redactions are not appropriate.  Three examples suffice.

First, the District Attorney Defendants redacted references to settlement agreements in underlying forfeiture actions.  But the terms of the class-wide settlement of Claims 1 and 2 demonstrate that underlying settlement agreements in state forfeiture actions are not privileged.  (*See id*. at 3 (omitting underlying forfeiture documents from claims of privilege); *see also* Order, ECF No. 104 (settling Claims 1 and 2 and requiring ongoing production of settlement agreements).)  For example, an April 22, 2015, entry for 1334 W Pike Street states, "I drafted [**REDACTED**] settlement agreement [**REDACTED**] emailed a copy to counsel."  (Peccola D.A. Decl., Ex. 21, Bates No. DA0039835.)  In the corresponding privilege log, the District

Attorney Defendants identified this as a "Communication related to instant litigation," but the context makes it obvious that this was a settlement agreement in the underlying forfeiture action—not something related to the instant lawsuit (1334 W Pike Street was not a property belonging to one of the Named Plaintiffs). (Peccola D.A. Decl., Ex. 21, at 1.) This problem—redacting settlement agreements in underlying forfeiture matters under the auspices of the instant class-action litigation—appears throughout the District Attorney Defendants' redactions. (*See id.*, Bates Nos. DA0039896–98, DA0039924, DA0040121, DA0040371, DA0040519.) Information regarding settlements in underlying forfeiture actions is important for Plaintiffs' conflict-of-interest claim because the profit incentive could motivate prosecutors to expedite or pressure settlements in an effort to obtain forfeiture proceeds. (*See* Peccola D.A. Decl. ¶ 5.) Accordingly, these redactions and claims of privilege should be overruled.

Second, the District Attorney Defendants did not properly assert the law-enforcement privilege. For example, a May 26, 2015, entry involved a settlement agreement on a property that had squatters. (*See id.*, Bates No. DA0039964.) At the end of the entry, the author states, "The District Attorney's Office decision not to participate in the removal of any occupants of the property is based on the following investigation results [Three Paragraphs **REDACTED**]." (*Id.*) The entry concludes, "Given this situation, I am sure that you will agree that the most expedient way of dealing with this matter would be to dispose of the forfeiture case as quickly as possible." (*Id.*, Bates No. DA0039965.) In the corresponding privilege log, the District Attorney Defendants identified the subject matter as a "[r]eport of criminal activity" and asserted the law-enforcement and investigative privileges. (*Id.* at 3.) The privilege was not made by the head of the agency (the District Attorney)—as was required. *See Groark*, 989 F. Supp. at 390.[27] The

---

[27] The "law enforcement privilege" the District Attorney Defendants invoke "is 'designed to protect documents and information whose disclosure would seriously harm the operation of government.'"

agency head should have personally reviewed the material and provided a supporting affidavit.

*Id*. Additionally the broad swath of information blocked out—three full paragraphs—makes it impossible to know the contours of how the asserted privilege applies. Moreover, this entry has the potential to be quite relevant given that the conclusion in the note is "to dispose of the forfeiture case as quickly as possible." (Peccola D.A. Decl., Ex. 21, Bates No. DA0039965.)

In another example of the misuse of the law-enforcement privilege, in an August 7, 2008, entry, the prosecutor wrote that someone "told me that I should expect a call from [an] AUSA Curtis Douglas because [**REDACTED**] they want to give him back his house. Whatever—in any event, I made my MSJ argument[.]" (*Id*., Bates No. DA0040125.) This entry could provide critical information about what incentives the District Attorney Defendants have for pursuing forfeiture. However, the District Attorney Defendants have cloaked this information in a law-enforcement privilege that prevents Plaintiffs from learning more—rather than using this privilege for its intended purpose. (*Id*. at 4.)

In addition, in a January 13, 2014, entry, the author mentions someone "blowing the case off for a long time." The District Attorney Defendants then redact a very large block—***at least five lines' worth***—of information as "Report of criminal investigation" (*Id*., Bates No. DA0040549; *id*. at 9) and assert the law enforcement and investigative privileges as well as

