# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOS SOUROVELIS, *et al.*, | |
| Plaintiffs, | Civil Action No. 2:14-cv-04687 |
| vs. | Assigned to the Honorable Judge Robreno |
| CITY OF PHILADELPHIA, *et al.*, | **Special Management Track** |
| Defendants. | |

**PLAINTIFFS' UNCONTESTED MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS CERTIFICATION AND CONSENT DECREE ON PLAINTIFFS' FIFTH AND SIXTH CLAIMS FOR RELIEF**

INSTITUTE FOR JUSTICE
Darpana M. Sheth*
Robert P. Frommer*
Robert Peccola*
Milad Emam*
Dan Alban*
901 North Glebe Road
Suite 900
Arlington, VA 22203
Email: dsheth@ij.org; rfrommer@ij.org;
rpeccola@ij.org; memam@ij.org;
dalban@ij.org
Tel: (703) 682-9320
Fax: (703) 682-9321

*Admitted Pro Hac Vice*

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN
David Rudovsky (I.D. Number 15168)
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
Email:  drudovsky@krlawphila.com
Tel:  (215) 925-4400
Fax:  (215) 925-5365

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ............................................................................................1

STATEMENT OF FACTS ...................................................................................2

    I.    PLAINTIFFS HAVE VIGOROUSLY LITIGATED THE CONFLICT-OF-INTEREST CLAIMS. ...................................................................................................2

        A.    The Court Has Made Key Rulings on the Conflict-of-Interest Claims. ......3

        B.    Plaintiffs Have Conducted Extensive Factual Investigation of the Conflict-of-Interest Claims. ........................................................................5

    II.    THE PROPOSED CONSENT DECREE REMEDIES THE UNCONSTITUTIONAL CONFLICTS OF INTERESTS AND COMPENSATES PLAINTIFFS FOR VIOLATIONS OF THEIR RIGHTS ...............................................................................7

    III.    THE PROPOSED CONSENT DECREE CONTAINS AN EFFECTIVE NOTICE PLAN AND CLAIMS PROCESS. ...............................................................................9

ARGUMENT .................................................................................................11

    I.    THE PROPOSED RESTITUTIONARY CLASS MEETS RULE 23'S CERTIFICATION REQUIREMENTS ............................................................................12

        A.    The Proposed Restitutionary Class Satisfies the Prerequisites of Rule 23(a). ................................................................................12

            1.    The Numerosity Prong Is Met. ........................................................13

            2.    The Commonality Prong Is Met. ........................................................13

            3.    The Typicality Prong Is Met. ........................................................14

            4.    The Adequacy Prong Is Met. ........................................................16

        B.    The Proposed Restitutionary Class Satisfies Rule 23(b)(3). ......................16

**PAGE**

II.   THE PROPOSED CONSENT DECREE IS FAIR, REASONABLE, AND ADEQUATE. ..........18

    A.   The Proposed Consent Decree Satisfies the *Girsh* Factors ...................... 19

        1.   *The Complexity, Expense, and Likely Duration of Ongoing Litigation of the Conflict-of-Interest Claims Favor Approval.* ................................................................... 19

        2.   *Considering the Class Members' Reaction to the Proposed Consent Decree Would Be Premature.* .......................... 20

        3.   *Counsel Had an Adequate Appreciation of the Conflict-of-Interest Claims Before Resolving Them.* .................................................... 20

        4.   *The Risks of Establishing Liability Favor Approval.* ..................... 22

        5.   *The Risks of Establishing Damages Favor Approval.* ................... 22

        6.   *The Risks of Maintaining Plaintiffs' Class Action Are Neutral.* ..... 23

        7.   *Defendants' Ability to Withstand a Greater Judgment Is Neutral.* ......................................................... 23

        8.   *The Range of Reasonableness of the Restitutionary Fund Favors Approval.* ...................................................... 24

    B.   The Applicable *Prudential* Factors Also Favor Settlement. ..................... 25

    C.   The Proposed Consent Decree Is Fair, Reasonable, and Adequate Under Amended Rule 23(e)'s Standard. .................................................. 28

        1.   *The Named Plaintiffs and Their Attorneys Adequately Represent the Proposed Restitutionary Class.* .............................. 28

        2.   *The Parties Negotiated the Proposed Consent Decree at Arm's Length.* ......................................................... 29

        3.   *The Proposed Consent Decree Would Provide the Proposed Restitutionary Class Adequate Relief.* ........................................... 30

        4.   *The Proposed Consent Decree Treats Class Members Equitably.* ...................................................... 30

**PAGE**

    D.      The *Cy Pres* Provision Contributes to the Fairness of the Decree.............32

    E.      The Notice Plan Meets the Requirements of Rule 23...............................33

            1.     *The Class Notice Meets Each of the Three Requirements of Rule 23.* ......................................................................................33

            2.     *The Notice Plan Provides the Best Notice Practicable.* ................34

CONCLUSION.........................................................................................................35

CERTIFICATION OF COUNSEL.............................................................................35

CERTIFICATE OF SERVICE ...................................................................................36

**<u>TABLE OF AUTHORITIES</u>**

P<small>AGE</small>(S)

C<small>ASES</small>

*Alexander v. Coast Prof'l,*
    Civ. A. No. 12-1461, 2016 WL 861329 (E.D. Pa. Mar. 7, 2016).....................................28

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)..............................................................................................................18

*Arizona v. Fulminante,*
    499 U.S. 279 (1991)..........................................................................................................1, 2

*Baby Neal ex rel. Kanter v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ...................................................................................................15

*Benjamin v. Dep't of Pub. Welfare of Pa.,*
    No. 1:09-CV-1182, 2014 WL 4793736 (M.D. Pa. Sept. 25, 2014)...............................20

*Boone v. City of Philadelphia,*
    668 F. Supp. 2d 693 (E.D Pa. 2009) ................................................................20, 22, 24, 33

*Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.),*
    494 F.2d 799 (3d Cir. 1974)................................................................................................19

*Byrd v. Aaron's Inc.,*
    784 F.3d 154 (3d Cir. 2015).................................................................................................13

*Cox v. Voyles,*
    No. 15-cv-1386, Doc. 65 (D. Ariz. Aug. 18, 2017) .........................................................24

*First State Orthopedics v. Concentra, Inc.,*
    534 F. Supp. 2d 500 (E.D. Pa. 2007) ................................................................................16

*Gates v. Rohm & Haas Co.,*
    Civ. A. No. 06-1743, 2008 WL 4078456 (E.D. Pa. Aug. 22, 2008)...............................21

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975).......................................................................19, 21, 23, 25

*Harjo v. City of Albuquerque*
    Civ. A. No. 16-1113, 2018 WL 3621025 (D.N.M. Jul. 28, 2018)..................................24

*Harlan v. Transworld Systems, Inc.,*
    No. 13-5882, 2015 WL 505400 (E.D. Pa. Feb. 6, 2015) .................................................32

**PAGE(S)**

*Harris v. Reeves,*
    761 F. Supp. 382 (E.D. Pa. 1991) ............................................................................. 22, 34

*In re Baby Prod. Antitrust Litig.,*
    708 F.3d 163 (3d Cir. 2013) ......................................................................................... 32

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ...................................................................................... 19, 20

*In re Google Inc. Cookie Placement Consumer Privacy Litig.,*
    Civ. No. 12-MD-2358, 2017 WL 446121 (D. Del. Feb. 2, 2017) ................................... 32

*In re National Football League Players Concussion Injury Litig.,*
    821 F.3d 410 (3d Cir. 2016) ................................................................................ 22, 23, 24

*In re NFL Players' Concussion Injury Litig.,*
    301 F.R.D. 191 (E.D. Pa. 2014) ............................................................................... 18, 20

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
    176 F.R.D. 158 (E.D. Pa. 1997) ................................................................................... 19

*In re Processed Egg Products Antitrust Litig.,*
    284 F.R.D. 249 (E.D. Pa. 2012) ............................................................................... 21, 25

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ................................................................................. *passim*

*In re SmithKline Beckman Corp. Sec. Litig.,*
    751 F. Supp. 525 (E.D. Pa. 1990) ................................................................................ 31

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ................................................................................. *passim*

*Kaplan v. Chertoff,*
    Civ. A. No. 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008) .................................. 22

*McAlarnen v. Swift Transp. Co.,*
    Civ. A. No. 09-1737, 2010 WL 365823 (E.D. Pa. Jan. 29, 2010) .................................. 21

*Montgomery Cty. ex rel. Becker v. Merscorp, Inc.,*
    298 F.R.D. 202 (E.D. Pa. 2014) ................................................................................... 13

*Perry v. FleetBoston Fin. Corp.,*
    229 F.R.D. 105 (E.D. Pa. 2005) ................................................................................... 31

PAGE(S)

*Platt v. Moore,*
 No. 16-cv-8262, 2017 WL 6420477 (D. Ariz. Aug. 30, 2017) ........................................24

*Ripley v. Sunoco, Inc.,*
 287 F.R.D. 300 (E.D. Pa. 2012) ....................................................................................23

*Saunders v. Berks Credit & Collections, Inc.,*
 No. 00-3477, 2002 WL 1497374 (E.D. Pa. July 11, 2002) ...................................................23

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
 362 F. Supp. 2d 574 (E.D. Pa. 2005) ........................................................................ 26, 32

*Sourovelis v. City of Philadelphia,*
 103 F. Supp. 3d 694 (E.D. Pa. 2015) ............................................................................ 24

