IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOS SOUROVELIS, et al., | : | CIVIL ACTION |
| | : | No. 14-4687 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JANUARY 27, 2021


Table of Contents

I. BACKGROUND ............................................................. 3

  A.   Factual Background and Procedural History ........................... 3

  B.   The Proposed Class Action Settlement ............................... 6

    1.  The Class ......................................................... 6

    2.  The Proposed Terms of the Consent Decree .......................... 7

II.  DISCUSSION............................................................ 10

  A.   Whether Class Certification Is Proper ............................. 11

    1.  Rule 23(a) Factors ............................................... 12

      a.  Numerosity .................................................... 12

      b.  Commonality ................................................... 13

      c.  Typicality .................................................... 14

      d.  Adequacy of Representation .................................... 15

    2.  Rule 23(b)(2) Factors ............................................ 17

    3.  Whether Notice to the Class Members Was Reasonable ................ 18

  B.   Whether the Proposed Settlement Is Fair ........................... 19

    1.  The Girsh Factors ................................................ 22

      a.  The Complexity, Expense, and Likely Duration of the Litigation ... 22

      b.  The Reaction of the Class to the Settlement ..................... 22

      c.  The Stage of the Proceedings and the Amount of Discovery Completed 23

      d.  The Risks of Establishing Liability ............................ 23

      e.  The Risks of Maintaining the Class Action Through Trial .......... 24

    2.  The Relevant Prudential Factor ................................... 24

    a.  Whether the Provisions for Attorneys' Fees Are Reasonable ........ 24

  3.  The Rule 23(e)(2) Factors ........................................ 25

    a.  Whether the Class Representatives and Class Counsel Have Adequately Represented the Class ............................................. 25

    b.  Whether the Proposal Was Negotiated at Arm's Length .............. 25

    c.  Whether the Relief Provided for the Class Was Adequate ........... 26

    d.  Whether the Proposal Treats Class Members Equitably Relative to Each Other ............................................................ 26

III. CONCLUSION........................................................ 27

This is a case about long standing policies and procedures of the City of Philadelphia, the Office of the District Attorney, and the Court of Common Pleas of Philadelphia County concerning the adjudication and execution of civil forfeitures. The Court found those policies and procedures, as alleged by the Plaintiffs and taken to be true, to be unconstitutional and to have caused harm to Plaintiffs. Plaintiffs seek class certification, injunctive relief, and monetary compensation. After substantial discovery and motion practice and with the help of a court appointed facilitator, the parties have reached agreement as to class certification, the implementation of structural and administrative changes in the manner in which civil forfeiture proceedings are conducted by the District Attorney and the Court of Common Pleas, and an amount of money sufficient to fairly compensate the victims of the unconstitutional practices.

Presently before the Court is "Plaintiffs' Consent Motion and Memorandum in Support of Final Approval of Class

Certification and Consent Decree on the Courtroom Claims." This settlement will resolve Plaintiffs' four "Courtroom Claims" (the Third, Fourth, Sixth, and Seventh Claims for Relief). There is a second consent decree involving the Fifth and Sixth Claims for Relief that concerns monetary awards and restitution (the "Restitutionary Claims") and which is the subject of a separate memorandum issued on this day. Finally, there is a separate order containing findings and granting an award of attorneys' fees.

For the reasons that follow, the Court will grant the motion, certifying the class and approving the proposed class action settlement.

## I.   BACKGROUND

### A.   Factual Background and Procedural History

Four residents of the city of Philadelphia ("Plaintiffs") filed their suit on August 11, 2014 on behalf of all real and personal property owners whose property has been subject to civil-forfeiture proceedings in Philadelphia. Plaintiffs sued the City of Philadelphia, the District Attorney's Office, and the First Judicial District of Pennsylvania (together referred to as the "Defendants")[1] alleging