---

*Groark,* 989 F. Supp. 2d at 389 (quoting *Preston v. Malcolm*, No. 09-3714 (JAP), 2009 WL 4796797, at *4 (D.N.J. Dec. 8, 2009)). When asserting the law-enforcement privilege, the requirements are strict, and the claim of privilege "must be made *by the head of the agency* making the privilege after that person has personally reviewed the material and served 'precise and certain reasons for preserving' the confidentiality of the communications." *Id*. at 390 (emphasis added) (quoting *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980)). Typically, the agency head will claim this privilege by affidavit with specific facts, rather than "[b]road invocations of a privilege" which are "unacceptable." *Id*. Finally, "the party asserting the privilege 'must demonstrate to the court that [the] relevancy [of the allegedly privileged . . . documents] is outweighed by the specific harm that would ensue from their disclosure.'" *Id*. (alterations in original) (quoting *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1212 (D.N.J. 1996)). Because the District Attorney Defendants did not follow any of these procedures, their law-enforcement privilege claims should be overruled.

relevance.  Again, there was no required review from the Agency head with a supporting affidavit, leaving fives lines blotted out with no agency-approved justification.

Third and finally, as a result of the blotting-out of information, Plaintiffs cannot make sense of the Prosecutor Notes.  For example, the November 28, 2011, notes contain nearly two-and-a-half sentences of redactions discussing a property that, in the words of the Assistant District Attorney, "has got to go."  (*Id*., Bates No. DA0040727.)  Two-and-a-half sentences is far too much redaction to cover the purported "[i]dentity of person reporting criminal activity," as the District Attorney Defendants claim.  (*Id*. at 10.)  Similarly, the February 6, 2012 notes have redactions that cover nearly an entire paragraph's worth of information (*id*., Bates No. DA0040792) in a purported attempt to (again) protect the "[i]dentity of person reporting criminal activity."  (*Id*. at 10.)  However, the large redactions go leagues beyond blotting out someone's name.  All of this is particularly concerning given that the largest block of redacted information is prefaced: "P.S. On the other hand, you should probably know, if you don't already, that over the year [**REDACTED**]."  (*Id*., Bates No. DA0040792.)  Plaintiffs deserve much more information to assess these dubious claims of privilege.

Plaintiffs thus request a court ruling compelling the District Attorney Defendants to produce native Microsoft Access files of these Prosecutor Notes (Req. for Produc. Nos. 2, 12), subject to the agreed-upon protective order.  Alternatively, Plaintiffs request an order ruling that the privilege log is insufficient and compelling production of unredacted Prosecutor Notes in a searchable PDF.

## V.    Plaintiffs' Discovery Requests Are Proportional.

For each category of information that Defendants are withholding, Plaintiffs' requested information is proportional to the needs of the case.  District Attorney Defendants cannot meet

their burden to show otherwise—and Plaintiffs should prevail—under each of the Rule 26(b)(1) factors.[28]

First, there is no dispute as to the importance of Count 5, which, in the words of the Court, "truly goes to the heart of this case." *Sourovelis*, 103 F. Supp. 3d at 709, n.10.

Second,  the nature of this particular class action is such that the District Attorney Defendants have more "access to relevant information" as well as the resources to cull their own data—this is simply the nature of a Section 1983 action challenging government practices and policies. *See Bell*, 2016 WL 162991, at *4 ("There is no requirement that parties have to spend equal amounts on discovery, or that a party who has less to produce be somehow limited in what it can request as a result.").

Third, "the parties' resources" weigh in favor of production because the Philadelphia District Attorney's Office does not want for resources.  "The Philadelphia District Attorney's Office is the largest prosecutor's office in Pennsylvania, and one of the largest in the nation.  It serves the more than 1.5 million citizens of the City and County of Philadelphia, employing 600 lawyers, detectives and support staff."  Office of the District Attorney, City of Philadelphia, *About Us*, http://www.phila.gov/districtattorney/about.html (last visited Apr. 20, 2017).  The District Attorney Defendants' objections give no information as to how their resources are lacking, and the size and scope of their legal personnel resources should not make production too burdensome.  Indeed, forfeiture is a constant source of revenue for the District Attorney Defendants; certainly Plaintiffs, who lack a similar revenue scheme, should be given access to simple information and documents.

---

[28]  The "amount in controversy," *see* Fed. R. Civ. P. 26(b)(1), is not a factor here since this is a claim for prospective injunctive relief, restitution, and nominal damages.

Furthermore, "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear the burden." *Maples v. Safeway, Inc*., No. 5:14-CV-05082-JLV, 2016 WL 4444746, at *5 (D.S.D. Aug. 23, 2016).  Here, the District Attorney Defendants have identified nothing "unusual" or "undue" about their burden.