*Stewart v. Abraham,*
 275 F.3d 220 (3d Cir. 2001) ...................................................................................... 13

*Sullivan v. DB Invs., Inc.,*
 667 F.3d. 273 (3d Cir. 2011) ..................................................................................... 19

*Tumey v. Ohio,*
 273 U.S. 510 (1927) .............................................................................................. 2, 3

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) ............................................................................................. 3, 13

*Williams v. Pennsylvania,*
 136 S. Ct. 1899 (2016) ............................................................................................. 2

*Young v. United States ex rel. Vuitton,*
 481 U.S. 787 (1987) ................................................................................................. 2

**RULES**

42 U.S.C. § 1988 .......................................................................................................... 9

Class Action Fairness Act, 28 U.S.C. § 1715 ............................................................................ 11

EDPA Local Rule 7.1 ..................................................................................................... 1

EDPA Local Rule 7.1(b) ................................................................................................. 35

Fed. R. Civ. P. 23(a) ............................................................................................... 12, 13

**PAGE(S)**

Fed. R. Civ. P. 23(b) ................................................................................. 12

Fed. R. Civ. P. 23(b)(2) ................................................................. 2, 4, 15, 23

Fed. R. Civ. P. 23(b)(3) .......................................................................... 17, 18

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................... 33

Fed. R. Civ. P. 23(e) .................................................................................... 11

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2) ............................................................. 12, 28, 29, 30

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................... 30

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................... 30, 31

**OTHER AUTHORITIES**

James M. Burnham, *Comment:  Preserving Procedure:  Requiring the Government
    to Disprove Causation in Procedural Due Process Claims*,
    76 U. Chi. L. Rev. 441 (2009) ......................................................... 22, 23, 25

Manual for Complex Litigation (Fourth) § 21.312 (2004) ........................................ 34

William B. Rubenstein, Newberg on Class Actions § 8:17 (5th ed. Jun. 2018) ........................ 34

Under Federal Rule of Civil Procedure 23 and Local Rule 7.1, Named Plaintiffs Christos Sourovelis, Doila Welch, Norys Hernandez, and Nassir Geiger, on behalf of themselves and all others similarly situated ("Plaintiffs") respectfully move for preliminary approval of class certification under Rule 23(b)(3) and the proposed Consent Decree on Plaintiffs' Fifth and Sixth Claims for Relief.

## **INTRODUCTION**

Plaintiffs' Fifth and Sixth Claims for Relief ("Count 5 and 6") challenge two of Defendants' policies and practices as an unconstitutional conflict of interest that denies Plaintiffs the fair and impartial administration of justice—a right guaranteed by the Due Process Clause of the Fourteenth Amendment.  Count 5, asserted against the City Defendants and the District Attorney Defendants, challenges their retention and use of forfeited property and its proceeds because it gives law enforcement in Philadelphia a direct financial interest in the outcome of forfeiture proceedings.  (2d Am. Compl., ECF No. 157, ¶¶ 338-46; 3d Am. Compl. ¶¶ 343-351.) Count 6 challenges Defendants' practice of allowing prosecutors, rather than neutral arbiters, to control forfeiture and related proceedings in Courtroom 478 of City Hall.[1]  (2d Am. Compl. ¶¶ 347-53; 3d Am. Compl. ¶¶ 352-59.)

In addition to injunctive and declaratory relief, Plaintiffs seek the return of any seized or forfeited property and monetary relief for violating their due-process rights.  Plaintiffs seek the return of property because injecting an unconstitutional financial incentive into the forfeiture process results in a proceeding that, from its inception, is fundamentally unfair to property owners and invalidates the outcome of that proceeding.  *See Arizona v. Fulminante*, 499 U.S.

---

[1] Defendants include three sets of parties—the City Defendants, District Attorney Defendants, and FJD Defendants.  The City Defendants are the City of Philadelphia, Mayor James F. Kenny, and Police Commissioner Richard Ross Jr.  The District Attorney Defendants are the Philadelphia District Attorney's Office and District Attorney Lawrence S. Krasner.  The FJD Defendants are the Honorable Sheila A. Woods-Skipper, the Honorable Jacqueline F. Allen, Joseph H. Evers, and Charles A. Mapp.

279, 308 (1991) (recognizing that financial interest by judicial official in outcome of proceeding is a "structural defect[] in the constitution of the trial mechanism," which "def[ies] analysis by 'harmless-error' standards") (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)); *see also Williams v. Pennsylvania*, 136 S. Ct. 1899, 1909 (2016) (holding that "an unconstitutional failure to recuse [by an interested judge] constitutes structural error even if the judge in question did not cast a deciding vote"). That "structural defect" exists even when the impermissible financial incentive resides in a prosecutor instead of a judicial officer. *See Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987) (holding that it was structural error to allow attorneys to prosecute criminal contempt action in which they stood to gain financially).

After four years of litigation and significant negotiations under a court-appointed facilitator, Plaintiffs now move for preliminary approval of: (i) a proposed Rule 23(b)(3) class for monetary relief; and (ii) the proposed Consent Decree on these two conflict-of-interest claims.

## STATEMENT OF FACTS

After summarizing the litigation history of the conflict-of-interest claims, this section explains how the proposed Consent Decree remedies these structural constitutional violations.[2]

## I.    PLAINTIFFS HAVE VIGOROUSLY LITIGATED THE CONFLICT-OF-INTEREST CLAIMS.

Plaintiffs initially brought six claims against the City and the District Attorney Defendants seeking mainly injunctive and declaratory relief on behalf of a Rule 23(b)(2) class. (*See* ECF Nos. 1 and 40 (adding Nassir Geiger as a named plaintiff).) As part of the injunctive relief, Plaintiffs requested the "return [of] all property seized from the Named Plaintiffs and class members." (1st Am. Compl., ECF No. 40, Req. Relief ¶ 6(b).)

---

[2] The litigation history of Count 6 is also detailed in the contemporaneously filed Plaintiffs' Uncontested Motion and Memorandum in Support of Preliminary Approval of Class Certification and Consent Decree on the Courtroom Claims.

The first two claims were resolved after the Court approved a classwide settlement agreement on November 4, 2015.  (*See* Order, ECF No. 104.)  In granting final approval to the November 2015 settlement and certifying two settlement classes,[3] the Court found that the Named Plaintiffs and Plaintiffs' counsel would adequately represent the interests of the classes. (*Id*. at 2-3 & n.1.)  The Court therefore appointed the Named Plaintiffs as class representatives and the Institute for Justice and David Rudovsky as Plaintiffs' counsel.  (*Id*. at 3.)

On September 15, 2016, Plaintiffs added the FJD Defendants and a seventh claim against all Defendants.  (2d Am. Compl., ECF No. 157.)  The amended complaint also clarified the requested injunctive relief to include "restitution in the form of return of all property seized from the Named Plaintiffs and class members."  (*Id.*, Req. Relief ¶ 6(b).)  The same day, the Court bifurcated this lawsuit into the Courtroom Claims asserted against all Defendants and Count 5 asserted against the City and District Attorney Defendants.  (Order, ECF No. 155.)  Over the past four years of litigation, the Court has made two key rulings on Counts 5 and 6 and there has been extensive factual development of these claims.

## A.    The Court Has Made Key Rulings on the Conflict-of-Interest Claims.

At the pleading stage, this Court concluded that Counts 5 and 6 stated viable grounds for relief.  (*See* Mem., ECF No. 66 at 33 ("Overall, viewing the facts in the light most favorable to the nonmoving Plaintiffs, the Court concludes that each of the six counts of Plaintiffs' Amended

---

[3]  The Court certified the following classes:

For purposes of the First Claim for Relief in the Amended Complaint, ECF No. 40, the settlement class will consist of all persons holding legal title to or otherwise having a legal interest in real property against which an *ex parte* "seize and seal" order is presently in effect, or will in the future be in effect.

For purposes of the Second Claim for Relief in the Amended Complaint, ECF No. 40, the settlement class will consist of all persons holding legal title to or otherwise having a legal interest in real or personal property against which a civil-forfeiture petition has been filed, or will in the future be filed, in the Court of Common Pleas of Philadelphia County and who entered into an unsealing agreement or a settlement agreement.

(ECF No. 104 at 2-3.)

Complaint have sufficiently stated claims for relief under Rule 12(b)(6).")  Specifically, the Court held that "[c]oupled with Defendants' alleged direct pecuniary interest in the outcome of the forfeiture proceedings, these allegations state a claim based on a violation of the due-process guarantee of an impartial neutral arbiter."  (*Id.* at 32 (footnote omitted) (citing *Tumey v. Ohio*, 273 U.S. 510, 531 (1927) (finding a due-process violation where a village mayor's compensation was derived, in part, from fines he imposed)).)

Additionally, after conducting a "rigorous analysis" that considered voluminous briefing and a hearing, the Court certified the following class under Rule 23(b)(2) on Count 5:

> All persons who hold legal title to or otherwise have a legal interest in property against which a civil-forfeiture petition was filed pursuant to the Controlled Substances Forfeiture Act, 42 Pa. Cons. Stat. Ann. §§ 6801 and 6802 by the Philadelphia District Attorney's Office on or after August 11, 2012, or will in the future be filed, in the Court of Common Pleas of Philadelphia County.

(Order, ECF No. 188 ¶ 3; *see* Mem., ECF No. 187 at 13 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).)