---

[1]   Although each of the Defendants acted separately and independently of each other and consequently not all conduct found to be unconstitutional applies to all Defendants, for the sake of clarity, this memorandum refers to "Defendants" jointly

that the forfeiture proceedings used in Philadelphia violated constitutional due process guarantees. Plaintiffs allege that the Defendants utilized "robo-forfeiture" practices involving issuing large amounts of generic forfeiture complaints which resulted in the seizure of more than 1,200 houses, 3,500 vehicles, and $50 million in cash over thirteen years. Plaintiffs allege that, instead of being able to challenge the forfeitures before a judge, they were forced to plead their case before prosecutors from the District Attorney's Office, the very individuals who had issued the complaints. Plaintiffs further allege that instead of the forfeiture assets being used to help communities combat drugs (the professed goal of the forfeiture program), the Defendants used the funds to pay themselves and to pay for substantial purchases outside of City Council appropriations, creating significant conflicts of interest. The Court found that the Plaintiff had stated a cause of action and that, as alleged, the Defendants' conduct, policies, and procedures were unconstitutional. See Sourovelis v. City of Phila., 246 F. Supp. 3d 1058 (E.D. Pa. 2017); Sourovelis v. City of Phila., 103 F. Supp. 3d 694 (E.D. Pa. 2015).

---

regardless of which Defendant engaged in the unconstitutional conduct, except where specific reference to the District Attorney's Office is relevant and helpful.

After nearly six years of litigation during which the parties engaged in significant motion practice including three motions to dismiss, two motions to compel, and a motion for preliminary injunction, and after the certification of one subclass, a court-approved settlement of two counts in November 2015, and the negotiation of the current proposed settlement, the Court preliminarily certified the two classes at issue and preliminarily approved the Consent Decree on April 30, 2019 after a hearing.

Thereafter, notice was provided to the class members as dictated by the Court, including posting the notice on a purpose-specific website and on the respective websites of class counsel and the Defendants, and sending individualized notices to more than 34,000 potential class members to the most up-to-date addresses available. By December 6, 2019, the deadline for objections, only nine objections had been filed, none of which mentioned the terms of this Consent Decree (instead they concerned the second consent decree regarding the monetary claims, which is discussed in a separate memorandum).

On October 14, 2020, the Court held a final fairness hearing. The Court granted the opportunity for all present to comment, but only counsel and the parties' witnesses spoke. Ultimately, there were no written or oral objections to the proposed class action and settlement of the Courtroom Claims.

For the claims at issue in this memorandum, Plaintiffs seek only injunctive and declaratory relief.[2] Regarding the claims: the Third Claim for Relief challenges Defendants' alleged failure to provide property owners with a prompt post-deprivation hearing to contest the seizure of their property pending an ultimate hearing on the merits. The Fourth Claim for Relief challenges Defendants' repeated "relisting" of forfeiture proceedings, which allegedly forced property owners to appear repeatedly at proceedings or else risk default judgment. The Sixth Claim for Relief challenges prosecutorial control of forfeiture proceedings in Philadelphia. The Seventh Claim for Relief challenges Defendants' other alleged due-process violations in administering the forfeiture proceedings.

B.   <u>The Proposed Class Action Settlement</u>

The terms of the proposed class action settlement are set forth in the "Proposed Consent Decree on Plaintiffs' Claims for Injunctive Relief Regarding Courtroom Claims" ("Consent Decree"). Mot. Ex. A, ECF No. 326-1. The basic terms are outlined below.

1.   <u>The Class</u>

There are two class definitions for these claims:

---

[2]      In addition to injunctive and declaratory relief, the Sixth Claim for Relief seeks monetary restitution. This aspect of the Sixth Claim will be discussed in the second memorandum. This memorandum will only deal with the non-monetary aspects of this claim.

For purposes of the Third, Fourth, and Seventh Claims for Relief in the Second Amended Complaint, the settlement class shall consist of: All persons holding legal title to or otherwise having a legal interest in real or personal property:

> (i) which was the subject of civil-forfeiture or return-of-property proceedings as of August 11, 2012; or
>
> (ii) which had been seized on or after August 11, 2012; or
>
> (iii) which was or will be the subject of a forfeiture petition or a return-of-property, or related proceeding in the Court of Common Pleas of Philadelphia County on or after August 11, 2012.

For purposes of the Sixth Claim for Relief in the Second Amended Complaint, the settlement class shall consist of: All persons receiving a notice directing them to appear in, or who appeared in, Courtroom 478 for forfeiture, return-of-property, or related proceedings from August 11, 2012 until January 6, 2016.

Id. at 12.