Fourth, "the importance of the discovery in resolving the issues" weighs in favor of production because the nature of the conflict-of-interest claim is such that generalizations about where money is spent will not do.  If Plaintiffs do not know how—and by whom—forfeiture funds were used to purchase what items, they will not be able to trace either a personal or an institutional benefit to the District Attorney's Office or its staff members.  The same can be said for supervisor performance reviews, which may spell out in vivid detail explicit profit incentives, and for redacted information in Prosecutor Notes, which may show forfeiture decisions being made based entirely on property values—rather than suspected criminal conduct.

Fifth, the benefit of production—proving a claim that "truly goes to the heart of this case"—outweighs the burden on the District Attorney Defendants of producing documents.  While the District Attorney Defendants' poor recordkeeping seems to be an obstacle to production, this is simply not a legally justified excuse to withhold discovery.  *See Brooks v. Macy's, Inc*., No. 10 Civ. 5304(BSJ)(HBP), 2011 WL 1793345, at *4 (S.D.N.Y. May 6, 2011) ("[T]he burden that results from disorganized record-keeping does not excuse a party from producing relevant documents."); *Kozlowski v. Sears, Roebuck & Co*., 73 F.R.D. 73, 76 (D. Mass. 1976) ("To allow a defendant whose business generates massive records to frustrate

discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.").

In addition, in the case of underlying file source information, these were items that the City Defendants were able to produce with no trouble whatsoever.  They should be on a disc or some other mechanism that can be downloaded.  If not, then the Plaintiffs should be able to inspect or copy them.  District Attorney Defendants simply cannot meet their burden in showing Plaintiffs' requested information disproportionate to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court grant this motion to compel and order the District Attorney Defendants to:

- Respond in full to **Interrogatory Nos. 15** and **18** for FY 2010 through FY 2015;

- Respond in full to **Requests for Production Nos. 25** and **54** by providing all responsive documents from FY2010 through FY 2015 showing breakdowns of expenses made with forfeiture proceeds.

- Produce all supervisor performance reviews responsive to **Request for Production No. 68** from FY 2010 through the present.

Finally, Plaintiffs seek an order overruling District Attorney Defendants' claims of law-enforcement privilege, and ordering District Attorney Defendants to provide their Prosecutor Notes (**Requests for Production Nos. 2, 12**) for FY 2010 through FY 2015 by sharing them in their native Microsoft Access files with Plaintiffs.  Alternatively, District Attorney Defendants should produce unredacted Prosecutor Notes in a searchable PDF.

Dated:  April 21, 2017

39

Respectfully submitted,

| | |
|---|---|
| **INSTITUTE FOR JUSTICE** | **KAIRYS, RUDOVSKY, MESSING & FEINBERG** |
| By: /s/ *Robert A. Peccola* | David Rudovsky (I.D. Number 15168) |
| Darpana M. Sheth* | The Cast Iron Building |
| Robert P. Frommer* | 718 Arch Street |
| Robert A. Peccola* | Suite 501 South |
| Milad Emam* | Philadelphia, PA 19106 |
| Dan Alban* | E-mail:  drudovsky@krlawphila.com |
| 901 North Glebe Road | Tel:  (215) 925-4400 |
| Suite 900 | Fax:  (215) 925-5365 |
| Arlington, VA 22203 | |
| E-mail:  dsheth@ij.org; rfrommer@ij.org; | |
| rpeccola@ij.org; memam@ij.org | |
| dalban@ij.org | |
| Tel:  (703) 682-9320 | |
| Fax:  (703) 682-9321 | |

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

40

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 21st day of April, 2017, a true and correct copy of the

foregoing was served upon the following counsel of record via the ECF system:

Michael R. Miller
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Tel:  (215) 683-5444
E-mail:      Michael.R.Miller@phila.gov

*Counsel for Defendants City of Philadelphia, Mayor James F. Kenney,*
*and Police Commissioner Richard J. Ross, Jr.*

Elizabeth J. Graham-Rubin
Bryan C. Hughes
Branden J. Albaugh
Douglas M. Weck Jr.
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107
Tel:  (215) 686-8787
E-mail:      bj.graham-rubin@phila.gov; bryan.hughes@phila.gov;
            branden.albaugh@phila.gov; douglas.weck@phila.gov

*Counsel for Defendants Philadelphia District Attorney's Office and*
*District Attorney R. Seth Williams*

Michael Daley
Andrew Coval
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
Tel:  (215) 560-6300
E-mail:      legaldepartment@pacourts.us

*Attorneys for Defendants the Honorable Sheila A. Woods-Skipper, the Honorable*
*Jacqueline F. Allen, Joseph H. Evers, and Charles A. Mapp*

/s/ *Robert A. Peccola*
Robert A. Peccola
Attorney for Plaintiffs

41