The Court's ruling limited Plaintiffs' proposed class definition in two ways.  First, the Court narrowed the class to only those whose property was subject to drug forfeitures (or forfeitures conducted under the Controlled Substances Forfeiture Act).  (ECF No. 187 at 21.)  This issue was not raised by the Defendants, briefed by the parties, or presented at the class-certification hearing.  Plaintiffs moved to reconsider this limitation as it was premised on a factual and legal misunderstanding.  (*See* Mem., ECF No. 191-1 at 2-3.)  Second, the Court declined to certify a class under Rule 23(b)(2) with respect to Plaintiffs' request for restitution.  (ECF. No. 187 at 46.)  The Court left the door open for Plaintiffs to seek a restitutionary class under Rule 23(b)(3).  (*Id.* at 47 n.14.)

The Court also appointed the Named Plaintiffs as class representatives and

Plaintiffs' counsel as class counsel.  (ECF No. 188 ¶¶ 4-5.)

      **B.**    **Plaintiffs Have Conducted Extensive Factual Investigation of the Conflict-of-Interest Claims.**

There has been extensive factual development of Counts 5 and 6 through pre-litigation investigation, formal discovery, and information exchanged during settlement negotiations.

First, before filing suit, Plaintiffs' counsel analyzed more than ten years of forfeiture data obtained from the Pennsylvania Office of the Attorney General regarding the District Attorney Defendants' use of forfeiture proceeds.  (2d Am. Compl., ECF No. 157 ¶ 57; 3d Am. Compl. ¶ 57.)  Additionally, Plaintiffs' counsel reviewed more than a hundred forfeiture-related court records and interviewed scores of property owners forced to appear in Courtroom 478 for so-called "hearings" run by the District Attorney Defendants.  (*See* Decl. Darpana M. Sheth Supp. Mot. Prelim. Inj., ECF No. 22, ¶¶ 2–3; Decl. Scott G. Bullock Supp. Opp'n Defs.' Mot. Dismiss, ECF No. 55-2, ¶ 4, Ex. A; Decl. Briana Elzey Opp'n Defs.' Mot. Dismiss, ECF No. 55-7, ¶¶ 3–5.)  Plaintiffs also hired a contract attorney to monitor proceedings in Courtroom 478 which, at that time, were not transcribed or recorded in any way.  (*See, e.g.*, Elzey Decl.)

Second, there has been substantial discovery on Count 5.  The City and District Attorney Defendants produced more than 70,000 pages of documents and responded to 30 interrogatories and 40 requests for admission.  (Pls.' Mot. Amend Scheduling Order 5th Claim Relief, ECF No. 151, ¶ 3.)  Plaintiffs also deposed five witnesses, including the Chief Financial Officer of the District Attorney's Office.[4]  This discovery confirmed the following key allegations related to Count 5.

---

[4] (*See* Decl. Robert Frommer Supp. Pls.' Mot. Amend Scheduling Order 5th Claim Relief, ECF No. 151-1, Ex. 3, ECF No. 151-4 (deposition-transcript excerpts for Lieutenant James Ferguson); Decl. Darpana M. Sheth Supp. Pls.' Positions Joint Status & R. 26(f) Report, ECF No. 193, Ex. 5, ECF No. 193-5 (deposition-transcript excerpts for Fiscal Officer James Scott Cadden); *id.*, Ex. 6, ECF No. 193-6 (deposition-transcript excerpts for Chief Financial Officer Dorean Rooney); Decl. Robert A. Peccola

- The District Attorney's Office uses forfeiture funds to pay salaries of prosecutors and other employees of the Public Nuisance Task Force, the unit responsible for forfeitures.[5]

- From 2002 to 2014, the District Attorney's Office spent over $28.5 million of its forfeiture revenue on salaries.[6]

- By contrast, the District Attorneys' Office spent none of its forfeiture revenue on community-based drug and crime-fighting programs, despite the professed goal of helping communities combat drugs.[7]

- The City Defendants use forfeiture funds to pay overtime for employees of the Philadelphia Police Department;[8] and

- The City Defendants used forfeiture funds to pay for the construction of a $2 million dollar building for the Philadelphia Police Department.[9]

Third, the Parties exchanged information on the District Attorney's Office use of all forfeiture (including non-drug forfeitures) this past summer during negotiations conducted under the Court-appointed facilitator.  (Order, ECF. No. 245).  The Parties participated in extensive discussion over email and telephone, engaged in informal discovery, and participated in an all-day mediation on July 9, 2017, ultimately resulting in a consent decree, the terms of which are detailed below.

---

Supp. Pls.' Mot. Compel Disc. Resps. Count 5 From City Defs., ECF No. 213-2, Ex. 9, ECF No. 213-11 (deposition-transcript excerpts for Captain Raymond Convery).)  Plaintiffs also deposed Philadelphia detective Larry Fong.

[5] Decl. Robert A. Peccola Supp. Pls.' Reply Mem. Supp. Pls.' Mot. Certify Rule 23(b)(2) Class 5th Claim Relief, ECF No. 141-1, Ex. 2, Dist. Att'y Defs.' Resps. Req. Admis. Nos. 24–26; id. Ex. 3, Dist. Att'y Defs.' Resps. Pls.' 1st Interrogs. No. 15.

[6] 2d Am. Compl. ¶¶ 62-64 (citing Attorney General records); 3d Am. Compl. ¶¶ 62-64 (same).

[7] 2d Am. Compl. ¶ 66 (citing Attorney General records); 3d Am. Compl. ¶ 66 (same).

[8] See Decl. Robert A. Peccola Supp. Pls.' Mot. Compel Disc. Resps. City Defs. ECF No. 213-2, at ¶ 3; id., Ex. 2, ECF No. 213-4 (City Defs.' Resps. Pls.' Interrogs. No. 9).

[9] See Decl. Robert A. Peccola Supp. Pls.' Mot. Compel Disc. Resps. Dist. Att'y Defs., ECF No. 212-2, at ¶ 25; id., Ex. 20, ECF No. 212-22, at 2 (excerpt of Excel file containing expenses from the State Forfeiture Fund showing a 2013 expense entry for $2,000,000.00 identified as "a one time charge paid to the Police for their new building in the Northeast.").

**II.    THE PROPOSED CONSENT DECREE REMEDIES THE UNCONSTITUTIONAL CONFLICTS OF INTERESTS AND COMPENSATES PLAINTIFFS FOR VIOLATIONS OF THEIR RIGHTS.**

As set forth in Plaintiffs' Third Amended Complaint, Plaintiffs seek to certify the

following Restitutionary Class under Rule 23(b)(3) for Counts 5 and 6:

> All persons who held or hold legal title to, or otherwise had or have a legal interest in property against which a Statutory or Common Law civil-forfeiture petition (i) was pending in the Court of Common Pleas of Philadelphia County as of August 11, 2012; or (ii) was filed in the Court of Common Pleas of Philadelphia County on or after August 11, 2012 until the date the Court grants preliminary approval.

(3d Am. Compl. ¶ 285.)

The proposed Consent Decree sets forth the terms by which the parties resolve Counts 5

and 6.  In return for a release of their claims, the proposed Consent Decree offers two substantial

benefits upon the proposed Restitutionary Class:  (1) complete injunctive relief remedying the

City and District Attorney Defendants' direct financial interest in the outcome of forfeiture

proceedings;[10] and (2) a Restitutionary Fund of $3 million.  Subject to approval of this Court, the

proposed Consent Decree also provides for a $2.63 million award of attorneys' fees that covers

all claims, including the Courtroom Claims resolved by the second proposed consent decree.

First, the proposed Consent Decree on the conflict-of-interest claims will stop the direct

financial incentive fueling Philadelphia's aggressive use of forfeiture and will provide Plaintiffs

with the complete injunctive relief they are seeking.  If approved, the proposed Consent Decree

permanently enjoins the City Defendants and District Attorney Defendants "from using revenue

derived from any Statutory, Common Law, civil or criminal forfeiture to fund either (i) the

District Attorney's Office or the Philadelphia Police Department or (ii) any other law-

enforcement purpose."  (Proposed Consent Decree Pls.' 5th & 6th Claims for Relief (attached

---

[10] The proposed consent decree on the Courtroom Claims remedies the other procedural violations for how forfeiture proceedings are conducted, including permanently enjoining the District Attorney Defendants from controlling forfeiture or related proceedings.

hereto as Exhibit A) ¶ 37.)  "Law-enforcement purpose" includes any kind of compensation, including overtime and "stress pay" as well as "non-payroll expenses" used to pay for equipment, vehicles, real estate, facilities, supplies, training, travel, and capital improvements.[11] (*Id.* ¶ 38.)  Notably, law-enforcement purposes do not include community-based drug prevention and treatment programs external to the District Attorney's Office and the Philadelphia Police Department.  (*Id.* ¶ 39.)  Thus, the proposed Consent Decree would remove the direct financial incentive while allowing forfeiture funds to be used to help communities fight the scourge of illegal drugs.