### 2. The Proposed Terms of the Consent Decree

For the Third Claim for Relief, which challenges Defendants' alleged failure to provide property owners with a prompt post-deprivation hearing, the Consent Decree provides individuals going forward with the opportunity to contest the basis for the property seizure. Under the Consent Decree, claimants can file a "Motion for Release of Seized Property Pending the Conclusion of Forfeiture Proceedings" at any time after law enforcement's seizure of their property, including

during the pendency of civil-forfeiture proceedings. The Defendants will post a form version of this motion on their website and send a copy alongside their forfeiture petitions. A hearing on such a motion will be heard within ten days of its filing. Even without filing a motion, the Consent Decree provides that Defendants cannot retain seized property for more than 90 days without good cause. The Consent Decree also enjoins the Defendants from seizing property unless the owner has the option of receiving a prompt and meaningful post-deprivation hearing.

For the Fourth Claim for Relief, which challenges Defendants' repeated "relisting" of forfeiture proceedings, the Consent Decree protects property owners from unilateral relisting of hearings and from default judgment in a number of ways, including: (1) improving procedures for identifying potential claimants; (2) imposing timing requirements on service of process; (3) creating safeguards against default judgment, including requiring judicial approval, and providing for continuances and extensions if needed by claimants; (4) imposing thresholds for seizures and forfeitures of cash and prohibiting seizures and forfeiture of property (besides per se contraband) for "[s]imple [d]rug [p]ossession" offenses; and (5) enjoining the practices challenged by Plaintiffs' Fourth Claim for Relief.

Regarding the Sixth Claim for Relief, which challenges prosecutorial control of forfeiture proceedings, the Consent Decree requires that a Court of Common Pleas judge preside over the post-seizure hearing or forfeiture trial. Moreover, only judges are authorized to take dispositive action with respect to forfeiture proceedings and all settlement agreements must be approved by a judge. Finally, the Consent Decree enjoins Defendants from conducting forfeiture proceedings unless before a neutral arbiter.

Regarding the Seventh Claim for relief, which challenges additional due-process violations, the Consent Decree changes the forfeiture-administration procedures to conform to constitutional requirements and remedy the challenges raised in the Seventh Claim. These changes include adding multiple notice and informational requirements regarding forfeitures to affected property owners; limiting common-law forfeiture solely to forfeiture of per se contraband; adding safeguards against self-incrimination; enjoining the Defendants from requiring property owners to affirmatively prove their innocence in forfeiture proceedings; and requiring the use of the Pennsylvania Rules of Civil Procedure.

The Consent Decree also imposes reporting obligations on Defendants to the Plaintiffs and allows Plaintiffs to monitor Defendants' compliance for at least eighteen months. The Court

will retain jurisdiction over the Courtroom Claims for those
eighteen months with the ability to extend the term of
jurisdiction based on a finding of substantial noncompliance.

The Consent Decree also provides for an award of
attorneys' fees and expenses of $2,630,000 and $2,500 incentive
awards for each of the four named Plaintiffs. The reasonableness
of the attorneys' fees will be the subject of a separate order.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the
settlement of a class action requires court approval. Fed. R.
Civ. P. 23(e)(2). A district court may approve a settlement
agreement "only after a hearing and only on finding that it is
fair, reasonable, and adequate." Id. The factual determinations
necessary to make Rule 23 findings must be made by a
preponderance of the evidence. In re Hydrogen Peroxide Antitrust
Litig., 552 F.3d 305, 320 (3d Cir. 2008). "The decision of
whether to approve a proposed settlement of a class action is
left to the sound discretion of the district court." In re
Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148
F.3d 283, 299 (3d Cir. 1998) (quoting Girsh v. Jepson, 521 F.2d
153, 156 (3d Cir. 1975)).

The Court must also certify the settlement class.
While the exact process a district court should follow when

presented with a settlement class is not prescribed by Rule 23,
under Third Circuit law, the court must determine that the
settlement class meets the requirements for class certification
under Rule 23(a) and (b), and must separately determine that the
settlement is fair to that class under Rule 23(e). In re Nat'l
Football League Players Concussion Inj. Litig., 775 F.3d 570,
581 (3d Cir. 2014); In re Gen. Motors Corp. Pick-Up Truck Fuel
Tank Prods. Liab. Litig., 55 F.3d 768, 778 (3d Cir. 1995)
(providing that settlement class status "should not be sustained
unless the record establishes, by findings of the district
judge, that the [ ]requisites of [ ] Rule [23(a) and (b)] are
satisfied").