Second, the proposed Consent Decree compensates the Named Plaintiffs and class members by creating a $3 million Restitutionary Fund to be administered by a third-party claims administrator.  (*Id.* ¶¶ 29, 47.)  After paying the costs of administration, the Restitutionary Fund will be distributed in the following order.  First, a presumptive $90 will be paid to each member of the proposed Restitutionary Class.[12]  (*Id.* ¶ 47(a).)  Second, each Court-appointed class representative will receive an incentive award of $2,500 to recognize their time and resources to the case and the work they performed on behalf of the class.  (*Id.* ¶ 47(b).)  Third, members of the proposed Restitutionary Class, who were neither convicted nor received a diversionary disposition in a criminal case associated with their forfeiture,[13] will receive up to 100 percent of the value of their forfeited property, or if the preceding payments would deplete the Restitutionary Fund, then a *pro rata* percentage of the value of their forfeited property that draws

---

[11] The proposed Consent Decree includes an exemption for specified expenditures of the District Attorney's Office provided that those expenditures "do not exceed, in the aggregate, 0.25% of the total expenditures of the District Attorney's office for the Fiscal Year in which they are made."  (Ex. A ¶ 40.)

[12] The proposed Consent Decree provides that in the best interests of the class, the Parties may alter this presumptive $90 distribution after receiving the total number of claims so that this distribution does not deplete the Restitutionary Fund.  (*Id.* ¶ 47(a).)

[13] As defined in the proposed Consent Decree, a diversionary disposition is a type of pre-trial program that allows criminal defendants to resolve the charges against them with a deferred conviction or no conviction. (*Id.* ¶ 20.)

the Restitutionary Fund down to zero dollars.  (*Id*. ¶ 47(c).)  Fourth, if there are remaining funds after the preceding distributions, then members of the proposed Restitutionary Class who received a diversionary disposition in the criminal case associated with their forfeiture will receive 75 percent of the value of their forfeited property, or if these payments would deplete the Restitutionary Fund, then a *pro rata* percentage of their forfeited property that draws the Restitutionary Fund down to zero dollars.  (*Id*. ¶ 47(d).)  After 90 days, 75 percent of any balance (up to $375,000) will be returned to the City Defendants.  (*Id*. ¶ 47(e).)

All remaining funds that are unclaimed will constitute a *cy pres* award and be donated to nonprofit or community-based public-service organizations mutually selected by District Attorney Krasner and Plaintiffs' counsel.  (*Id*. ¶ 62.)  These organizations will be either located in or providing services in those Philadelphia communities most heavily affected by forfeiture practices.  (*Id*. ¶ 63.)  The Parties will also attempt to solicit the support of third-parties to match the amount of unclaimed funds designated for donation.  (*Id*. ¶ 64.)

Finally, the proposed Consent Decree provides that subject to Court approval, Defendants will pay $2.63 million in attorneys' fees to cover the entire litigation.  (*Id*. ¶ 72.)  For over four years, Plaintiffs' counsel have worked without receiving any compensation for their services or reimbursements of their substantial litigation expenses.  Under 42 U.S.C. § 1988, Plaintiffs' counsel are entitled to reasonable attorneys' fees.  If approved by the Court, this fee award does not come out of the Restitutionary Fund but is paid to Plaintiffs' counsel by Defendants.

## III.  THE PROPOSED CONSENT DECREE CONTAINS AN EFFECTIVE NOTICE PLAN AND CLAIMS PROCESS.

The proposed Consent Decree sets forth an effective plan to provide notice to potential members of the proposed Restitutionary Class that complies with Federal Rule of Civil Procedure 23 and allows for an efficient claims process.  The proposed class notice, claim form,

and objection and opt-out instructions and form are attached as Exhibits B, C, and D to this motion.

The proposed Notice Plan provides for individualized notice as well as notice published online.  Individualized notice will be mailed first-class to all potential members of the proposed Restitutionary Class within 14 days of the Court granting preliminary approval.  (*Id*. ¶ 53)  The proposed Consent Decree provides that the Parties will "ensure that the measures taken to search for and locate addresses for potential class members and mail the Class Notice are designed to effectively reach as many potential members of the Restitutionary Class as possible."  (*Id*. ¶ 54.) The proposed Notice Plan uses the District Attorney's Office's forfeiture records as a starting point to locate addresses for potential class members.  (*Id*. ¶ 56.)  Then, the City Defendants will make "reasonable efforts to provide . . . tax, water, utility, Philadelphia Parking Authority, and other records containing addresses" of potential class members to the Claims Administrator who will cross-check those records to obtain the current addresses of potential class members.  (*Id*. ¶ 55.) The City Defendants will bear the cost of the initial printing and mailing of the court-approved Class Notice.  (*Id*. ¶ 57.)  The Claims Administrator may then use "skip-tracing" or other methods, in consultation with Plaintiffs' counsel, to provide individual notice to members whose Class Notice is returned.[14]

Additionally, the Notice Plan provides for online notice.  It requires the Claims Administrator to establish a website which will post the class notice, publish other pertinent documents and information, and provide for electronic submission of the claim form.  (*Id*. ¶ 58.) The Parties will also post the class notice and link to the page created by the Claims Administrator on their respective websites as well as post monthly on their social media

---

[14]  To the extent the City's reasonable search for records produces email addresses for class members, Plaintiffs' counsel will email class members to provide additional individualized notice.

accounts.  (*Id*. ¶ 59.)  Depending on the results of these efforts, Plaintiffs' counsel may take additional measures, at their own expense, to publicize the proposed Consent Decree and how potential class members can file a claim.  (*Id*. ¶ 60.)[15]

The Plaintiffs will be hiring a Claims Administrator to process all claims.  All members of the proposed Restitutionary Class have the right to either object to the proposed Consent Decree or exclude themselves and not be bound by the proposed Consent Decree.  (*Id.* ¶ 66.) The deadline for submitting exclusions or objections will be the same date to be set forth in this Court's order granting preliminary approval.  (*Id*. ¶ 67.)  Within 10 days of the deadline for submitting exclusions or objections, the Claims Administrator will provide a list to the Parties of all timely and valid exclusions and objections.  (*Id*.)

## ARGUMENT

Because the proposed Consent Decree offers classwide relief, it must be approved by this Court.  Fed. R. Civ. P. 23(e).[16]  Before granting final approval to an agreement that would bind class members, district courts must preliminarily approve it by "direct[ing] notice in a reasonable manner to all class members who would be bound[.]"  *Id*. 23(e)(1)(B).  The decision of whether to do so is left to the sound discretion of this Court.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004) ("We review the decision of the District Court to certify the class and approve the settlement under an abuse of discretion standard.").

Two requirements must be met to garner preliminary approval.  First, the Court must "likely be able to" certify the proposed Restitutionary Class "for purposes of judgment."  Fed. R.

---

[15]  As required by the Class Action Fairness Act, 28 U.S.C. § 1715, the City Defendants and District Attorney Defendants will also serve notice upon the Attorney General of the United States and the appropriate State official.  (Ex. A ¶ 51.)

[16] When citing to the Federal Rules of Civil Procedure, Plaintiffs are referring to the version effective as of December 1, 2018.

Civ. P. 23(e)(1)(B). Second, the Court must "likely be able to" grant the proposed Consent Decree final approval under Rule 23(e)(2). *Id.* To earn final approval under this rule, a classwide agreement must be "fair, reasonable, and adequate." *Id.* 23(e)(2).

As detailed below, the proposed Consent Decree satisfies both requirements. The proposed Restitutionary Class meets all applicable requirements for class certification under Rule 23(a) and (b). Additionally, the proposed Consent Decree is fair, reasonable, and adequate. In addition to securing all the injunctive relief Plaintiffs sought through the conflict-of-interest claims, the proposed Consent Decree affords substantial monetary relief to Plaintiffs (including class members) which would not have been guaranteed through continued litigation. Thus, the Court will likely be able to grant the proposed Consent Decree final approval.

## I.   THE PROPOSED RESTITUTIONARY CLASS MEETS RULE 23'S CERTIFICATION REQUIREMENTS.

This Court will likely be able to certify the proposed Restitutionary Class because it satisfies the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3).

### A.   The Proposed Restitutionary Class Satisfies the Prerequisites of Rule 23(a).

The proposed Restitutionary Class satisfies Rule 23(a)'s four prerequisites under which Plaintiffs must demonstrate that:

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).[17]  This Court has twice concluded that similar class definitions in this litigation satisfied the prerequisites of Rule 23(a).  (*See* Order, ECF No. 104; Order, ECF No. 188).

### 1.    The Numerosity Prong Is Met.

First, the proposed Restitutionary Class meets the numerosity requirement.  Numerosity is generally satisfied if the "potential number of plaintiffs exceeds 40."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here the proposed Restitutionary Class consists of thousands of individuals who have a legal interest in property against which a forfeiture petition was filed.  According to Assistant District Attorney J. Andrew Jenemann, the chief of the unit responsible for filing civil-forfeiture actions, the District Attorney's Office filed more than 20,000 civil-forfeiture petitions from August 11, 2012 until approximately July 2016.   (*See* Decl. Ass't Dist. Att'y J. Andrew Jenemann, ECF No. 137-1, ¶ 7; *see also* Elzey Decl., ECF No. 55-7, ¶ 6 (counting 55 listings in Courtroom 478 per day between November 2014 and March 2015).)  Thus, as this Court has previously found, numerosity is easily satisfied.

### 2.    The Commonality Prong Is Met.

Second, the proposed Restitutionary Class meets the commonality prong.  Commonality requires that Counts 5 and 6 each present "at least one question of fact or law in common" to the class, *Warfarin*, 391 F.3d at 527-28, that "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[17] Some courts have held that—as a preliminary requirement for certification—a settlement class must be "ascertainable."  *See, e.g.*, *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162 n.5 (3d Cir. 2015).  The proposed Restitutionary Class is readily ascertainable by referencing Defendants' forfeiture petitions, court dockets, corresponding notices to appear in Courtroom 478, and property receipts.  *See Montgomery Cty. ex rel. Becker v. Merscorp, Inc.*, 298 F.R.D. 202, 209-10 (E.D. Pa. 2014) (finding ascertainability "easily" met when the identities of each class member were a matter of public record).