    A.   Whether Class Certification Is Proper

       At the final fairness stage, the court must undertake
a "rigorous analysis" as to whether class certification is
appropriate. In re Nat'l Football League, 775 F.3d at 582-83,
586. Under Rule 23(a), Plaintiffs must demonstrate that: (1) the
class is so numerous that joinder of all members is
impracticable; (2) there are questions of law or fact common to
the class; (3) the claims or defenses of the representative
parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately
protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(2), under which Plaintiffs seek class certification for this Consent Decree, requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful <u>only</u> as to all of the class members or as to none of them." <u>Shelton v. Bledsoe</u>, 775 F.3d 554, 561 (3d Cir. 2015) (internal quotation marks omitted).

> [F]or certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined "class" is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2) and our guidance in <u>Barnes [v. Am. Tobacco Co.]</u>, 161 F.3d [127,] 143 [3d Cir. 1998)]; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of the parameters defining the class," as required by Rule 23(c)(1)(B) and our discussion in <u>Wachtel [ex rel. Jesse v. Guardian Life Ins. Co. of Am.]</u>, 453 F.3d [179,] 187 [(3d Cir. 2006)]. No additional requirements need be satisfied.

<u>Id.</u> at 563.[3]

    1.   <u>Rule 23(a) Factors</u>

       a.   <u>Numerosity</u>

---

[3] As a result, the Third Circuit's ascertainability requirement is not applicable in a Rule 23(b)(2) case. <u>Shelton</u>, 775 F.3d at 563.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here since the proposed settlement class has thousands of members.

b.  Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

The claims at issue share common questions of law,
including whether each of the challenged policies and practices
violated due process. Each of these claims also presents a
common question of fact. For the Third Claim for Relief, it is
whether Defendants have a policy and practice of failing to
provide prompt post-seizure hearings to individuals whose
property has been seized. For the Fourth Claim for Relief, it is
whether Defendants have a policy and practice of repeatedly
relisting forfeiture actions and requiring property owners to
make monthly court appearances, each of which increase the risk
of a default judgment. For the Sixth Claim for Relief, it is
whether Defendants have a policy and practice of having
assistant district attorneys control forfeiture proceedings in
Courtroom 478. For the Seventh Claim for Relief, it is whether
the procedures governing administration of forfeiture and seized
property cases deprive property owners of due process.

Thus, the commonality requirement is met.

c.   Typicality

Rule 23(a)(3) requires that the class representatives'
claims be "typical" of the claims of the class. Fed. R. Civ. P.
23(a)(3). The typicality inquiry is "intended to assess whether
the action can be efficiently maintained as a class and whether
the named plaintiffs have incentives that align with those of
absent class members so as to assure that the absentees'

interests will be fairly represented." <u>Baby Neal</u>, 43 F.3d at 57.
Where claims of the representative plaintiffs arise from the same
alleged wrongful conduct on the part of the defendant, the
typicality prong is satisfied. <u>In re Warfarin Sodium Antitrust
Litig.</u>, 391 F.3d 516, 532 (3d Cir. 2004). The typicality
threshold is low. <u>Seidman v. Am. Mobile Sys., Inc.</u>, 157 F.R.D.
354, 360 (E.D. Pa. 1994).

      This element is satisfied because each of the Named
Plaintiffs, like the other class members, experienced the
policies and practices that these claims challenge. Moreover,
each of the claims at issue rests on the same legal theories as
the unnamed class members' claims.

      d.   <u>Adequacy of Representation</u>

      Rule 23(a)(4) requires representative parties to
"fairly and adequately protect the interests of the class." Fed.
R. Civ. P. 23(a)(4). This requirement "serves to uncover
conflicts of interest between the named parties and the class
they seek to represent." <u>Amchem Prods., Inc. v. Windsor</u>, 521
U.S. 591, 625 (1997). The Third Circuit applies a two-prong test
to assess the adequacy of the proposed class representatives.
First, the court must inquire into the "qualifications of the
counsel to represent the class," and second, it must assess
whether there are "conflicts of interest between named parties

and the class they seek to represent." In re Prudential, 148
F.3d at 312 (internal quotation marks omitted).

Regarding the qualifications of counsel, Fed. R. Civ.
P. 23(g) provides that, in appointing class counsel, the court
must consider: (1) the work counsel has done in identifying or
investigating potential claims in the action; (2) counsel's
experience in handling class actions, other complex litigation,
and the types of claims asserted in the action; (3) counsel's
knowledge of the applicable law; and (4) the resources that
counsel will commit to representing the class.