As this Court previously held, Count 5 presents the following common legal and factual questions "capable of classwide resolution":

    (1)     how the proceeds of civil-forfeiture actions are distributed;

    (2)     whether the manner in which the proceeds are distributed creates a conflict of interest;

    (3)     whether that conflict of interest deprives litigants in civil-forfeiture proceedings of due process of law; and

    (4)     whether an order enjoining the City and District Attorney Defendants' retention of forfeiture proceeds and declaring the City and District Attorney Defendants' practices unconstitutional would provide relief for the due-process violation.

(ECF No. 187 at 16-17.)  Similarly, Count 6 presents the common questions of whether prosecutors acted essentially like judges in running Courtroom 478 and whether that violated Plaintiffs' due-process rights to an impartial and neutral arbiter.  (2d Am. Compl., ECF No. 157, ¶¶ 286, 286(d); 3d Am. Compl. ¶ 288, 288(d).)

### 3. *The Typicality Prong Is Met.*

Third, the Named Plaintiffs' claims under Counts 5 and 6 are typical of those of the rest of the proposed Restitutionary Class.  Where, as here, claims of the named plaintiffs arise from the same wrongful conduct on the part of the defendant, the typicality prong is satisfied.  *See, In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532.  "'Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct."  *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1988).

Here, each of the Named Plaintiffs was subject to the same policies and practices challenged in Counts 5 and 6.[18]  Regardless of the basis of the forfeiture (whether it was the Controlled Substances Forfeiture Act, some other statute, or purported authority under common law), each member of the proposed class suffered the same law-enforcement policy of using forfeiture proceeds to raise revenue challenged by Count 5.[19]  And each member of the proposed class suffered same policy of being hauled into the sham "Courtroom 478" challenged by Count 6.  And regardless of the basis of the forfeiture (whether it was the Controlled Substances Forfeiture Act, some other statute, or purported authority under common law), each of the Named Plaintiffs' claims rests on the same legal theories, *see supra* at 1–2, as unnamed class members' claims do.  *See Warfarin*, 391 F.3d at 531; *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 58 (3d Cir. 1994).

In certifying Count 5 under Rule 23(b)(2), the Court limited the class to those whose property were subject to drug forfeitures.  (Order, ECF No. 188, ¶ 3.)  Analyzing the typicality prong, the Court reasoned:

> [P]utative class members whose property was subject to civil forfeiture proceedings based on common law forfeiture may have additional arguments regarding the legality of those forfeiture proceedings that Plaintiffs, and other

---

[18]  At the time of the seizure or restraint of the Named Plaintiffs' property, the City and District Attorney Defendants had a direct financial stake in the outcome of forfeiture proceedings.  Defendants also directed each of the Named Plaintiffs to appear in Courtroom 478, where they had no meaningful opportunity to contest Defendants' seizure of their property.  (Decl. Markela Sourovelis Supp. Mot. Prelim. Inj., ECF No. 23, ¶¶ 11-12; Decl. Doila Welch Supp. Mot. Prelim. Inj., ECF No. 35-3, ¶¶ 13-20; Decl. Ass't Dist. Att'y Steven Agami, ECF No. 28-3, ¶¶ 6-7, 9 (regarding Plaintiff Hernandez's appearance in Courtroom 478); Decl. Ass't Dist. Att'y Jennifer Kralle, ECF No. 38-4, ¶¶ 4-5 (regarding Plaintiff Geiger's appearance in Courtroom 478).)

[19]  (*See* Decl. of Robert A. Peccola Supp. Mot. Partial Reconsideration, ECF No. 191-2, Ex. 1, ECF No. 191-3, Rooney Dep. Tr. at 74:19-75:8 (District Attorney's Office Chief Financial Officer testifying that the "Common Law Fund" contains forfeiture proceeds for "non-drug related cases, whether they be prostitution, gambling" and that these funds are spent on law-enforcement purposes); Notice Suppl. Authority, ECF No. 196, 1 n.2 (listing non-CSFA bases for forfeiture); *id*. at 3 ("Plaintiffs seek relief regarding challenged policies which apply to all civil forfeitures, irrespective of their statutory (or non-statutory) bases.").)

putative class members whose property was subject to forfeiture under the CSFA,
do not have.

(Mem., ECF No. 187 at 20–21.)  But because class certification is claim-specific, the fact that

class members may have other legal bases to challenge the forfeiture of their property is not

relevant for purposes of typicality (or adequacy).  *First State Orthopedics v. Concentra, Inc.*, 534

F. Supp. 2d 500, 513 (E.D. Pa. 2007) ("The fact that some members of the class may have

additional state or federal law claims, not asserted by the named plaintiffs, does not preclude a

class from being certified.")  Indeed, at the time the Court properly certified the settlement

classes for Plaintiffs' First and Second claims, class members had at least five other legal claims

and attendant legal arguments to challenge the legality of those forfeitures.

### 4.    *The Adequacy Prong Is Met.*

Fourth, the adequacy prong is met.  The Named Plaintiffs have no conflicts of interest

with unnamed class members and Plaintiffs' counsel are well qualified to represent the proposed

Restitutionary Class.  *See Warfarin*, 391 F.3d at 532; *Prudential*, 148 F.3d at 313.  Indeed, this

Court has already twice appointed each of the Named Plaintiffs as class representatives and

Plaintiffs' counsel as class counsel, recognizing that they will adequately protect members of

similar classes certified in this litigation.  (*See* Order, ECF No. 104 at 3, n.2 ("[IJ] is a

nationwide, public interest law firm with substantial experience in constitutional challenges of

this kind [and] has substantial knowledge of the applicable law given its substantial experience

with civil forfeiture cases."); Order, ECF No. 188, ¶ 5.)  Accordingly, the proposed

Restitutionary Class satisfies the prerequisites of Rule 23(a).

### B.    **The Proposed Restitutionary Class Satisfies Rule 23(b)(3).**

The proposed Restitutionary Class also satisfies the requirements of Rule 23(b)(3)

because (1) common questions "predominate over any questions affecting only individual

members (the predominance requirement); and (2) class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy (the superiority requirement)." *Warfarin*, 391 F.3d at 527; *see also Prudential*, 148 F.3d at 314-15.

Here, common issues predominate the proposed Restitutionary Class's claims on Counts 5 and 6. Predominance focuses on the "legal or factual questions that qualify each member's case as a genuine controversy," *Prudential*, 148 F.3d at 314, and it is found where proof of liability depends on "evidence which is common to the class members," usually because the class claims focus on defendants' common course of conduct vis-a-vis the class. *Warfarin*, 391 F.3d at 528; *see also Prudential*, 148 F.3d at 314 (finding predominance for settlement class where defendant insurance company engaged in "a common scheme to defraud millions of life insurance policy holders"). Among other things, the City and District Attorney Defendants' maintained a generally applicable policy of funding their own activities with forfeiture revenue and having prosecutors run forfeiture proceedings in Courtroom 478. The question of liability thus relies on evidence that is common to all class members, like whether there was a "common course of conduct" regarding the retention of forfeiture proceeds and prosecutorial control of forfeiture proceedings. *See Prudential*, 148 F.3d at 314; *cf. Warfarin*, 391 F.3d at 528-29 (finding predominance satisfied for nationwide class alleging fraud because defendant "conducted a nationwide campaign of misrepresentation and deception").

Similarly, the superiority requirement is also satisfied. In the context of a classwide settlement, courts consider three factors: "(a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum."

17

Fed. R. Civ. P. 23(b)(3).[20]  Here, individual class members of the proposed Restitutionary Class

have little interest in controlling "the prosecution or defense of separate actions" because most

class members' claims are "very small…in relation to the cost of prosecuting a lawsuit."

*Warfarin*, 391 F.3d at 534.  For example, Defendants seized and forfeited amounts of currency

so small as to render individual litigation impracticable.  For example, in a random sample of

more than a hundred currency-forfeiture cases from 2011 to 2012, the median amount of cash

subject to forfeiture was only $178 and forfeiture records show sums as little as $9.00 being

ordered forfeited.  (2d Am. Compl., ECF No. 157, ¶¶ 75–76; 3d Am. Compl. ¶¶ 75–76.)

Second, no other lawsuits have been filed against Defendants challenging the constitutionality of

their practices.  Third, because most of the class members are concentrated in Philadelphia, a

class action on their behalf is appropriate in the Eastern District of Pennsylvania.

Therefore, the proposed Restitutionary Class complies with Rule 23(a) and Rule 23(b)(3).

## II.    THE PROPOSED CONSENT DECREE IS FAIR, REASONABLE, AND ADEQUATE.

The proposed Consent Decree also satisfies the second requirement for preliminary

approval because it is "fair, reasonable, and adequate."  It meets this standard under the factors

announced by the Third Circuit in *Girsh* and subsequently in *In re Prudential Ins. Co. America*

*Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).  The proposed Consent

Decree also meets this standard under the factors set forth in amended Rule 23.  Moreover, the c*y*

*pres* provision contributes to the overall fairness of the proposed Consent Decree.  Finally, the

proposed Consent Decree's notice provision affords the best notice practicable.