As it concluded during the preliminary approval
process, the Court again concludes that Plaintiffs' counsel, the
Institute for Justice and local counsel David Rudovsky, have
substantial experience litigating forfeiture class actions
nationwide and possess sufficient knowledge regarding the
relevant law. Counsel have also performed a substantial amount
of work in the case and have committed extensive resources
without seeking interim payment. Specifically, counsel have,
inter alia, performed extensive pre-filing investigations,
including multiple interviews of potential plaintiffs; conducted
legal research regarding various procedural and substantive
issues; researched, drafted, and amended the complaint; opposed
three motions to dismiss; achieved certification of a Rule
23(b)(2) class with respect to injunctive and declaratory relief

for Claim Five; conducted extensive discovery, including deposing five city officials; prepared and filed two motions to compel the production of discovery; participated in several settlement discussions, including an all-day session with a court-approved facilitator[4]; and successfully navigated the preliminary approval process.

Second, the Named Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the class since they all raise the same claims and seek the same injunctive and declaratory relief. The Court concludes that there are no conflicts of interest between the Named Plaintiffs and the class such that the adequacy of representation requirement is met.

In sum, Plaintiffs have demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

2.   Rule 23(b)(2) Factors

As provided, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

---

[4]         Mark A. Aronchick, a Philadelphia-based attorney experienced in class actions and commercial litigation, and also knowledgeable of local conditions and culture, was appointed by the Court with the consent of the parties as facilitator. To Mr. Aronchick goes the appreciation of the Court for helping the parties reach an agreement in this case.

class as a whole." Fed. R. Civ. P. 23(b)(2). A class under Rule 23(b)(2) is proper if it: (1) meets the requirements of Rule 23(a); (2) is sufficiently cohesive under Rule 23(b)(2); and (3) is capable of being described in a readily discernible, clear, and precise statement of the parameters defining the class, as required by Rule 23(c)(1)(B). Shelton, 775 F.3d at 561.

Here, the class meets the requirements of Rule 23(a). Moreover, the class is cohesive in that there are no apparent individualized issues among the class members. See Barnes, 161 F.3d at 143 (providing that a court "must determine whether a proposed (b)(2) class implicates individual issues"). All of the class members have the same issues and seek the same relief. Finally, in that the parties have narrowly defined the classes, the class parameters are clear and readily discernable. See Baby Neal, 43 F.3d at 58 (holding that 23(b)(2) is "almost automatically satisfied in actions primarily seeking injunctive relief").

### 3.   Whether Notice to the Class Members Was Reasonable

As described above, the Court previously approved the notice scheme and it appears that the parties have successfully followed that procedure. Therefore, the Court concludes that notice was reasonable. See Harris v. Reeves, 761 F. Supp. 382,

393 (E.D. Pa. 1991) ("[T]he trial court has broad discretion in determining the timing and manner" of class notice.).

Thus, the Court shall certify the settlement classes for this Consent Decree.

   B.   <u>Whether the Proposed Settlement Is Fair</u>

After class certification, the court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). <u>In Re Prudential</u>, 148 F.3d at 316-17. Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires "'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." <u>Id.</u> at 317 (quoting <u>In re Gen. Motors Corp.</u>, 55 F.3d at 805). This heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. <u>Id.</u> Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." <u>Girsh</u>, 521 F.2d at 156. There is a presumption of fairness for a settlement negotiated at arm's length by experienced advocates following sufficient discovery whenever the settlement has not drawn meaningful objections from class members. <u>In re Cendant Corp.</u>

<u>Litig.</u>, 264 F.3d 201, 232 n.18 (3d Cir. 2001). In that this is the posture of the case, the presumption applies.[5]

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. Specifically whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

These factors are in many respects a codification of various factors set forth in <u>Girsh</u>, 521 F.2d at 157, which the

---

[5]     Arguably, applying this "presumption" in cases where the parties seek certification and settlement approval contemporaneously is in tension with the mandate from the Court of Appeals that courts are to act as fiduciaries to the class, independently and scrupulously evaluating the terms of the settlement regardless of the parties' positions. <u>See, e.g.</u>, <u>In re Cendant Corp.</u>, 264 F.3d at 231; <u>In re Prudential</u>, 148 F.3d at 317. In this case, with or without applying the presumption, the Court finds the settlement to be fair.