---

[20]  Rule 23(b)(3) also lists a fourth factor – "the likely difficulties in managing a class action."
However, this factor does not need to be analyzed for settlement classes because the case is not tried. *In
re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191, 200 (E.D. Pa. 2014) (quoting *Amchem v.
Windsor*, 521 U.S. 591, 620 (1997)).

A.      **The Proposed Consent Decree Satisfies the *Girsh* Factors.**

In *Girsh v. Jepson*, the Third Circuit directed district courts to consider the following

factors in determining whether a class-action settlement is "fair, reasonable, and adequate" under

Rule 23(e):

(1)      the complexity, expense and likely duration of the litigation;

(2)      the reaction of the class to the settlement;

(3)      the stage of the proceedings and the amount of discovery completed;

(4)      the risks of establishing liability;

(5)      the risks of establishing damages;

(6)      the risks of maintaining the class action through the trial;

(7)      the ability of the defendants to withstand a greater judgment;

(8)      the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)      the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d. Cir. 1975); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir.

2011) (utilizing the same nine factors for review).  These factors are not dispositive—courts

must look at the totality of circumstances.  *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab.*

*Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997).  Each of the relevant factors favors approval or is, at

worst, neutral.

1.      ***The Complexity, Expense, and Likely Duration of Ongoing Litigation of the Conflict-of-Interest Claims Favor Approval.***

The first *Girsh* factor, considering the complexity, expense, and likely duration of

ongoing litigation, favors approval.  This factor is "intended to capture 'the probable costs, in

both time and money, of continued litigation.'"  *In re Gen. Motors Corp. Pick-Up Truck Fuel*

*Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bryan v. Pittsburgh Plate*

*Glass Co.* (*PPG Indus., Inc.*), 494 F.2d 799, 801 (3d Cir. 1974)).

19

Continued litigation of Counts 5 and 6 would entail significant time and expense, as it would require additional discovery (particularly in light of Plaintiffs' outstanding motions to compel and, at minimum, two depositions under Rule 30(b)(6)), additional motions (on class certification, discovery, and summary judgment), and potentially trial. *See, e.g.*, *Benjamin v. Dep't of Pub. Welfare of Pa.*, No. 1:09-CV-1182, 2014 WL 4793736, at *5 (M.D. Pa. Sept. 25, 2014) ("As settlement has eliminated potential delay, mitigated expenses, and will provide immediate benefit to the class, this factor weighs in favor of approval."). Moreover, continued litigation would risk forgoing the substantial relief obtained through the proposed Consent Decree. *See, e.g.*, *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D Pa. 2009). Accordingly, the first *Girsh* factor favors approving the proposed Consent Decree.

> **2.      *Considering the Class Members' Reaction to the Proposed Consent Decree Would Be Premature.***

The second *Girsh* factor considers class members' reaction to a proposed settlement. It is premature to apply this factor to the proposed Consent Decree until the Court directs notice of the Decree to proposed class members. Accordingly, this factor does not weigh against approval. *See In re NFL Players' Concussion Injury Litig.*, 301 F.R.D. 191 (E.D. Pa. 2014) (preliminarily approving settlement without considering the second *Girsh* factor).

> **3.      *Counsel Had an Adequate Appreciation of the Conflict-of-Interest Claims Before Resolving Them.***

The third *Girsh* factor considers the stage of the litigation and measures whether counsel has an "adequate appreciation of the merits of the case before negotiating" settlement. *Gen. Motors*, 55 F.3d at 813. This factor favors approval because Counts 5 and 6 were subject to extensive motion practice and substantial discovery.

Extensive motion practice can adequately inform counsel of a case's merits.  *See, e.g.*, *Gates v. Rohm & Haas Co.*, Civ. A. No. 06-1743, 2008 WL 4078456, at *5 (E.D. Pa. Aug. 22, 2008) (finding that the third *Girsh* factor favored settlement approval—even though "[p]rocedurally, the case [wa]s still at an early stage"—given "significant motion practice"); *see also McAlarnen v. Swift Transp. Co.*, Civ. A. No. 09-1737, 2010 WL 365823, at *7-8 (E.D. Pa. Jan. 29, 2010) (approving a settlement in a case where "little discovery ha[d] occurred" where "[s]ubstantial briefing and research on the issues ha[d] taken place").  Like the parties in *Gates* and *McAlarnen*, the parties engaged in extensive motion practice on the conflict-of-interest claims, exchanging dozens of briefs on class certification, several motions to dismiss, and motions to compel requested documents.  Consequently, the parties conducted substantial factual and legal research on Counts 5 and 6.

Additionally, extensive factual investigation, like "independent discovery" or "interviewing witnesses" can also inform counsel of a case's merits.  *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 270 (E.D. Pa. 2012).  Here, Plaintiffs' counsel engaged in extensive factual investigation by analyzing more than ten years' worth of forfeiture data from Attorney General reports on the Philadelphia's use of forfeiture, reviewing more than a hundred forfeiture-related court records, interviewing score of property owners, and monitoring proceedings in Courtroom 478.  Through formal discovery, Plaintiffs' counsel also reviewed more than 75,000 pages of documents related to these claims as well as responses to interrogatories and requests for admission, thereby developing an adequate appreciation of the merits of the conflict-of-interest claims.

Thus, the third *Girsh* factor favors approval.

#### 4.      *The Risks of Establishing Liability Favor Approval.*

The fourth *Girsh* factor considers the risks of establishing liability.  Even where litigants are certain to establish liability, they satisfy the fourth *Girsh* factor if they obtain settlement terms that are substantially similar to their requested injunctive relief.  *See, e.g., Kaplan v. Chertoff,* Civ. A. No. 06-5304, 2008 WL 200108, at *11 (E.D. Pa. Jan. 24, 2008) (approving a settlement because "there [we]re risks inherent in proceeding to trial and, even if plaintiffs [had] succeed[ed] at trial, they would [have] likely be[en] entitled only to injunctive relief that would have similar results to the proposed settlement"); *Harris v. Reeves*, 761 F. Supp. 382, 401 (E.D. Pa. 1991) (approving a settlement where "there [wa]s no assurance that the relief [after trial] would [have] be[en] greater or different than the relief provided" in the proposed agreement).

Here, the proposed Consent Decree provides Plaintiffs with the full injunctive relief they would have sought through continued litigation—a permanent injunction against the City Defendants and the District Attorney Defendants from using revenue derived from forfeiture for compensation or other law-enforcement expenses.  (Exhibit A, ¶¶ 37-38.)

Thus, the fourth *Girsh* factor supports approval.

#### 5.      *The Risks of Establishing Damages Favor Approval.*

The fifth *Girsh* factor balances the "potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d. Cir. 2016) [hereinafter *National Football II*] (quoting *Prudential,* 148 F.3d at 319).  Constitutional litigation is a "complex and… risky" endeavor. *Boone*, 668 F. Supp. 2d at 712.  This is especially true of determining damages from a systemic due-process violation.  *See generally*, James M. Burnham, *Comment: Preserving Procedure: Requiring the Government to Disprove Causation in Procedural Due Process*

*Claims*, 76 U. Chi. L. Rev. 441 (2009) (detailing split in authority over appropriate burden of proof for damages claims in procedural due-process cases).

Given the uncertainty in proving quantum of damages, the proposed Consent Decree reflects a proper balance of the potential damage award after trial against the agreed settlement. Although the value of seized and forfeited property is easily calculated through the District Attorney's Office forfeiture records, full restitution of Plaintiffs' property would not be guaranteed at trial.

Accordingly, the fifth *Girsh* factor favors approval.

### 6.      The Risks of Maintaining Plaintiffs' Class Action Are Neutral.

The sixth *Girsh* factor considers the risks of maintaining a class action through trial.  This factor is neutral because "[c]lass certification is always conditional and may be reconsidered." *Saunders v. Berks Credit & Collections, Inc.*, No. 00-3477, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002).

Here, the Court has already certified a Rule 23(b)(2) class on Count 5.  And if litigation continued, Plaintiffs would move to certify the proposed Restitutionary Class under Rule 23(b)(3), which must meet the same requirements as this settlement class.  *See supra* at 16–18. "[T]here is no apparent reason why the Court would decertify or modify the class at any time during the litigation."  *Ripley v. Sunoco*, 287 F.R.D. 300, 313 (E.D. Pa. 2012).

Thus, the sixth *Girsh* factor is neutral.

### 7.      Defendants' Ability to Withstand a Greater Judgment Is Neutral.

"The seventh *Girsh* factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."  *National Football II*, 821 F.3d at 440.  As in *Boone*, "[t]aking into consideration the current financial situation of the City," Plaintiffs here

"may have cause to be genuinely concerned about the ability of the defendant to allocate its resources to a greater judgment." *Boone,* 668 F. Supp. 2d at 712.  The proposed Consent Decree will compensate innocent owners using forfeiture funds without seeking broader relief that would cripple the City and come at the expense of taxpayers.

Accordingly, the seventh *Girsh* factor is neutral.