Third Circuit has directed courts to use in establishing the
fairness of a class action settlement.[6] The Third Circuit later
expanded on the <u>Girsh</u> factors in <u>In re Prudential</u>, 148 F.3d 323,
adding additional factors that the court may consider where
appropriate.[7] <u>In re Nat'l Football League Players Concussion Inj.</u>

---

[6]        The <u>Girsh</u> factors are: (1) the complexity, expense,
and likely duration of the litigation; (2) the reaction of the
class to the settlement; (3) the stage of the proceedings and
the amount of discovery completed; (4) the risks of establishing
liability; (5) the risks of establishing damages; (6) the risks
of maintaining the class action through trial; (7) the ability
of the defendants to withstand a greater judgment; (8) the range
of reasonableness of the settlement fund in light of the best
possible recovery; and (9) the range of reasonableness of the
settlement fund to a possible recovery in light of all the
attendant risks of litigation. <u>Girsh</u>, 521 F.2d at 157. The
fifth, seventh, eighth, and ninth factors regard monetary
judgments and are inapplicable to this Consent Decree regarding
only injunctive and declaratory relief. <u>See, e.g.</u>, <u>Pastrana v.
Lane</u>, No. 08-cv-468, 2012 WL 602141, at *5 (E.D. Pa. Feb. 24,
2012). As a result, the Court will not analyze these four
factors.

[7]        The <u>Prudential</u> factors are: (1)the maturity of the
underlying substantive issues, as measured by experience in
adjudicating individual actions, the development of scientific
knowledge, the extent of discovery on the merits, and other
factors that bear on the ability to assess the probable outcome
of a trial on the merits of liability and individual damages;
(2) the existence and probable outcome of claims by other
classes and subclasses; (3) the comparison between the results
achieved by the settlement for individual class or subclass
members and the results achieved--or likely to be achieved--for
other claimants; (4) whether class or subclass members are
accorded the right to opt out of the settlement; (5) whether any
provisions for attorneys' fees are reasonable; and (6) whether
the procedure for processing individual claims under the
settlement is fair and reasonable. <u>In re Prudential</u>, 148 F.3d at
323. For settlements seeking only injunctive relief, as is the
case here, the only applicable <u>Prudential</u> factor not necessarily

Litig., 821 F.3d 410, 437 (3d Cir. 2016). The Court will address
the relevant Girsh, Prudential, and Rule 23(e)(2) factors below.

       1.   The Girsh Factors

          a.   The Complexity, Expense, and Likely Duration
              of the Litigation

The first Girsh factor is "intended to capture 'the
probable costs, in both time and money, of continued
litigation.'" In re Gen. Motors Corp., 55 F.3d at 812 (quoting
Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.), 494 F.2d
799, 801 (3d Cir. 1974)). The Court concludes, given the time
and expense already expended on the claims at issue, that if the
litigation continued, the costs, of both time and money, would
be significant. For example, the continued litigation would
entail additional discovery, including depositions, additional
motions on class certification, summary-judgment briefing, and
potentially trial. Given that the settlement provides the
Plaintiffs with the injunctive relief they seek, this additional
expense would appear especially unwarranted. Therefore, this
factor supports approval of the Consent Decree.

          b.   The Reaction of the Class to the Settlement

In relation to the second Girsh factor, when the
objectors are few and the class members many, there is a strong

---

covered by the Girsh factors is the reasonableness of attorneys'
fees.

presumption in favor of approving the settlement. See, e.g., In re Cendant Corp., 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the [s]ettlement and the number of objectors creates a strong presumption that this factor weighs in favor of the [s]ettlement."). Here, while there were more than 34,000 class members, there were no objections to the terms of this Consent Decree.[8] Therefore, this factor also weighs in favor of the Consent Decree.

      c.    The Stage of the Proceedings and the Amount of Discovery Completed

The third Girsh factor considers whether the parties' attorneys have an "adequate appreciation of the merits of the case before negotiating" the settlement. In re Gen. Motors Corp., 55 F.3d at 813. Here, counsel have engaged in significant motion practice and the attendant investigation and research over the last six years. There is no question that they are well versed in the merits of the case. Therefore, this factor weighs in favor of the Consent Decree.

      d.    The Risks of Establishing Liability

Here, the Consent Decree provides all of the injunctive relief sought by the Plaintiffs. Therefore, any risk

---

[8]      The nine timely objections received by the Court regarded the second consent decree on the monetary claims rather than this Consent Decree on the injunctive Courtroom Claims.

at summary judgment or at trial of not succeeding would be too much and such litigation is clearly outweighed by the settlement result. The fourth <u>Girsh</u> factor, therefore, weighs in favor of the Consent Decree.

e.   <u>The Risks of Maintaining the Class Action Through Trial</u>

The Court concludes that the sixth <u>Girsh</u> factor is neutral since there are no particular signs that the certified classes for this Consent Decree could not be maintained throughout the suit. <u>See</u> <u>Ripley v. Sunoco, Inc.</u>, 287 F.R.D. 300, 313 (E.D. Pa. 2012) (finding that this <u>Girsh</u> factor was neutral where "there [wa]s no apparent reason why the [c]ourt would decertify or modify [a] class at any time during the litigation").