> **8.    *The Range of Reasonableness of the Restitutionary Fund Favors Approval.***

For the eighth and ninth *Girsh* factors, the court examines "'whether the settlement represents a good value for a weak case or a poor value for a strong case'" by examining the reasonableness of the settlement fund in "'light of the best possible recovery . . . and the risks the parties would face if the case went to trial.'" *National Football II,* 821 F.3d at 440 (quoting *Warfarin,* 391 F.3d at 538).  The value of the damages that plaintiffs could possibly recover at trial, "appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.*

As this Court and others have recognized, the constitutional claims here are strong.  *See Harjo v. City of Albuquerque,* Civ. A. No. 16-1113, 2018 WL 3621025, at *35 (D.N.M. Jul. 28, 2018) (holding that the City of Albuquerque's use of forfeiture proceeds violated the Due Process Clause); *Platt v. Moore,* No. 16-cv-8262, 2017 WL 6420477, at *12  (D. Ariz. Aug. 30, 2017) (unpublished) (holding that plaintiffs stated a due-process claim that the retention of forfeiture proceeds "create[s] a financial incentive that may impermissibly distort decision-making"); *Cox v. Voyles,* No. 15-cv-1386, Doc. 65, at 17 (D. Ariz. Aug. 18, 2017) (unpublished) (holding that plaintiffs stated a due process claim when they alleged that "law enforcement agencies rely on forfeiture money for a variety of expenses, including funding entire departments"); *Sourovelis v. City of Philadelphia,* 103 F. Supp. 3d 694, 709 (E.D. Pa. 2015)

("Coupled with Defendants' alleged direct pecuniary interest in the outcome of the forfeiture proceedings, these allegations state a claim based on a violation of the due-process guarantee of an impartial neutral arbiter.").

But as discussed *supra* at 22–23, the quantum of damages is less certain.  *See* Burnham, 76 U. Chi. L. Rev. 441.  The proposed Consent Decree provides all class members a flat award to compensate for the violation of their due-process rights.  Then, class members with the strongest chance of full recovery at trial, innocent owners, receive up to 100 percent of the value of their property, with class members who were first-time, low-level offenders receiving up to 75 percent of the value of their property (if there are sufficient funds).  Any unclaimed funds are donated to nonprofit or community-based organizations that will indirectly benefit the class by providing assistance to communities most affected by the City's forfeiture practices.

Accordingly, the proposed Consent Decree represents "a good value" for the Plaintiffs' claims and the eighth and ninth *Girsh* factors favor approval.

## B.    The Applicable *Prudential* Factors Also Favor Settlement.

In light of the "sea change in the nature of class actions,"[21] the Third Circuit has also identified a series of non-exclusive factors to consider for a "thoroughgoing analysis of settlement terms."[22]  These factors are:

(1)    the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2)    the existence and probable outcome of claims by other classes and subclasses;

---

[21] *Prudential*, 148 F.3d at 323.

[22] *In re Processed Egg Products Antitrust Litigation*, 284 F.R.D. 249, 268 (E.D. Pa. 2012).

(3)     the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants;

(4)     whether class or subclass members are accorded the right to opt out of the settlement;

(5)     whether any provisions for attorneys' fees are reasonable; and

(6)     whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323.  Plaintiffs address each of these factors below.

The first *Prudential* factor is an amalgam of *Girsh* factors.  As discussed above, the amount of discovery and the probable outcome of a trial on liability and damages all support approval.  (*See supra* at 21–23.)  The second *Prudential* factor—the existence and probable outcome of claims by other classes and subclasses—also supports approval, as fully discussed in the accompanying motion and brief in support of preliminary approval of the proposed consent decree on the Courtroom Claims.  The third *Prudential* factor—comparing the settlement results and the results likely to be achieved for other claimants—is not applicable as there are no other claimants besides the individual class members.  The fourth *Prudential* factor supports approval because the proposed Consent Decree affords potential class members the right to exclude themselves from the proposed Restitutionary Class and not be bound by the terms of the proposed Consent Decree.  (Ex. A ¶ 66.)

The fifth *Prudential* factor—concerning the reasonableness of attorneys' fees—also favors approval.  "In determining the appropriate amount of attorneys' fees to be paid to Plaintiffs' counsel, the principal consideration is the success achieved by the plaintiffs under the terms of the settlement."  *Schwartz v. Dallas Cowboys Football, Ltd.*, 157 F. Supp. 2d 561, 579 (E.D. Pa. 2001).  Here, the two proposed consent decrees covering all of Plaintiffs' claims completely reform the way the seizures and prosecutions for forfeiture will occur in the City of

Philadelphia.  It would be difficult to overstate the sweeping institutional change that both proposed Consent Decrees would usher in, if approved by the Court.

In light of this success, a fee award of $2.63 million reflects both reasonable rates and reasonable hours of work performed.[23]  As detailed in the chart below, Plaintiffs' counsel used the Community Legal Services rates in calculating reasonable hourly rates for each attorney and paralegal.  Moreover, Plaintiffs' counsel have relinquished any fees for work performed after April 30, 2018.  The total number of hours is reasonable in light of the complexity and duration of the litigation.  Further, Plaintiffs reduced the resulting lodestar figure by more than 20 percent, making the requested fees imminently reasonable.

| Timekeeper | Years of Experience | Total Hours** | Hourly Rates* | Amount |
|---|---|---|---|---|
| Darpana Sheth, Senior Attorney | 17 | 1,872.60 | $500 | $936,300.00 |
| Robert Frommer, Senior Attorney | 13 | 602.50 | $430 | $259,075.00 |
| Daniel Alban, Attorney | 12 | 695.75 | $400 | $278,300.00 |
| Robert Peccola, Attorney | 10 | 2,617.60 | $340 | $889,984.00 |
| Milad Emam, Attorney | 6 | 1,818.75 | $275 | $500,156.25 |
| Gretchen Embrey, Senior Paralegal | 22 | 536.75 | $150 | $80,512.50 |
| Emily Gammon, Paralegal | 12 | 1,457.00 | $125 | $182,125.00 |
| David Rudovsky, Partner | 50 | 248.80 | $650 | $161,720.00 |
| **TOTAL** | | **9,849.75** | | **$3,288,172.75** |
| **Total after 20% reduction** | | | | **$2,630,538.20** |

Accordingly, the proposed Consent Decree's attorneys' fees provision favors approval.

Under the final *Prudential* factor, the procedure for processing individual claims under the proposed Consent Decree is fair and reasonable.  The proposed Consent Decree provides all class members a flat award to compensate for the violation of their due-process rights.  (Ex. A,

---

[23]  Plaintiffs will document the rates and hours in a forthcoming formal fee petition to the Court.

¶ 47.)  Then, class members with the strongest chance of full recovery at trial, innocent owners, receive up to 100 percent of the value of their property while class members who were first-time, low-level offenders receive up to 75 percent of the value of their property (if there are sufficient funds).  (*Id.*)  To process these claims, Plaintiffs will use a court-approved and experienced Claims Administrator supervised by Plaintiffs' counsel.  (*Id.*)  Accordingly, the proposed Consent Decree's claims-processing procedures satisfy the final *Prudential* factor.  *See Alexander v. Coast Prof'l*, Civ. A. No. 12-1461, 2016 WL 861329, at *7 (E.D. Pa. Mar. 7 2016), (holding that, where class counsel retained and supervised a court-approved and experienced class administrator, "[t]he claims processing procedures in place [we]re fair and reasonable").

### C.    The Proposed Consent Decree Is Fair, Reasonable, and Adequate Under Amended Rule 23(e)'s Standard.

As of December 1, 2018, Rule 23(e) supplements the factors set forth by the Third Circuit.  Under amended Rule 23(e)'s standard, a court may approve a class-action settlement only after considering whether: (1) the class representatives and Plaintiffs' counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class was adequate; and (4) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).  These factors are not intended "to displace any factor" set forth by the circuit courts of appeal.  Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment.  The proposed Consent Decree meets each of these four factors.

### 1.    The Named Plaintiffs and Their Attorneys Adequately Represent the Proposed Restitutionary Class.

In determining whether class representatives and their counsel have adequately represented their class, "the focus is on [counsel's] actual performance."  Fed. R. Civ. P.

23(e)(2), advisory committee's note to 2018 amendment.  One consideration is whether counsel "had an adequate information base" when negotiating on behalf of a class.  *Id*.

Plaintiffs' counsel satisfies these criteria.  To date, of all motions the Court has ruled on, Plaintiffs have prevailed on every contested issue, but one.  (*See* Mem., ECF No. 66 (denying the City and District Attorney Defendants' motion to dismiss First Amended Complaint); Order, ECF No. 104 (granting final approval to classwide settlement on Claims 1 and 2); Order, ECF No. 188 (granting Plaintiffs' motion for class certification under Rule 23(b)(2)); Order, ECF No. 203 (denying Defendants' motion to dismiss Second Amended Complaint).)  As noted *supra* at 16, this Court has already found Plaintiffs' counsel to be adequate in representing the previously certified classes.

Further, Plaintiffs' counsel also walked into the 2018 negotiations with an expansive "information base."  As detailed *supra* at 21 in Plaintiffs' discussion of the third *Girsh* factor, Plaintiffs' counsel briefed several motions and conducted a thorough factual investigation for these claims.  As the Court has previously found, given the adequacy of representation here, the proposed Consent Decree satisfies the first amended Rule 23(e)(2) factor.

### 2.    *The Parties Negotiated the Proposed Consent Decree at Arm's Length.*

To assess whether a class-action settlement was negotiated at "arm's length," courts look to whether a mediator supervised negotiations.  Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").  Here, the parties negotiated the proposed Consent Decree under the auspices of the facilitator appointed by this Court.  (*See* Order, ECF No. 245.)  Accordingly, the proposed Consent Decree satisfies the second Rule 23(e)(2) factor.