The Court concludes that the relevant <u>Girsh</u> factors favor approving the Consent Decree.

2.   <u>The Relevant Prudential Factor</u>

a.   <u>Whether the Provisions for Attorneys' Fees Are Reasonable</u>

This is the only relevant <u>Prudential</u> factor. As discussed in a separate order granting counsel's unopposed fee petition, the Court has concluded that the fees are reasonable. Counsel seek $2,630,000 in attorneys' fees to be paid separately from and in addition to the $3 million settlement fund. The number of hours for which they are seeking compensation, 9,800,

are reasonable given the complexity and length of this case.[9]
Their rates are also reasonable for this geographic area.
Ultimately, Counsel has sought twenty percent less than the
lodestar and have forgone payment for many hours of work. This
factor weighs in favor of the Consent Decree.

      3.    The Rule 23(e)(2) Factors

          a.    Whether the Class Representatives and Class
               Counsel Have Adequately Represented the
               Class

In making this determination, "the focus at this point
is on [counsel's] actual performance." Fed. R. Civ. P. 23(e)(2),
advisory committee's note to 2018 amendment. The Court concludes
that this factor weighs in favor of settlement. In addition to
the points raised above in connection with the adequacy of the
class representatives and class counsel, it is clear that
Plaintiffs' counsel is well informed and their actual
performance has been laudable.

          b.    Whether the Proposal Was Negotiated at Arm's
               Length

Here, all evidence points to an arm's length
negotiation, including the involvement of a neutral facilitator.
See supra Fn. 4; Fed. R. Civ. P. 23(e)(2), advisory committee's

---

[9]      Counsel reported to the Court that they will continue
to represent the Plaintiffs and class members in the litigation
after class certification and approval of the Consent Decree,
and during the enforcement aspects of the case, and that they
will not seek additional compensation for that work.

note to 2018 amendment ("[T]he involvement of a neutral or
court-affiliated mediator or facilitator in those negotiations
may bear on whether they were conducted in a manner that would
protect and further the class interests."). Therefore, this
factor weighs in favor of the Consent Decree.

     c. <u>Whether the Relief Provided for the Class</u>
       <u>Was Adequate</u>

   In connection with this factor, Rule 23(e) lists four
subfactors for the Court to consider:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of
> distributing relief to the class, including the method
> of processing class-member claims; (iii) the terms of
> any proposed award of attorney's fees, including timing
> of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3)." Fed. R. Civ. P.
> 23(e)(2)(C).

Fed. R. Civ. P. 23(e).

   The only two factors relevant here, the first and third,
have already been considered above. Specifically, continued
litigation is inferior to the settlement in light of the costs
and risks associated with it, and counsel's fees are
appropriate. In that the Consent Decree provides the relief that
was requested by the class, the Court concludes that this factor
weighs in favor of the Consent Decree.

     d. <u>Whether the Proposal Treats Class Members</u>
       <u>Equitably Relative to Each Other</u>

   This factor "calls attention to a concern that may
apply to some class action settlements--inequitable treatment of

some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." <u>Id.</u> Because the injunctive and declaratory relief affects all class members equally, this factor is not relevant.

The relevant <u>Girsh</u>, <u>Prudential</u>, and Rule 26(e)(2) factors indicate that the Consent Decree is fair and reasonable. Indeed, all but one factor supports approving the settlement, and that last factor is neutral.

## III. CONCLUSION

In that Rules 23(a) and (b)(2) have been met, certification of the settlement class is proper. Moreover, the terms in the Consent Decree appear fair, reasonable, and adequate. As a result, the Court will grant Plaintiffs' Uncontested Motion and Memorandum in Support of Preliminary Approval of Class Certification and Consent Decree on the Courtroom Claims, certify the settlement class, and approve the Consent Decree on the Courtroom Claims.

An appropriate order follows.