### 3. The Proposed Consent Decree Would Provide the Proposed Restitutionary Class Adequate Relief.

The relief that a class-action settlement is expected to provide to class members is a central concern.  Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment. Amended Rule 23(e) lists four factors relevant to assessing whether a settlement's relief is adequate: "(i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The proposed Consent Decree substantially benefits the proposed Restitutionary Class because it provides all the injunctive relief that Plaintiffs were seeking for the conflict-of-interest claims and compensates class members for the violation of their due-process rights.

Under the four-part test under Rule 23(e)(2)(C), this relief is adequate.  First, as noted in discussing the first *Girsh* factor, continued litigation would entail significant time and expense. These forms of "costs, risks and delay" support approval of a consent decree that mirrors what Plaintiffs would—if successful—procure at trial.  As discussed *supra* at 27–28, the second sub-factor favors approval as the proposed Consent Decree's method of distributing relief to the proposed Restitutionary Class and method of processing claims is effective.  The third sub-factor concerning attorneys' fees favors approval, as discussed *supra* at 26–27.  Finally, the fourth subfactor is not relevant because the proposed Consent Decree has no side agreements that must be disclosed under Rule 23(e)(3).

### 4. The Proposed Consent Decree Treats Class Members Equitably.

Rule 23(e)(2)(D) "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others."  Fed. R. Civ. P.

23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id*.

Here, the proposed Consent Decree's tiered system and the order of priority for claims to the Restitutionary Fund reflects the potential differences among class members' claims.  While each class member receives an initial flat award to compensate for the violation of their due-process rights, innocent owners—those with the strongest chance of full recovery at trial—receive up to 100 percent of the value of their property.  (Ex. A, ¶ 47.)  The proposed Consent Decree also includes mechanisms to ensure that the Restitutionary Fund is not depleted before members of each tier receive their award.  (*Id.* ¶ 47(a) (allowing Parties to alter $90 flat award after receiving total number of claims so that this distribution does not deplete the fund); *id*. ¶ 47(c)&(d) (allowing members of each tier to receive *pro rata* percentage of forfeited property).

Additionally the modest $2,500 incentive payment to the Named Plaintiffs for their more than four-year efforts on behalf of other class members does not pose any concerns.  Courts in the Eastern District of Pennsylvania routinely approve comparable incentive payments to class representatives.  *See, e.g.*, *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (approving $5,000 payment award to class representatives); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 "special awards" to class representatives because they "rendered a public service" and "conferred a monetary benefit on a large class").

Because the proposed Consent Decree satisfies all four amended Rule 23(e)(2) factors, this Court "will likely be able to" approve it later.

### D.      The *Cy Pres* Provision Contributes to the Fairness of the Decree.

To approve a *cy pres* payment as part of a class-action settlement, the court must determine that the payment contributes to the fairness of the settlement, which involves an analysis "vis-a-vis 'the degree of direct benefit provided to the class' versus any *cy pres* awards." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, Civ. No. 12-MD-2358, 2017 WL 446121, at *3 (D. Del. Feb. 2, 2017) (slip opinion) (quoting *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 174 (3d. Cir. 2013)).  Specifically, "the court should consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case."  *Harlan v. Transworld Systems, Inc.*, No. 13-5882, 2015 WL 505400, at *10 (E.D. Pa. Feb. 6, 2015) (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 576 (E.D. Pa. 2005) (applying *cy pres* principles to select recipient for class action settlement's *cy pres* award)).  For example, in *Harlan*, a class action under the Fair Debt Collection Practices Act, the court approved a *cy pres* award to "a nonprofit organization dedicated to financial literacy."  *Harlan*, 2015 WL 505400, at *10.  Financial education furthered the objectives of the statute and the interests of class members as financial education would help them protect themselves against other scrupulous lenders.  *Id.* Additionally, the *cy pres* award was limited to programs in the Philadelphia area, where the class lived.

Similarly, the proposed Consent Decree provides for a *cy pres* award to nonprofit or community-based organizations that serve Philadelphia residents most affected by the City's aggressive forfeiture practices.  (Ex. A. ¶¶ 61-63.)  For example, the Parties have discussed donating unclaimed funds to organizations that provide *pro bono* representation to forfeiture litigants.  However, because selection of these organizations will depend, in large part on the

32

amount of unclaimed funds, the Parties have agreed to select the *cy pres* recipients after all claims have been received and distributions calculated.

### E.     The Notice Plan Meets the Requirements of Rule 23.

The proposed Class Notice meets the requirements of Rule 23 and the notice plan provides the best practicable notice under the circumstances.

#### 1.     *The Class Notice Meets Each of the Three Requirements of Rule 23.*

The proposed Class Notice contains the certification notice required by Rule 23(c)(2)(B); the settlement notice as required by Rule 23(e)(1); and notice of the provision for attorneys' fees as required by Rule 23(h)(1).  (*See* Exs. B–D.)

First, the class notice clearly and concisely states in plain and easily understood language (i) the nature of the action; (ii) the definitions of the proposed classes;[24] (iii) the class claims and issues; (iv) that a class member may enter an appearance through an attorney; (v) that the Court will exclude from the proposed Restitutionary Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a judgment on class members.  *See* Fed. R. Civ. P. 23(c)(2)(B); *Boone,* 668 F. Supp. 2d at 709.

Second, the class notice contains the following information related to the settlement: (i) the essential terms of both proposed consent decrees; (ii) the incentive awards to the Named Plaintiffs; (iii) the time and place of the hearing to consider approval of the settlement; (iv) the method for objecting to or requesting exclusion from the settlement; (v) the procedures for allocating and distributing settlement funds and clearly setting forth the variations for different categories of relief; (vi) the size of the class; and (vii) the address and phone number of

---

[24] The proposed class notice lists all three class definitions but Plaintiffs' counsel submits that it may be less confusing to the average person to only include the definition of the proposed Restitutionary Class as that is the only class from which members can request exclusion.

Plaintiffs' counsel and how to make inquiries.  *See* Manual for Complex Litigation (Fourth) § 21.312 (2004); *see also* William B. Rubenstein, Newberg on Class Actions § 8:17 (5th ed. Jun. 2018).

Third, the class notice includes sufficient information showing how attorneys' fees were calculated.  Therefore, the Court should direct notice to the proposed class substantially in the form of Exhibit B.

### 2.    *The Notice Plan Provides the Best Notice Practicable.*

Rule 23(e)(1) requires notice of a class action settlement to be provided "in a reasonable manner to all class members who would be bound by the proposal."  "[T]he trial court has broad discretion in determining the timing and manner of notice."  *Harris v. Reeves*, 761 F. Supp. 382, 393 (E.D. Pa. 1991).  The Notice Plan provides individualized notice through first-class mail to potential class members and published notices online.  The City Defendants have agreed to perform a reasonable search of tax, water, utility and other records to ensure that the Claims Administrator will have current addresses of potential class members.  *See, e.g.*, *Prudential*, 148 F.3d at 326-28 ("the combination of individual and publication notice, combined with the unsolicited news coverage the settlement received, greatly increased the possibility" that defendants will compensate the class, therefore finding that the notice plan satisfied Rule 23).  Additionally, depending on the results, Plaintiffs' counsel will supplement these efforts at their own expense.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve class certification of the proposed Restitutionary Class, the proposed Consent Decree (Ex. A), and the proposed class notice, claim form, and objections and opt-out instructions and form (Ex. B–D.).

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(b), the undersigned counsel hereby certifies that this Motion is uncontested.

Dated:  September 18, 2018

Respectfully submitted,

INSTITUTE FOR JUSTICE
By: /s/  *Darpana M. Sheth*
Darpana M. Sheth*
Robert P. Frommer*
Dan Alban*
Robert Peccola*
Milad Emam*
901 North Glebe Road, Suite 900
Arlington, VA 22203
Email: dsheth@ij.org; rfrommer@ij.org;
dalban@ij.org; rpeccola@ij.org;
memam@ij.org
Tel: (703) 682-9320
Fax: (703) 682-9321

*Admitted Pro Hac Vice*

KAIRYS, RUDOVSKY, MESSING, FEINBERG & LIN

David Rudovsky (I.D. Number 15168)
The Cast Iron Building
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
Email:  drudovsky@krlawphila.com
Tel:  (215) 925-4400
Fax:  (215) 925-5365

*Counsel for Plaintiffs*

35

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September, 2018, a true and correct copy

of the foregoing was served upon the following counsel of record via the ECF system:

Michael R. Miller
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
Tel:  (215) 683-5444
Email:  Michael.R.Miller@phila.gov

*Counsel for Defendants City of Philadelphia, Mayor James F. Kenney,
and Police Commissioner Richard J. Ross, Jr.*

Peter Carr
Douglas M. Weck, Jr.
Three South Penn Square
Philadelphia, PA 19107
Tel: (215) 686-8787
Email: peter.carr@phila.gov; douglas.weck@phila.gov

*Counsel for Defendants Philadelphia District Attorney's Office and District Attorney
Lawrence S. Krasner*

Michael Daley
Andrew J. Coval
1515 Market Street, Suite 1414
Philadelphia, PA 19102
Tel:  (215) 560-6300
Email: legaldepartment@pacourts.us

*Attorneys for Defendants the Honorable Sheila A. Woods-Skipper, the Honorable
Jacqueline F. Allen, Joseph H. Evers, and Charles A. Mapp*

/s/  **Darpana M. Sheth**
Darpana M. Sheth
*Lead Counsel for Plaintiffs*

36